**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

TYLER GRIFFIN,

        Plaintiff,

v.

CITY OF ATLANTA, DONALD
VICKERS, MATTHEW ABAD, and
JOHN DOE # 1-5,

        Defendants.

CIVIL ACTION
FILE NO. 1:20-cv-02514-TWT

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff Tyler Griffin brings this First Amended Complaint ("FAC") to recover damages for violations of his Constitutional rights, showing this Court as follows.

## SUMMARY

1.

In the dark, early-morning hours of April 5, 2019, Defendant Vickers and Defendant Abad of the Atlanta Police Department followed Plaintiff Tyler Griffin in an unmarked police car through several turns and stops.

2.

Aware that he was being followed but unaware that the unmarked car following him was being driven by police officers, Mr. Griffin pulled his car into a private driveway to see if the unmarked vehicle would continue pursuing him.

3.

Mr. Griffin turned around and stopped his car near the bottom of the driveway.

4.

The unmarked car stopped near the top of the driveway.

5.

Defendant Abad got out of the unmarked car and approached Mr. Griffin on foot with a bright light shining at Mr. Griffin's face so that he could not see who was approaching.

6.

Defendants had still not identified themselves as police officers. Mr. Griffin did not know they were police officers, and thought he was being carjacked.

7.

Then Defendant Abad pointed his pistol at Mr. Griffin's face and shouted, "get out of the fucking car, Atlanta Police!"

8.

Mr. Griffin slowly and peacefully got out of his car and stood beside it.

9.

Mr. Griffin stood as Defendant Abad kept shouting with his pistol in hand.

10.

Defendant Abad grabbed Mr. Griffin's shirt, and Mr. Griffin shrugged his hand away.

11.

Several seconds passed as Mr. Griffin stood peacefully answering Defendant Abad's questions.

12.

Without warning or provocation, Defendant Vickers—who had been some distance away—sprinted out of the darkness and tackled Mr. Griffin to the ground:





























13.

The tackle broke Mr. Griffin's ankle:



14.

Defendants and other officers then forced Mr. Griffin to walk on his broken ankle:





15.

Hours later Defendants shoved Mr. Griffin into the back of a prisoner transport van, grabbing his broken ankle in the process.

16.

Video evidence from the body cameras worn by Defendants and others is available at https://www.dropbox.com/t/SDY3M4slP56rTdOZ (or in shorter form, https://bit.ly/3dXhrfx).

17.

Defendants' unnecessary and excessive use of force violated Mr. Griffin's constitutional rights under the Fourth and Fourteenth Amendments. *See* 42 U.S.C. § 1983.

18.

Mr. Griffin is young, male, and African-American.

**JURISDICTION AND VENUE**

19.

This action is brought pursuant to 28 U.S.C. § 1331, 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the Constitution of the United States as applied to the State of Georgia and its entities, officials, and employees.

20.

Venue is proper in the Northern District of Georgia, Atlanta Division, as all acts complained of occurred in Fulton County, Georgia.

21.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343, and 1391.

## PARTIES

22.

Plaintiff Tyler Griffin ("Plaintiff") resides in Atlanta, Georgia and submits himself to the jurisdiction of this Court.

23.

Defendant City of Atlanta (the "City") is a municipal governmental entity that is legally competent to sue and be sued. The City's policies, practices, and customs were the moving force behind the constitutional and statutory violations set out in this lawsuit. The City is subject to the jurisdiction of this Court. The City maintains its office at 55 Trinity Avenue, Atlanta, Georgia 30303 and may be served through its counsel of record.

24.

Defendant Donald Vickers was, at all times relevant to this lawsuit, an Officer in the City of Atlanta Police Department and was acting under the color of

state.  Defendant Vickers is subject to the jurisdiction of this Court and may be served through his counsel of record.

25.

Defendant Matthew Abad was, at all times relevant to this lawsuit, an Officer in the City of Atlanta Police Department and was acting under the color of state.  Defendant Abad is subject to the jurisdiction of this Court and may be served through his counsel record.

**FACTS**

**A. Defendants Vickers' and Abad's Violations of Mr. Griffin's Constitutional Rights.**

26.

