# EXHIBIT 7

In The Matter Of:
## *Griffin vs. City of Atlanta*

Deposition Of:
*30(b)(6) Patrick Fite*

Taken On:
*9/22/2020*

Pope Reporting & Video, LLC
2741 Pangborn Road
404-856-0966

www.popereporting.com



Case 1:20-cv-02514-VMC   Document 52-7   Filed 12/02/20   Page 3 of 18

Griffin vs. City of Atlanta                30(b)(6) Patrick Fite                9/22/2020

Page 1

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT COUNTY
ATLANTA DIVISION

TYLER GRIFFIN,

    Plaintiff,

v.    CIVIL ACTION FILE
    NO. 1:20-cv-02514-TWT

CITY OF ATLANTA, DONALD VICKERS, MATTHEW ABAD, AND JOHN DOE #1-5,

    Defendants.

DEPOSITION CONDUCTED VIA VIDEO CONFERENCE

VIDEOTAPED 30(b)(6) DEPOSITION OF CITY OF ATLANTA
PATRICK FITE

September 22, 2020
4:05 p.m.

Witness located in Atlanta, Georgia

By Jennifer Davis-McLain, RMR, CRR, CRC
Certified Court Reporter, License No. 2496

Page 2

1  REMOTE APPEARANCES OF COUNSEL:
2  On behalf of the Plaintiff:
3    MATTHEW R. KAHN, ESQUIRE
4    JAMES E. BUTLER III, ESQUIRE
    Butler Law Firm
5    10 Lenox Pointe NE
    Atlanta, Georgia 30324
6    404.587.8423
    matt@butlerfirm.com
7    jeb@butlerfirm.com
8  On behalf of the Defendants:
9    ALISHA MARIE S. NAIR, ESQUIRE
    STACI MILLER, ESQUIRE
10   JACQUITA PARKS, ESQUIRE
    City of Atlanta Law Department
11   55 Trinity Avenue SW
    Suite 5000
12   Atlanta, Georgia 30303
    404.330.6402
13   amnair@atlantaga.gov
    sjmiller@atlantaga.gov
14   japarks@atlantaga.gov
18  — — —
21  (Pursuant to Article 10(B) of the Rules and
22  Regulations of the Georgia Board of Court Reporting, a written disclosure statement was submitted by the
23  court reporter to all counsel present at the proceeding.)

Page 3

1  INDEX TO EXAMINATIONS
2        PAGE
3  PATRICK FITE
4  Examination by Mr. Kahn ..........................5
5  Examination by Ms. Nair ..........................28
6
7  INDEX TO EXHIBITS
8  EXHIBIT    DESCRIPTION    PAGE
9  Exhibit 1.2    Video ...............................8
10 Exhibit 3.3    Video .............................21
11 Exhibit 4.1    Video .............................18
12 Exhibit 4.2    Video .............................18
13 Exhibit 24    Defendant Donald Vickers' ..........8
    Response to Plaintiff's First
14     Continuing Interrogatories
15 Exhibit 25    Defendant Matthew Abad's ...........9
    Responses to Plaintiff's First
16     Request for Admissions
17 Exhibit 42    December 3, 2019, memorandum from .21
    Lieutenant H. Zenelaj
18     (Griffin v. COA 000008-000015)
19 Exhibit 70    APD SOP Work Rules .................7
20 Exhibit 72    APD.SOP.3010 Use of Force .........10
22  (All exhibits marked prior to the
23  deposition. Exhibit 70 retained by Mr. Kahn.)

Page 4

1        P R O C E E D I N G S
2      MR. KAHN: All right. So this will be the
3  continued 30(b)(6) deposition of the City of Atlanta
4  taken pursuant to notice and agreement. The
5  deposition is taken in the case of Tyler Griffin
6  versus the City of Atlanta, Donald Vickers, and
7  Matthew Abad. The deposition will be taken pursuant
8  to the federal rules for all purposes allowed,
9  including use at trial. The deposition is being taken
10 on Zoom because of COVID.
11     Madam Court Reporter, will you please swear
12 in the witness.
13     COURT REPORTER: Yes, sir. Before I do, I
14 will please ask counsel to identify yourself and agree
15 on the record that there is no objection to this
16 officer of the court administering a binding oath to
17 the witness via Zoom. If we can start --
18     MR. KAHN: Sure.
19     COURT REPORTER: -- with the noticing
20 attorney, please.
21     MR. KAHN: Sure. This is Matt Kahn for the
22 plaintiff, and I have no objection.
23     MR. BUTLER: Jeb Butler for plaintiff. Me
24 neither.
25     MS. NAIR: Alisha Marie Nair for the City of

Case 1:20-cv-02514-VMC   Document 52-7   Filed 12/02/20   Page 4 of 18

Griffin vs. City of Atlanta | 30(b)(6) Patrick Fite | 9/22/2020

Page 5

1  Atlanta. No objection.
2      MS. PARKS: Jacquita Parks for defendants.
3  No objection.
4      COURT REPORTER: Mr. Fite, if you will
5  please -- go ahead, Ms. Miller.
6      MS. MILLER: I'm sorry. Staci Miller for
7  the City of the Atlanta and defendants.
8      PATRICK FITE,
9  having been first duly sworn, was examined and
10 testified as follows:
11     EXAMINATION
12 BY MR. KAHN:
13 Q. All right. Mr. Fite, thank you for taking
14 time out of your day to be here with us. If you will
15 just state your name and job title for the record.
16 A. My name is Patrick Fite, and I am a academy
17 firearms instructor for the City of Atlanta Police
18 Department.
19 Q. And, Mr. Fite, how long have you been with
20 APD?
21 A. Twenty-seven years.
22 Q. And were you in law enforcement before APD?
23 A. No, sir.
24 Q. What sort of training do you have?
25 A. I have instructor-level training. I'm a

Page 6

1  state of Georgia firearms instructor. I'm a federal
2  firearms instructor. I'm a state of Georgia senior
3  general instructor. I'm a state of Georgia defensive
4  tactics instructor. And then numerous
5  firearms-related training throughout the years, as
6  well as my basic training that I received, as every
7  officer does with the Atlanta Police Department.
8  Q. Okay. Have you received training in use of
9  force?
10 A. Yes, sir.
11 Q. Have you taught other police officers about
12 the use of force?
13 A. Yes, sir.
14 Q. Have you taught other police officers about
15 the work rules?
16 A. Yes, sir.
17 Q. Are there any other subjects that you've
18 taught other police officers?
19 A. I've taught state law, firearms portion; use
20 of deadly force; and some other basic mandate classes
21 in the Georgia police basic mandate training. I just
22 don't recall all the exact ones throughout the years.
23 Q. Thank you, sir.
24     All right. And do you understand that we
25 asked to speak with someone who could testify on

Page 7

1  behalf of the city on various topics?
2  A. Yes, sir.
3  Q. And the city chose you to testify about
4  certain APD standard operating procedures?
5  A. Yes, sir.
6  Q. And do you understand that the answers that
7  you give today will be the answers of the city in this
8  case?
9  A. Yes, sir, I do.
10 Q. Okay. Sir, isn't it true that a police
11 officer should never aim a firearm at a person unless
12 shooting that person would be justifiable?
13 A. As far as our policy goes, that's correct.
14 Q. All right. I want to briefly run through
15 some of APD's standard operating procedures with you.
16 If you'll give me a minute to load an exhibit on my
17 screen.
18     Sir, can you see Plaintiff's Exhibit 70 on
19 your screen?
20 A. Yes, sir.
21 Q. I want to -- does this appear to be the APD
22 standard operating procedure on work rules?
23 A. Yes, sir, it does.
24 Q. Do you -- do you see the highlighted portion
25 of Plaintiff's Exhibit 70 that says, quote, "Employees

Page 8

1  shall not point or aim firearms at persons in
2  circumstances unless the discharge of that firearm
3  would be justifiable"?
4  A. Yes, sir.
5  Q. Did I read that correctly?
6  A. Yes, you did.
7  Q. Okay. And I want to show you a clip that's
8  been marked as Plaintiff's Exhibit 1.2. If you'll
9  give me a minute, I'll share my screen with you.
10     (Video plays.)
11 BY MR. KAHN:
12 Q. Did you see Defendant Abad aiming his pistol
13 at Mr. Griffin?
14 A. No. I wouldn't -- I wouldn't define it as
15 that.
16 Q. Well, let me -- let me show you another
17 exhibit.
18     Sir, can you see Plaintiff's Exhibit 24,
19 which is the City of Atlanta's -- or excuse me --
20 Donald Vickers' response to plaintiff's continuing
21 interrogatories?
22 A. Yes, sir.
23 Q. That's the wrong exhibit. Excuse me. Let
24 me -- that's -- just give me one second.
25     MR. KAHN: Could we go off video for a

Case 1:20-cv-02514-VMC   Document 52-7   Filed 12/02/20   Page 5 of 18

Griffin vs. City of Atlanta          30(b)(6) Patrick Fite          9/22/2020

Page 9

1  second and off the record.
2      (OFF THE RECORD 4:10-4:11 P.M.)
3  BY MR. KAHN:
4      Q. All right. All right, sir. Can you see
5  Plaintiff's Exhibit 25 on your screen, which is
6  Defendant Matthew Abad's responses to plaintiff's
7  first request for admissions?
8      **A. Yes, sir.**
9      Q. Let me go down to Response 38. Do you see
10 there where it says, "Defendant admits that he
11 commanded the plaintiff to get out of the vehicle with
12 his gun drawn and aimed at plaintiff"?
13     **A. Yes.**
14     Q. So, sir, under the rules by which APD
15 conducts itself, would it have been justifiable for
16 Defendant Abad to discharge his firearm and shoot
17 Tyler Griffin here?
18     **A. No, it would not.**
19     Q. Would you agree that police officers should
20 only use force if it's necessary?
21     **A. Yes.**
22     Q. Would you agree that if required to use
23 force, police officers should only use reasonable
24 force?
25     **A. Yes.**

