IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| TYLER GRIFFIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO: 1:20-cv-2514-TWT |
| | ) |
| CITY OF ATLANTA, DONALD | ) |
| VICKERS, MATTHEW ABAD, | ) |
| and JOHN DOE # 1-5, | ) |
| | ) |
| Defendants. | ) |

## CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND INCORPORATED BRIEF IN SUPPORT

**COME NOW**, Defendants City of Atlanta, Donald Vickers, and Matthew Abad (collectively, "City Defendants"), pursuant to FED. R. CIV. P. 56 and L.R. 56.1 of the United States District Court for the Northern District of Georgia and file this Motion for Summary Judgment and Brief in Support, and show this Honorable Court as follows:

### I.    STATEMENT OF THE CASE

Plaintiff Tyler Griffin brings the current action pursuant to 42 U.S.C. § 1983 ("Section 1983"), 42 U.S.C. § 1988, and the Fourth and Fourteenth Amendments to

the Constitution of the United States.[1] Count I of Plaintiff's Amended Complaint ("*Amended Complaint*") alleges that the City Defendants are liable to Plaintiff under Section 1983 for "intentionally committing acts that violated Mr. Griffin's constitutional right to be free from the use of excessive or unreasonable force during an arrest".[2] Specifically, Plaintiff alleges that Defendant Vickers "sprinted and tackled him to the ground" during a time where Mr. Griffin was not resisting arrest, attempting to flee, or presenting any danger to anyone.[3] Plaintiff further alleges that officers forced him to walk on his broken ankle, worsening the injury and further violating [his] rights."[4]

Count II alleges that the City Defendants are liable to Plaintiff under Section 1983 for failing to intervene.[5] Specifically, Plaintiff alleges that Defendant Abad "had a realistic opportunity to prevent Defendant Vickers from tackling [him]" and "failed to take reasonable steps to prevent Defendant Vickers from using excessive force."[6]

---

[1] Doc. 20, hereinafter "*Amended Complaint*", at ¶ 19.
[2] *Id*. at ¶ 95.
[3] *Id*. at ¶ 96.
[4] *Id*. at ¶ 97.
[5] *Id*. at ¶¶ 102 – 104.
[6] *Id*. at ¶¶ 104 – 106.

Count III alleges *Monell* liability under Section 1983 charging that the City of Atlanta has a persistent and widespread practice of:

   a. Allowing City of Atlanta Police officers to use unreasonable and excessive force without justification;
   b. Allowing City of Atlanta Police officers to violate the City of Atlanta Police Department's own policies and procedures;
   c. Failing to properly train and supervise City of Atlanta Police officers;
   d. Failing to enforce policies, failing to properly train, failing to properly discipline, thus creating a culture within the City of Atlanta Police Department wherein violating citizens' civil rights was tolerated or encouraged.[7]

Plaintiff also contends that the City of Atlanta was the moving force behind Officer Vickers' alleged excessive use of force because of its polices, practices, and customs.[8]

Even when viewing the evidence in the light most favorable to the Plaintiff, City Defendants must prevail. Plaintiff cannot prove every essential element of any claim. Moreover, there are no genuine disputes as to any material fact, and this Court should grant the City Defendants' Motion for Summary Judgment as a matter of law.

---

[7] *Id*. at ¶ 112.
[8] *Id*. at ¶ 23.

## II. <u>STATEMENT OF FACTS</u>

### A. The Incident

On April 5, 2019, Officers Matthew Abad and Donald Vickers were assigned to Zone 1 Field Investigative Team to primarily search for stolen vehicles.[9] During their shift, Officers Abad and Vickers were driving on Chattahoochee Avenue.[10] On the same evening, Plaintiff was just leaving the Bulldogs bar[11] and was heading to a public Waffle House establishment.[12] The officers noticed Plaintiff driving a vehicle and began following and maintaining visual contact with Plaintiff's vehicle for some distance.[13] Plaintiff never made it to the Waffle House because he noticed that he was being followed.[14] Plaintiff eventually drove off an embankment at 755 Bellemeade Avenue, landing in a neighboring house's backyard.[15]

---

[9] Deposition of Matthew Abad taken on Nov. 5, 2020, hereinafter "Abad Dep.", 17: 7-14, attached hereto as Exhibit A.

[10] *Id*. at 18: 16-24.

[11] Plaintiff later admitted to drinking that night. Body Worn Camera video of Matthew Abad, hereinafter "Abad BWC", at 4:16-4:21, attached hereto as Exhibit B.

[12] Deposition of Tyler Griffin, taken on Dec. 4, 2020, hereinafter "Griffin Dep.", 25: 22-25, 30: 1-12, attached hereto as Exhibit C.