On April 5, 2019, Defendants Vickers and Abad were patrolling Chattahoochee Avenue in West Atlanta in an un-marked police vehicle.

27.

Defendants followed Mr. Griffin in an un-marked police vehicle for several miles.  Although they would later claim to have witnessed multiple traffic violations, Defendants did not activate their blue lights, turn on their siren, or otherwise indicate that they were police officers.

28.

Mr. Griffin, who did not know that the people in the car behind him were police officers, became nervous.

29.

Mr. Griffin approached the intersection of Buchanan Street NW and Bellemeade Avenue NW.  Instead of going left or right, Mr. Griffin drove straight into a private driveway to see if the vehicle continued to follow him.

30.

Mr. Griffin turned his vehicle around and waited.

31.

Defendants parked their unmarked police car—still with no blue lights or siren activated—near the top of the driveway.

32.

Defendant Abad got out of the unmarked patrol car and drew his pistol, which was equipped with a powerful flashlight.

33.

Defendant Abad aimed his pistol at Mr. Griffin's vehicle with the flashlight shining in Mr. Griffin's face and began shouting at Mr. Griffin to stop his car (which was not moving).

34.

Mr. Griffin could not immediately see that Defendant Abad was a police officer because of the flashlight shining into Mr. Griffin's eyes and could not hear Defendant Abad at first because and his window was rolled up and his music was playing.

35.

Defendant Abad reached Mr. Griffin's vehicle, pointed his pistol and flashlight in Mr. Griffin's face, and screamed, "get out of the fucking car, Atlanta Police!"

36.

That was the first time Defendant Abad identified himself as a police officer.

37.

Before that, Mr. Griffin had not known that Defendants Abad or Vickers were police officers, and thought he was being carjacked.

38.

Once Mr. Griffin realized Defendant Abad was a police officer, he rolled down his window so he could hear Defendant Abad.

39.

Following Defendant Abad's instructions, Mr. Griffin got out of his car.  Mr.

Griffin was not injured at the time he got out of his car.

40.

As Mr. Griffin was following Defendant Abad's instructions, Defendant

Abad grabbed Mr. Griffin's shirt.

41.

Mr. Griffin said, "wait a minute, whoa, whoa," and shrugged his arm from

Defendant Abad's grip.

42.

Mr. Griffin was still complying with Defendant Abad's instructions.

43.

Mr. Griffin was not resisting arrest.

44.

Mr. Griffin was not attempting to flee.

45.

Mr. Griffin was not violent.

46.

Mr. Griffin was not armed.

47.

Mr. Griffin was not dangerous.

48.

Defendants did not have any legitimate reason to believe that Mr. Griffin was dangerous.

49.

Defendant Vickers began to walk down the driveway toward Mr. Griffin, who was standing still while Defendant Abad asked him questions.

50.

Defendant Vickers went from a walk to a crouch, then from a crouch to a sprint.

51.

Mr. Griffin was standing still, not moving, and still talking in response to Defendant Abad's questions.

52.

Mr. Griffin did not see Defendant Vickers coming.

53.

Defendant Vickers sprinted toward Mr. Griffin and tackled him to the ground.

54.

When Defendant Vickers slammed Mr. Griffin to the ground, he broke Mr. Griffin's left ankle.

55.

Doctors would later diagnose Mr. Griffin with a trimalleolar fracture.

56.

Neither Defendant Vickers nor Defendant Abad made any attempt to de-escalate the situation. In fact, *there was nothing to de-escalate* except the officers' own conduct—Mr. Griffin was doing what he was told.

57.

Defendant Vickers did not activate his body camera until *after* he had gotten out of his un-marked police vehicle, sprinted up to Mr. Griffin, and tackled him.

58.

Mr. Griffin made no secret of his injury. He repeatedly cried out in pain.

59.

Defendants showed no compassion.

60.

Mr. Griffin told Defendants Vickers and Abad that he could not stand because his ankle was hurt. Instead of calling for medical assistance, Defendant

Abad forced Mr. Griffin to walk on the broken ankle, worsening the fracture, and, along with other police officers, ridiculed him.

61.

As Mr. Griffin sat on the ground in pain, Defendant Vickers and Officer Thomas laughed. Defendant Vickers explained to Mr. Griffin, "we're laughing because you fell pretty hard after pushing an officer man, I find that funny man."