Page 10

1      Q. I'm going to share my screen with you, and I
2  want to show APD's use of force standard operating
3  procedure which is marked as Plaintiff's Exhibit 2
4  [sic]. Can you see that on your screen?
5      **A. Yes, sir.**
6      Q. I'm going to flip to page 2.
7         Now, do you see the highlighted section,
8  4.11, that says, "Employees are expressly prohibited
9  from the unnecessary or unreasonable use of force
10 against any person or property"?
11     **A. Yes, sir.**
12     Q. And then do you see the highlighted section
13 below that that says, "Employees will only use that
14 force which is reasonable and necessary to effect an
15 arrest, present escape, necessarily restrict the
16 movement of a prisoner, defend the officer or another
17 from physical assault, or to accomplish other lawful
18 objectives"?
19     **A. Yes, sir.**
20     Q. And did I -- I read that correctly, sir?
21     **A. Yes, you did.**
22     Q. Do these rules mean that APD police officers
23 should only use force in an encounter with a
24 noncompliant or violent subject?
25     **A. I believe that to be true. If you could**

Page 11

1  **restate it again for me, please, or just say it again.**
2      Q. Sure. Do these rules mean that APD police
3  officers should only use force in an encounter with a
4  noncompliant or a violent subject?
5      **A. Yes, sir.**
6      Q. And these rules we just read are the rules
7  that you've taught other police officers. Right?
8      **A. Yes, sir.**
9      Q. I want to show you another video. We're
10 going to do Plaintiff's Exhibit 1.2 again.
11        (Video plays.)
12 BY MR. KAHN:
13     Q. Once Mr. Griffin had gotten out of the car,
14 he wasn't trying to escape, was he?
15     **A. He didn't appear to be.**
16     Q. And Mr. Griffin wasn't trying to fight
17 anyone, was he?
18     **A. He moved the officer's hand, but he didn't**
19 **appear to be fighting with officers.**
20     Q. What do you think about the video we just
21 watched?
22        MS. NAIR: Objection as to form. This goes
23 beyond the scope. If SPO Fite answers, it will be
24 answering as to his personal opinion and not as a
25 representative of the city.

Page 12

1         MR. KAHN: And I'll state for the record
2  that I disagree with that. Mr. Fite was appointed to
3  speak on the standard operating procedures, and this
4  is the application of those standard operating
5  procedures to the real world, which is within the
6  scope of that topic.
7         MS. NAIR: If you can answer the question as
8  to your personal opinion, Mr. Fite, you're more than
9  able to.
10     **A. All right. From my personal opinion -- will**
11 **you ask it again, sir, please?**
12 BY MR. KAHN:
13     Q. And I'll state this would be -- I think that
14 this is within the scope of the topic. But the
15 question is what do you think about the video we just
16 watched?
17     **A. I think that you -- I'd have to know what**
18 **Officer Vickers saw in order to make him use the level**
19 **of force that he chose to use.**
20     Q. Is that sort of conduct okay?
21     **A. I'm sorry, sir?**
22     Q. Is that sort of conduct okay?
23     **A. If -- again, it's -- you'd have to know his**
24 **perception at the time of what he thought he was**
25 **seeing to justify any kind of force that he used. So**

Case 1:20-cv-02514-VMC   Document 52-7   Filed 12/02/20   Page 6 of 18

Griffin vs. City of Atlanta　　　　30(b)(6) Patrick Fite　　　　9/22/2020

Page 13

1 if he justified that he needed to use that level of
2 force from what he perceived at the time, then it --
3 that would be if that was a reasonable -- you know, I
4 can't judge for what he saw that made him choose to
5 use that force.
6　　Q.  Well, seeing what you saw in the video,
7 which shows Mr. Griffin, do you think that that
8 conduct was okay?
9　　A.  I would want to know why he chose to do a
10 takedown, given what I saw at the moment.
11　　Q.  Does APD teach its officers to tackle people
12 in situations like that?
13　　A.  They teach them to gain control, and we
14 don't necessarily teach tackling as a risk to the
15 officer.  They teach in essence a hand check where he
16 wouldn't fully engage with someone so that he didn't
17 go to the ground as well because of the danger to the
18 officers if we tackle somebody and the risk of injury
19 to the officer and the person, as well as you're
20 initiating a ground fight if the person continued to
21 fight.
22　　　　So a takedown -- we do teach takedowns, and
23 we don't advocate fully teaching -- tackling just
24 because you're engaged with a person and you're both
25 going down to the ground due to the risk of injury to

Page 14

1 both parties.
2　　　　MS. NAIR:  Objection.  I apologize.  My Zoom
3 went out, and so I'm not sure what the questions were
4 or why my Zoom cut out.  So we need to back up.
5　　　　MR. KAHN:  Let's go off the video for a
6 second.
7　　　　(OFF THE RECORD 4:18-4:23 P.M.)
8　　　　MS. NAIR:  Just for a point of clarity, if,
9 in fact, anyone sees the City of Atlanta attorneys,
10 specifically, myself, cut out or if Ms. Miller cuts
11 out while she is doing an examination or charged with
12 doing an examination, I would request that you stop
13 the communications immediately and not continue in
14 further conversation and questioning.
15　　　　There were at least three to four questions
16 asked while I was off camera and Mr. Fite was without
17 counsel.
18　　　　The --
19　　　　MR. KAHN:  I'll just --
20　　　　MS. NAIR:  -- second thing --
21　　　　MR. KAHN:  I'll just say for the record I
22 did not see -- notice that you had left the Zoom chat.
23 Your name -- everyone's name still appeared up at the
24 top.  And, frankly, I'm not -- I wasn't paying much
25 attention to you, you know, the other faces in the

Page 15

1 room.  I was looking at the witness.  But I will do --
2 I will endeavor to make sure that everyone is in the
3 room.
4　　　　MS. NAIR:  The second thing that I would ask
5 is that we -- the City of Atlanta draws an objection
6 from the point to which Mr. Fite is answering not on
7 behalf of the city but as to his personal opinion in
8 many of the questions -- the four previous questions
9 that were asked, two of which were as to his personal
10 opinion.
11　　　　The questions that were asked in regards to
12 whether the City of Atlanta teaches a certain method
13 are within the scope of what officer -- SPO Fite was
14 called to testify to, and we have no objection as to
15 those questions.  And we may continue.
16　　　　MR. KAHN:  And I'll just say again for the
17 record I disagree with what you said.  I think that
18 all these questions are within the scope.  He was
19 designated as the person to speak on the standard
20 operating procedures.  All of these questions have to
21 do with the standard operating procedures and their
22 application to the video.
23　　　　But that's fine.  We can disagree on that.
24 I'll move on.
25

Page 16

1 BY MR. KAHN:
2　　Q.  So, Mr. Fite, you were just saying that you
3 would have to know what Mr. Vickers saw to be able to
4 comment on whether that was appropriate.  But what I'd
5 like to ask you is if you saw anything that justified
6 the use of force in that video.
7　　A.  The -- when you moved from what -- the term
8 we would use -- from passive resistance to active
9 resistance, that dictates the level of force that a
10 officer will use.
11　　　　There was some active resistance when the
12 driver -- I believe it was Officer Abad -- when he --
13 when he had his hand on him to either try to hold him
14 to prevent him from running or hold him up or whatever
15 the case may be.  When his hand was on him and the
16 driver moved his hand or swatted his hand or whatever
17 the wording that we use for it out -- you know, off of
18 him, that does -- that does move into the level of
19 what would be active resistance.  That would open up
20 the officers using some type of force at that point.
21　　　　Just, again, without knowing
22 Officer Vickers' perception, I wouldn't understand his
23 level of force at that point.
24　　Q.  So I'm going to ask the question again.
25 That was an answer, but it -- I don't think it

Case 1:20-cv-02514-VMC   Document 52-7   Filed 12/02/20   Page 7 of 18

Griffin vs. City of Atlanta　　　　30(b)(6) Patrick Fite　　　　9/22/2020

Page 17

1  answered my question. And that's based on what you
2  saw, Mr. Fite, was the use of force justified in the
3  video?
4     **A. From what I saw, I wouldn't think so.**
5     Q. Mr. Fite, isn't it true that under APD's own
6  standard operating procedures, police officers are
7  required to be polite and courteous?
8     **A. They're required to be courteous, yes.**
9     Q. I'm going to show you an exhibit on my
10 screen if you'll give me a second here. It's
11 Plaintiff's Exhibit 70 again. We'll go to page 3.
12    Do you see the highlighted portion that
13 says, quote, "Being considerate of the rights,
14 feelings, and interests of all persons is something
15 that is required of Atlanta employees"?
16    **A. Yes, sir.**
17    Q. We'll zoom in there.
18    And did I read that correctly?
19    **A. Yes, you did.**
20    Q. I'm going to go on to page 6. And can you
21 see where it says -- it's Section 4.2.2 titled
22 "Courtesy," and it says, "Employees shall be civil,
23 orderly, and courteous to the public, coworkers, and
24 supervisors, and should not use coarse, insensitive,
25 abusive, violent, or profane language."