[13] Abad Dep. 18: 16-24 and 19: 1-9.

[14] Griffin Dep. 31: 10-17.

[15] Abad Dep. 19: 6-9; Griffin Dep. 33: 3-13; Abad BWC at 7:39-7:42.

Officer Abad got out of the vehicle and began approaching Plaintiff's car.[16] As Officer Abad was approaching, Plaintiff was attempting to come up the driveway in the car to exit the driveway.[17] Officer Abad drew his service weapon with attached flashlight in a low ready position towards Plaintiff's direction instructing him to stop and exit the car.[18] Plaintiff confronted Officer Abad with questions and did not immediately exit his car.[19] After repeatedly requesting Plaintiff to exit his car, Plaintiff eventually complied.[20] When Plaintiff finally exited his vehicle, Officer Abad immediately smelled an odor of alcohol emanating from Plaintiff's breath.[21]

Officer Abad placed his hand on Plaintiff's shoulder and Plaintiff brushed Officer Abad's hand from his shoulder.[22] Officer Vickers was standing within a few feet from Officer Abad when he witnessed Plaintiff actively resist Officer Abad's lawful commands and actions.[23] Officer Vickers also noted that Plaintiff had a much larger build and structure than Officer Abad.[24] While walking towards Officer Abad

---

[16] Abad Dep. 19: 9-12; Griffin Dep. 23:19-21; Abad BWC at 1:45-2:03.
[17] Abad Dep. 19: 17-19; Griffin Dep. 23: 19-21, 37: 22-25; *See also* Abad BWC at 1:57-2:11.
[18] Abad Dep. 27: 23-25; Griffin Dep. 38: 7-11; Abad BWC at 2:02-2:26
[19] Abad BWC at 2:15-2:26.
[20] Abad Dep. 19: 17-25; *See also* Abad BWC at 2:15-2:26; Griffin Dep. 24: 4-8.
[21] Abad Dep. 19: 22-25, 20: 1.
[22] *Id*. at 20: 3-9; Griffin Dep. 40: 8-12; *See also* Abad BWC at 2:36.
[23] Deposition of Donald Vickers, taken Oct. 21, 2020, hereinafter "Vickers Dep.", 23: 21-25, 24: 1-6, attached hereto as Exhibit D; *See also* Abad BWC at 2:36.
[24] Vickers Dep. 34: 6-8.

and Plaintiff, Officer Vickers made a split second decision to engage in a takedown maneuver to regain control of Plaintiff.[25] Less than three seconds passed between Plaintiff knocking Officer Abad's hand away and Officer Vickers engaging in the takedown maneuver.[26]

Officer Abad initially requested Plaintiff to stand up, at which point Plaintiff indicated that he could not move his leg but did not indicate that it was broken even when asked by Officer Abad.[27] Specifically, Officer Abad asked Plaintiff "is it broken" and Plaintiff responded, "I mean you guys hurt it."[28] Officer Abad then informed Plaintiff that he could be taken to the hospital.[29]

After sitting on the ground for several minutes, Officer Abad assisted Plaintiff in getting up off the ground.[30] Plaintiff expressed that he needed help and was unable to walk because of the pain but did not tell the officers that his ankle was broken.[31] The officers assisted Plaintiff while walking.[32] The officers did not make Plaintiff

---

[25] *Id*. at 37: 1-3; *See also* Abad BWC at 2:36-2:37.
[26] Abad BWC at 2:36-2:39; Griffin Dep. 24: 14-24, 41: 10-13.
[27] Abad BWC at 3:35-3:43.
[28] *Id*. at 3:39-3:41.
[29] *Id*. at 3:49-3:51.
[30] Griffin Dep. 42: 10-19; Abad BWC at 9:32-10:02.
[31] Griffin Dep. 42: 2-5,16-19; Abad BWC at 10:02-10:17.
[32] Griffin Dep. 42: 20-22.

perform field sobriety tests.[33] The officers assisted Plaintiff into the transport van and was taken to Grady Hospital.[34]

## B. The City of Atlanta Police Department's Policies and Procedures regarding takedowns.

In situations where there is a perceived threat, the City of Atlanta Police Department trains its officers to gain control of the suspected threat.[35] When determining what level of force to use, officers are trained to consider the totality of the circumstances.[36] Some of the factors include: the severity of the crime at issue; the immediate danger to the officers or others; whether or not the suspect was evading arrest or attempting to; attempting resist; or physically resisting officers.[37] Additionally, officers are trained on varying methods in which an officer may use to gain control of an individual contingent on the level of resistance.[38] Specifically, the level of resistance will dictate the level of force that an officer can or will use.[39]

---

[33] *Id.* at 42: 25, 43: 1.
[34] *Id.* at 43: 4-6, 61: 3-6.
[35] Deposition of Senior Police Officer Patrick Fite taken on September 22, 2020, hereinafter "Fite Dep.", 14: 11-25, attached hereto as Exhibit E.
[36] *Id.* at 28: 6-18.
[37] *Id.* at 28: 6-14.
[38] *Id.* at 16: 2-20.
[39] *Id.* at 16: 7-10.