62.

Defendant Vickers pridefully pointed other officers to the "skid marks" on the ground that had been left when Defendant Vickers tackled Mr. Griffin to the ground and made him skid through the dirt.

63.

As Defendant Vickers and another officer forced Mr. Griffin to walk on his broken ankle and as Mr. Griffin cried out in pain, Defendant Vickers told him, "you're such a little girl right now."

64.

Later that night, Mr. Griffin underwent an emergency open reduction internal fixation surgery at Grady Hospital, in which a doctor made an incision from Mr. Griffin's ankle to the arch of his foot to install permanent hardware designed to hold his broken bones together. A post-surgery x-ray is below:



65.

The surgery came hours after City of Atlanta police officers taunted Mr. Griffin and forced him to walk on his broken ankle.

66.

After Defendant Vickers attacked Mr. Griffin and Defendant Abad failed to intervene, Defendants began an attempt to cover up their excessive use of force

pursuant to the Atlanta Police Department's "Code of Silence,"[1] by suggesting that Mr. Griffin was resisting arrest, that he was intoxicated, and even that he hurt his ankle a result of his vehicle driving off an alleged drop in the driveway, rather than because Defendant Vickers tackled him at a full sprint.

67.

The cover-up went further than Defendants Vickers and Abad. For example, in the emergency room, Officer Sampsen misleadingly told an emergency room employee that Mr. Griffin likely injured his ankle when Mr. Griffin's car impacted the ground while driving into the private driveway. After Mr. Griffin said the injury happened when he was tackled to the ground, Officer Sampsen denied that Defendant Vickers or Defendant Abad were even strong enough to taken down Griffin. Officer Sampsen tried to cover-up Defendant Vickers' and Defendant Abad's constitutionally offensive behavior pursuant to The City's Code of Silence.

---

[1] The Code of Silence is a department-wide practice pursuant to which police officers refuse to bear witness against a fellow officer who is alleged to have violated a citizen's rights or otherwise engaged in misconduct. A retired City of Atlanta police major has confirmed the Code of Silence and provided sworn testimony that excessive force was not unusual on the Atlanta police force and that officers often protected one another with a "code of silence." *See* Human Rights Watch, https://www.hrw.org/legacy/reports98/police/uspo44.htm#P1453_352304.

68.

Defendants Vickers and Abad decided against performing any sobriety tests to prove any alleged intoxication. Defendant Abad decided, "nah fuck that, we're not even going to do no, none of that. He stinks like alcohol, he can't drive, we got that one."

69.

Defendant Abad can be heard explaining that they will not be performing any sobriety tests because Mr. Griffin was "slurring his words, can't stand, [was] not making any sense of his speech, and can be smelled from like 15 feet away."

70.

Despite Defendant Abad's statements, Mr. Griffin's speech was not slurred (as heard on the body camera audio recordings).

71.

Despite Defendant Abad's statements, Mr. Griffin was not stumbling prior to being tackled and having his ankle broken (as can be seen on the body camera footage).

72.

Mr. Griffin admits he could not stand after Defendant Vickers tackled him and broke his ankle.

73.

Even if Mr. Griffin was showing signs of intoxication—which he was not—
there was no reason to tackle him *or* force him to walk on a broken ankle.

74.

Defendants' constitutionally offensive behavior caused serious and
permanent injuries to Mr. Griffin.

75.

Defendant Abad can be heard saying, "I damn near shot him. I was about 2
seconds from putting bullets in his window."

76.

Mr. Griffin is lucky he survived his encounter with the Atlanta Police.

77.

Defendants' use of force was unjustified.

78.

Mr. Griffin did not do anything to warrant this abuse.

**B. The City of Atlanta Has Failed to Correct the Constitutionally Offensive
Actions of its Police Department.**

79.

The City has had a persistent and widespread practice of:

a. allowing City of Atlanta Police officers to use unreasonable and excessive force without justification;

b. allowing City of Atlanta Police officers to violate the City of Atlanta Police Department's own policies and procedures;

c. failing to properly train and supervise City of Atlanta Police officers;

d. failing to enforce policies, failing to properly train officers, and failing to properly discipline officers, thus creating a culture within the City of Atlanta Police Department wherein violating citizens' civil rights is tolerated or encouraged.