Page 18

1     **A. Yes, sir.**
2     Q. Police officers are supposed to avoid
3  insensitive and abusive language. Right? That's what
4  that rule means.
5     **A. Yes, sir.**
6     Q. Now I want to -- I want to show you two
7  video clips. Give me just a second. The first one is
8  going to be marked Plaintiff's Exhibit 4.1.
9        (Video plays.)
10 BY MR. KAHN:
11    Q. The next one -- the next video is going to
12 be Plaintiff's Exhibit 4.2.
13       (Video plays.)
14 BY MR. KAHN:
15    Q. Mr. Fite, was Defendant Vickers being
16 considerate of Mr. Griffin's feelings when he said,
17 "You're such a little girl right now"?
18       MS. NAIR: Objection.
19       You can answer if you know what
20 Officer Vickers was thinking at that moment.
21    **A. I wouldn't have any idea what**
22 **Officer Vickers was thinking at that moment.**
23 BY MR. KAHN:
24    Q. And, sir, my question was not whether
25 Officer Vickers was thinking anything. It was was

Page 19

1  Defendant Vickers being considerate of Mr. Griffin's
2  feelings when he said, "You're such a little girl
3  right now."
4       MS. NAIR: Objection again.
5       You may answer if you know whether he was
6  being considerate.
7     **A. Again, I don't know whether he was being**
8  **considerate or not. I don't -- in general, I wouldn't**
9  **think that's a considerate statement, but I don't know**
10 **whether he was being considerate to him or not.**
11 BY MR. KAHN:
12    Q. Was Defendant Vickers being considerate of
13 Mr. Griffin's feelings as he laughed at Mr. Griffin?
14       MS. NAIR: Objection.
15       You may answer if you know whether
16 Officer Vickers was being considerate when he laughed.
17    **A. Again, without knowing if his laughter was**
18 **directed at him or not, I couldn't answer that**
19 **question.**
20 BY MR. KAHN:
21    Q. Did -- do we need to watch the video again?
22 Is there any confusion as to who -- to whom
23 Officer Vickers was laughing?
24    **A. I mean, he's laughing at the situation. I**
25 **don't know if he's definitely laughing at the**

Page 20

1  defendant -- or the driver specifically.
2     Q. Is there anything funny to you about this
3  situation?
4     **A. No.**
5       MS. NAIR: Objection at this moment. If
6  Officer Vickers -- or excuse me -- SPO Fite is
7  answering this question, it will be as to his personal
8  opinion and not the opinion of the city.
9       You may answer if you have an opinion on
10 that.
11    **A. My opinion would be no, they were not being**
12 **sensitive to the driver.**
13 BY MR. KAHN:
14    Q. Okay. And is it okay for officers to hurt
15 people and then laugh at them?
16    **A. That would be outside of the courtesy SOP**
17 **that you just showed us -- showed me.**
18    Q. Mr. Fite, isn't it true that police officers
19 are supposed to call an ambulance when someone is
20 seriously injured?
21    **A. If they -- if they seek medical attention --**
22 **if they request it, they should -- they should either**
23 **take them to receive care or have the care come to**
24 **them, depending on the injury.**
25    Q. Okay. Well, let's look at Plaintiff's

Case 1:20-cv-02514-VMC   Document 52-7   Filed 12/02/20   Page 8 of 18

Griffin vs. City of Atlanta        30(b)(6) Patrick Fite            9/22/2020

Page 21

1  Exhibit 42 for a second. I'm going to scroll down to
2  page 6.
3      Do you see that -- the highlighted section
4  that I've pulled up that says, "Seriously ill or
5  injured prisoners will be taken to Grady Hospital for
6  medical examination and treatment prior to being taken
7  to the appropriate detention facility"?
8      A. Yes, sir.
9      Q. And do you see under that where it's
10 underlined and emphasized and it says, "Unless
11 otherwise approved by supervisor, the arresting
12 officer will in the accompany -- will accompany
13 seriously ill or injured prisoners to Grady in the
14 ambulance"?
15     A. Yes, sir.
16     Q. So I'm going to show you another exhibit.
17 This is a video that's marked as Plaintiff's
18 Exhibit 3.3.
19         (Video plays.)
20 BY MR. KAHN:
21     Q. That wasn't an ambulance that they were
22 putting Mr. Griffin into, was it?
23     A. No, sir.
24     Q. What do you call that type of vehicle?
25     A. It's the wagon or the prisoner transport.

Page 22

1      Q. An officer grabs Mr. Griffin by his left
2  ankle to push him in there, doesn't he?
3          MS. NAIR: Objection as to form.
4      If you know the answer to that, SPO Fite,
5  you may answer it.
6      A. I saw him with his hands on his legs.
7  That -- wouldn't necessarily say they grabbed him.
8  They were trying to assist him to get in the wagon.
9  BY MR. KAHN:
10     Q. Do you think that hurt Mr. Griffin?
11         MS. NAIR: Objection as to form. That's
12 calling --
13     If you -- if you know whether it hurt
14 Mr. Griffin or not, you may answer.
15     A. I wouldn't know whether it hurt him or not.
16 BY MR. KAHN:
17     Q. Well, I asked if you -- if you thought that
18 it hurt him. Do you think that it hurt?
19         MS. NAIR: Objection. It's the same.
20 BY MR. KAHN:
21     Q. Sir, you can answer.
22     A. You said I -- for me to answer it?
23     Q. Yes, sir.
24         MS. NAIR: If you know whether -- if you
25 think whether or not it hurt Mr. Griffin, yes, you may

Page 23

1  answer the question.
2          MR. KAHN: Ms. Nair, I'm going to have to
3  insist that you stop instructing the witness on how to
4  testify. That's entirely improper. You can put your
5  objection on the record, but you cannot tell the
6  witness how to testify.
7          MS. NAIR: Mr. Kahn, I respectfully
8  disagree. I can state my objection, and I can also
9  restate your question. If he knows the answer, he may
10 answer.
11     A. He had a reaction as if it was causing him
12 pain.
13 BY MR. KAHN:
14     Q. What was that reaction?
15     A. He seemed to yell.
16     Q. Did you hear Mr. Griffin screaming in pain?
17     A. I heard him screaming.
18     Q. Well, did it sound like it hurt to you?
19         MS. NAIR: Objection. Mr. Fite is not
20 called as a fact witness.
21 BY MR. KAHN:
22     Q. Mr. Fite, again, you can always answer my
23 questions. Ms. Nair can make objections, but I'm
24 allowed to ask you whatever I want.
25     And so the question is does it sound like it

Page 24

1  hurt Mr. Griffin.
2          MS. NAIR: The objection remains.
3      A. You said -- in my opinion, it sounded like a
4  reaction of pain.
5  BY MR. KAHN:
6      Q. Mr. Fite, is what Defendant Abad did with
7  Tyler Griffin in the video that you saw allowed under
8  the policies and rules of the APD?
9      A. Are you talk- -- I mean, from the initial
10 contact all the way through, or are you talking about
11 the contact where he was trying to walk him back
12 apparently up the driveway?
13     Q. The entire -- the entire video.
14     A. Officer Abad, yes.
15     Q. Is what Defendant Vickers did with
16 Mr. Griffin allowed under the policies and procedures
17 of APD?
18     A. My -- in my opinion, from the question asked
19 earlier about the amount of force used -- outside of
20 that, that would be, yes.
21     Q. Do you approve of the way that Mr. Vickers
22 acted towards Mr. Griffin?
23         MS. NAIR: Objection. This is outside the
24 scope of what SPO Fite is called to testify to. If
25 he's answering, he's answering as to his personal

Case 1:20-cv-02514-VMC   Document 52-7   Filed 12/02/20   Page 9 of 18

Griffin vs. City of Atlanta          30(b)(6) Patrick Fite                   9/22/2020

Page 25

1  opinion and not the opinion of the city.
2      A.  Without -- by simply watching the video and
3  not having a full account of either of the officers'
4  statements or anything that they've said, it's very
5  difficult for me, given my position, to correctly and
6  fully answer the question, because you're asking me
7  what they thought and what they saw, what they
8  perceived, and how they acted.
9          I can watch the video just like anybody can
10 and have a personal opinion on it, but without having
11 the full benefit of everything to include their
12 statements and Mr. Griffin's statements, it would be
13 almost impossible for me to answer that question
14 thoroughly.
15 BY MR. KAHN:
16     Q.  Well, sir, what I'm asking of you is to
17 explain whether you, based on what you've seen in the
18 video, approve of the way that these police officers
19 behaved towards Mr. Griffin so when the jury
20 eventually sees this case and hears your testimony,
21 they will know what you think.
22         MS. NAIR:  I'm going to object again.
23 This -- and it's asked and answered.  SPO Fite, if
24 he's answering, is to his personal opinion and not to
25 the city's.

Page 26

1      A.  It is my personal opinion if I'm watching it
2  without any information that I have, which is only
3  watching the videos just like you did, would be that I
4  would need to know why Officer Vickers used that level
5  of force to take him to the ground.
6          At that point, continuing on just from
7  watching the videos -- where Mr. Griffin could stand
8  and then he couldn't stand.  He could walk; then he
9  couldn't walk -- I think the officers at that point
10 were doing the best they could to get him into the
11 wagon without stopping right there to bring medical
12 attention to him.
13 BY MR. KAHN:
14     Q.  Mr. Fite, as an APD officer of 27 years and
15 an instructor of use of force, I'm asking you for your
16 opinion.  And that's whether you approve of what these
17 officers did to Tyler Griffin.  That's not --
18         MS. NAIR:  I'm going to object again.
19         MR. KAHN:  Let me -- you've got --
20         MS. NAIR:  It's asked and answered.
21         MR. KAHN:  -- to let me finish my question,
22 ma'am.
23         MS. NAIR:  Oh, forgive me.
24 BY MR. KAHN:
25     Q.  So the question is whether you approve of

Page 27

1  what these officers did to Mr. Griffin, and that's a
2  yes-or-no question.
3          MS. NAIR:  Objection again as to asked and
4  answered.  And the opinion that SPO Fite will be
5  giving is to his personal opinion and not the opinion
6  of the city.
7      A.  Mr. Kahn, would you want me to answer just
8  my personal opinion?
9  BY MR. KAHN:
10     Q.  Yes, sir.  I'll state the question again for
11 the record.
12         Do you approve of what these officers did to
13 Tyler Griffin?  Yes or no?
14     A.  I don't think that's a yes-or-no answer,
15 because it's a -- it's complicated.  There are
16 different parts and different phases of it, you know.
17 I approve of some of it, but not all of it is -- I
18 can't answer yes or no for the entire event.
19     Q.  Do you approve --
20     A.  Most of it I approve of.  In my personal
21 opinion, some of it I don't approve of.
22     Q.  Sir, what part do you not approve of?
23     A.  I wouldn't approve of the level of force
24 that I saw Officer Vickers use.
25         MR. KAHN:  No further questions.