Officers are not prohibited from engaging in a takedown method; however, their use of force would need to be explained on a case by case basis.[40]

Other factors that officers are trained to take into consideration in determining a reasonable use of force are known as *Graham*[41] Factors.[42] These factors include: the physical size of the either the officer or the offender; sudden attack; inability for the officer to disengage; gender difference; mental capacity as known to the officers at the time; and close proximity to a weapon.[43]

### C. Officer Vickers' Training

Between August 7, 2006 and March 12, 2020 Officer Vickers completed 1456 hours of training sessions as part of the standard training to become and remain active as an Atlanta Police Officer.[44] Included in these sessions were 18 hours specifically on the use of deadly force and 6 hours on de-escalation.[45]

---

[40] Fite Dep. 32: 6-17.
[41] *Graham v. Connor*, 490 U.S 386 (1989).
[42] Fite Dep. 29: 23-24; Deposition of Arthur Nixon taken on September 22, 2020, hereinafter "Nixon Dep.", 16: 14-25 and 17: 1-8, attached hereto as Exhibit F.
[43] Fite Dep. 29: 4-25, 30: 1-10,16-23.
[44] Vickers Dep. 14: 3-4; Vickers' "POST Individual Officer Profile", Bates labeled documents Griffin v. COA 589-592, attached hereto as Exhibit G.
[45] Exhibit G.

**D. Officer Abad's Training**

Over the course of five years, from November 8, 2016 until May 21, 2020, Officer Abad completed 1088 hours of training sessions as part of the standard training to become and remain active as an Atlanta Police Officer.[46] Included in these sessions were 7 hours specifically on the use of deadly force and 7 hours on de-escalation.[47]

**E. The Office of Professional Standards' Investigation and Decision Regarding the Incident.**

On June 20, 2019, Plaintiff contacted the Atlanta Police Department Office of Professional Standards ("OPS") to formally complain of the treatment he received from Officers Vickers and Abad during the April 5, 2019 incident.[48] After a preliminary investigation, on July 16, 2019, Plaintiff was sent a letter acknowledging his concerns and was informed that Investigator A. Nixon will be handling the investigation.[49]

---

[46] Abad's "POST Individual Officer Profile", Bates labeled documents Griffin v. COA 593-595, attached hereto as Exhibit H.

[47] Exhibit H.

[48] OPS Complaint, Bates labeled documents Griffin v. COA 103-104, attached hereto as Exhibit I.

[49] Letter to Tyler Griffin from OPS, Bates labeled documents Griffin v. COA 105, attached hereto as Exhibit J.

Officer Vickers was investigated for five work rule violations including: 1) 4.2.50 (Maltreatment or Unnecessary Force); 2) 4.2.51 (Reporting Required When Force Used); 3) 4.2.37 (Unsatisfactory Performance); 4) 4.2.33 (Conformance to Directives); and 5) 4.1.1 (Appropriate Action Required).[50] The findings of the investigation sustained all allegations except for 4.2.50 (Maltreatment or Unnecessary Force).[51]

Given its findings during the investigation, OPS entered a disposition of sustained as to Officer Vickers' violation of Work Rule 4.2.33 (Conformance to Directives) and recommended a three-day suspension.[52] Specifically, Officer Vickers "failed to record the incident related to case #190950295 in its entirety and failed to document the reason for the delayed recording of the incident in a written report."[53] Officer Vickers was notified of OPS' decision on May 26, 2020 via the Notice of Proposed Adverse Action.[54]

---

[50] Investigative Memorandum, Bates labeled documents Griffin v. COA 8-14, attached hereto as Exhibit K.

[51] Exhibit K. Officer Vickers was exonerated for the Maltreatment or Unnecessary Force allegation. The investigation found that "the force used by SPO Vickers during this incident as captured by Officer Abad's BWC is not indicative of being excessive or unnecessary in nature."

[52] Notice of Proposed Adverse Action, Bates labeled documents Griffin v. COA 16-17, attached hereto as Exhibit L.