80.

The City is and has been aware of the widespread pattern and practice of past and present police misconduct regarding use of force.

81.

The City has persistently failed to take adequate disciplinary action against its officers, such that it has ratified the widespread unconstitutional custom of its police officers' routine use of excessive force.

82.

Further, the City of Atlanta Police Department's Code of Silence, although unwritten, was an official policy that directly caused Mr. Griffin's injuries.

83.

For example, on October 16, 2010, Defendant Vickers was arrested when he approached three African American males with a semi-automatic assault rifle, chambered a round, and pointed the rifle at the men at Underground Atlanta.

84.

Defendant Vickers' previous violent antics received media attention: https://www.ajc.com/news/local/apd-officer-faces-possible-suspension-after-carrying-rifle-into-underground-atlanta/YyIydHonCWrfTDnimpiVBN/

85.

Despite being arrested for reckless conduct, *i.e.*, waiving a loaded assault rifle around at three un-armed individuals in public, The City did not terminate Defendant Vickers.  Rather, he was suspended for *less than a week*—a slap on the wrist—and put back on the streets.

86.

Defendant Vickers should have been terminated for waiving a loaded assault rifle at these unarmed, African American citizens.

87.

By way of further example, on June 11, 2011, Defendant Vickers sprayed an African American, male arrestee with pepper spray. While the arrestee's back was facing Defendant Vickers, Defendant Vickers kicked him several times.

88.

Defendant Vickers admitted that the man he was arresting had his back facing him, but that he still used his foot to get him in the vehicle.

89.

Defendant Vickers was written up for violating Rule 4.2.50 of the The City's Employee Work Rules titled, "Maltreatment or Unnecessary Force."

90.

Defendant Vickers' use of excessive force came along with a proposed 5-day, unpaid suspension. The suspension was not sustained. Once again, Defendant Vickers was put back on the streets with no real consequence for his constitutionally offensive conduct. The Atlanta Police Department took care of "its own."

91.

Defendant Vickers should have been terminated after being *caught* using excessive force a second time.[2]

92.

Other examples of similar constitutionally offensive conduct The City has ratified through its inaction or, alternatively, through the Code of Silence include:

a. October 7, 2019; Qri Montague; Atlanta Police officer uses his taser on Montague for no reason.

b. May 1, 2019; Maggie Thomas; Atlanta Police officer punches, tackles, and tasers a woman in front of her 4-year-old daughter.

c. July 10, 2018; Jerry Blasingame; Atlanta Police officer approaches a panhandler and uses his taser on the unarmed African American male, which causes a serious fall and leaves the man a paraplegic; *Blasingame v. Grubbs*, Case No. 1:19-cv-02047.

d. June 23, 2016; Deravis Rogers; Atlanta Police officer exits his vehicle and immediately shoots into Rogers' vehicle, killing him; *Rogers v. City of Atlanta*, Case No. 1:16-cv-2578.

_____

[2] Only Officer Vickers knows the number of times he used excessive force against citizens but was not caught, either because the incident was not captured on video or because the victim lacked the sophistication to stand up for his or her rights.

e. April 8, 2013; Corey Hill; Atlanta Police officers beat and pepper sprayed Hill without justification; *Hill v. City of Atlanta*, Case No. 1:15-CV-01421.

f. April 4, 2013; Will King; Atlanta Police officer approaches a misdemeanor suspect with his gun drawn and shoots King in his face; *King v. Jackson, et al.*, Case No. 1:15-cv-583.

g. November 30, 2008; Christopher Putnam; Atlanta Police officer beats an unarmed and defenseless man with a baton; *Putnam v. City of Atlanta*, No. 1:10-CV-03243.

93.

There are other examples.

94.

The City's Code of Silence and persistent and widespread failure to take adequate disciplinary action against its officers' routine use of excessive force, properly supervise and train its officers, or enforce written policies resulted in the violation of Mr. Griffin's constitutional rights and proximately caused serious and permanent injury.

## LIABILITY: COUNT ONE
### Excessive Force under 42 U.S.C. § 1983

95.