Page 28

1              EXAMINATION
2  BY MS. NAIR:
3      Q.  SPO Fite, I have a few questions for you.
4          You --
5      A.  Okay.
6      Q.  -- testified as to the totality of the
7  circumstances.  Can you explain what factors are used
8  in determining what level of force is appropriate?
9      A.  Some of the factors important that we teach
10 and that we use was, you know, the severity of the
11 crime at issue, the immediate danger to the officers
12 or others, and whether or not the suspect was evading
13 arrest or attempting to -- attempting resist --
14 physically resist them.
15     Q.  And --
16     A.  Those were some of the factors that would
17 go -- that would go into the amount of force they
18 decided to use.
19     Q.  Thank you.
20         Is the height of a suspect versus the height
21 of an officer a factor that can be taken into
22 consideration?
23     A.  Yes, it --
24         MR. KAHN:  Objection.
25     A.  -- can.

Case 1:20-cv-02514-VMC   Document 52-7   Filed 12/02/20   Page 10 of 18

Griffin vs. City of Atlanta                30(b)(6) Patrick Fite                9/22/2020

Page 29

1    MR. KAHN:  Leading.
2    A.  I'm sorry.
3  BY MS. NAIR:
4    Q.  I'll ask the question again.
5        Is height a factor that can be taken into
6  consideration?  The height of an individual versus the
7  height of an officer -- is that a factor that can be
8  taken into consideration?
9    MR. KAHN:  Objection.  Vague and to the form
10 of the question.
11 BY MS. NAIR:
12   Q.  You may still answer the question.
13   A.  Yes.  Size -- physical size of either the
14 officer or the offender would matter in either
15 direction.
16   Q.  Is age something that can be taken into
17 consideration?
18   MR. KAHN:  Objection.  Vague.
19 BY MS. NAIR:
20   Q.  You may --
21   A.  Yes.
22   Q.  -- answer.
23   A.  It would be.  It would be -- those would be
24 considered what's called Graham factors.
25   Q.  Can you express some more of the Graham

Page 30

1  factors that are taken into consideration in
2  determining the appropriate level of force to use?
3    A.  Some of the other ones would be a sudden
4  attack, inability for the officer to disengage, gender
5  differences, age difference, mental capacity as known
6  to the officers at the time.  Close proximity to a
7  weapon is another one.
8        And I think that covers most of the broad
9  categories in there.  Multiple offenders or multiple
10 officers.  That can go either way as well.
11   Q.  Were you able to see the height of the
12 plaintiff, Mr. Griffin, in this case?
13   A.  I was.  But without viewing the video again,
14 I couldn't say exactly the difference.  I believe he
15 would be taller and bigger than Officer Abad was.
16   Q.  When you say "bigger," are you talking about
17 weight or structure?
18   A.  Both.  He seemed to be heavier-set and have
19 a larger build than Officer Abad.
20   Q.  Is that a factor that an officer can take
21 into consideration when determining the appropriate
22 use of force?
23   A.  Yes, ma'am.
24   Q.  You testified earlier as to active versus
25 passive resistance.  Do you recall that testimony?

Page 31

1    A.  Yes, ma'am.
2    Q.  And you testified -- or let me restate that
3  question.
4        When did -- did this event turn into an
5  active resistance from Mr. Griffin?
6    A.  Yes.
7    Q.  When did it turn into an active resistance
8  from Mr. Griffin?
9    A.  When he removed -- physically moved
10 Officer Abad's hand off of him.
11   Q.  When an event turns into active resistance,
12 is there -- does the Atlanta Police Department teach
13 regarding use of force after it changes from passive
14 resistance to active resistance?
15   A.  It just changes the level of technique that
16 they could use and moves them towards either using
17 more physical force or to begin using their tools that
18 they have available to them.
19   Q.  The levels or the types of physical force
20 that can be used -- do you recall how many levels or
21 types of physical force can be used?
22   A.  Not to exact numbers, but it would go from,
23 you know, a firm grip control as if you were, you
24 know, holding someone's arm where they couldn't run
25 from you to some compliance holds where you're

Page 32

1  manipulating joints in order to cause an amount of
2  pain to gain compliance up to, you know, hand strikes
3  or takedowns, and then into the tools that they begin
4  to use that -- all of those at each of those different
5  levels.
6    Q.  You testified that you would not have used
7  that level of force.  Was that a correct --
8    A.  From what --
9    Q.  -- assessment of your testimony?
10   A.  I think from what I saw in the video, I
11 would not have.  But absent having, you know, any idea
12 of what Officer Vickers saw or any statement that he
13 made, I don't think I could completely answer that.
14   Q.  Was the level of force that Officer Vickers
15 used prohibited as an option?
16   A.  It wouldn't be prohibited.  It'd have to be
17 explained.
18   Q.  One second, please.
19       I don't believe I have anything further for
20 you, SPO Fite.  I appreciate your time today.  Thank
21 you.
22   A.  Thank you, ma'am.
23   MR. KAHN:  SPO Fite, thank you for your
24 time.  Plaintiff has no further questions.
25       (DEPOSITION CONCLUDED AT 4:50 P.M.)

Case 1:20-cv-02514-VMC   Document 52-7   Filed 12/02/20   Page 11 of 18

Griffin vs. City of Atlanta     30(b)(6) Patrick Fite     9/22/2020

Page 33

1   (Pursuant to Rule 30(e) of the Federal Rules
2   of Civil Procedure and/or O.C.G.A. 9-11-30(e),
3   signature of the witness has been waived.)

Page 34

1   The following reporter and firm disclosures were presented at this proceeding for review by
2   counsel:
3   REPORTER DISCLOSURES
4   The following representations and disclosures are made in compliance with Georgia Law,
5   more specifically:
6   Article 10(B) of the Rules and Regulations of the Board of Court Reporting (disclosure forms)
7   O.C.G.A. 9-11-28(c) (disqualification of reporter for financial interest)
8   O.C.G.A. 15-14-37(a) and (b) (prohibitions against contracts except on a case-by-case basis).
9   - I am a certified reporter in the state of Georgia.
    - I am a subcontractor for Pope Reporting & Video.
10  - I have been assigned to make a complete and accurate record of these proceedings.
11  - I have no relationship of interest in the matter on which I am about to report which would
12  disqualify me from making a verbatim record or maintaining my obligation of impartiality in
    compliance with the Code of Professional Ethics.
13  - I have no direct contract with any party in this action and my compensation is determined solely by
14  the terms of my subcontractor agreement.
15  FIRM DISCLOSURES
16  - Pope Reporting & Video was contacted to provide reporting services by the noticing or taking
17  attorney in this matter.
18  - There is no agreement in place that is prohibited by O.C.G.A. 15-14-37(a) and (b). Any
19  case-specific discounts are automatically applied to all parties at such time as any party receives
    a discount.
20  - Transcripts: The transcript of this proceeding as produced will be a true, correct, and complete
21  record of the colloquies, questions, and answers as submitted by the certified court reporter.
22  - Exhibits: No changes will be made to the exhibits as submitted by the reporter, attorneys, or
23  witnesses.
24  - Password-Protected Access: Transcripts and exhibits relating to this proceeding will be
25  uploaded to a password-protected repository, to which all ordering parties will have access.

Page 35

1   C E R T I F I C A T E
2   STATE OF GEORGIA:
3   COUNTY OF COBB:
4   I hereby certify that the total transcript,
5   pages 1 through 33, represent a true, complete, and
6   correct transcript of the proceedings taken down by me
7   in the case aforesaid (and exhibits admitted, if
8   applicable); that the foregoing transcript is a true
9   and correct record of the evidence given to the best
10  of my ability.
11  The above certification is expressly
12  withdrawn upon the disassembly or photocopying of the
13  foregoing transcript, unless said disassembly or
14  photocopying is done under the auspices of myself and
15  the signature and original seal is attached thereto.
16  I further certify that I am not a relative
17  or employee or attorney of any party, nor am I
18  financially interested in the outcome of the actions.
19  This 29th day of September, 2020.

*[signature]*

Jennifer Davis-McLain, RMR, CRR, CRC, CCR-2496
Georgia Certified Court Reporter

Case 1:20-cv-02514-VMC   Document 52-7   Filed 12/02/20   Page 12 of 18

Griffin vs. City of Atlanta                30(b)(6) Patrick Fite                              9/22/2020

## WORD INDEX

**< 0 >**
000008-000015  3:18

**< 1 >**
1  35:5
1.2  3:9  8:8  11:10
1:20-cv-02514-TWT  1:1
10  2:4  3:20
10(B  2:21  34:5
1-5  1:1
15-14-37(a  34:7, 18
18  3:11, 12

**< 2 >**
2  10:3, 6
2019  3:17
2020  1:1  35:19
21  3:10, 17
22  1:1
24  3:13  8:18
2496  1:1
25  3:15  9:5
27  26:14
28  3:4
29th  35:19