[53] *Id.*

[54] *Id.*

Officer Abad was also investigated for violating work rules during the April 5, 2019 incident including: 1) 4.2.51 Reporting Required When Force Used; and 2) Unsatisfactory Performance.[55] The findings of the investigation sustained both allegations against Officer Abad.[56]

### III.  STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure mandates "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[57] The movant is not required to negate its opponent's claim but may discharge its burden merely by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case."[58]  When the movant's burden is met, the non-moving party must then "go beyond the pleadings" and offer evidence designating "specific

---

[55] Exhibit K at p. 8
[56] *Id.*
[57] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).
[58] *Id.* at 323, 325.

facts showing there is a genuine issue for trial."[59]  In rebutting a motion for summary judgment, the court is not required to simply accept Plaintiff's factual assertions, but should do so "only if there is a genuine dispute to those facts."[60]

## IV.   ARGUMENT AND CITATION OF AUTHORITY

To impose Section 1983 liability upon the City of Atlanta, Plaintiff must show that: (1) Tyler Griffin's constitutional rights were violated; (2) the City of Atlanta had a custom, practice, or policy that constituted deliberate indifference to that constitutional right; and (3) the City of Atlanta's policy or custom caused the violation.[61] The evidence in the record is insufficient for Plaintiff to meet his burden under the standard articulated in *City of Canton*.

### A. Plaintiff's constitutional rights were not violated during arrest.

In order to determine whether there was a violation of an individual's constitutional rights, the United States Supreme Court held that in Section 1983 actions, "all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness'

---

[59] *Id*. at 324.

[60] *Scott v. Harris*, 127 S. Ct. 1769, 1776 (2007).

[61] *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *Perez v. Miami-Dade County*, 168 F. App'x 338, 340 (11th Cir. 2006) (internal citation omitted).

standard."[62] Additionally, "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."[63] The test of reasonableness in effectuating a seizure "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."[64] Stated differently, the determination of reasonableness is made considering the totality of the circumstances from the perspective of the reasonable officer on the scene.[65]

Here, while coming down the driveway to assist in the arrest of Plaintiff, Officer Vickers saw Officer Abad place his hand on Plaintiff's shoulder and Plaintiff brush Officer Abad's hand from his shoulder.[66] Officer Vickers while standing within a few feet from Officer Abad witnessed Plaintiff actively resist Officer Abad's lawful commands and actions.[67] Officer Vickers also noted that Plaintiff had a much larger build and structure than Officer Abad.[68] Officer Vickers then made a

---

[62] *Graham*, 490 U.S at 1871.
[63] *Id*. at 1872 (citations omitted)
[64] *Id*. (citations omitted).
[65] *Id*.
[66] *Id*. at 20: 3-9; Griffin Dep. 40: 8-12; *See also* Abad BWC at 2:36.
[67] Vickers Dep. 23: 21-25,24: 1-6; *See also* Abad BWC at 2:36.
[68] Vickers Dep. 34: 6-8.

split second decision to engage in a takedown maneuver to regain control of Plaintiff.[69] Less than three seconds passed between Plaintiff knocking Officer Abad's hand away and Officer Vickers engaging in the takedown maneuver.[70] Additionally, an investigation was completed regarding Officer Vickers' actions and he was exonerated for maltreatment or unnecessary force.[71] The investigation found that "the force used by SPO Vickers during this incident as captured by Officer Abad's BWC is not indicative of being excessive or unnecessary in nature."[72]

Though other officers may have reacted in a different manner, the force that Officer Vickers used in the takedown of an uncooperative Plaintiff was reasonable considering the totality of the circumstances and does not rise to the level of violating his constitutional rights during arrest.

**B. There are no material facts present to establish a claim against City of Atlanta for unconstitutional customs, training practices, and policies as to the use of force.**

A policy is defined as "a decision that is officially adopted by the municipality, or created by an official of such rank that his or she could be said to

---

[69] *Id*. at 37: 1-3; *See also* Abad BWC at 2:36-2:37.
[70] Abad BWC at 2:36-2:39; Griffin Dep. 24: 14-24, 41: 10-13.
[71] Exhibit K.
[72] *Id*.

be acting on behalf of the municipality."[73] While a custom exists where "although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a 'custom or usage' with the force of law."[74] In other words, a practice is so widespread and longstanding that it becomes authorized by officials because they know about and fail to put a stop to the practice.[75]

Even if Plaintiff can show that his constitutional rights were violated, his claim against City of Atlanta would still fail because he cannot show that a policy or custom existed that caused the alleged deprivation. Although the Supreme Court has held that local governmental entities are "persons" within the scope of Section 1983 and are subject to liability, Plaintiff cannot rely upon the theory of *respondeat superior* to hold a city liable.[76] "Congress did not intend [for] municipalities to be held liable unless deliberate action attributable to the municipality directly caused a deprivation of federal rights."[77] In fact, rarely will an allegation of failure to train or supervise be the basis for liability under Section 1983.[78] It is well-settled that a