While acting under color of law, Defendants intentionally committed acts that violated Mr. Griffin's constitutional right to be free from the use of excessive or unreasonable force during an arrest.

96.

Specifically, Defendant Vickers sprinted at Mr. Griffin and tackled him to the ground. Mr. Griffin was not resisting arrest, attempting to flee, or presenting any danger to Defendant Vickers, Defendant Abad, or anyone else.

97.

After Defendants had broken Mr. Griffin's ankle, they (and other presently unknown officers) forced him to walk on it, worsening the injury and further violating Mr. Griffin's Constitutional rights.

98.

There was no need for Defendants to apply force at all, but especially not to tackle Mr. Griffin.

99.

The crimes allegedly committed by Mr. Griffin are "relatively minor in the context of [the Eleventh Circuit's] Fourth Amendment caselaw." *Massie v. Cobb Cty., Georgia*, 255 F. Supp. 3d 1302, 1309 (N.D. Ga. 2017).

100.

Defendants' use of force was objectively unreasonable, *i.e.*, the use of force was excessive in violation of Mr. Griffin's constitutional rights.

101.

Defendants' conduct was intentional and caused Mr. Griffin serious and permanent injury.

**LIABILITY: COUNT TWO**
**Failure to Intervene under 42 U.S.C. § 1983**

102.

Defendant Vickers, while acting under color of law, used excessive force on Mr. Griffin.

103.

Defendant Abad was facing Defendant Vickers and saw him charging at Mr. Griffin, who did not see Defendant Vickers coming.

104.

Defendant Abad had a realistic opportunity to prevent Defendant Vickers from tackling Mr. Griffin. It would have been as simple as holding out his hand or saying, "stop."

105.

Defendant Abad did neither.

106.

Defendant Abad failed to take reasonable steps to prevent Defendant Vickers from using excessive force.

107.

Defendant Abad's failure to act caused Mr. Griffin's serious and permanent injuries and the injuries were a reasonably foreseeable consequence of Defendant Vickers' conduct and Defendant Abad's failure to act.

108.

Defendant Abad was acting under color law at the time he failed to intervene.

109.

Defendants and each of the police officers present had a duty to intervene, but failed to do the right thing.

110.

Instead of intervening or de-escalating the situation, Defendants and other officers exacerbated the situation by laughing at Mr. Griffin, mocking him, and forcing him to walk on his broken ankle.

111.

Instead of calling for medical assistance and an ambulance, Defendants forced Mr. Griffin to leave the scene by walking up to, climbing into, and riding inside a police transport van.

## LIABILITY: COUNT THREE
### *Monell* Liability under 42 U.S.C. § 1983

112.

The City has had a persistent and widespread practice of:

a. allowing City of Atlanta Police officers to use unreasonable and excessive force without justification;

b. allowing City of Atlanta Police officers to violate the City of Atlanta Police Department's own policies and procedures;

c. failing to properly train and supervise City of Atlanta Police officers;

d. failing to enforce policies, failing to properly train, failing to properly discipline, thus creating a culture within the City of Atlanta Police

Department wherein violating citizens' civil rights was tolerated or encouraged.

113.

The City is liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for violating Mr. Griffin's constitutional rights because its policies, customs, and practices directly caused and were the "moving force" behind Mr. Griffin's injuries.

## **CAUSATION**

113-A.

Defendants broke Mr. Griffin's ankle when Defendant Vickers tackled him.

113-B.

Defendants further harmed Mr. Griffin by making him walk on his broken ankle and refusing to call an ambulance or otherwise summon or provide prompt medical attention.

113-C.

Defendant's misconduct proximately and directly caused the damage to Mr. Griffin's ankle.

## DAMAGES

114.

Defendants are liable for:

a. the permanent injuries to Mr. Griffin's ankle;

b. interference with daily living;

c. past and future medical expenses;

d. past and future pain and suffering;

e. degradation and humiliation;

f. fright, shock, and terror;

g. reasonable attorney's fees, expenses and costs of litigation pursuant to 42 U.S.C. § 1988, O.C.G.A. § 13-6-11, and other applicable laws;

h. compensatory damages;

i. punitive damages; and

j. such other damages as allowed by law.