**< 3 >**
3  3:17  17:11
3.3  3:10  21:18
30(b)(6  1:1  4:3
30(e  33:1
30303  2:11
30324  2:5
33  35:5
38  9:9

**< 4 >**
4.1  3:11  18:8
4.11  10:8
4.2  3:12  18:12
4.2.2  17:21
4:05  1:1
4:10-4:11  9:2
4:18-4:23  14:7
4:50  32:25

404.330.6402  2:12
404.587.8423  2:5
42  3:17  21:1

**< 5 >**
5  3:4
5000  2:11
55  2:10

**< 6 >**
6  17:20  21:2

**< 7 >**
7  3:19
70  3:19, 22  7:18, 25  17:11
72  3:20

**< 8 >**
8  3:9, 13

**< 9 >**
9  3:15
9-11-28(c  34:6
9-11-30(e  33:2

**< A >**
ABAD  1:1  4:7  8:12  9:16  16:12  24:6, 14  30:15, 19
Abad's  3:15  9:6  31:10
ability  35:10
able  12:9  16:3  30:11
absent  32:11
abusive  17:25  18:3
academy  5:16
Access  34:23, 25
accompany  21:12
accomplish  10:17
account  25:3
accurate  34:10
acted  24:22  25:8
ACTION  1:1  34:13
actions  35:18

active  16:8, 11, 19  30:24  31:5, 7, 11, 14
administering  4:16
Admissions  3:16  9:7
admits  9:10
admitted  35:7
advocate  13:23
aforesaid  35:7
age  29:16  30:5
agree  4:14  9:19, 22
agreement  4:4  34:14, 17
ahead  5:5
aim  7:11  8:1
aimed  9:12
aiming  8:12
ALISHA  2:6  4:25
allowed  4:8  23:24  24:7, 16
ambulance  20:19  21:14, 21
amnair@atlantaga.gov  2:12
amount  24:19  28:17  32:1
and/or  33:2
ankle  22:2
answer  12:7  16:25  18:19  19:5, 15, 18  20:9  22:4, 5, 14, 21, 22  23:1, 9, 10, 22  25:6, 13  27:7, 14, 18  29:12, 22  32:13
answered  17:1  25:23  26:20  27:4
answering  11:24  15:6  20:7  24:25  25:24
answers  7:6, 7  11:23  34:21
anybody  25:9
APD  3:19  5:20, 22  7:4, 21  9:14  10:22  11:2  13:11  24:8, 17  26:14

APD.SOP.3010  3:20
APD's  7:15  10:2  17:5
apologize  14:2
apparently  24:12
appear  7:21  11:15, 19
APPEARANCES  2:1
appeared  14:23
applicable  35:8
application  12:4  15:22
applied  34:18
appointed  12:2
appreciate  32:20
appropriate  16:4  21:7  28:8  30:2, 21
approve  24:21  25:18  26:16, 25  27:12, 17, 19, 20, 21, 22, 23
approved  21:11
arm  31:24
arrest  10:15  28:13
arresting  21:11
Article  2:21  34:5
asked  6:25  14:16  15:9, 11  22:17  24:18  25:23  26:20  27:3
asking  25:6, 16  26:15
assault  10:17
assessment  32:9
assigned  34:9
assist  22:8
ATLANTA  1:1  2:5, 10, 11  4:3, 6  5:1, 7, 17  6:7  14:9  15:5, 12  17:15  31:12
Atlanta's  8:19
attached  35:15
attack  30:4
attempting  28:13
attention  14:25  20:21  26:12

Case 1:20-cv-02514-VMC   Document 52-7   Filed 12/02/20   Page 13 of 18

Griffin vs. City of Atlanta                         30(b)(6) Patrick Fite                              9/22/2020

attorney 4:*20*
 34:*17* 35:*17*
attorneys 14:*9*
 34:*22*
auspices 35:*14*
automatically 34:*18*
available 31:*18*
Avenue 2:*10*
avoid 18:*2*

< B >
back 14:*4* 24:*11*
based 17:*1* 25:*17*
basic 6:*6*, *20*, *21*
basis 34:*8*
behalf 2:*2*, *6* 7:*1*
 15:*7*
behaved 25:*19*
believe 10:*25*
 16:*12* 30:*14* 32:*19*
benefit 25:*11*
best 26:*10* 35:*9*
beyond 11:*23*
bigger 30:*15*, *16*
binding 4:*16*
Board 2:*21* 34:*6*
briefly 7:*14*
bring 26:*11*
broad 30:*8*
build 30:*19*
BUTLER 2:*3*, *4*
 4:*23*

< C >
call 20:*19* 21:*24*
called 15:*14* 23:*20*
 24:*24* 29:*24*
calling 22:*12*
camera 14:*16*
capacity 30:*5*
car 11:*13*
care 20:*23*
case 4:*5* 7:*8*
 16:*15* 25:*20* 30:*12*
 35:*7*
case-by-case 34:*8*
case-specific 34:*18*
categories 30:*9*

cause 32:*1*
causing 23:*11*
CCR-2496 35:*22*
certain 7:*4* 15:*12*
certification 35:*11*
Certified 1:*1* 34:*8*, *21* 35:*22*
certify 35:*4*, *16*
changes 31:*13*, *15* 34:*22*
charged 14:*11*
chat 14:*22*
check 13:*15*
choose 13:*4*
chose 7:*3* 12:*19* 13:*9*
circumstances 8:*2* 28:*7*
CITY 1:*1* 2:*10* 4:*3*, *6*, *25* 5:*7*, *17* 7:*1*, *3*, *7* 8:*19* 11:*25* 14:*9* 15:*5*, *7*, *12* 20:*8* 25:*1* 27:*6*
city's 25:*25*
CIVIL 1:*1* 17:*22* 33:*2*
clarity 14:*8*
classes 6:*20*
clip 8:*7*
clips 18:*7*
Close 30:*6*
COA 3:*18*
coarse 17:*24*
COBB 35:*3*
Code 34:*12*
colloquies 34:*21*
come 20:*23*
commanded 9:*11*
comment 16:*4*
communications 14:*13*
compensation 34:*13*
complete 34:*9*, *20* 35:*5*
completely 32:*13*
compliance 31:*25* 32:*2* 34:*4*, *12*
complicated 27:*15*

CONCLUDED 32:*25*
conduct 12:*20*, *22* 13:*8*
CONDUCTED 1:*1*
conducts 9:*15*
CONFERENCE 1:*1*
confusion 19:*22*
considerate 17:*13* 18:*16* 19:*1*, *6*, *8*, *9*, *10*, *12*, *16*
consideration 28:*22* 29:*6*, *8*, *17* 30:*1*, *21*
considered 29:*24*
contact 24:*10*, *11*
contacted 34:*16*
continue 14:*13* 15:*15*
continued 4:*3* 13:*20*
Continuing 3:*14* 8:*20* 26:*6*
contract 34:*13*
contracts 34:*8*
control 13:*13* 31:*23*
conversation 14:*14*
correct 7:*13* 32:*7* 34:*20* 35:*6*, *9*
correctly 8:*5* 10:*20* 17:*18* 25:*5*
COUNSEL 2:*1*, *22* 4:*14* 14:*17* 34:*2*
COUNTY 1:*1* 35:*3*
COURT 1:*1* 2:*21*, *22* 4:*11*, *13*, *16*, *19* 5:*4* 34:*6*, *21* 35:*22*
courteous 17:*7*, *8*, *23*
Courtesy 17:*22* 20:*16*
covers 30:*8*
COVID 4:*10*
coworkers 17:*23*
CRC 1:*1* 35:*22*

crime 28:*11*
CRR 1:*1* 35:*22*
cut 14:*4*, *10*
cuts 14:*10*

< D >
danger 13:*17* 28:*11*
Davis-McLain 1:*1* 35:*22*
day 5:*14* 35:*19*
deadly 6:*20*
December 3:*17*
decided 28:*18*
defend 10:*16*
Defendant 3:*13*, *15* 8:*12* 9:*6*, *10*, *16* 18:*15* 19:*1*, *12* 20:*1* 24:*6*, *15*
Defendants 1:*1* 2:*6* 5:*2*, *7*
defensive 6:*3*
define 8:*14*
definitely 19:*25*
Department 2:*10* 5:*18* 6:*7* 31:*12*
depending 20:*24*
DEPOSITION 1:*1* 3:*22* 4:*3*, *5*, *7*, *9* 32:*25*
DESCRIPTION 3:*8*
designated 15:*19*
detention 21:*7*
determined 34:*13*
determining 28:*8* 30:*2*, *21*
dictates 16:*9*
difference 30:*5*, *14*
differences 30:*5*
different 27:*16* 32:*4*
difficult 25:*5*
direct 34:*13*
directed 19:*18*
direction 29:*15*
disagree 12:*2* 15:*17*, *23* 23:*8*

Case 1:20-cv-02514-VMC   Document 52-7   Filed 12/02/20   Page 14 of 18

| Griffin vs. City of Atlanta | 30(b)(6) Patrick Fite | 9/22/2020 |

**disassembly** 35:*12, 13*
**discharge** 8:*2* 9:*16*
**disclosure** 2:*22* 34:*6*
**disclosures** 34:*1, 3, 4, 15*
**discount** 34:*19*
**discounts** 34:*18*
**disengage** 30:*4*
**disqualification** 34:*6*
**disqualify** 34:*11*
**DISTRICT** 1:*1*
**DIVISION** 1:*1*
**DOE** 1:*1*
**doing** 14:*11, 12* 26:*10*
**DONALD** 1:*1* 3:*13* 4:*6* 8:*20*
**drawn** 9:*12*
**draws** 15:*5*
**driver** 16:*12, 16* 20:*1, 12*
**driveway** 24:*12*
**due** 13:*25*
**duly** 5:*9*

**< E >**
**earlier** 24:*19* 30:*24*
**effect** 10:*14*
**either** 16:*13* 20:*22* 25:*3* 29:*13, 14* 30:*10* 31:*16*
**emphasized** 21:*10*
**employee** 35:*17*
**Employees** 7:*25* 10:*8, 13* 17:*15, 22*
**encounter** 10:*23* 11:*3*
**endeavor** 15:*2*
**enforcement** 5:*22*
**engage** 13:*16*
**engaged** 13:*24*
**entire** 24:*13* 27:*18*
**entirely** 23:*4*
**escape** 10:*15* 11:*14*