---

[73] *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997).
[74] *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)).
[75] *Brown*, 923 F.2d at 1481.
[76] *See Monell v. Dep't of Soc. Servs. of NY*, 436 U.S. 658, 692 (1978).
[77] *Board of County Com'rs v. Brown*, 520 U.S. 397, 415 (1997).
[78] *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998).

governmental entity is not liable, as a matter of law, for a failure to train or supervise where there is no notice of a need.[79]

Additionally, where the claim is based on the defendant's alleged failure to act or "deliberate indifference," a plaintiff must show "a background of events and circumstances" which demonstrate that the complained of policy, practice, or custom is tantamount to an affirmative decision by the municipality to violate the constitution.[80] Thus, "it is only when the execution of the government's policy or custom … inflicts the injury that the municipality may be held liable."[81]  This ensures that a city is held liable under Section 1983 only for those deprivations resulting from the deliberate legislative decisions and demonstrated practices of the municipality, and not for isolated incidents.[82]

In the case at bar, as will be shown below, Plaintiff's Complaint is devoid of any relevant policy or custom which caused Plaintiff's injury.  Plaintiff has made no credible allegations in his Complaint to show that City of Atlanta was on notice of any need to better train police officers as to use of force incidents resulting in an ankle injury. Additionally, there is a complete absence in the record that alleges that

---

[79] *Id*. at 1351; *See Wright v. Sheppard*, 919 F.2d 665 (11th Cir. 1990).
[80] *City of Canton*, 489 U.S. at 385.
[81] *Id*.
[82] *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).

City of Atlanta was aware of any alleged failures of policy. Furthermore, Plaintiff's expert testified that not one of his opinions relied on the inadequacy of a City of Atlanta policy or procedure.[83]

Plaintiff claims that Officer Vickers' alleged excessive use of force resulted from the City's failure to inadequately train its police officers in the use of force and its failure to adequately discipline its officers for several violations.[84]  However, these claims are not substantiated by the record.

**i. <u>Failure to Train:</u>**

Plaintiff's allegation of failure to train must fail. Plaintiff specifically asserts that City of Atlanta failed to adequately train its police officers.[85] In *Riley v. Newton*, 94 F. 3d 632, 638 (11th Cir. 1996) the Court held:

> … a section 1983 claim for inadequate training exists 'only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.' *Canton*, 489 U.S. at 388, 109 S.Ct. at 1204. The failure to train must reflect a 'deliberate' or 'conscious' choice and the deficiency 'must be closely related to the ultimate injury.' *Id*. at 389, 391, 109 S.Ct. at 1205, 1206. Failure to train only becomes 'deliberate' where 'in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policy makers of the city can reasonably

---

[83] *See generally* Deposition of Scott DeFoe, taken March 26, 2021, hereinafter "DeFoe Dep.", attached hereto as Exhibit M.
[84] *Amended Complaint* ¶ 81.
[85] *Amended Complaint* ¶ 112.

be said to have been deliberately indifferent to the need.' *Id*. at 390, 109 S.Ct. at 1205. *See Also Belcher v. City of Foley*, Alabama, 30 F. 3d 1390, 1397-98 (11th Cir. 1994).[86]

Again, it is well-settled that a governmental entity (and its officials) are not liable, as a matter of law, for a failure to train or supervise where there is no notice of a need.[87] Additionally, where the claim is based on the defendant's failure to act or "deliberate indifference", a plaintiff must show "a background of events and circumstances" which demonstrate that the complained of policy or custom is tantamount to an affirmative decision by the [public official] to violate the constitution.[88]

Here, there is no evidence that either Officers Vickers or Abad were insufficiently trained or disciplined. Specifically, the record shows that Officer Vickers received in excess of 1400 hours of training over the span of his career with APD.[89] Additionally, Officer Abad received in excess of 1000 hours of training during a span of five years.[90] Both officers also were investigated for the violations

---

[86] In order for the Plaintiff to show that City of Atlanta was "deliberately indifferent" to recover under a § 1983 claim for failure to train, Plaintiff must show that City of Atlanta made a conscious choice to fail to train in the area of use of force and this failure related to Plaintiff's injury. *Riley* at 632.

[87] *Id*. at 1351; *See also, Wright v. Sheppard*, 919 F.2d 665 (11th Cir. 1990).

[88] *City of Canton*, 489 U.S. at 385.

[89] Exhibit G.

[90] Exhibit H.

of work rules in relation to the incident and were sustained on all allegations with the exception of maltreatment or unnecessary use of force against Officer Vickers. The evidence provided indicates that officers are appropriately disciplined for their actions only after a fair and thorough investigation. Plaintiff's claims that officers are not trained or disciplined is simply not substantiated by the evidence.