## QUALIFIED IMMUNITY

### 115.

Defendants are not entitled to "qualified immunity" because that doctrine constitutes an improper, invalid, atextual, and unconstitutional judicial modification of a legislative remedy. *See* 42 U.S.C. § 1983 (legislative text).

### 116.

Defendants are not entitled to "qualified immunity" because ignorance of the law is not an excuse for laypeople who have been charged with crimes, and therefore is not an excuse for professional law enforcement personnel facing tort suits. *Jerman v. Carlisle, McNeillie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 574 (2010) ("It is a common maxim that ignorance of the law will not excuse any person, either civilly or criminally.")

### 117.

Defendants are not entitled to "qualified immunity" because that doctrine breaks with the text and purposes of 42 U.S.C. § 1983 by allowing for the perverse result in which courts recognize that a victim's constitutional rights were violated but blocks any redress.

118.

Defendants are not entitled to "qualified immunity" because that doctrine insulates broad swathes of official misconduct from either judicial review or a damages remedy, which the people's trust in government.

119.

Defendants are not entitled to "qualified immunity" because that doctrine exacerbates the ongoing crisis of accountability in law enforcement by regularly denying justice to victims whose constitutional rights have been violated.

120.

Defendants are not entitled to "qualified immunity" because where (as here) the violation of the victim's constitutional rights is obvious, that doctrine merely delays resolution of the case on the merits by engendering needless motions and pointless interlocutory appeals.

121.

Defendants' use of force was excessive and unreasonable, and Defendants are not entitled to "qualified immunity," because:

    a.  there was no need for the application of force,

    b.  the force that was used far exceeded the force that was needed (which was none),

c.  the injury inflicted was severe and permanent, and

d.  the force was applied maliciously.

*See Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008).

122.

Defendants are not entitled to "qualified immunity" because their misconduct was "clearly established" as unconstitutional before April 5, 2019. *See*, *e.g.*, *Hadley*, 526 F.3d at 1330 (denying qualified immunity to officer who punched an arrestee in the stomach even though the arrestee was not struggling or resisting arrest); *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (finding violation of a clearly established right where officer slammed an arrestee's head on the back of the police vehicle while she was not resisting).

123.

Even in the absence of case law showing that Defendants' conduct was "clearly established" as unconstitutional, Defendants would not be entitled to "qualified immunity" because their "conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official . . ." *Lee*, 284 F.3d at 1199; *see also Manning v. City of Atlanta*, No. 1:05-CV-1300-JOF, 2006 WL 319264, at *3 (N.D. Ga. Feb. 9, 2006).

## CONCLUSION

124.

Wherefore, Plaintiff seeks:

    a.  damages in an amount to be proven at trial,

    b.  trial by jury, and

    c.  such other and further relief as the Court deems just.

Respectfully submitted this 13th day of August 2020.


BUTLER LAW FIRM

BY: */s/ Matthew R. Kahn*
       JAMES E. BUTLER, III
       Georgia Bar No. 116955
       MATTHEW R. KAHN
       Georgia Bar No. 833443

10 Lenox Pointe
Atlanta, Georgia 30324
jeb@butlerfirm.com
matt@butlerfirm.com
(t) 678-940-1444
(f) 678-306-4646       **ATTORNEYS FOR PLAINTIFF**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on August 13, 2020, I electronically filed

***PLAINTIFF'S FIRST AMENDED COMPLAINT*** with the Clerk of Court using

the CM/ECF system, which will automatically serve following attorneys of record:

Calvin Blackburn, Alisha Marie S. Nair,
Staci J. Miller, and Jaquita Parks
City of Atlanta Department of Law
55 Trinity Avenue, Suite 5000
Atlanta, Georgia 30303
cblackburn@atlantaga.gov
amnair@atlantaga.gov
sjmiller@atlantaga.gov
japarks@atlantaga.gov

BUTLER LAW FIRM

BY: _/s/ Matthew R. Kahn_
JAMES E. BUTLER, III
Georgia Bar No. 116955
MATTHEW R. KAHN
Georgia Bar No. 833443

10 Lenox Pointe
Atlanta, Georgia 30324
jeb@butlerfirm.com
matt@butlerfirm.com
(t) 678-940-1444
(f) 678-306-4646       **ATTORNEY FOR PLAINTIFF**