**ESQUIRE** 2:*3, 6, 9*
**essence** 13:*15*
**Ethics** 34:*12*
**evading** 28:*12*
**event** 27:*18* 31:*4, 11*
**eventually** 25:*20*
**everyone's** 14:*23*
**evidence** 35:*9*
**exact** 6:*22* 31:*22*
**exactly** 30:*14*
**Examination** 3:*4* 5:*11* 14:*11, 12* 21:*6* 28:*1*
**EXAMINATIONS** 3:*1*
**examined** 5:*9*
**excuse** 8:*19, 23* 20:*6*
**EXHIBIT** 3:*8, 9, 10, 11, 12, 13, 15, 17, 19, 20, 22* 7:*16, 18, 25* 8:*8, 17, 18, 23* 9:*5* 10:*3* 11:*10* 17:*9, 11* 18:*8, 12* 21:*1, 16, 18*
**EXHIBITS** 3:*7, 22* 34:*22, 24* 35:*7*
**explain** 25:*17* 28:*7*
**explained** 32:*17*
**express** 29:*25*
**expressly** 10:*8* 35:*11*

**< F >**
**faces** 14:*25*
**facility** 21:*7*
**fact** 14:*9* 23:*20*
**factor** 28:*21* 29:*5, 7* 30:*20*
**factors** 28:*7, 9, 16* 29:*24* 30:*1*
**far** 7:*13*
**federal** 4:*8* 6:*1* 33:*1*
**feelings** 17:*14* 18:*16* 19:*2, 13*
**fight** 11:*16* 13:*20,*

21
**fighting** 11:*19*
**FILE** 1:*1*
**financial** 34:*7*
**financially** 35:*18*
**fine** 15:*23*
**finish** 26:*21*
**firearm** 7:*11* 8:*2* 9:*16*
**firearms** 5:*17* 6:*1, 2, 19* 8:*1*
**firearms-related** 6:*5*
**Firm** 2:*4* 31:*23* 34:*1, 15*
**First** 3:*13, 15* 5:*9* 9:*7* 18:*7*
**FITE** 1:*1* 3:*3* 5:*4, 8, 13, 16, 19* 11:*23* 12:*2, 8* 14:*16* 15:*6, 13* 16:*2* 17:*2, 5* 18:*15* 20:*6, 18* 22:*4* 23:*19, 22* 24:*6, 24* 25:*23* 26:*14* 27:*4* 28:*3* 32:*20, 23*
**flip** 10:*6*
**following** 34:*1, 4*
**follows** 5:*10*
**Force** 3:*20* 6:*9, 12, 20* 9:*20, 23, 24* 10:*2, 9, 14, 23* 11:*3* 12:*19, 25* 13:*2, 5* 16:*6, 9, 20, 23* 17:*2* 24:*19* 26:*5, 15* 27:*23* 28:*8, 17* 30:*2, 22* 31:*13, 17, 19, 21* 32:*7, 14*
**foregoing** 35:*8, 13*
**forgive** 26:*23*
**form** 11:*22* 22:*3, 11* 29:*9*
**forms** 34:*6*
**four** 14:*15* 15:*8*
**frankly** 14:*24*
**full** 25:*3, 11*
**fully** 13:*16, 23* 25:*6*
**funny** 20:*2*

**further** 14:*14* 27:*25* 32:*19, 24* 35:*16*

**< G >**
**gain** 13:*13* 32:*2*
**gender** 30:*4*
**general** 6:*3* 19:*8*
**Georgia** 1:*1* 2:*5, 11, 21* 6:*1, 2, 3, 21* 34:*4, 8* 35:*2, 22*
**girl** 18:*17* 19:*2*
**give** 7:*7, 16* 8:*9, 24* 17:*10* 18:*7*
**given** 13:*10* 25:*5* 35:*9*
**giving** 27:*5*
**go** 5:*5* 8:*25* 9:*9* 13:*17* 14:*5* 17:*11, 20* 28:*17* 30:*10* 31:*22*
**goes** 7:*13* 11:*22*
**going** 10:*1, 6* 11:*10* 13:*25* 16:*24* 17:*9, 20* 18:*8, 11* 21:*1, 16* 23:*2* 25:*22* 26:*18*
**gotten** 11:*13*
**grabbed** 22:*7*
**grabs** 22:*1*
**Grady** 21:*5, 13*
**Graham** 29:*24, 25*
**GRIFFIN** 1:*1* 3:*18* 4:*5* 8:*13* 9:*17* 11:*13, 16* 13:*7* 19:*13* 21:*22* 22:*1, 10, 14, 25* 23:*16* 24:*1, 7, 16, 22* 25:*19* 26:*7, 17* 27:*1, 13* 30:*12* 31:*5, 8*
**Griffin's** 18:*16* 19:*1, 13* 25:*12*
**grip** 31:*23*
**ground** 13:*17, 20, 25* 26:*5*
**gun** 9:*12*

**< H >**

Case 1:20-cv-02514-VMC   Document 52-7   Filed 12/02/20   Page 15 of 18

Griffin vs. City of Atlanta                              30(b)(6) Patrick Fite                              9/22/2020

**hand**  11:*18*  13:*15*  16:*13*, *15*, *16*  31:*10*  32:*2*
**hands**  22:*6*
**hear**  23:*16*
**heard**  23:*17*
**hears**  25:*20*
**heavier-set**  30:*18*
**height**  28:*20*  29:*5*, *6*, *7*  30:*11*
**highlighted**  7:*24*  10:*7*, *12*  17:*12*  21:*3*
**hold**  16:*13*, *14*
**holding**  31:*24*
**holds**  31:*25*
**Hospital**  21:*5*
**hurt**  20:*14*  22:*10*, *13*, *15*, *18*, *25*  23:*18*  24:*1*

< I >
**idea**  18:*21*  32:*11*
**identify**  4:*14*
**III**  2:*3*
**ill**  21:*4*, *13*
**immediate**  28:*11*
**immediately**  14:*13*
**impartiality**  34:*12*
**important**  28:*9*
**impossible**  25:*13*
**improper**  23:*4*
**inability**  30:*4*
**include**  25:*11*
**including**  4:*9*
**INDEX**  3:*1*, *7*
**individual**  29:*6*
**information**  26:*2*
**initial**  24:*9*
**initiating**  13:*20*
**injured**  20:*20*  21:*5*, *13*
**injury**  13:*18*, *25*  20:*24*
**insensitive**  17:*24*  18:*3*
**insist**  23:*3*
**instructing**  23:*3*
**instructor**  5:*17*  6:*1*, *2*, *3*, *4*  26:*15*
**instructor-level**  5:*25*
**interest**  34:*7*, *10*
**interested**  35:*18*
**interests**  17:*14*
**Interrogatories**  3:*14*  8:*21*
**issue**  28:*11*
**It'd**  32:*16*
**its**  13:*11*

< J >
**JACQUITA**  2:*9*  5:*2*
**JAMES**  2:*3*
**japarks@atlantaga. gov**  2:*13*
**Jeb**  4:*23*
**jeb@butlerfirm.com**  2:*6*
**Jennifer**  1:*1*  35:*22*
**job**  5:*15*
**JOHN**  1:*1*
**joints**  32:*1*
**judge**  13:*4*
**jury**  25:*19*
**justifiable**  7:*12*  8:*3*  9:*15*
**justified**  13:*1*  16:*5*  17:*2*
**justify**  12:*25*

< K >
**KAHN**  2:*3*  3:*4*, *22*  4:*2*, *18*, *21*  5:*12*  8:*11*, *25*  9:*3*  11:*12*  12:*1*, *12*  14:*5*, *19*, *21*  15:*16*  16:*1*  18:*10*, *14*, *23*  19:*11*, *20*  20:*13*  21:*20*  22:*9*, *16*, *20*  23:*2*, *7*, *13*, *21*  24:*5*  25:*15*  26:*13*, *19*, *21*, *24*  27:*7*, *9*, *25*  28:*24*  29:*1*, *9*, *18*  32:*23*
**kind**  12:*25*
**know**  12:*17*, *23*  13:*3*, *9*  14:*25*  16:*3*, *17*  18:*19*  19:*5*, *7*, *9*, *15*, *25*  22:*4*, *13*, *15*, *24*  25:*21*  26:*4*  27:*16*  28:*10*  31:*23*, *24*  32:*2*, *11*
**knowing**  16:*21*  19:*17*
**known**  30:*5*
**knows**  23:*9*

< L >
**language**  17:*25*  18:*3*
**larger**  30:*19*
**laugh**  20:*15*
**laughed**  19:*13*, *16*
**laughing**  19:*23*, *24*, *25*
**laughter**  19:*17*
**Law**  2:*4*, *10*  5:*22*  6:*19*  34:*4*
**lawful**  10:*17*
**Leading**  29:*1*
**left**  14:*22*  22:*1*
**legs**  22:*6*
**Lenox**  2:*4*
**level**  12:*18*  13:*1*  16:*9*, *18*, *23*  26:*4*  27:*23*  28:*8*  30:*2*  31:*15*  32:*7*, *14*
**levels**  31:*19*, *20*  32:*5*
**License**  1:*1*
**Lieutenant**  3:*17*
**little**  18:*17*  19:*2*
**load**  7:*16*
**located**  1:*1*
**long**  5:*19*
**look**  20:*25*
**looking**  15:*1*

< M >
**ma'am**  26:*22*  30:*23*  31:*1*  32:*22*
**Madam**  4:*11*
**maintaining**  34:*12*
**making**  34:*11*
**mandate**  6:*20*, *21*
**manipulating**  32:*1*
**MARIE**  2:*6*  4:*25*
**marked**  3:*22*  8:*8*  10:*3*  18:*8*  21:*17*
**Matt**  4:*21*
**matt@butlerfirm.com**  2:*6*
**matter**  29:*14*  34:*10*, *17*
**MATTHEW**  1:*1*  2:*3*  3:*15*  4:*7*  9:*6*
**mean**  10:*22*  11:*2*  19:*24*  24:*9*
**means**  18:*4*
**medical**  20:*21*  21:*6*  26:*11*
**memorandum**  3:*17*
**mental**  30:*5*
**method**  15:*12*
**MILLER**  2:*9*  5:*5*, *6*  14:*10*
**minute**  7:*16*  8:*9*
**moment**  13:*10*  18:*20*, *22*  20:*5*
**move**  15:*24*  16:*18*
**moved**  11:*18*  16:*7*, *16*  31:*9*
**movement**  10:*16*
**moves**  31:*16*
**Multiple**  30:*9*