### ii. Pattern and Practice:

Although Plaintiff fails to allege that City of Atlanta was either aware, or reasonably should have been aware of the existence of a pattern and practice of police officers take down procedures, this argument will be addressed out of an abundance of caution. Plaintiff has made no allegation that a pattern of abuse existed. Further, the record is completely devoid of evidence tending to support any conclusion that City of Atlanta reasonably should have been on notice of such a pattern. To constitute sufficient notice, the past widespread abuses "must be obvious, flagrant, rampant, and of continued duration, rather than isolated occurrences."[91]

Here, the record is void of any evidence demonstrating that City of Atlanta was placed on notice or had any knowledge of such alleged longstanding and

---

[91] *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999).

widespread flagrant abuses arising out of Plaintiff's injury. Thus, Plaintiff cannot make the requisite showing.

### C. The City of Atlanta's Customs, Practices, and Policies Did Not Cause Plaintiff's injuries.

Again, assuming that Plaintiff's constitutional rights were violated, the record is void of any evidence that the City's customs, practices, and polices caused his injuries. "A municipality can be liable under § 1983 only where its policies are the 'moving force [behind] the constitutional violation'."[92] "It is not enough for a Section 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged."[93] Therefore, a  plaintiff must not only identify the unconstitutional municipal policy, practice, or custom, but also must show that municipal action pursuant to the policy, practice, or custom was deliberately indifferent to the known or obvious consequences of the action and that the deliberate indifference was the "moving

---

[92] *Gold*, 151 F.3d at 1350 (11th Cir. 1998) (quoting *City of Canton*, 489 U.S. at 388-89).
[93] *Board of the County Commissioners*, 520 U.S. at 404 (emphasis in original).

force" behind plaintiff's injury.[94] "A showing of simple or even heightened negligence will not suffice."[95]

As set forth above, Plaintiff has failed to establish the requisite policy, practice or custom needed to establish *Monell* Liability. However, assuming arguendo that Plaintiff has demonstrated a policy, practice, or custom through which the City has engaged in constitutional deprivations, Plaintiff cannot show that the City has been deliberately indifferent to the "known or obvious consequences of [its] actions" or that such deliberate indifference was the "moving force" which caused plaintiff's alleged constitutional injury.[96] The City has also presented evidence showing the City's commitment to upholding the Fourth Amendment rights of all citizens including Plaintiff.[97] Plaintiff cannot support his conclusory allegation of deliberate indifference, or that such deliberate indifference led to his alleged injury. Thus, Plaintiff's Section 1983 claims against the City should be denied as a matter of law.

The causation analysis also applies when a plaintiff asserts *Monell* Liability based upon a failure to train.[98] The failure to train analysis continues beyond determining if the municipality acted with deliberate indifference to a need to train

---

[94] *See id.*
[95] *Id.* at 407.
[96] *Id.* at 404.
[97] *See generally* Exhibit J; *See also generally* DeFoe Dep.
[98] *City of Canton*, 489 U.S. at 388-389.

in a particular area.[99] For liability to attach, "the identified deficiency in a city's training program must be closely related to the ultimate injury."[100] Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983."[101]

The record before this Court is devoid of any evidence showing that the City of Atlanta failed to train regarding a citizen's right to be free from unlawful seizures or that the City of Atlanta deliberately chose not to do so. In addition, Plaintiff has no link between the extensive training offered by the City of Atlanta for Officer Vickers and his injury. On a motion for summary judgment, "only a genuine issue of material fact will defeat a properly supported motion for summary judgment".[102]

Further, Plaintiff's own expert, Scott DeFoe, testified that there is no single set standard of rules for all law enforcement agencies.[103] All of Mr. DeFoe's opinions regarding the use of force allegations were not based on any deficiency in the APD policies and procedures, but rather were based on the individual actor's departure

---

[99] *Id*. at 391.
[100] *Id*.
[101] *City of Canton*, 489 U.S. at 389.
[102] *Reed v. City of Lavonia*, 390 F. Supp. 2d 1347, 1352 (M.D. Ga. 2005).
[103] DeFoe Dep. 21: 13-15.

from the policies and procedures in place.[104] As such, there was no evidence of conscious indifference to any reasonable policing standard. Plaintiff's attempt to establish Section 1983 liability through the City of Atlanta's training program, or alleged lack thereof, necessarily fails.

**D. Officer Abad did not have a reasonable opportunity to intervene.**

Assuming, arguendo, this Court makes a determination that there is a factual dispute as to the use of force or the existence of a constitutional violation, Plaintiff's claim against Officer Abad must fail as he did not have a reasonable opportunity to intervene and prevent the use of force by Officer Vickers.