< N >
**NAIR**  2:*6*  3:*4*  4:*25*  11:*22*  12:*7*  14:*2*, *8*, *20*  15:*4*  18:*18*  19:*4*, *14*  20:*5*  22:*3*, *11*, *19*, *24*  23:*2*, *7*, *19*, *23*  24:*2*, *23*  25:*22*  26:*18*, *20*, *23*  27:*3*  28:*2*  29:*3*, *11*, *19*
**name**  5:*15*, *16*  14:*23*
**NE**  2:*4*
**necessarily**  10:*15*  13:*14*  22:*7*

Case 1:20-cv-02514-VMC   Document 52-7   Filed 12/02/20   Page 16 of 18

| Griffin vs. City of Atlanta | 30(b)(6) Patrick Fite | 9/22/2020 |

necessary 9:*20*
  10:*14*
need 14:*4* 19:*21*
  26:*4*
needed 13:*1*
neither 4:*24*
never 7:*11*
noncompliant
  10:*24* 11:*4*
NORTHERN 1:*1*
notice 4:*4* 14:*22*
noticing 4:*19*
  34:*16*
numbers 31:*22*
numerous 6:*4*

< O >
O.C.G.A 33:*2*
  34:*6*, *7*, *18*
oath 4:*16*
object 25:*22* 26:*18*
objection 4:*15*, *22*
  5:*1*, *3* 11:*22* 14:*2*
  15:*5*, *14* 18:*18*
  19:*4*, *14* 20:*5* 22:*3*,
  *11*, *19* 23:*5*, *8*, *19*
  24:*2*, *23* 27:*3*
  28:*24* 29:*9*, *18*
objections 23:*23*
objectives 10:*18*
obligation 34:*12*
offender 29:*14*
offenders 30:*9*
officer 4:*16* 6:*7*
  7:*11* 10:*16* 12:*18*
  13:*15*, *19* 15:*13*
  16:*10*, *12*, *22* 18:*20*,
  *22*, *25* 19:*16*, *23*
  20:*6* 21:*12* 22:*1*
  24:*14* 26:*4*, *14*
  27:*24* 28:*21* 29:*7*,
  *14* 30:*4*, *15*, *19*, *20*
  31:*10* 32:*12*, *14*
officers 6:*11*, *14*,
  *18* 9:*19*, *23* 10:*22*
  11:*3*, *7*, *19* 13:*11*,
  *18* 16:*20* 17:*6*
  18:*2* 20:*14*, *18*
  25:*3*, *18* 26:*9*, *17*

27:*1*, *12* 28:*11*
  30:*6*, *10*
officer's 11:*18*
Oh 26:*23*
Once 11:*13*
ones 6:*22* 30:*3*
open 16:*19*
operating 7:*4*, *15*,
  *22* 10:*2* 12:*3*, *4*
  15:*20*, *21* 17:*6*
opinion 11:*24*
  12:*8*, *10* 15:*7*, *10*
  20:*8*, *9*, *11* 24:*3*, *18*
  25:*1*, *10*, *24* 26:*1*,
  *16* 27:*4*, *5*, *8*, *21*
option 32:*15*
order 12:*18* 32:*1*
ordering 34:*25*
orderly 17:*23*
original 35:*15*
outcome 35:*18*
outside 20:*16*
  24:*19*, *23*

< P >
p.m 1:*1* 9:*2* 14:*7*
  32:*25*
PAGE 3:*2*, *8* 10:*6*
  17:*11*, *20* 21:*2*
pages 35:*5*
pain 23:*12*, *16*
  24:*4* 32:*2*
PARKS 2:*9* 5:*2*
part 27:*22*
parties 14:*1* 34:*19*,
  *25*
parts 27:*16*
party 34:*13*, *19*
  35:*17*
passive 16:*8* 30:*25*
  31:*13*
Password-Protected
  34:*23*, *24*
PATRICK 1:*1*
  3:*3* 5:*8*, *16*
paying 14:*24*
people 13:*11* 20:*15*
perceived 13:*2*
  25:*8*

perception 12:*24*
  16:*22*
person 7:*11*, *12*
  10:*10* 13:*19*, *20*, *24*
  15:*19*
personal 11:*24*
  12:*8*, *10* 15:*7*, *9*
  20:*7* 24:*25* 25:*10*,
  *24* 26:*1* 27:*5*, *8*, *20*
persons 8:*1* 17:*14*
phases 27:*16*
photocopying
  35:*12*, *14*
physical 10:*17*
  29:*13* 31:*17*, *19*, *21*
physically 28:*14*
  31:*9*
pistol 8:*12*
place 34:*17*
Plaintiff 1:*1* 2:*2*
  4:*22*, *23* 9:*11*, *12*
  30:*12* 32:*24*
Plaintiff's 3:*13*, *15*
  7:*18*, *25* 8:*8*, *18*, *20*
  9:*5*, *6* 10:*3* 11:*10*
  17:*11* 18:*8*, *12*
  20:*25* 21:*17*
plays 8:*10* 11:*11*
  18:*9*, *13* 21:*19*
please 4:*11*, *14*, *20*
  5:*5* 11:*1* 12:*11*
  32:*18*
point 8:*1* 14:*8*
  15:*6* 16:*20*, *23*
  26:*6*, *9*
Pointe 2:*4*
Police 5:*17* 6:*7*, *11*,
  *14*, *18*, *21* 7:*10*
  9:*19*, *23* 10:*22*
  11:*2*, *7* 17:*6* 18:*2*
  20:*18* 25:*18* 31:*12*
policies 24:*8*, *16*
policy 7:*13*
polite 17:*7*
Pope 34:*9*, *16*
portion 6:*19* 7:*24*
  17:*12*
position 25:*5*

present 2:*22* 10:*15*
presented 34:*1*
prevent 16:*14*
previous 15:*8*
prior 3:*22* 21:*6*
prisoner 10:*16*
  21:*25*
prisoners 21:*5*, *13*
procedure 7:*22*
  10:*3* 33:*2*
procedures 7:*4*, *15*
  12:*3*, *5* 15:*20*, *21*
  17:*6* 24:*16*
proceeding 2:*23*
  34:*1*, *20*, *24*
proceedings 34:*10*
  35:*6*
produced 34:*20*
profane 17:*25*
Professional 34:*12*
prohibited 10:*8*
  32:*15*, *16* 34:*17*
prohibitions 34:*7*
property 10:*10*
provide 34:*16*
proximity 30:*6*
public 17:*23*
pulled 21:*4*
purposes 4:*8*
Pursuant 2:*21* 4:*4*,
  *7* 33:*1*
push 22:*2*
put 23:*4*
putting 21:*22*

< Q >
question 12:*7*, *15*
  16:*24* 17:*1* 18:*24*
  19:*19* 20:*7* 23:*1*, *9*,
  *25* 24:*18* 25:*6*, *13*
  26:*21*, *25* 27:*2*, *10*
  29:*4*, *10*, *12* 31:*3*
questioning 14:*14*
questions 14:*3*, *15*
  15:*8*, *11*, *15*, *18*, *20*
  23:*23* 27:*25* 28:*3*
  32:*24* 34:*21*
quote 7:*25* 17:*13*

Case 1:20-cv-02514-VMC   Document 52-7   Filed 12/02/20   Page 17 of 18

Griffin vs. City of Atlanta        30(b)(6) Patrick Fite        9/22/2020

< R >
reaction 23:*11*, *14* 24:*4*
read 8:*5* 10:*20* 11:*6* 17:*18*
real 12:*5*
reasonable 9:*23* 10:*14* 13:*3*
recall 6:*22* 30:*25* 31:*20*
receive 20:*23*
received 6:*6*, *8*
receives 34:*19*
record 4:*15* 5:*15* 9:*1*, *2* 12:*1* 14:*7*, *21* 15:*17* 23:*5* 27:*11* 34:*10*, *11*, *21* 35:*9*
regarding 31:*13*
regards 15:*11*
Regulations 2:*21* 34:*5*
relating 34:*24*
relationship 34:*10*
relative 35:*16*
remains 24:*2*
REMOTE 2:*1*
removed 31:*9*
report 34:*11*
Reporter 1:*1* 2:*22* 4:*11*, *13*, *19* 5:*4* 34:*1*, *3*, *7*, *8*, *21*, *22* 35:*22*
Reporting 2:*21* 34:*6*, *9*, *16*
repository 34:*24*
represent 35:*5*
representations 34:*4*
representative 11:*25*
Request 3:*16* 9:*7* 14:*12* 20:*22*
required 9:*22* 17:*7*, *8*, *15*
resist 28:*13*, *14*

resistance 16:*8*, *9*, *11*, *19* 30:*25* 31:*5*, *7*, *11*, *14*
respectfully 23:*7*
Response 3:*13* 8:*20* 9:*9*
Responses 3:*15* 9:*6*
restate 11:*1* 23:*9* 31:*2*
restrict 10:*15*
retained 3:*22*
review 34:*1*
right 4:*2* 5:*13* 6:*24* 7:*14* 9:*4* 11:*7* 12:*10* 18:*3*, *17* 19:*3* 26:*11*
rights 17:*13*
risk 13:*14*, *18*, *25*
RMR 1:*1* 35:*22*
room 15:*1*, *3*
rule 18:*4* 33:*1*
Rules 2:*21* 3:*19* 4:*8* 6:*15* 7:*22* 9:*14* 10:*22* 11:*2*, *6* 24:*8* 33:*1* 34:*5*
run 7:*14* 31:*24*
running 16:*14*