The Eleventh Circuit has held that an officer who is present and fails to intervene to prevent another law enforcement officer from infringing upon the constitutional rights of citizens may be liable under Section 1983.[105] However, this liability activates only when the officer has an opportunity to intervene and fails to intervene.[106] Further, the United States District Court for the Northern District of Georgia has previously held that a plaintiff who seeks to hold an officer liable for

---

[104] *See* DeFoe Expert Report, attached hereto as Exhibit N; *See also* DeFoe Dep. 70-174.

[105] *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 924 (11th Cir. 2000) (citing *Ensley v. Soper*, 142 F.3d 1402, 1407-08 (11th Cir. 1998).

[106] *Id.*

his failure to intervene must first proffer evidence that the officer in question had a reasonable opportunity to do so.[107]

The Northern District Court of Georgia first acknowledged the "reasonable opportunity" test in *Ruble v. King*, 911 F.Supp. 1544 (N.D. Ga. 1995). In *Ruble*, inmates in a correctional facility filed a claim against several correctional officers claiming excessive force, cruel and unusual punishment, and other state law claims. Several defendant-officers argued that the beating occurred quickly and did not afford them an opportunity to intervene. Although the district court considering the facts ultimately decided that the officers had sufficient time and opportunity to stop the beating, it acknowledged the holdings of other jurisdictions as authority for the principle that an officer will not be held liable for the actions of another if the officer did not have time or reasonable opportunity to intervene and prevent further injury.[108]

---

[107] *Gainor v. Douglas County, Georgia*, 59 F.Supp. 1259, 1289 (N.D.Ga. 1998).

[108] *Id*. at 1556. *See also*, *Gaudrealt v. Mun. of Salem, Mass.*, 923 F.2d 203, 207, (1st Cir. 1990) [holding that an officer cannot be held liable for failing to intervene when another officer used excessive force when attack came quickly and was over in a matter of seconds]**;** O'Neill v. Krzeminiski, 839 F.2d 9, 11-12 (2nd Cir. 1987) [finding no liability for officer who failed to intervene when another officer struck a citizen with three blows because the blows were struck in such rapid succession that the officer had no realistic opportunity to prevent them"]; Ting v. United States, 927 F.2d 1504, 1511-1512 (9th Cir. 1991) [holding that officers had no opportunity to intervene when another officer shot a suspect because shooting transpired in a matter of seconds].

In 1996, the Eleventh Circuit acknowledged and applied the reasonable opportunity test in *Riley v. Newton*, 94 F.3d 632, 635 (11th Cir. 1996). The *Riley* case stemmed from an accidental officer-shooting. In addition to suing the shooter, the plaintiffs sued an officer who was in the vicinity at the time the shooting occurred. The court held upheld summary judgment in favor of the officer holding: "because [the officer] had no reason to expect the use of excessive force until after it occurred, he had no reasonable opportunity to protect [the victim], and the obligation to take steps to protect him never arose."[109] Thus, the use of force has to be such that a by-standing officer has an opportunity to anticipate that excessive force will be used and an opportunity to prevent such abuse.[110] Stated differently, an officer cannot prevent a use of force that he, himself, cannot see, anticipate or expect.

These cases established precedent to prevent the kind of excessive force case where beatings have ensued over an extended period of time without intervention from by-standing officers. Bystander officer liability only attaches when the episode is of sufficient duration to support a conclusion that the officer who stood by without

---

[109] *Id*. at 636.
[110] *Id*.

trying to assist the victim became a "tacit collaborator".[111] In such an instance, the

officer's failure to intervene may be deemed the proximate cause of the beating.[112]

In this case, the alleged use of force was not of a sufficient duration as to allow

Officer Abad sufficient time to react or intervene. Rather, the entire incident

unfolded in a matter of less than three seconds. According to the timing device on

Officer Abad's body worn camera, Plaintiff brushed Officer Abad's hand off of his

shoulder at 2:36.[113] At 2:37 Officer Vickers began running towards Plaintiff.[114] At

2:38 Officer Vickers engaged in a takedown maneuver against Plaintiff,

successfully.[115] The act of alleged excessive use force occurred between 2:36-

2:39.[116] Thus, assuming there was excessive use of force, it occurred over the course

of less than three seconds while Officer Abad was facing away from Officer Vickers.

This is hardly enough time to consider Officer Abad a "tacit collaborator."