< S >
saw 12:*18* 13:*4*, *6*, *10* 16:*3*, *5* 17:*2*, *4* 22:*6* 24:*7* 25:*7* 27:*24* 32:*10*, *12*
saying 16:*2*
says 7:*25* 9:*10* 10:*8*, *13* 17:*13*, *21*, *22* 21:*4*, *10*
scope 11:*23* 12:*6*, *14* 15:*13*, *18* 24:*24*
screaming 23:*16*, *17*
screen 7:*17*, *19* 8:*9* 9:*5* 10:*1*, *4* 17:*10*
scroll 21:*1*
seal 35:*15*
second 8:*24* 9:*1* 14:*6*, *20* 15:*4*

17:*10* 18:*7* 21:*1* 32:*18*
section 10:*7*, *12* 17:*21* 21:*3*
see 7:*18*, *24* 8:*12*, *18* 9:*4*, *9* 10:*4*, *7*, *12* 14:*22* 17:*12*, *21* 21:*3*, *9* 30:*11*
seeing 12:*25* 13:*6*
seek 20:*21*
seen 25:*17*
sees 14:*9* 25:*20*
senior 6:*2*
sensitive 20:*12*
September 1:*1* 35:*19*
seriously 20:*20* 21:*4*, *13*
services 34:*16*
severity 28:*10*
share 8:*9* 10:*1*
shoot 9:*16*
shooting 7:*12*
show 8:*7*, *16* 10:*2* 11:*9* 17:*9* 18:*6* 21:*16*
showed 20:*17*
shows 13:*7*
sic 10:*4*
signature 33:*3* 35:*15*
simply 25:*2*
sir 4:*13* 5:*23* 6:*10*, *13*, *16*, *23* 7:*2*, *5*, *9*, *10*, *18*, *20*, *23* 8:*4*, *18*, *22* 9:*4*, *8*, *14* 10:*5*, *11*, *19*, *20* 11:*5*, *8* 12:*11*, *21* 17:*16* 18:*1*, *5*, *24* 21:*8*, *15*, *23* 22:*21*, *23* 25:*16* 27:*10*, *22*
situation 19:*24* 20:*3*
situations 13:*12*
Size 29:*13*
sjmiller@atlantaga. gov 2:*13*
solely 34:*13*

somebody 13:*18*
someone's 31:*24*
SOP 3:*19* 20:*16*
sorry 5:*6* 12:*21* 29:*2*
sort 5:*24* 12:*20*, *22*
sound 23:*18*, *25*
sounded 24:*3*
speak 6:*25* 12:*3* 15:*19*
specifically 14:*10* 20:*1* 34:*5*
SPO 11:*23* 15:*13* 20:*6* 22:*4* 24:*24* 25:*23* 27:*4* 28:*3* 32:*20*, *23*
STACI 2:*9* 5:*6*
stand 26:*7*, *8*
standard 7:*4*, *15*, *22* 10:*2* 12:*3*, *4* 15:*19*, *21* 17:*6*
start 4:*17*
state 5:*15* 6:*1*, *2*, *3*, *19* 12:*1*, *13* 23:*8* 27:*10* 34:*8* 35:*2*
statement 2:*22* 19:*9* 32:*12*
statements 25:*4*, *12*
STATES 1:*1*
stop 14:*12* 23:*3*
stopping 26:*11*
strikes 32:*2*
structure 30:*17*
subcontractor 34:*9*, *14*
subject 10:*24* 11:*4*
subjects 6:*17*
submitted 2:*22* 34:*21*, *22*
sudden 30:*3*
Suite 2:*11*
supervisor 21:*11*
supervisors 17:*24*
supposed 18:*2* 20:*19*
Sure 4:*18*, *21* 11:*2* 14:*3* 15:*2*
suspect 28:*12*, *20*

Case 1:20-cv-02514-VMC   Document 52-7   Filed 12/02/20   Page 18 of 18

Griffin vs. City of Atlanta                    30(b)(6) Patrick Fite                    9/22/2020

**SW** 2:*10*
**swatted** 16:*16*
**swear** 4:*11*
**sworn** 5:*9*

**< T >**
**tackle** 13:*11*, *18*
**tackling** 13:*14*, *23*
**tactics** 6:*4*
**take** 20:*23* 26:*5* 30:*20*
**takedown** 13:*10*, *22*
**takedowns** 13:*22* 32:*3*
**taken** 4:*4*, *5*, *7*, *9* 21:*5*, *6* 28:*21* 29:*5*, *8*, *16* 30:*1* 35:*6*
**talk** 24:*9*
**talking** 24:*10* 30:*16*
**taller** 30:*15*
**taught** 6:*11*, *14*, *18*, *19* 11:*7*
**teach** 13:*11*, *13*, *14*, *15*, *22* 28:*9* 31:*12*
**teaches** 15:*12*
**teaching** 13:*23*
**technique** 31:*15*
**tell** 23:*5*
**term** 16:*7*
**terms** 34:*14*
**testified** 5:*10* 28:*6* 30:*24* 31:*2* 32:*6*
**testify** 6:*25* 7:*3* 15:*14* 23:*4*, *6* 24:*24*
**testimony** 25:*20* 30:*25* 32:*9*
**thank** 5:*13* 6:*23* 28:*19* 32:*20*, *22*, *23*
**thereto** 35:*15*
**thing** 14:*20* 15:*4*
**think** 11:*20* 12:*13*, *15*, *17* 13:*7* 15:*17* 16:*25* 17:*4* 19:*9* 22:*10*, *18*, *25* 25:*21* 26:*9* 27:*14* 30:*8* 32:*10*, *13*

**thinking** 18:*20*, *22*, *25*
**thoroughly** 25:*14*
**thought** 12:*24* 22:*17* 25:*7*
**three** 14:*15*
**time** 5:*14* 12:*24* 13:*2* 30:*6* 32:*20*, *24* 34:*19*
**title** 5:*15*
**titled** 17:*21*
**today** 7:*7* 32:*20*
**tools** 31:*17* 32:*3*
**top** 14:*24*
**topic** 12:*6*, *14*
**topics** 7:*1*
**total** 35:*4*
**totality** 28:*6*
**training** 5:*24*, *25* 6:*5*, *6*, *8*, *21*
**transcript** 34:*20* 35:*4*, *6*, *8*, *13*
**Transcripts** 34:*20*, *23*
**transport** 21:*25*
**treatment** 21:*6*
**trial** 4:*9*
**Trinity** 2:*10*
**true** 7:*10* 10:*25* 17:*5* 20:*18* 34:*20* 35:*5*, *8*
**try** 16:*13*
**trying** 11:*14*, *16* 22:*8* 24:*11*
**turn** 31:*4*, *7*
**turns** 31:*11*
**Twenty-seven** 5:*21*
**two** 15:*9* 18:*6*
**TYLER** 1:*1* 4:*5* 9:*17* 24:*7* 26:*17* 27:*13*
**type** 16:*20* 21:*24*
**types** 31:*19*, *21*

**< U >**
**underlined** 21:*10*
**understand** 6:*24* 7:*6* 16:*22*

**UNITED** 1:*1*
**unnecessary** 10:*9*
**unreasonable** 10:*9*
**uploaded** 34:*24*
**Use** 3:*20* 4:*9* 6:*8*, *12*, *19* 9:*20*, *22*, *23* 10:*2*, *9*, *13*, *23* 11:*3* 12:*18*, *19* 13:*1*, *5* 16:*6*, *8*, *10*, *17* 17:*2*, *24* 26:*15* 27:*24* 28:*10*, *18* 30:*2*, *22* 31:*13*, *16* 32:*4*

**< V >**
**Vague** 29:*9*, *18*
**various** 7:*1*
**vehicle** 9:*11* 21:*24*
**verbatim** 34:*11*
**versus** 4:*6* 28:*20* 29:*6* 30:*24*
**VICKERS** 1:*1* 3:*13* 4:*6* 8:*20* 12:*18* 16:*3*, *22* 18:*15*, *20*, *22*, *25* 19:*1*, *12*, *16*, *23* 20:*6* 24:*15*, *21* 26:*4* 27:*24* 32:*12*, *14*
**VIDEO** 1:*1* 3:*9*, *10*, *11*, *12* 8:*10*, *25* 11:*9*, *11*, *20* 12:*15* 13:*6* 14:*5* 15:*22* 16:*6* 17:*3* 18:*7*, *9*, *11*, *13* 19:*21* 21:*17*, *19* 24:*7*, *13* 25:*2*, *9*, *18* 30:*13* 32:*10* 34:*9*, *16*
**videos** 26:*3*, *7*
**VIDEOTAPED** 1:*1*
**viewing** 30:*13*
**violent** 10:*24* 11:*4* 17:*25*

**< W >**
**wagon** 21:*25* 22:*8* 26:*11*
**waived** 33:*3*
**walk** 24:*11* 26:*8*, *9*

**want** 7:*14*, *21* 8:*7* 10:*2* 11:*9* 13:*9* 18:*6* 23:*24* 27:*7*
**watch** 19:*21* 25:*9*
**watched** 11:*21* 12:*16*
**watching** 25:*2* 26:*1*, *3*, *7*
**way** 24:*10*, *21* 25:*18* 30:*10*
**weapon** 30:*7*
**weight** 30:*17*
**well** 6:*6* 8:*16* 13:*6*, *17*, *19* 20:*25* 22:*17* 23:*18* 25:*16* 30:*10*
**went** 14:*3*
**We're** 11:*9*
**withdrawn** 35:*12*
**Witness** 1:*1* 4:*12*, *17* 15:*1* 23:*3*, *6*, *20* 33:*3*
**witnesses** 34:*23*
**wording** 16:*17*
**Work** 3:*19* 6:*15* 7:*22*
**world** 12:*5*
**written** 2:*22*
**wrong** 8:*23*

**< Y >**
**years** 5:*21* 6:*5*, *22* 26:*14*
**yell** 23:*15*
**yes-or-no** 27:*2*, *14*

**< Z >**
**Zenelaj** 3:*17*
**Zoom** 4:*10*, *17* 14:*2*, *4*, *22* 17:*17*