Moreover, the actual tackle takedown, which constitutes the crux of Plaintiff's

claim, occurred within two seconds from the time Plaintiff swiped Officer Abad's

hand. Even with the benefit of every reasonable inference, Plaintiff's claim must fail

---

[111] *O'Neill v. Krzmenski*, supra, 839 F.2d at 12.
[112] *Id.*
[113] Abad BWC at 2:36.
[114] *Id.* at 2:37.
[115] *Id.* at 2:38.
[116] *Id.* at 2:36-2:39.

because the evidence unequivocally shows that Officer Abad did not have sufficient time to react or intervene to prevent the takedown. Therefore, Officer Abad cannot be held liable under a "failure to intervene" theory.

**E. Punitive Damages against the City of Atlanta are impermissible.**

 Plaintiff requests punitive damages against all Defendants.[117] By definition, punitive damages are intended to punish the tortfeasor.[118] However, in the case of a municipality, awarding punitive damages serves only to punish taxpayers who were never involved in the commission of the tort.[119] Therefore, as a general rule, municipal governments such as City of Atlanta, are immune from claims of punitive damages actions under Section 1983 for the bad-faith actions of government officials.[120] Furthermore, Georgia's general policy is to shield municipalities from claims for punitive damages.[121]

---

[117] *Amended Complaint* ¶ 114.

[118] *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 267 (1981).

[119] *Id.* at 267-268.

[120] *Id.* at 271; *see also Young Apartments, Inc. v. Town of Jupiter*, 529 F. 3d 1027, 1047 (citing *Newport* and finding that "[i]n a §1983 action, punitive damages are only available from government officials when they are sued in their individual capacities.").

[121] *See e.g. Scott v. Brown*, 2007 WL 528081, at 2 (N.D. Ga., Feb 9, 2007); *McGee v. Barrett*, 2006 WL 256918, at 9 (N.D. Ga. Aug 31, 2006) (quoting *Newport* in finding that a plaintiff could not recover punitive damages from City of Atlanta because "a municipality is immune from punitive damages under 42 U.S.C. § 1983.").

The awarding of punitive damages against a municipality is against public policy and impermissible as a matter of law.[122] Accordingly, City of Atlanta is entitled to dismissal of the punitive damages claims as a matter of law.

## V.     CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant their motion for summary judgment.

Respectfully submitted, this 3rd day of May 2021.

Respectfully submitted,

*/s/ Alisha Marie S. Nair*
**ALISHA MARIE S. NAIR**
Attorney
Georgia Bar No. 806033
amnair@atlantaga.gov
**STACI J. MILLER**
Attorney
Georgia Bar No. 601594
sjmiller@atlantaga.gov
**JACQUITA PARKS**
Assistant City Attorney
Georgia Bar No. 205537
japarks@atlantaga.gov

City of Atlanta Department of Law
55 Trinity Avenue, Suite 5000
Atlanta, Georgia 30303
Office: 404-546-4185
Fax: 404-588-3239

---

[122] See *Newport*, 453 U.S. at 271; *see also MARTA v. Boswell*, 261 Ga. 427, 428 (1991).

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **TYLER GRIFFIN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **CIVIL ACTION NO: 1:20-cv-2514-TWT** |
| | ) |
| **CITY OF ATLANTA, DONALD** | ) |
| **VICKERS, MATTHEW ABAD,** | ) |
| **and JOHN DOE # 1-5,** | ) |
| | ) |
| **Defendants.** | ) |

## CERTIFICATION

Counsel for the City Defendants hereby certifies that the foregoing has been prepared with Times New Roman font, 14 point, and therefore it complies with the requirements of L.R. 5.1(C).

Respectfully Submitted,

*/s/ Alisha Marie S. Nair*
**ALISHA MARIE S. NAIR**
Attorney
Georgia Bar No. 806033
amnair@atlantaga.gov

***Attorney for City Defendants***

29

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **TYLER GRIFFIN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **CIVIL ACTION NO: 1:20-cv-2514-TWT** |
| | ) |
| **CITY OF ATLANTA, DONALD** | ) |
| **VICKERS, MATTHEW ABAD,** | ) |
| **and JOHN DOE # 1-5,** | ) |
| | ) |
| **Defendants.** | ) |

## CERTIFICATE OF SERVICE

This is to certify that I have served all parties with a copy of the following:

- *DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND INCORPORATED BRIEF IN SUPPORT*

via the CM/ECF filing system and all parties listed below were served electronically as follows:

**JAMES E. BUTLER, III and MATTHEW R. KAHN**
10 Lenox Pointe Atlanta, Georgia 30324

This 3rd day of May 2021.

Respectfully Submitted,

*/s/ Alisha Marie S. Nair*
**ALISHA MARIE S. NAIR**
Attorney
Georgia Bar No. 806033
amnair@atlantaga.gov

*Attorney for City Defendants*

City of Atlanta Department of Law
55 Trinity Avenue, Suite 5000
Atlanta, Georgia 30303
Office: 404-546-4185
Fax: 404-588-3239