In The Matter Of:
## *Griffin vs. City of Atlanta*

Deposition Of:
## *30(b)(6) Arthur Nixon*

Taken On:
## *9/22/2020*

Pope Reporting & Video, LLC
2741 Pangborn Road
404-856-0966

www.popereporting.com



EXPERIENCED · PROFESSIONAL · DEPENDABLE

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT COUNTY
ATLANTA DIVISION

TYLER GRIFFIN,

    Plaintiff,

                        CIVIL ACTION FILE
v.                        NO. 1:20-cv-02514-TWT

CITY OF ATLANTA, DONALD
VICKERS, MATTHEW ABAD, AND
JOHN DOE #1-5,

    Defendants.

DEPOSITION CONDUCTED VIA VIDEO CONFERENCE

VIDEOTAPED 30(b)(6) DEPOSITION OF CITY OF ATLANTA
ARTHUR NIXON

September 22, 2020
2:01 p.m.

Witness located in Atlanta, Georgia

By Jennifer Davis-McLain, RMR, CRR, CRC
Certified Court Reporter, License No. 2496

```
 1    REMOTE APPEARANCES OF COUNSEL:

 2    On behalf of the Plaintiff:

 3              MATTHEW R. KAHN, ESQUIRE
                JAMES E. BUTLER III, ESQUIRE
 4              Butler Law Firm
                10 Lenox Pointe NE
 5              Atlanta, Georgia 30324
                404.587.8423
 6              matt@butlerfirm.com
                jeb@butlerfirm.com
 7
      On behalf of the Defendants:
 8
                ALISHA MARIE S. NAIR, ESQUIRE
 9              STACI MILLER, ESQUIRE
                JACQUITA PARKS, ESQUIRE
10              City of Atlanta Law Department
                55 Trinity Avenue SW
11              Suite 5000
                Atlanta, Georgia 30303
12              404.330.6402
                amnair@atlantaga.gov
13              sjmiller@atlantaga.gov
                japarks@atlantaga.gov
14

15

16

17

18                        — — —

19

20

21              (Pursuant to Article 10(B) of the Rules and
      Regulations of the Georgia Board of Court Reporting, a
22    written disclosure statement was submitted by the
      court reporter to all counsel present at the
23    proceeding.)

24

25
```

Case 1:20-cv-02514-VMC    Document 89-6    Filed 05/03/21    Page 4 of 98
Exhibit F
Griffin vs. City of Atlanta                30(b)(6) Arthur Nixon                9/22/2020

```
 1              INDEX TO EXAMINATIONS

 2                                              PAGE

 3   ARTHUR NIXON

 4   Examination by Mr. Kahn ..........................5
     Examination by Ms. Nair .........................72
 5

 6

 7              INDEX TO EXHIBITS

 8   EXHIBIT            DESCRIPTION            PAGE

 9   Exhibit 1.2    Video ...........................34

10   Exhibit 2.5    Video ...........................53

11   Exhibit 3.1    Video ...........................54

12   Exhibit 3.3    Video ...........................49

13   Exhibit 4.1    Video ...........................49

14   Exhibit 4.2    Video ...........................39

15   Exhibit 5.2    Video ...........................51

16   Exhibit 43     Investigative Summary dated .......40
                    November 22, 2019 (Griffin v.
17                  COA 000027-000032)

18   Exhibit 99     Plaintiff's Notice of Video .......10
                    Deposition of Defendant City of
19                  Atlanta Pursuant to Rule 30(b)(6)

20   Exhibit 500    "Dozens of police officers in one .62
                    metro Atlanta county under
21                  criminal investigation, attorney
                    claims"

22

23        (All exhibits marked prior to the
     deposition.)
24

25
```

```
 1              P R O C E E D I N G S
 2         MR. KAHN:  So this will be the Rule 30(b)(6)
 3  deposition of the City of Atlanta taken pursuant to
 4  notice and agreement.  The deposition is taken in the
 5  case Tyler Griffin versus the City of Atlanta.  The
 6  deposition will be taken pursuant to the Federal Rules
 7  of Civil Procedure and for all purposes permitted
 8  under those rules, including use at trial.  And the
 9  deposition is being taken on Zoom because of the COVID
10  pandemic.
11         Could we go ahead and swear in the witness.
12         COURT REPORTER:  Yes, sir.  Before we get
13  started, I will ask counsel to please identify
14  yourself and state on the record that you have no
15  objection to this officer of the court administering a
16  binding oath to this witness via Zoom.  If we could
17  please begin with the noticing attorney.
18         MR. KAHN:  Sure.  Matt Kahn for the
19  plaintiff, and no objection.
20         MR. BUTLER:  Jeb Butler for the plaintiff.
21         MS. NAIR:  Alisha Marie Nair for the City of
22  Atlanta.  No objection.
23         MS. MILLER:  Staci Miller for the
24  defendants, and no objection.
25         MS. PARKS:  Jacquita Parks for the
```

```
 1   defendants.  No objections.

 2              COURT REPORTER:  Thank you.

 3                    ARTHUR NIXON,

 4   having been first duly sworn, was examined and

 5   testified as follows:

 6                    EXAMINATION

 7   BY MR. KAHN:

 8       Q.   All right.  Mr. Nixon, will you please state

 9   your full name and job title.

10       A.   Yes.  My name is Arthur Nixon.  I'm a police

11   investigator with the City of Atlanta Police

12   Department.

13       Q.   And how long have you been with APD?

14       A.   Twenty-two and a half years.

15       Q.   And how long have you been an investigator?

16       A.   Since 2006.

17       Q.   And are you with the internal affairs part

18   of OPS?

19       A.   Yes, sir.

20       Q.   Do you investigate police misconduct?

21       A.   Yes, sir.

22       Q.   And do you investigate allegations of

23   excessive force by APD officers?

24       A.   Yes, sir, I do.

25       Q.   Have you ever investigated allegations of
```

```
 1   excessive force and found that the use of force was

 2   unreasonable?

 3       A.   Yes.

 4       Q.   And can you give an example?

 5            MS. NAIR:  Objection.  Mr. -- Investigator

 6   Nixon is here to testify as to Topics 1 and 11.  This

 7   goes outside of the scope of those.

 8            MR. KAHN:  Okay.  And just for the record,

 9   you know, he has been designated for those topics, but

10   we are free to ask him questions within his personal

11   knowledge.

12   BY MR. KAHN:

13       Q.   So, Mr. Nixon, if you can answer.

14       A.   Yes.  There was an instance where an officer

15   was called to a restaurant for -- it was a criminal

16   trespass issue.  But while talking to the suspect, it

17   turned into a physical -- very brutal physical

18   altercation that wasn't called for.  As a result, that

19   officer is no longer with the department.

20       Q.   Okay.  And what was that officer's name?

21       A.   Lancerot.

22       Q.   Do you recall when that happened?

23       A.   Maybe about a year and a half ago.

24       Q.   Did you start with APD as a recruit?

25       A.   Yes, I did.
```

1    Q.    And do you have any law enforcement

2  experience predating your time with APD?

3    **A.    I was a military police officer in the**

4  **military, and I was a Georgia Corrections officer**

5  **prior to APD.**

6    Q.    Okay.  When did you first start working in

7  law enforcement?

8    **A.    If you want to use the Georgia Corrections,**

9  **that would be in April of 1997.  I was a correction**

10  **officer.  And I got hired with APD in December of '97.**

11  **And prior to both of those, I was in the military.**

12    Q.    And what branch of the military?

13    **A.    Air Force.**

14    Q.    Air Force.  Thank you for your service.

15    **A.    Thank you.**

16    Q.    What sort of police training do you have?

17    **A.    With APD, it's the -- it's, I guess, a very**

18  **broad question, but arrest procedures, criminal**

19  **procedure.  Just everything that entails being a**

20  **police officer.**

21    Q.    Okay.  Have you undergone use-of-force

22  training?

23    **A.    Yes, sir.**

24    Q.    And have you taught or instructed other

25  police officers on use of force?

1    **A.    No, sir.**

2    Q.    Have you taught or instructed other police

3    officers on any subject?

4    **A.    No, sir.    No.    That requires an instructor**

5    **certification, and that's -- I don't have that.**

6    Q.    Okay.    Would it be fair to say that as an

7    OPS investigator, you have the ability to apply APD

8    standard operating procedures to real-world scenarios?

9    **A.    Yes.    As the investigation goes on, yes.**

10   **Yes, sir.**

11   Q.    And as an OPS investigator, isn't it true

12   that you have to be able to apply the standard

13   operating procedures to real-world scenarios?

14   **A.    To see if there's a violation?**

15   Q.    Yes, sir.

16   **A.    Yes, sir.**

17   Q.    Have you ever reported another officer for

18   the use of excessive force?

19   **A.    It has come -- since I've been here in the**

20   **unit, I believe so.    Because sometimes we'll see**

21   **situations come up as a result -- some serious**

22   **situations that will come up as a result of the**

23   **investigation.**

24   Q.    And can you share an example of one of the

25   times that you've reported another officer?

Case 1:20-cv-02514-VMC    Document 89-6    Filed 05/03/21    Page 10 of 98

Exhibit F
Griffin vs. City of Atlanta                30(b)(6) Arthur Nixon                                 9/22/2020

1        **A.    We had a situation where -- I didn't**

2    **necessarily report it.  We were looking at video, and**

3    **the use of the N-word came out during -- while we were**

4    **investigating one situation, use of the N-word came**

5    **out while we were looking at the video.**

6        Q.    And so I guess have you ever reported

7    another officer for excessive force versus abusive

8    language or inappropriate language?

9        **A.    Not that I can recall, no, sir.**

10       Q.    Okay.  Have you ever testified in an

11   official proceeding that another officer used

12   unnecessary force?

13       **A.    No, sir.**

14       Q.    In your career as a police officer, have you

15   ever seen another officer use what you consider to be

16   excessive force in the field?

17           MS. NAIR:  Objection.  Beyond the scope.

18   BY MR. KAHN:

19       Q.    You can answer.

20       **A.    No, sir.  Not that I can recall, no, sir.**

21       Q.    Okay.  Do you understand that we asked to

22   speak with someone who could testify on behalf of the

23   City of Atlanta on various subjects?

24       **A.    Yes.**

25       Q.    And you understand that the city chose you

Griffin vs. City of Atlanta               30(b)(6) Arthur Nixon               9/22/2020

```
 1    to testify about the identities and roles of various

 2    witnesses in this case?

 3         A.    Yes, sir.

 4         Q.    And the city also chose you to testify about

 5    the city's discovery responses in this case.

 6         A.    Yes, sir.

 7         Q.    And you understand that the answers that you

 8    give today will be binding on the City of Atlanta?

 9         A.    Yes, sir.

10         Q.    Have you ever been deposed before?

11         A.    Yes, sir.

12         Q.    How many times have you been deposed?

13         A.    Maybe four.

14         Q.    And were those cases involving allegations

15    of the excessive use of force by a City of Atlanta

16    police officer?

17         A.    Yes.   More specifically, officer-involved

18    shootings.

19         Q.    Okay.  All right.  I'm going to briefly

20    share my screen with you.  Can you see the document I

21    have labeled as Plaintiff's Exhibit 99 on your screen?

22         A.    Yes, sir.

23         Q.    And have you seen this document before?

24         A.    Yes, sir.

25         Q.    And from my understanding, you've been
```

Case 1:20-cv-02514-VMC    Document 89-6    Filed 05/03/21    Page 12 of 98

Exhibit F
Griffin vs. City of Atlanta                30(b)(6) Arthur Nixon                9/22/2020

1    designated to speak on Topic No. 1.  Is that correct?

2        **A.    Yes, sir.**

3        Q.    And then also on Topic 11.  Is that right?

4        **A.    Yes, sir.**

5        Q.    Are there any other topics on this list that

6    you -- that you have been asked to speak about?

7        **A.    No, sir.**

8        Q.    Okay.  Excluding conversations with your

9    lawyers who are here with us today and may not be

10   here, what did you do to prepare for today's

11   deposition?

12       **A.    I reviewed the file.**

13       Q.    And when you refer to "the file," what

14   specifically are you referring to?

15       **A.    The write-up.  I did the write-up and the**

16   **body-worn camera.  And also we don't see the charges,**

17   **the punishment, I will say, of the accused officer at**

18   **all unless a situation like this comes about, and I**

19   **was able to see what the -- what the officers**

20   **involved -- what the punishment was.**

21       Q.    Okay.  So typically you make a

22   recommendation as to what a punishment should be, and

23   then that's -- so it's sort of off your desk?

24       **A.    No, sir.  No.  We don't make a**

25   **recommendation.  We just find the facts.  And when I**

1    turn it in, I don't see it again ever unless a

2    situation like this comes back -- comes up.  And then

3    when I do see it, I see how my supervisor wrote up he

4    should be sustained for this or not sustained for that

5    and exonerated, and that's the first I see of it.

6          Q.    Okay.  And who is your supervisor?

7          A.    That would be Lieutenant Zenelaj.  Well,

8    he's a captain now, but at the time

9    Lieutenant Zenelaj.

10         Q.    Okay.  Did you review the lawsuit that was

11   filed in this case?

12         A.    Yes.  Your -- what the plaintiff is

13   alleging?

14         Q.    Yes, sir.

15         A.    Yes.

16         Q.    Did you review any of the City of Atlanta's

17   discovery responses?

18         A.    Yes.

19         Q.    And which ones did you review?

20         A.    I have the -- can you see it?  I have this,

21   which is the -- I think that's the -- what you have on

22   the screen.  And plaintiff's request for production.

23   And I have the plaintiff's first request for

24   production -- the responses.

25         Q.    Oh, is that -- I'm sorry.  I didn't realize

Case 1:20-cv-02514-VMC    Document 89-6    Filed 05/03/21    Page 14 of 98

Exhibit F
Griffin vs. City of Atlanta          30(b)(6) Arthur Nixon                    9/22/2020

 1   you had finished.  Is --

 2       A.   Oh.

 3       Q.   Do you have the responses to the request for

 4   admission?

 5       A.   I do.

 6       Q.   And do you have the responses to the request

 7   for production of documents?

 8       A.   I'm sure I do.  I'm sure I do.  It's just a

 9   lot of paperwork, but I'm sure I do.

10       Q.   Okay.  Did you read the interrogatory

11   responses in their entirety?

12       A.   Not in their entirety, no, sir.

13       Q.   Which ones did you focus on?

14       A.   What I was scheduled to testify on.

15       Q.   Okay.  So any interrogatory dealing with

16   witnesses or their roles -- their roles in the case?

17       A.   Yes, sir.  Yes.  Exactly.

18       Q.   And then which request for admission did you

19   look at?

20       A.   Which request for admission?

21       Q.   Yes, sir.

22       A.   I'm sorry.  Can you break that down a little

23   bit for me?

24       Q.   Sure.  Did you -- did you look at any of the

25   city's responses to the plaintiff's request for

 1   admission?

 2       A.    I glanced over some of them, but I just -- I

 3   did look at 1 and 11.

 4       Q.    And when you -- 1 and 11 being the topics on

 5   Plaintiff's Exhibit 99?

 6       A.    Correct.  The --

 7       Q.    Okay.

 8       A.    The witnesses and their roles.

 9       Q.    Okay.  Is there anything that you disagreed

10   with in the city's responses to the plaintiff's

11   request for admission?

12       A.    That I disagree with?  No.

13       Q.    Is there anything that you disagree with in

14   the city's responses to plaintiff's interrogatories?

15       A.    No.  No, sir.

16       Q.    Did you watch any of the body camera footage

17   of the officers involved in this case to prepare --

18       A.    I did.

19       Q.    -- for the deposition?

20       A.    I did.

21           COURT REPORTER:  I beg your pardon, but it

22   looks like one of the other witnesses has entered the

23   meeting.

24               (Off-the-record discussion.)

25

```
 1    BY MR. KAHN:

 2         Q.   When was the last time you watched the

 3    video -- body camera --

 4         A.   Yesterday.   Yesterday.

 5         Q.   And did you -- have you watched all of the

 6    body camera footage?

 7         A.   Yes.

 8         Q.   Okay.   Did you review any of the documents

 9    that the City of Atlanta produced in this case?

10         A.   As far as the request for production and

11    that -- those items?

12         Q.   Yes, sir.

13         A.   Yes.

14         Q.   And what specifically did you review?

15         A.   I guess it's the -- I guess it would be the

16    same thing as before, the plaintiff's request for

17    production.

18         Q.   Um-hum.   So I guess maybe we -- I should be

19    a little clearer.   Did -- in preparing for the

20    deposition today, did you look at any of the physical

21    documents that the city produced in the case that were

22    Bates-labeled?

23         A.   I'm sure I glanced over it, but I was

24    more -- I more looked at the video and the file in

25    preparation for the deposition.
```

Case 1:20-cv-02514-VMC    Document 89-6    Filed 05/03/21    Page 17 of 98

Exhibit F

Griffin vs. City of Atlanta                30(b)(6) Arthur Nixon                                9/22/2020

1      Q.    Okay.

2      **A.    The actual investigative file that I did.**

3      Q.    And has your entire investigative file been

4    produced in the -- in the case?

5      **A.    Yes, sir, it has.**

6      Q.    Okay.  Did you review any of APD's standard

7    operating procedures to prepare today?

8      **A.    To prepare for today?  No.**

9      Q.    Are you generally familiar with the SOPs?

10     **A.    Yeah.  Generally, yes, sir.  Um-hum.**

11     Q.    Besides your attorneys, did you speak with

12   any city employees to prepare for today's deposition?

13     **A.    No, sir.**

14     Q.    When you're investigating an allegation of

15   excessive force, what are you generally looking for?

16     **A.    The reasonableness and the necessary.  Was**

17   **it reasonable that the officer did whatever it is he**

18   **or she did, and was it necessary that the officer did**

19   **whatever he or she did.**

20     Q.    And how would you -- what is the standard

21   for reasonableness, as you understand it?

22     **A.    There's a case law Graham v. Connor.  It's**

23   **the totality of the whole situation.  You've got to --**

24   **you have to look at the whole situation and apply was**

25   **it reasonable and was it necessary that the officer**

Case 1:20-cv-02514-VMC    Document 89-6    Filed 05/03/21    Page 18 of 98

Exhibit F

Griffin vs. City of Atlanta          30(b)(6) Arthur Nixon          9/22/2020

 1    did whatever it is they did.

 2          It's a -- it's a -- each investigation is

 3    situational.  So each one has to be looked at

 4    independently, and you have to take the reasonableness

 5    and the necessary -- was it reasonable that this

 6    officer did whatever it is they did and was it

 7    necessa- -- was it absolutely necessary that they did

 8    what they did.

 9          Q.   Okay.  So would you agree that police

10    officers should only use force if it's necessary?

11          A.   Correct.  Yes, sir.

12          Q.   And would you agree that if required to use

13    force, police officers should only use reasonable

14    force?

15          A.   Correct.  Yes, sir.

16          Q.   Would you agree that police officers should

17    attempt to deescalate a situation before using force?

18          A.   Most definitely.  Yes, sir.

19          Q.   Is it fair to say that an officer's

20    subjective belief that force is necessary alone is not

21    enough to justify the use of force?

22          A.   Yes, sir.

23          MS. NAIR:  Objection.

24    BY MR. KAHN:

25          Q.   I'm sorry.  Can you -- was that a "yes"?

Case 1:20-cv-02514-VMC    Document 89-6    Filed 05/03/21    Page 19 of 98

Exhibit F

Griffin vs. City of Atlanta          30(b)(6) Arthur Nixon          9/22/2020

1      **A.    Yes.**

2      Q.    Thank you.

3            The decision to use force has to be

4      reasonable under an objective standard.  Correct?

5      **A.    Correct.**

6      Q.    And what is -- what does that objective

7      standard mean to you?

8            MS. NAIR:  Objection as to form.

9      BY MR. KAHN:

10     Q.    You can answer.

11     **A.    That you have to look at it from the**

12     **objective -- you have to just, like, stand outside of**

13     **yourself and look at it and say, okay, if I was a**

14     **stranger just looking at this, would it be right for**

15     **this person to do what they're doing.**

16     Q.    Okay.

17     **A.    Not knowing what I know as far as the law**

18     **and our policies and whatnot.**

19     Q.    Okay.  That makes perfect sense.

20           What are the various outcomes of an

21     investigation of police misconduct?

22     **A.    What are the outcomes?**

23     Q.    Yes, sir.

24     **A.    You can be exonerated.  You can be**

25     **sustained, which is basically, like, guilty.  Or you**

Exhibit F

Griffin vs. City of Atlanta                    30(b)(6) Arthur Nixon                    9/22/2020

1    can be not sustained, which is we can't prove that

2    the -- you did whatever it is you did.

3           Exoneration is we have proof to show that

4    you did not do what you're accused of.  Sustained is

5    we have something saying that you did what you did.

6    And not sustained just means that you're -- you're not

7    guilty, but only because we couldn't prove it.

8           Q.   Okay.  And that covers my next questions,

9    which was what's the difference between not sustained

10   and exonerated.  So we can --

11          A.   Right.

12          Q.   -- skip that.

13          A.   Yeah.

14          Q.   What does "unfounded" mean?

15          A.   That is that there's no basis for the

16   complaint at all.  Like, the complainant completely

17   fabricated the allegation.

18          Q.   Okay.  And how would you arrive at a

19   conclusion of unfounded?

20          A.   Body-worn camera.  If we have -- if the

21   complainant said, "The officer punched me in the

22   nose," and we look at the body-worn camera and it

23   never happened, then we can unfound it.

24          Q.   Okay.  Is the biggest -- the biggest factor

25   in determining the outcome generally going to be the

Case 1:20-cv-02514-VMC    Document 89-6    Filed 05/03/21    Page 21 of 98

Exhibit F
Griffin vs. City of Atlanta                30(b)(6) Arthur Nixon                9/22/2020

1    body-worn camera?

2        A.    Yeah, it is now.  The body-worn camera has

3    been instrumental in exoneration, sustaining, and

4    unfounding --

5        Q.    Okay.

6        A.    -- because that's our proof.  We do pretty

7    much need some type of proof to unfound and to

8    exonerate.

9        Q.    So in a situation where it's the police

10   officer's word versus the word of the arrestee, and

11   there's no video proof, what sort of designation would

12   you give that situation?

13       A.    If it's a situation that we just -- say the

14   officer is accused of taking some money and not

15   turning in some money.  The officer says he did

16   turn -- he did -- he didn't take it; the complainant's

17   saying he did.  We don't have any proof saying

18   either-or; then that would be a not sustained.

19       Q.    Okay.  Once you conclude an investigation in

20   a complaint is sustained, do you make disciplinary

21   recommendations?

22       A.    No, sir.  That's totally out of my -- not my

23   level.

24       Q.    What department or, you know, component of

25   the APD makes the actual recommendations of

Exhibit F

Griffin vs. City of Atlanta                 30(b)(6) Arthur Nixon                 9/22/2020

```
 1   discipline?

 2       A.   That would be the employee's chain of

 3   command, which would be the FO -- the deputy chief of

 4   FOD, field operation division.  On this list, it would

 5   be Chief Glazier.  So he would be the one to recommend

 6   discipline.

 7       Q.   And when you say "chain of command," does

 8   that mean -- so deputy chief -- the deputy chief -- is

 9   that someone who is working with the -- working

10   closely with the officer being investigated?

11       A.   He's not working -- the file eventually will

12   land on his desk.

13       Q.   Okay.

14       A.   We have six different deputy chiefs.  Each

15   deputy chief is in charge of a different facet in the

16   department.  And the zones all fall under one deputy

17   chief, and at that -- at the time of this incident, it

18   was Chief Glazier.

19       Q.   Are you --

20       A.   So --

21       Q.   -- familiar -- I'm sorry.  You had something

22   to add?

23       A.   No.  Just after I investigate it and give it

24   to my lieutenant, my lieutenant gives it to our major,

25   and it goes up to Chief Glazier's desk.  Then he takes
```

```
 1    a look at it.  And if it's sustained, then he's the

 2    one that recommends the discipline.

 3         Q.   Okay.  And as you're -- you know, as you're

 4    reviewing the file, do you ever form personal opinions

 5    as to, you know, whether or not or how the police

 6    officer should be disciplined?

 7         A.   Yeah.  It comes up, yeah.

 8         Q.   Okay.  And are you familiar with the various

 9    types of discipline?

10         A.   There are so many.  You can have an oral

11    admonishment.  You can have a suspension.  You can be

12    terminated.  There are -- there are many.  And it's

13    up --

14         Q.   Okay.  If -- sorry.

15         A.   -- to the --

16         Q.   Go ahead.

17         A.   No, no.  No problem.  It's up to the

18    discretion of the deputy chief.

19         Q.   Are there guidelines that suggest what sort

20    of discipline should be given for certain types of

21    infractions?

22         A.   Yes, there is.

23         Q.   And are those -- are those guidelines

24    mandatory, or are they totally discretionary?

25         A.   No.  I believe that it's mandatory.  It
```

1    **falls within a range of if you did this, then they --**

2    **you can be disciplined up to -- within this guideline.**

3    **You may not get the --**

4        Q.   Okay.

5        **A.   -- brunt of it, and you might not get the**

6    **lesser end of it.  You might come more somewhere in**

7    **between.**

8        Q.   So if someone -- if someone were accused and

9    found -- or accused and sustained for violating a

10   serious rule, the person awarding the discipline would

11   have to give the disciplinary outcome that falls

12   within the range set by the rules?

13            MS. NAIR:  Objection as to form.

14            But you may answer, Investigator Nixon, if

15   you know.

16            MR. KAHN:  I'm sorry.  What was that

17   objection?

18            MS. NAIR:  The objection is as to form -- as

19   to the form of your question.  But if Investigator

20   Nixon is able to answer your question, he may.

21            MR. KAHN:  Okay.

22       **A.   Can you say -- ask the question one more**

23   **time?**

24   BY MR. KAHN:

25       Q.   Sure.  Let me see if I can rephrase it a

Case 1:20-cv-02514-VMC    Document 89-6    Filed 05/03/21    Page 25 of 98

Exhibit F
Griffin vs. City of Atlanta                30(b)(6) Arthur Nixon                9/22/2020

1    little bit.

2           So if a police officer is found to have

3    violated a serious rule that, say, requires suspension

4    from four to ten days, and that -- the deputy chief

5    does not discipline that officer within that range, is

6    that something that would be a rule violation?

7        **A.    Yeah.   If it's -- if it's -- I'm speaking --**

8    **not that I've seen this, but I would say it would be.**

9        Q.    Okay.   Would you agree that the prohibition

10   of unreasonable force must carry consequences to

11   dissuade officers from using excessive force?

12       **A.    Yes.**

13       Q.    And would it be fair to say that without

14   real consequences for using excessive force, police

15   officers could use force with impunity?

16       **A.    I can see where that would happen, yes.**

17       Q.    If an officer is accused of using excessive

18   force numerous times, does that trigger a more

19   in-depth investigation of subsequent allegations of

20   excessive force?

21       **A.    We have what's called a -- it's an alert**

22   **system that's supposed to trigger -- I don't -- I**

23   **don't -- I'm not involved with the alert system.   Our**

24   **file room is.   But if an officer has repeated**

25   **instances of use of force, there's a system in place**

Griffin vs. City of Atlanta                30(b)(6) Arthur Nixon

```
 1   that's supposed to alert us that we have met -- you
 2   know, we might have to get them some help or is there
 3   something going on in his life, that sort of thing.
 4        Q.   Okay.  And what's that -- what's that system
 5   called?
 6        A.   Early warning.  Early warning.
 7        Q.   And is that like a -- is the early warning
 8   system -- is that like a computer program, or is it
 9   just someone who's monitoring the numbers and making a
10   recommendation?
11        A.   I believe it's a computer program.  Once
12   the -- once the information is entered into the
13   system -- like, say, if this -- if an officer has ten
14   instances of use of force -- hopefully the system
15   would catch it before the tenth one.  But by whatever
16   the gauge is that we're supposed to catch it, once
17   it's entered in as an official complaint, it's
18   supposed to trigger the early warning.
19        Q.   Okay.  And so -- and how does it -- I guess
20   how do you receive the notification of an -- of an
21   early warning?  Like, how does that -- how does that
22   come up in your investigations?
23        A.   I don't.  When I get the file, it's -- I
24   only -- I only have what is in front of me.  And I
25   don't know what their past is, what they -- like, if I
```

Exhibit F

Griffin vs. City of Atlanta                30(b)(6) Arthur Nixon                9/22/2020

1    **get a John Doe complaint and John Doe is accused of**

2    **use of force, if John Doe had ten use of forces in the**

3    **past, I won't know about it.**

4         Q.    Okay.  I guess is -- is a history of the use

5    of excessive force something that you would find

6    relevant to your investigation?

7         A.    **It would put -- it would put some context**

8    **into it.  But I would have to -- I would have to**

9    **investigate this particular investigation on its own**

10   **merits.  But I can see where the past can add to it,**

11   **but I'm only to look at this particular investigation.**

12        Q.    Okay.  That makes sense.

13              What role did you play in the investigation

14   of Donald Vickers' use of force?

15        A.    **I was the investigator.**

16        Q.    And so you interviewed Donald Vickers?

17        A.    **Yes.**

18        Q.    Do you have an independent recollection of

19   your interview with Defendant Vickers?

20        A.    **Yes, I do.**

21        Q.    Okay.  So let me -- let me take a step back.

22              How many -- how many use-of-force

23   investigations are you generally performing in a given

24   year?

25        A.    **I'm on the officer-involved shooting team;**

Case 1:20-cv-02514-VMC    Document 89-6    Filed 05/03/21    Page 28 of 98

Exhibit F
Griffin vs. City of Atlanta                30(b)(6) Arthur Nixon                              9/22/2020

1    so that adds to it.  You want a number?

2         Q.    Sure.  If you -- if you can.

3         A.    Maybe 15.  Maybe -- no more than about 20 a

4    year.

5         Q.    And just speaking generally now, between

6    those 15 to 20 allegations of excessive force, how

7    many are generally going to be sustained?

8         A.    Now, are you -- our officer-involved

9    invest- -- or shootings -- they're police shootings,

10   but they are a use of force.  The majority of those

11   are good shootings.  But we do have some use-of-force

12   investigations where the officer is sustained.  Like

13   the example I gave earlier with Officer Lancerot.  I

14   would say about maybe 30 to 40 percent.

15        Q.    Okay.

16        A.    My use -- my use-of-force investigations I

17   would go a little bit higher than 20, but I would say

18   about 30 or 40 percent.

19        Q.    Okay.  All right.  So we'll get back into

20   the specific investigation of Vickers.

21              When you were interviewing Donald Vickers,

22   did you doubt his truthfulness at all?

23        A.    No.  Well -- no.  A lot of the truthfulness

24   in a -- it's their perception of what -- what they

25   perceive.  Like, I can ask -- like, in my shootings,

Case 1:20-cv-02514-VMC    Document 89-6    Filed 05/03/21    Page 29 of 98

Exhibit F
Griffin vs. City of Atlanta          30(b)(6) Arthur Nixon          9/22/2020

1    the officer may think one thing, but it's actually

2    something else.  I would -- you know, I shot ten

3    times, but they really only shot twice.

4          So with Vickers, I didn't doubt he was -- I

5    didn't think he was lying.

6       Q.   Okay.  You seemed to hesitate a little bit.

7    Is there -- was there something strange about your

8    interview with Defendant Vickers?

9       A.   No.  No.  No.  I just had to go back -- I

10   watched so much body camera that the interview --

11   where that was, like, secondary instead of body

12   camera.  I watched the body camera a lot.

13      Q.   Okay.  And did Donald Vickers' story make

14   sense to you as a police officer?

15          MS. NAIR:  Objection.

16          You may answer.

17          It's speculative but objection.

18      A.   Yes, it did.

19   BY MR. KAHN:

20      Q.   What did you do to prepare for your

21   interview of Donald Vickers?

22      A.   Watched the body camera.

23      Q.   And I think you may have answered this, but

24   did you review his disciplinary history before the

25   interview?

```
1        A.    No.   Unh-unh.

2        Q.    Did you speak with any of the other

3    witnesses before interviewing Donald Vickers?

4        A.    No.

5        Q.    And so when you're -- when you're studying

6    the body cam footage, how much time would you say

7    you're spending, like, looking at the video and, you

8    know, watching it and rewatching it?

9        A.    That can be time-consuming, because you're

10   rewinding.  I've got software where I can put it in

11   slow motion.  And you don't want to miss -- you don't

12   want to miss anything.  So with the different -- I

13   believe there were five or six videos.  You just want

14   to watch it so you can get a total picture of what

15   happened.

16       Q.    Okay.  And so of the five to six videos in

17   this case, how many times would you say you watched

18   each of those videos?

19       A.    Each video I'd say maybe no more than four.

20   Because I would watch Vickers' and the -- Abad's video

21   more so than the other videos, but I have seen the

22   other videos.

23       Q.    Okay.  In this -- in this case, which video

24   do you think is the most important?

25       A.    Abad's.
```

Griffin vs. City of Atlanta                30(b)(6) Arthur Nixon                9/22/2020

```
 1        Q.   So I know you said that you hadn't looked at
 2   Vickers' disciplinary history, but before interviewing
 3   Vickers, were you aware of his disciplinary history?
 4        A.   No.  When I -- when Vickers -- when I met
 5   Vickers, that was my first time ever meeting him.
 6        Q.   As we sit here today, are you aware of his
 7   disciplinary history?
 8        A.   I've heard that I guess there's -- he's got
 9   some stuff going on.
10        Q.   Does having knowledge of Vickers'
11   disciplinary history change your view of what you were
12   looking at of the body cam footage?
13             MS. NAIR:   Objection.
14        A.   No.  And that's where I -- I'm kind of like
15   I'm glad I don't know the officer's history.  That way
16   I don't go in with a preconceived opinion about
17   whatever the situation is.  It was only until -- I
18   guess when all this started surfacing is when I
19   started hearing about he had a -- some things going on
20   in his history.
21   BY MR. KAHN:
22        Q.   Okay.  And when you say "some things going
23   on in his history," what do -- what does that mean to
24   you?
25        A.   I think a use of -- some use-of-force
```

Case 1:20-cv-02514-VMC    Document 89-6    Filed 05/03/21    Page 32 of 98

Exhibit F

Griffin vs. City of Atlanta                    30(b)(6) Arthur Nixon                    9/22/2020

 1    situations.

 2        Q.    As we sit here today, how many instances of

 3    use-of-force allegations against Mr. Vickers are you

 4    aware of?

 5        A.    It -- I think at least one, but, like I

 6    said, I haven't seen it.  But just the -- when this

 7    lawsuit came up and we were prepping for the lawsuit

 8    and the file room was -- let me know what was going

 9    on, his name came up, and I guess he had some things

10    going on.

11        Q.    Okay.  Is it fair to say that prior

12    complaints of excessive force make it more likely that

13    the officer being investigated used excessive force at

14    that given time?

15        A.    There is a probable cause to believe that

16    you -- again, I like to investigate the -- whatever

17    investigation I have on its own merits.  But if there

18    is prior allegations from citizens, then there may be

19    something to it.

20            And we're seeing that with the

21    officer-involved shootings that are happening across

22    the country where officers that are being terminated

23    are being -- like the situation in Clayton County.

24    We're hearing that that officer had some prior

25    complaints.  So there are -- there is something to it.

Case 1:20-cv-02514-VMC    Document 89-6    Filed 05/03/21    Page 33 of 98
Exhibit F
Griffin vs. City of Atlanta                    30(b)(6) Arthur Nixon                    9/22/2020

1    There --

2        Q.    Okay.

3        A.    -- may be something to it.

4        Q.    And what situation in Clayton County are you

5    referring to?

6        A.    The officer-involved shooting.  I'm sorry.

7    Not officer but the -- there was a man that got pulled

8    over in a Uber.  Instead of focusing on the driver,

9    they focused on the passenger in the back seat.  And

10   so that officer was terminated.

11           So after the termination, more people have

12   come out and said, yeah, this guy did this to me; this

13   guy did this to me; this guy did this to me.  So --

14       Q.    Um-hum.

15       A.    -- when we see stuff like that, it can lead

16   to be -- when citizens make complaints on an officer

17   over and over and over, there may be something to it.

18       Q.    Okay.  And how many -- how many allegations

19   of excessive force does it take for APD to terminate

20   an officer?

21       A.    That is -- that -- I'm not sure if there's

22   anything written, but that's definitely a deputy chief

23   or a command staff decision.

24       Q.    Okay.  And in terms of Matthew Abad's

25   investigation, did you also interview him?

Exhibit F

Griffin vs. City of Atlanta                30(b)(6) Arthur Nixon                                  9/22/2020

1      A.   I did.

2      Q.   And do you also have an independent

3   recollection of Officer Abad?

4      A.   Yes.

5      Q.   Did you doubt his truthfulness at all during

6   the interview?

7      A.   No.

8      Q.   And his story also made sense to you?

9      A.   Yes.   What I recall, yes.

10     Q.   And in terms of preparation for Abad's

11  invest- -- or interview -- excuse me -- the same

12  preparation?  Watching the body cam footage?

13     A.   Yes.

14     Q.   Okay.  And I believe you said that the last

15  time you watched the footage was yesterday.  Is

16  that -- is that right?

17     A.   Correct.

18     Q.   Okay.  I'm going to share my screen and show

19  a clip of the video to you right now.  If y'all would

20  give me just a moment.

21          Can you see -- can you see my screen on your

22  screen?

23     A.   No, sir.

24     Q.   How about now?

25     A.   Yes, sir.  I can see it.

Case 1:20-cv-02514-VMC    Document 89-6    Filed 05/03/21    Page 35 of 98

Griffin vs. City of Atlanta                30(b)(6) Arthur Nixon

Exhibit F
9/22/2020

```
1          Q.   Okay.  All right.  So I'm going to show this

2     video.  If you have any trouble hearing it or seeing,

3     just let me know, and we'll --

4          A.   Yes, sir.

5          Q.   -- try to figure it out.

6          A.   Okay.

7               (Video plays.)

8     BY MR. KAHN:

9          Q.   Okay.  Do you think there's anything wrong

10    with the way that Defendant Abad acted in that video?

11               MR. KAHN:  And that video --

12               MS. NAIR:  Objection.

13               MR. KAHN:  For the -- for the record, that

14    video is Plaintiff's Exhibit 1.2.

15               MS. NAIR:  Objection again as to form and as

16    to outside the scope of what Mr. -- Investigator Nixon

17    is here to testify to.  Anything that Investigator

18    Nixon is testifying to would be his personal opinion,

19    not the city's opinion.

20          A.   I would not have done that.  The -- your

21    client -- he brushed Abad's hand off of his shoulder.

22    I mean, that wasn't enough to tackle him and knock him

23    down.  That's just -- that's just me.

24    BY MR. KAHN:

25          Q.   Okay.  And we'll -- so we'll get to Vickers
```

```
 1    in a second.  For now, I just want to focus on

 2    Officer Abad.

 3            So specific to Officer Abad, is there

 4    anything that you think he did wrong in the -- in the

 5    video?

 6            MS. NAIR:  Objection again as to form.  This

 7    is Investigator Nixon's personal opinion.  He's not

 8    called to testify as to the city's opinion.

 9       A.   If you're talking about having his weapon

10    out approaching the car, I'm assuming he had it out

11    because he figured he -- that since they almost got

12    hit on the other road -- a head-on collision -- that

13    he may have been trying to run them over.

14            But he -- I believe he holstered when he

15    went to the window and was speaking to him.  It was --

16    it was then when -- you know, where you saw Vickers

17    tackle him while they were conversing.  So . . .

18    BY MR. KAHN:

19       Q.   Um-hum.  Okay.  Is there anything that you

20    think Defendant Abad should have done differently?

21            MS. NAIR:  Same objection.

22       A.   Not right offhand, because he was having a

23    conversation with him.  It didn't get -- it didn't get

24    physical until Vickers came and tackled him.  And I

25    believe Abad had holstered.  Because he asked him,
```

```
 1    "What are you doing?"  And that's when your client

 2    brushed his hand off.  That's when Vickers tackled

 3    him, and it just went -- it just went from there.

 4    BY MR. KAHN:

 5        Q.   Okay.  Was there anything wrong with Abad

 6    pointing the gun at my client as he approached the

 7    car?

 8        A.   No.

 9        Q.   Can you think from watching the video that

10    Officer Abad had the opportunity to stop Mr. Vickers

11    from tackling my client?

12        A.   I don't know if he saw him coming.  I might

13    be wrong, but -- I mean, we can see in the camera --

14    we can see Vickers running towards Abad, but I don't

15    know if he saw him coming, because Abad was conversing

16    with your client.

17        Q.   Okay.  If Officer Abad didn't holster his

18    weapon while he was talking to Mr. Griffin, would that

19    be a problem?

20        A.   If he still had the weapon out?

21        Q.   Yes, sir.

22        A.   It could be, because my focus would be on

23    getting him in custody, because you already have --

24    the probable cause for arrest is the collision they

25    had on the street on Chattahoochee.  You already have
```

Case 1:20-cv-02514-VMC    Document 89-6    Filed 05/03/21    Page 38 of 98

Exhibit F
Griffin vs. City of Atlanta                30(b)(6) Arthur Nixon                        9/22/2020

 1    a reason to arrest.  So if he kept the gun out, yeah,

 2    I would say, you know, my focus would be on getting

 3    him in cuffs.

 4        Q.    Okay.  And about the collision on

 5    Chattahoochee -- have you seen any dashcam footage or

 6    body cam footage showing that near-collision?

 7        A.    No.  And I believe that's one of the things

 8    they got written up for was the way they handled their

 9    body cameras.  They were out of policy -- outside of

10    policy with their body cameras.

11        Q.    Okay.  And what is the -- I guess what's the

12    general policy about dashcam footage?

13        A.    Dashcam or body cam?

14        Q.    Dashcam in the vehicle.

15        A.    If the vehicle's equipped with dashcam, it's

16    supposed to activate as soon -- well, it's supposed to

17    start recording as soon as you flip the blue lights

18    on --

19        Q.    Okay.  So --

20        A.    -- if it's --

21        Q.    -- it's not --

22        A.    -- working properly.

23        Q.    I'm sorry.  So it's --

24        A.    No.

25        Q.    -- not something that would just

Case 1:20-cv-02514-VMC    Document 89-6    Filed 05/03/21    Page 39 of 98

Exhibit F
Griffin vs. City of Atlanta                30(b)(6) Arthur Nixon                9/22/2020

```
 1   automatically record.  So, like, if their lights
 2   weren't on and a car did almost hit them, it's not
 3   something that would be captured.  They would have to
 4   activate a switch?
 5       A.   Correct.  Yes.
 6       Q.   Okay.  That makes sense.
 7            MS. NAIR:  I just want to pause for a moment
 8   because we're about 15 minutes from the top of the
 9   hour, and I just want to know about how much longer
10   you have for Investigator Nixon.
11            MR. KAHN:  I think we might be able to
12   finish in 15 minutes.  Maybe 30 minutes.
13   BY MR. KAHN:
14       Q.   Okay.  Now, in terms of Defendant Vickers
15   and the way he acted in Plaintiff's Exhibit 1.2, is
16   there anything wrong with the way he acted?
17            MS. NAIR:  Objection in regards to form and
18   as to what Investigator Nixon is here to testify as
19   to.  Anything that Investigator Nixon is testifying to
20   now will be his personal opinion.
21            MR. KAHN:  And, Ms. Nair, I'm happy to give
22   you a standing objection to any question outside the
23   scope.
24            MS. NAIR:  No.  Thank you.  I'll object each
25   time.
```

```
 1        A.   Can I hear the question --

 2   BY MR. KAHN:

 3        Q.   You can answer unless you -- I can rephrase

 4   it or restate it for you.

 5             Do you think there's anything wrong with the

 6   way Defendant Vickers acted in Plaintiff's

 7   Exhibit 1.2?

 8        A.   Yes.

 9        Q.   Do you think that Defendant Vickers was

10   justified in his use of force?

11             MS. NAIR:   Objection as to form.   Anything

12   that Investigator Nixon testifies to is his personal

13   opinion and not a reflection of the city's opinion.

14        A.   Again, I would have handled it differently.

15   I wouldn't have tackled somebody like that for a

16   swiping of the hand.  So I would have handled -- I

17   would not have tackled.

18   BY MR. KAHN:

19        Q.   Okay.  And I want to -- I'm going to show

20   you another video clip that's been marked as

21   Plaintiff's Exhibit 4.2, if you'll give me just a

22   second to get it set up here.

23             Can you -- can you see the files on my

24   screen, sir?

25        A.    Yes, sir, I can.
```

```
1        Q.    Thank you.  Okay.  All right.

2              (Video plays.)

3   BY MR. KAHN:

4        Q.    Mr. Nixon, do you think there's anything

5   wrong with the way Defendant Vickers acted in

6   Plaintiff's Exhibit 4.2?

7        A.    Yes.

8              MS. NAIR:  Objection.  Anything that

9   Investigator Nixon testifies to is his personal

10  opinion, not a reflection of the city's opinion.

11       A.    Yes.

12  BY MR. KAHN:

13       Q.    And what do you think he did wrong?

14             MS. NAIR:  Same objection.

15       A.    When a person is requesting aid in the way

16  that your client was, we are to start an ambulance --

17  have an ambulance come and make that assessment.

18  BY MR. KAHN:

19       Q.    Do you think it's -- do you think the way

20  that Defendant Vickers spoke to Mr. Griffin was

21  appropriate?

22       A.    No.

23       Q.    All right.  I want to show you a document

24  that's been marked as Plaintiff's Exhibit 43.  Can you

25  see Plaintiff's Exhibit 43 on your screen?
```

1       A.    Yes.

2       Q.    All right.  Have you seen this document

3   before?  And I can scroll through it if you'd like to

4   see the entire document.

5       A.    It's my -- I think it's the one I prepared.

6   I authored this.

7       Q.    Okay.  And does Plaintiff's Exhibit 43

8   contain summaries of your investigation?

9       A.    Yes, it does.

10      Q.    All right.  So we'll look at page -28 of

11  this document.  Do you see -- I'm going to go ahead

12  and highlight it.  Do you see the highlighted text

13  that says, "SPO Vickers had to swerve the vehicle in

14  order to not be struck by the oncoming car"?

15      A.    Correct.

16      Q.    And, again, have you seen any video proof to

17  support Vickers' allegation?

18      A.    No.  Now, that -- what that is is

19  SPO Vickers -- that should be a summary of SPO

20  Vickers' statement.

21      Q.    Oh, okay.  So this --

22      A.    Yeah.

23      Q.    -- is -- this is --

24      A.    Because --

25      Q.    This does not contain your beliefs.  This is

1   just a summary of his -- of his --

2       A.   Correct.

3       Q.   -- statement?

4       A.   Right.  That's basically what he told me --

5   told me.  Yes.

6       Q.   Okay.  And so the findings in Plaintiff's

7   Exhibit 43 are based entirely on Vickers and Abad's

8   interviews and I guess interviews of the other

9   witnesses.  Is that -- is that right?

10      A.   The findings actually -- if you go -- you

11  scroll to the very bottom, this -- yeah.  This --

12  where it says, "This" --

13      Q.   Right here?

14      A.   -- "investigation finds" -- yeah.  That

15  right there are the facts.

16      Q.   And these are the facts as you had found

17  them to be --

18      A.   Correct.  Yes.

19      Q.   -- after your investigation?  Okay.

20      A.   Correct.  The other -- their statements are

21  more just what they said.  If they said the sky was

22  gray, then it goes in because it's part of their

23  statement.  But within "This investigation finds

24  that," that's where -- the facts.

25      Q.   Sorry.  I lost my place.  If you'll give me

Exhibit F

Griffin vs. City of Atlanta                    30(b)(6) Arthur Nixon                    9/22/2020

 1    just a second.

 2        A.    **Not a problem.**

 3            MS. NAIR:  Actually, this is a perfect time

 4    to take a pause.  We -- I need a five-minute break.

 5            MR. KAHN:  Okay.  We can do that.

 6            MS. NAIR:  Investigator Nixon, if you can go

 7    off camera and mute your microphone while we --

 8            THE WITNESS:  Okay.

 9            MS. NAIR:  -- go on our five-minute break.

10            THE WITNESS:  Okay.

11            MS. NAIR:  And we'll come back at 2 -- at

12    3:00.

13            MR. KAHN:  All right.

14            MR. BUTLER:  Before we go on break --

15    Ms. Nair, this is Jeb Butler -- just let me remind

16    everybody that Investigator Nixon is under oath.  So

17    it would be inappropriate and a violation of the rule

18    for anyone to speak with him about the deposition

19    during the break.

20            MS. NAIR:  Thank you.  Can -- thank you for

21    that reminder.

22            MR. BUTLER:  All right.

23            THE WITNESS:  Understood.

24            MS. NAIR:  Can we -- can we go off of

25    recording for just a half a second?  Off the record.

```
 1                  (OFF THE RECORD 2:54-3:00 P.M.)

 2    BY MR. KAHN:

 3         Q.   So let me -- I'm going to have up

 4    Plaintiff's Exhibit 43.  I'm going to reshare that

 5    with you, if you'll give me just a second here.

 6              MS. NAIR:  The meeting is not being recorded

 7    at this time.

 8              MR. KAHN:  Thank you, Ms. Nair.

 9              Madam Court Reporter, would you mind --

10    there we go.  Thank you.

11    BY MR. KAHN:

12         Q.   All right.  Now, Mr. Nixon, can you see

13    Plaintiff's Exhibit 43 on your screen?

14         A.   I do, yes.

15         Q.   All right.  Do you see the highlighted field

16    at the bottom of the screen that says, "Once he was

17    tackled, Mr. Griffin stopped resisting"?

18         A.   Yes.

19         Q.   I'll take this off.

20              Now, we just -- we just watched the video of

21    Mr. Griffin being tackled.  Right?

22         A.   Correct.

23         Q.   Do you think Mr. Griffin was resisting

24    arrest in that video?

25         A.   It's -- I believe when he swiped the hand,
```

Case 1:20-cv-02514-VMC   Document 89-6   Filed 05/03/21   Page 46 of 98
Exhibit F

Griffin vs. City of Atlanta          30(b)(6) Arthur Nixon          9/22/2020

1    **Officer Abad was attempting to get him in custody.**

2        Q.   Would you characterize -- I believe earlier

3    you called it a brush.

4        A.   Right.

5        Q.   Would you -- would you consider brushing off

6    Officer Abad's hand to be resisting arrest?

7        **A.   There is -- there is instances of passive**

8    **resistance where if I was to take somebody into**

9    **custody and they just laid on the floor prone and not**

10   **give me their arms and they just stiffen up, that's**

11   **resisting also.  Although it's passive resistance,**

12   **it's still resistence.**

13       Q.   Okay.

14       **A.   So when Abad grabbed his shoulder or his**

15   **shirt, it was to pull -- I believe it was to pull him**

16   **away from the car to get him in custody.  And when he**

17   **pushed his hand to the side -- now, also I believe**

18   **that was part of a statement that I wrote that as --**

19   **if that was part of a statement, that's what was told**

20   **to me.  That was -- that was not in my investigative**

21   **findings.**

22       Q.   Okay.  Do you -- do you think that

23   Defendant Abad was justified in his decision to grab

24   Mr. Griffin's arm?

25       **A.   Yes.**

Case 1:20-cv-02514-VMC    Document 89-6    Filed 05/03/21    Page 47 of 98

Exhibit F
Griffin vs. City of Atlanta              30(b)(6) Arthur Nixon              9/22/2020

1    Q.    Okay.  All right.  I'm going to reshare the

2    screen.  This is still Plaintiff's Exhibit 43.  Can

3    you see the highlighted quotation at the top that

4    says, "Yeah.  Several minutes after he was in

5    handcuffs and we tried to get him up, he did complain

6    that, uh, his foot or his leg was hurt"?

7    **A.    Yes.**

8    Q.    So is it fair to say that Defendant Vickers

9    and Abad knew that Mr. Griffin was injured after the

10   tackle?

11   **A.    Yes.**

12   Q.    And isn't it true that when -- or isn't it

13   true that police officers are supposed to request

14   medical attention when a -- when a person is seriously

15   injured?

16   **A.    Yes.**

17   Q.    And the police officers in this case did not

18   call an ambulance.  Is that correct?

19   **A.    Correct.**

20   Q.    Now, do you see the -- there's another

21   highlighted field on the same page.  It says, "Uh, we

22   were as courteous as possible."

23   **A.    Yes.**

24   Q.    And you just watched a video a few minutes

25   ago where Vickers told Griffin that he was acting like

Case 1:20-cv-02514-VMC    Document 89-6    Filed 05/03/21    Page 48 of 98

Exhibit F

Griffin vs. City of Atlanta                30(b)(6) Arthur Nixon                9/22/2020

 1  a little girl.  Right?

 2      A.   Correct.

 3      Q.   Is that courteous behavior?

 4      A.   No --

 5           MS. NAIR:  Objection.

 6      A.   -- it's not.

 7           MS. NAIR:  Anything that Investigator Nixon

 8  tests to -- testifies to is his personal opinion, not

 9  the opinion of the city.

10           But you may answer as to your personal

11  opinion, Investigator Nixon.

12           THE WITNESS:  Yes, ma'am.

13      A.   In my opinion, no, it was not.  When he

14  said, "We were as courteous as possible," they had

15  just had almost a head-on collision.  I believe it was

16  raining that night.  So there was a lot of factors

17  that had them -- I'm not saying -- I'm not justifying

18  their behavior.  But there was a lot of factors that

19  lead them to say what they said, but I'm not

20  justifying their actions.

21  BY MR. KAHN:

22      Q.   Okay.  Were there any other APD employees

23  that played a role in the investigation?

24      A.   In the investigation?  No.  If you're

25  talking about the officers that responded after the

Exhibit F
Griffin vs. City of Atlanta                30(b)(6) Arthur Nixon                9/22/2020

```
 1    fact, I did not speak to them because they didn't

 2    witness what Mr. -- your client -- his allegation as

 3    far as the breaking of his foot.  They weren't there

 4    when that happened.

 5        Q.   Okay.  Do you know if the SUV that Vickers

 6    and Abad were in had a dashcam?

 7        A.   I don't believe it did.  Our dashcams in

 8    many of the cars are -- the technology in it is not

 9    like our body cameras.  And so with the vast majority

10    of them, they do not work.

11             In this instance, I want to -- I can't

12    remember for sure, but I want to -- I want to say that

13    I was told there was no video.

14        Q.   Okay.

15        A.   And if there was, I didn't get it.  It was

16    not provided to me.

17        Q.   I'm going to -- I'm going to share my screen

18    with you again and watch a -- we're going to watch a

19    few more videos.

20        A.   Yes.

21        Q.   All right.

22             (Video plays.)

23    BY MR. KAHN:

24        Q.   Do you think that --

25             MS. NAIR:  I have a question.  I apologize.
```

```
 1    Is this video marked as an exhibit?

 2           MR. KAHN:  Yes.  So this is Plaintiff's

 3    Exhibit 4.1.

 4           MS. NAIR:  Okay.  Can you please identify

 5    what the exhibits are when you're --

 6           MR. KAHN:  Sure.  Yeah.

 7           MS. NAIR:  Thank you.

 8    BY MR. KAHN:

 9       Q.   Mr. Nixon, do you see anything wrong with

10    what Defendant Abad is doing in that video?

11           MS. NAIR:  Objection --

12       A.   Yes.

13           MS. NAIR:  -- as to form.  This would be

14    Investigator Nixon's personal opinion, not the opinion

15    of the city.

16       A.   Yes.

17    BY MR. KAHN:

18       Q.   And what is -- what's wrong with what he's

19    doing in the video?

20       A.   After your client screamed from pain and

21    fell to the ground, he didn't render any type of aid

22    and did not call for an ambulance.

23       Q.   All right.  I'm going to show you another

24    video.  It's marked as Plaintiff's Exhibit 3.3.

25           (Video plays.)
```

Case 1:20-cv-02514-VMC    Document 89-6    Filed 05/03/21    Page 51 of 98

Exhibit F
Griffin vs. City of Atlanta              30(b)(6) Arthur Nixon                    9/22/2020

 1   BY MR. KAHN:

 2        Q.   Do you think there's anything wrong with the

 3   way that the police officers are behaving in that

 4   video?

 5             MS. NAIR:   Objection as to form.   The

 6   opinions of Mr. Nixon are his own personal opinions

 7   and not the opinions of the city.

 8             You may answer if you have an opinion,

 9   Investigator Nixon.

10        **A.   Yes.**

11   BY MR. KAHN:

12        Q.   And what do you believe is wrong with the

13   way that those police officers are --

14             MS. NAIR:   Same --

15   BY MR. KAHN:

16        Q.   -- behaving?

17             MS. NAIR:   Same objection.

18        **A.   That they were pulling -- or pushing him**

19   **into the -- into the wagon.**

20   BY MR. KAHN:

21        Q.   And what is this -- the vehicle that they

22   were pushing him into?  That doesn't appear to be an

23   ambulance.  What would that be called?

24        **A.   It's a prisoner -- the official name is a**

25   **prisoner transport vehicle, but we call it the wagon**

Case 1:20-cv-02514-VMC    Document 89-6    Filed 05/03/21    Page 52 of 98

Exhibit F
Griffin vs. City of Atlanta                30(b)(6) Arthur Nixon                        9/22/2020

1    like the -- in the old days they used to call it the

2    paddy wagon.  So we call it the wagon.  But the

3    official name of it is prisoner transport vehicle.

4         Q.    Okay.  Now I'm going to show you another

5    video that's been marked as Plaintiff's Exhibit 5.2.

6              (Video plays.)

7    BY MR. KAHN:

8         Q.    Mr. Nixon, is there anything -- and I'll

9    represent to you that the voice that you hear -- heard

10   saying that he "damn near shot him" was Officer Abad.

11   Is there anything wrong with Officer Abad saying that?

12        A.    No.  If he's -- if he's talking about when

13   he was walking down the driveway and your client was

14   driving up the driveway, he'd have to -- if he did

15   shoot, he'd have to articulate a little bit more how

16   he was in fear of his life and that sort of thing.

17   Was it reasonable; was it necessary.

18              What Officer Abad is doing is -- I call that

19   hype talk.  You know, talking stuff to get the other

20   officers -- you know, just talking stuff.  But it's

21   probably inappropriate to say now that we have these

22   body cameras, and the body cameras are picking up a

23   lot of personal conversations that are inappropriate

24   in nature.

25        Q.    Okay.  And would you -- you would consider

Case 1:20-cv-02514-VMC    Document 89-6    Filed 05/03/21    Page 53 of 98
Exhibit F
Griffin vs. City of Atlanta                30(b)(6) Arthur Nixon                9/22/2020

1   that to be an inappropriate conversation?

2       A.   If he -- if he -- like I said, if he did

3   fire the bullets -- because he'd have to articulate

4   that the car was coming at him, and he had no other

5   choice but to get out the way.

6           So what he was telling the other officer was

7   kind of out of text, because the elements were not

8   there for him to discharge his weapon.

9       Q.   Okay.

10      A.   The --

11      Q.   So the --

12      A.   -- other officer --

13      Q.   Oh, go ahead.

14      A.   Go ahead.

15      Q.   No.  I didn't mean to cut you off, sir.

16      A.   No, no.  No problem.

17          The other officer doesn't know that your

18  client was -- you know, the vehicle was moving very

19  slow or it might have been stuck.  So that's why I

20  said that Officer Abad saying that -- it doesn't match

21  what really happened.  So the conversation in itself

22  may be deemed inappropriate regarding these body

23  cameras, because the body cameras are subject to Open

24  Records.

25      Q.   Okay.  That makes sense.

Case 1:20-cv-02514-VMC    Document 89-6    Filed 05/03/21    Page 54 of 98

Exhibit F
Griffin vs. City of Atlanta                30(b)(6) Arthur Nixon                    9/22/2020

```
 1              Now, had Officer Abad -- you know, given the
 2    same video, that we have the same facts, had
 3    Officer Abad fired into the vehicle and shot
 4    Mr. Griffin, would that have been a proper shooting?
 5              MS. NAIR:  Objection.  Speculative and
 6    outside the context.  This goes beyond the scope, and
 7    it will require a separate investigation.
 8    Investigator Nixon can't speak to a hypothetical
 9    situation without more facts.
10              MR. KAHN:  Well, if we can answer, he can
11    speak to it.  Unless you're instructing him not to
12    answer, which I don't think there's any basis to do
13    that.
14    BY MR. KAHN:
15         Q.   Mr. Nixon, if you can answer, you can.
16         A.   If he was -- if he had discharged at the
17    time he had his weapon out, no, it would not have been
18    a valid use of force.
19         Q.   All right.  Now I want to show you a few
20    video clips -- a few more video clips about Donald
21    Vickers' body camera, if you'll give me just a second
22    here.
23              All right.  The video I'm about to show is
24    Plaintiff's Exhibit 2.5.
25              (Video plays.)
```

Case 1:20-cv-02514-VMC    Document 89-6    Filed 05/03/21    Page 55 of 98

Exhibit F

Griffin vs. City of Atlanta                    30(b)(6) Arthur Nixon                        9/22/2020

```
 1   BY MR. KAHN:

 2        Q.   Mr. Nixon, is there -- is there anything

 3   wrong with what Mr. Vickers -- Officer Vickers did in

 4   that video?

 5        A.   Yes.  He turned his body camera off.

 6        Q.   Are police officers allowed to turn their

 7   body camera off to save battery life?

 8        A.   I have heard of officers doing that.  Now,

 9   the camera he was using at that time was a -- we have

10   new cameras now with a little bit longer battery life.

11   But per our SOP, our SOP, I believe, identifies where

12   we can turn our body camera off to extend the life.

13        Q.   Okay.  I'm going to show you another video

14   marked as Plaintiff's Exhibit 3.1.

15             (Video plays.)

16   BY MR. KAHN:

17        Q.   Is there anything wrong with the way that

18   Officer Vickers is behaving in this video?

19        A.   Yeah.  It's -- and that's the way the SOP is

20   written, I believe.  Is that had something happened

21   from the time he turned his camera off to the time he

22   turned his camera back on, his body camera would not

23   have caught -- captured it.

24        Q.   Okay.  And we can see from the time stamp up

25   in the -- in the upper right corner -- it says
```

Case 1:20-cv-02514-VMC    Document 89-6    Filed 05/03/21    Page 56 of 98

Exhibit F
Griffin vs. City of Atlanta               30(b)(6) Arthur Nixon                        9/22/2020

```
 1   8:12:43 -- or 8:12:50.  I guess let me -- from -- at

 2   the beginning it says 8:12:42 when the camera comes

 3   back on.  Sorry.

 4           Do you see that up there?

 5       A.   Yes, I do.  Yes.

 6       Q.   And so when he turned the camera off at

 7   8:11:01, that would mean that he turned the camera off

 8   for less than two minutes.  Right?

 9       A.   Correct.

10       Q.   And something important to your

11   investigation could have happened in that two minutes.

12   Right?

13       A.   Correct.  Yes, sir.

14       Q.   Do you have any idea why Officer Vickers

15   turned his --

16           MS. NAIR:  Objection.

17   BY MR. KAHN:

18       Q.   -- camera off --

19           MS. NAIR:  I apologize.  Finish --

20           MR. KAHN:  You've got to let me --

21           MS. NAIR:  -- your question --

22           MR. KAHN:  -- finish --

23           MS. NAIR:  -- Mr. Kahn.

24   BY MR. KAHN:

25       Q.   Do you have any idea why Officer Vickers
```

Case 1:20-cv-02514-VMC    Document 89-6    Filed 05/03/21    Page 57 of 98

Exhibit F
Griffin vs. City of Atlanta          30(b)(6) Arthur Nixon          9/22/2020

 1  turned his camera off for just two minutes?

 2          MS. NAIR:  Objection --

 3      **A.   No.**

 4          MS. NAIR:  -- as to form.  That would be

 5  speculative.  And Investigator Nixon is not called as

 6  a fact witness.  He's called for his opinions for the

 7  City of Atlanta, and we're going way beyond the scope

 8  at this point, Mr. Kahn.

 9  BY MR. KAHN:

10      Q.   Mr. Nixon, if you have an answer, you're

11  free to answer.

12      **A.   I don't -- I don't know why he turned it**

13  **off.**

14      Q.   Does it seem wrong to you that he turned

15  his --

16          MS. NAIR:  Objection --

17  BY MR. KAHN:

18      Q.   -- camera off?

19          MS. NAIR:  -- as --

20          MR. KAHN:  You've got to --

21          MS. NAIR:  Objection --

22          MR. KAHN:  -- let me finish --

23          MS. NAIR:  -- as --

24          MR. KAHN:  -- my question before you object.

25          MS. NAIR:  I apologize.  Go ahead.

Case 1:20-cv-02514-VMC    Document 89-6    Filed 05/03/21    Page 58 of 98

Exhibit F
Griffin vs. City of Atlanta                30(b)(6) Arthur Nixon                              9/22/2020

```
 1   BY MR. KAHN:

 2        Q.   Does it seem wrong to you that

 3   Officer Vickers turned his camera off?

 4             MS. NAIR:  Objection as to form.  If

 5   Investigator Nixon can answer as to the speculative

 6   nature of your question --

 7             MR. KAHN:  You have --

 8             MS. NAIR:  -- he may.

 9             MR. KAHN:  -- to stop testifying for the

10   witness.  These speaking objections are borderline

11   unethical.  If you want to put your objection on the

12   record, you feel free to do that, but you can't

13   testify for this witness.

14             MS. NAIR:  Speculation is not unethical,

15   Mr. Kahn, and I'm not drawing speaking objections.

16   It's a speculative question.  And if Investigator

17   Nixon can answer, he would be answering as to his

18   personal opinion and not on behalf of the city.

19             And, Investigator Nixon, if you are able to

20   answer Mr. Kahn's question, you may.

21        A.   Can you repeat the question?

22   BY MR. KAHN:

23        Q.   Sure.  Does it seem wrong to you that

24   Officer Vickers turned his camera off?

25        A.   Per our SOP, yes.
```

```
 1        Q.   Does it seem suspicious to you that he

 2   turned his camera off?

 3             MS. NAIR:  Objection.  Same objection.

 4        A.   I don't know if I would use the word

 5   "suspicious," but it just -- it's wrong.

 6   BY MR. KAHN:

 7        Q.   Okay.  I'm going to show Plaintiff's

 8   Exhibit 5.2 again.

 9             (Video plays.)

10   BY MR. KAHN:

11        Q.   I'm sorry.  I'm going to -- I'm going to

12   withdraw that question.  I showed you the wrong video

13   clip.  I apologize.

14             Approximately, how many instances of police

15   misconduct have you investigated during your time with

16   OPS?

17        A.   Oh.  I would have to say a lot.  Now, when

18   you say "misconduct," are you talking about something

19   that may be criminal?

20        Q.   I guess let -- I'll -- I can rephrase the

21   question to narrow it a little bit.

22             Approximately, how many complaints of

23   excessive force have you investigated during your time

24   at OPS?

25        A.   Oh, wow.  A lot.  I've been here since 2012.
```

Case 1:20-cv-02514-VMC    Document 89-6    Filed 05/03/21    Page 60 of 98

Exhibit F

Griffin vs. City of Atlanta                30(b)(6) Arthur Nixon                9/22/2020

1      Q.   So would you say too many instances of

2   excessive force to count?

3      **A.   Yes.  Because, like I said, I'm on the**

4   **officer-involved shooting team, and those are --**

5   **they're police shootings, but they're also**

6   **use-of-force instances also.  So it's a lot.**

7      Q.   Okay.  In your experience with OPS, have you

8   ever seen another police officer state on the record

9   that another police officer used excessive force?

10     **A.   No.**

11     Q.   Have you ever --

12     **A.   Not --**

13     Q.   -- heard of -- I'm sorry.

14     **A.   No.  I was just going to say not that I can**

15  **recall, no.**

16     Q.   Okay.  Have you ever heard of a

17  department-wide practice where officers refuse to bear

18  witness against a fellow officer who is alleged to

19  have violated a citizen's rights?

20     **A.   A department-wide practice?**

21     Q.   Yes, sir.

22     **A.   No.**

23     Q.   Have you ever heard of a custom or, you

24  know, an informal practice where officers refuse to

25  testify against other officers alleged to have

```
 1    committed another citizen's rights?

 2         A.   Yes.  I have heard of that, yes.

 3         Q.   Is there a name for that practice?

 4         A.   Yeah.  The -- I can't think of it right now,

 5    but there is a name -- it does have a name.

 6         Q.   Have you ever heard of the phrase "the

 7    police code of silence"?

 8         A.   The police code of silence?  Not often as

 9    the other.  I can't think of the other one.  But I've

10    heard of that one, but not as much as I've heard the

11    other one.

12         Q.   Would the other phrase be "omerta"?

13         A.   I've never heard of that one.

14         Q.   Oh.  Well, what does the phrase "code of

15    silence" mean to you in the context of police work?

16         A.   That in the -- I'm going to speak on the

17    police forum, because I think every occupation has a

18    code of silence, if you want to use that terminology,

19    where you don't tell the misdeeds of another officer

20    while they were on duty.  And, like I said, that can

21    go for every occupation.

22         Q.   But that is a thing that exists in the City

23    of Atlanta Police Department?

24         A.   That, I don't know.  Because I've never --

25    I've never had interaction to talk with someone about
```

Griffin vs. City of Atlanta                30(b)(6) Arthur Nixon                9/22/2020

```
 1   that.  When they come here, that they're -- we have a
 2   truthfulness policy that you must tell the truth, and
 3   if we catch them in a -- in not telling the truth,
 4   then they'll need to tell the truth.
 5        Q.   Okay.
 6        A.   I have heard what you're speaking of, but I
 7   just have not come in contact with it.
 8        Q.   Okay.  Would you agree that police officers
 9   who testify against other police officers are
10   ostracized?
11        A.   I have not seen it, but I have heard it.
12   Not necessarily with this department, but I have seen
13   it -- I've heard about it with other departments.
14        Q.   Have you ever heard of a police officer who
15   testifies against another police officer referred to
16   as a rat or a snitch?
17             MS. NAIR:  I'm going to object at this
18   moment just because this line of questioning goes
19   beyond the scope.  And Investigator Nixon is
20   testifying as to his personal knowledge, not answering
21   on behalf of the city's opinion.
22             But you may answer if you have personal
23   knowledge.
24             THE WITNESS:  I don't have personal
25   knowledge.  No, ma'am.
```

Case 1:20-cv-02514-VMC    Document 89-6    Filed 05/03/21    Page 63 of 98
Exhibit F
Griffin vs. City of Atlanta                30(b)(6) Arthur Nixon                          9/22/2020

1    BY MR. KAHN:

2        Q.    Have you ever heard of APD officers

3    deactivating their body cameras to make sure their

4    stories line up before completing a report?

5        A.    I've heard of APD officers deactivating

6    their body cameras, but not for that purpose.  When we

7    see that they deactivate their cameras and we inquire,

8    some people have told me that they were on the phone

9    with their spouse; others -- they went to the

10   bathroom, but not for the purpose of completing a

11   report or anything like that.

12       Q.    Do you think there's a department-wide

13   problem with excessive force?

14       A.    No.  We have instances, but it's not -- it's

15   not a epidemic or anything like that.  We do have --

16   I'm not sure what the stats are to compare us

17   nationwide, but I don't think we have a real bad

18   problem with it.  We have our instances, but I don't

19   believe it's a epidemic.

20       Q.    All right.  I'm going to share my screen

21   with you.  I'm going to show Plaintiff's Exhibit 500.

22            Can you see Plaintiff's Exhibit 500 on your

23   screen?

24       A.    Yes.

25       Q.    And this is an 11Alive article that was

Griffin vs. City of Atlanta                30(b)(6) Arthur Nixon                    9/22/2020

```
 1   recently published.  I want to ask you something about

 2   this.  Turn to page 4.  Do you see -- do you see the

 3   highlighted paragraph that says, "According to the

 4   file Griggs said Howard gave him, there are currently

 5   32 police officers facing criminal prosecution in

 6   Fulton County.  At least 13 of those officers were

 7   involved in seven fatal shooting cases, going back

 8   four years"?

 9       A.    Yes.

10       Q.    Is that -- I read that correctly?

11       A.    Yes.  Now --

12       Q.    Did --

13       A.    -- I've seen that article also.  And the

14   "Griggs" is Gerald Griggs, and the 32 officers are --

15   we don't know if they're all Atlanta police officers,

16   because it says Fulton County.  So I'm assuming it's

17   East Point, Fulton County, all the counties that are

18   in -- all the cities that are in Fulton County to add

19   up to that 32.

20       Q.    Okay.  Would the -- does the fact that there

21   are 32 pending criminal cases against police officers

22   for excessive force indicate a potential systemic

23   problem to you?

24           MS. NAIR:  Objection as to form.

25       A.    No --
```

```
 1              MS. NAIR:  You may --

 2       A.    -- not in my opinion, only because the

 3   30- -- there may be 32 officers, but these -- this is

 4   going back however many years.

 5              Now, you say it's 32 officers in six months

 6   or maybe one year, yes, possibly.  But not knowing

 7   how -- 13 officers -- okay.  13 of the officers going

 8   back four years.  So it depends on the span that we're

 9   talking about.  Because I personally know of some of

10   our files that go back six years that he -- that's

11   sitting on his desk.

12   BY MR. KAHN:

13       Q.    Okay.  And do you see the next paragraph

14   that says, quote, "'We've got a serious police

15   brutality problem in the city of Atlanta; we've got a

16   serious police brutality problem in the state of

17   Georgia and a serious police brutality problem in the

18   Fulton County,' Griggs said"?

19       A.    Yes.

20       Q.    Do you agree that there's a serious police

21   brutality problem in the city of Atlanta?

22       A.    No.  I would like to see where he got his --

23   got -- to make that statement, I would have to see

24   where he got his facts from.

25       Q.    How many instances of police brutality would
```

Case 1:20-cv-02514-VMC   Document 89-6   Filed 05/03/21   Page 66 of 98

Exhibit F
Griffin vs. City of Atlanta          30(b)(6) Arthur Nixon                9/22/2020

```
 1    it take for you to consider it a serious problem in

 2    the City of Atlanta?

 3         A.   It depends on several factors.  The scope,

 4    the -- now, "brutality" is a broad word.  Were they

 5    beaten up?  Were they shot?  Were they -- you know,

 6    whatever specifically happened to the person?  It

 7    would -- it would -- each one would have to be taken

 8    in on its own merit.

 9              And if we start seeing that, okay, we've had

10    one this week, one next week, one next week, okay, we

11    have to see, okay, what's -- what exactly is going on,

12    and is it all coming from one particular zone.

13              That would be another issue we'd look at.

14    If all of them are coming from Zone 1, okay, we've got

15    something going on in Zone 1.  But if it's spread out

16    throughout the city, then it's nothing really that we

17    can identify.

18         Q.   Okay.  Does APD track allegations of

19    excessive force?

20         A.   Yes.  That would be in our file room.  Did

21    you -- with each specific officer?

22         Q.   I guess sort of just in general.  Like,

23    if -- is there a report that details all allegations

24    of excessive force?

25         A.   I'm sure there is, yes.
```

1      Q.   Are you aware of an annual report that the

2    city generates called the use of force report that

3    does such?

4      **A.   No.**

5      Q.   Are you -- are you familiar with the Atlanta

6    Citizen Review Board?

7      **A.   I am.**

8      Q.   Do you often deal with the ACRB?

9      **A.   Whenever we have a -- whenever they intake**

10   **an investigation, there is also a corresponding**

11   **investigation on this side, and that's usually when I**

12   **interact with the ACRB.**

13     Q.   When the ACBR -- excuse me.

14          When the ACRB issues a finding of

15   successive -- of excessive force, what does that

16   generally mean to OPS?

17     **A.   That the criteria they use to come to that**

18   **decision -- whatever force the officer used, it**

19   **violate -- it was able to -- they were able to**

20   **substantiate a sustained violation of use of force.**

21     Q.   Is the -- are the standards used by ACRB

22   different than the City of Atlanta standards?

23     **A.   That, I don't know.  I'm not sure what they**

24   **use as a -- as a -- to determine a sustain or not a**

25   **sustain or exoneration.  I'm sure our SOPs have -- are**

Case 1:20-cv-02514-VMC    Document 89-6    Filed 05/03/21    Page 68 of 98

Exhibit F
Griffin vs. City of Atlanta              30(b)(6) Arthur Nixon                    9/22/2020

 1   in there somewhere, but I'm not sure.

 2        Q.   How does an ACRB finding -- or I guess

 3   sustained finding of excessive force impact OPS's

 4   investigation?

 5        A.   I normally don't see their findings.  As a

 6   matter of fact, since the pandemic hit, I haven't seen

 7   any files from the ACRB, I don't think.  But in the

 8   past -- now, of course, everyone knows that the

 9   ACRB -- they are -- now have been given a lot of power

10   different from how they were when this incident

11   happened.

12           So if I'm -- if I'm correct, they could

13   sustain an officer on use of force, but it was still

14   up to the chief to make that recommendation if we

15   disagreed with it.

16        Q.   Um-hum.  Okay.  So then I --

17        A.   But that's different now.

18        Q.   Sorry.  I didn't mean -- I didn't mean to

19   interrupt.  If you --

20        A.   No, no, no.  But it's different now.  Now

21   that the ACRB has been given the authority that

22   they've been given now, their findings are going to be

23   taken into consideration along with our findings.

24        Q.   Okay.  So I guess are there times when the

25   ACRB finds excessive force but then OPS does not find

```
 1   excessive force?

 2        A.   I have heard.  I have heard some cases, yes.

 3        Q.   Okay.  Now, I think you verified the city's

 4   interrogatory responses.  Is that correct?

 5        A.   I think I did.  Did I?  You said "verified"?

 6        Q.   Yes, sir.

 7        A.   Yes.

 8        Q.   Okay.  And did you help provide the

 9   information to the city for the responses?

10        A.   Yes.

11             MR. KAHN:  Let's take a quick five-minute

12   break.  I think I'm pretty close to being done.  We'll

13   reconvene at, say, 3:40.

14             THE WITNESS:  Okay.

15             MR. KAHN:  All right.  Thank you.

16             (OFF THE RECORD 3:32-3:40 P.M.)

17   BY MR. KAHN:

18        Q.   Mr. Nixon, I want to thank you again for

19   your time.  I've just got a few more questions, and

20   then we'll let you get out of here.

21        A.   Yes, sir.

22        Q.   Just some really general background

23   questions.  I kind of want to revisit your training

24   and education just very briefly, and then we'll let

25   you go.
```

Griffin vs. City of Atlanta                  30(b)(6) Arthur Nixon                              9/22/2020

```
 1        A.   Yes, sir.

 2        Q.   So you said that -- I think you said that

 3   you had been an OPS investigator since 2006?

 4        A.   I've been an investigator since 2006, but

 5   here --

 6        Q.   Okay.

 7        A.   -- at OPS since 2012.

 8        Q.   Okay.  2012.  And so in the past eight years

 9   at OPS, is it fair to say that you have investigated

10   hundreds, if not thousands, of cases of excessive

11   force?

12        A.   I would say -- if I'm -- alone, maybe not --

13   I wouldn't say hundreds.  But a lot of times other

14   investigator -- I might assist with another

15   investigator on something, like, go and pull some

16   video off a wall or something like that.

17             So with that being said, maybe hundreds.

18   But myself, being assigned to me by myself, no, it's

19   not that much.

20        Q.   Okay.  And in terms of training, what sort

21   of training do you have that is relevant to, I guess,

22   analyzing use of force in real-world situations?

23        A.   Yes, sir.  Besides the training we did at

24   the academy on a yearly basis, I've also -- am a force

25   science analyst.  And what force science is is where
```

Griffin vs. City of Atlanta                    30(b)(6) Arthur Nixon                    9/22/2020

1    the application of force is broken down into a

2    science, basically, force science.  And when I went to

3    the certification course, they teach you how to look

4    at a situation from every optic available.

5            For instance, if you're chasing someone and

6    that person has a weapon in their hand and they turn

7    around and start shooting at you and you return fire,

8    striking them, the optics are that we shot them in the

9    back.  But he has a weapon in his hand, and he was

10   shooting at you.

11           So another example would be -- there's a

12   term called "looming."  Looming -- let's say if I'm

13   standing in the middle of a road and a car is coming

14   at me at a high rate of speed -- now, if it's from a

15   distance, the only thing we can see the car doing --

16   the car is becoming larger as we see it coming towards

17   us.

18           It's not as -- it's close that you think in

19   your mind that, hey, I'm going to shoot this car.  So

20   by the time you pull out your weapon and fire, it's

21   already -- it may already be passing you, but you made

22   up your mind to shoot while it was still off in the

23   distance.

24           And so when we shoot the side of a car, the

25   optics are we shot it as it was going past us, but the

Case 1:20-cv-02514-VMC    Document 89-6    Filed 05/03/21    Page 72 of 98

Exhibit F
Griffin vs. City of Atlanta          30(b)(6) Arthur Nixon                    9/22/2020

1    officer actually made up in their mind to shoot when

2    it was coming towards them.

3         Q.    Okay.  Yeah.  That makes sense.

4              And so I'm -- you said the name was -- of

5    the certification was force science analyst?

6         A.    Yeah.  Well, no.  Force science.  That's --

7         Q.    Force science.

8         A.    Yeah.  F-o-r-c-e.

9         Q.    Okay.  And what sort of course did you have

10   to take to get that certification?

11        A.    It was a five-day course.  And what it

12   does -- it just helps us -- well, helps me to better

13   look at these use-of-force cases very narrowly.  But

14   it's -- it doesn't change the decision-making.

15             I don't have -- I don't make decisions on

16   cases.  The decision-makers are those that are above

17   me.  So I can say something is bad all day long, but

18   it still can change as it goes up the chain of

19   command.

20        Q.    Okay.  So other than the force science

21   certification and the training at the academy, do you

22   have any other specialized training in the -- in the

23   area of excessive force?

24        A.    No, sir.  That would be it.

25        Q.    Okay.  Let's see.  And what's your -- what's

```
 1    your educational background, sir?

 2         A.    Yes.  I have my bachelor's degree in

 3    criminal justice, and I have my master's degree in

 4    public administration.

 5         Q.    And where are your degrees from?

 6         A.    Saint Leo and Walden University.  Saint Leo

 7    would be my bachelor's, and Walden would be my

 8    master's.

 9         Q.    Okay.  All right.  I have no further

10    questions.  Thank you very much for your time.

11         A.    Thank you very much.

12         Q.    We really appreciate it.

13         A.    Thank you.  Take care.

14                        EXAMINATION

15    BY MS. NAIR:

16         Q.    Investigator Nixon, I have a few questions

17    for you before we conclude.

18         A.    Yes, ma'am.

19         Q.    You are not required to review history of an

20    individual in order to competently complete your

21    investigation.  Is that accurate?

22              MR. KAHN:  Objection.

23         A.    Correct.  Yes, ma'am.

24              MR. KAHN:  Leading.

25
```

Case 1:20-cv-02514-VMC    Document 89-6    Filed 05/03/21    Page 74 of 98

Exhibit F
Griffin vs. City of Atlanta          30(b)(6) Arthur Nixon                    9/22/2020

 1   BY MS. NAIR:

 2       Q.   Are you required to review an individual's

 3   history to competently complete your investigation?

 4       **A.   No, ma'am.**

 5       Q.   Are you tasked with recommending discipline

 6   regarding a particular investigation?

 7       **A.   No, ma'am.**

 8       Q.   Have you ever been required or tasked with

 9   recommending discipline?

10       **A.   No, ma'am.**

11       Q.   If you are called upon to give your personal

12   opinion as to an investigation, is that informal

13   opinion?

14       **A.   Yes, ma'am, it is.**

15       Q.   Okay.  Now, you were -- you were called here

16   today to testify in regard to the city as to

17   Topics No. 1 and 11 only.  Is that correct?

18           MR. KAHN:  Objection.

19       **A.   Yes.**

20           MR. KAHN:  Leading.

21   BY MS. NAIR:

22       Q.   I'm sorry.  I didn't understand your answer.

23       **A.   Oh.  Yes.**

24           MR. KAHN:  Objection.  Leading.

25

Case 1:20-cv-02514-VMC    Document 89-6    Filed 05/03/21    Page 75 of 98

Exhibit F

Griffin vs. City of Atlanta              30(b)(6) Arthur Nixon                    9/22/2020

```
 1   BY MS. NAIR:

 2        Q.   And the other responses that you gave

 3   today -- were those responses based on your personal

 4   knowledge only?

 5        A.   Yes, ma'am.

 6        Q.   Now, you testified earlier in regards to how

 7   you would handle or how you would have handled certain

 8   instances for this incident.  Is that correct?

 9        A.   Yes, ma'am.

10             MR. KAHN:  Objection to form.

11   BY MS. NAIR:

12        Q.   Now, when you testified as to how you would

13   have handled that, was that based on your personal

14   experience as to how you would have handled it?

15        A.   Yes, ma'am.

16        Q.   Are there multiple ways in which an officer

17   can handle an instance?

18        A.   Yes, ma'am.

19             MR. KAHN:  Objection.  Vague.

20   BY MS. NAIR:

21        Q.   Are there multiple ways in which the

22   officers in this case could have handled the incident?

23        A.   Yes, ma'am.

24        Q.   And --

25             MR. KAHN:  Objection.  Vague.
```

Case 1:20-cv-02514-VMC    Document 89-6    Filed 05/03/21    Page 76 of 98

Exhibit F
Griffin vs. City of Atlanta                30(b)(6) Arthur Nixon                9/22/2020

```
 1   BY MS. NAIR:
 2       Q.   -- in those multiple ways that an individual
 3   could have handled the incident, does the SOPs provide
 4   different options for handling certain types of
 5   incidences?
 6       A.   I believe so.
 7       Q.   And you were talking about a case or you
 8   testified to a case, Graham, regarding the totality of
 9   the circumstances.  Do you recall responding to that
10   question?
11       A.   Yes, ma'am.
12            MR. KAHN:  Objection.  Leading.
13   BY MS. NAIR:
14       Q.   When you answered as to the totality of the
15   circumstances, do you recall what circumstances are
16   taken into consideration --
17            MR. KAHN:  Objection.
18   BY MS. NAIR:
19       Q.   -- from --
20            MR. KAHN:  Vague.
21   BY MS. NAIR:
22       Q.   -- Graham?
23       A.   The crime -- the crime that was committed.
24   The crime the suspects is alleged to have committed.
25       Q.   Do you know if there are any other
```

Case 1:20-cv-02514-VMC    Document 89-6    Filed 05/03/21    Page 77 of 98

Exhibit F
Griffin vs. City of Atlanta                    30(b)(6) Arthur Nixon                    9/22/2020

```
 1   circumstances that an officer can take into

 2   consideration?

 3        A.   Yeah.   There's two more, and I can't think

 4   of them right now.

 5        Q.   Okay.   You testified earlier as to body

 6   camera footage being extremely useful in

 7   investigations.

 8        A.   Yes, ma'am.

 9             MR. KAHN:  Objection.  Leading.

10             MS. NAIR:  Mr. Kahn, I haven't asked the

11   question.

12             MR. KAHN:  He answered your "not a

13   question."

14   BY MS. NAIR:

15        Q.   Do you recall testifying earlier as to video

16   cameras being helpful in investigations?

17        A.   Yes, ma'am.

18        Q.   Do you need a video camera or a body camera

19   in order for you to make a finding of fact?

20        A.   No.  No, ma'am.

21        Q.   So when you said that it is useful, what did

22   you mean by that?

23        A.   That it's -- instead of the totality of the

24   circumstances weighing -- if the officer tells us one

25   thing and the complainant tells us one thing, if we
```

Case 1:20-cv-02514-VMC    Document 89-6    Filed 05/03/21    Page 78 of 98
Exhibit F
Griffin vs. City of Atlanta            30(b)(6) Arthur Nixon                    9/22/2020

1   have body camera, the body camera can pretty much

2   definitively say, yes, it happened or, no, it

3   happened, as opposed to not having body camera where

4   we don't have any proof.  If the officer hit him,

5   we're looking for bruises on the person, any scars or

6   anything like that.  And if the person doesn't have

7   anything to substantiate the use of force that the

8   officer may have done, then it's a not sustained, as

9   opposed to having a body camera that shows the officer

10  slapping a person or doing whatever and not leaving a

11  mark.  So the body camera would sustain the officer

12  because we have that footage.

13      Q.   And you testified earlier when shown a video

14  of Investiga- -- or excuse me -- of Officer Vickers

15  turning off his body camera.  Do you recall reviewing

16  that video?

17      A.   Yes, ma'am.

18      Q.   Do you recall if that footage or the time in

19  which the footage was turned off -- do you recall if

20  that happened before or after Officer Vickers made

21  contact with the plaintiff in this case?

22      A.   I believe that was after.

23      Q.   And you were -- were you called to

24  investigate the use of force for Investigator -- or

25  for Officer Vickers?

Case 1:20-cv-02514-VMC    Document 89-6    Filed 05/03/21    Page 79 of 98

Exhibit F
Griffin vs. City of Atlanta          30(b)(6) Arthur Nixon          9/22/2020

1      **A.    Not necessarily the use of force, but the**

2  **whole investigation.**

3      Q.    Would that time frame have assisted you in

4  making a determination as to whether or not the use of

5  force was appropriate or not?

6      **A.    No.   No.   The use of force -- Vickers turned**

7  **his body camera on after that time frame.**

8      Q.    You testified earlier as to the amount of

9  cases that you handled regarding use of force.   Is

10  that correct?

11      **A.    Yes, ma'am.**

12          MR. KAHN:   Objection.   Leading.

13  BY MS. NAIR:

14      Q.    And in your testimony you described the

15  different types of use of force.   What are -- or is

16  there a wide range of use of force?

17      **A.    That a officer can do?**

18      Q.    Yes, sir.

19      **A.    Yes.   There's -- if we use our utility belt,**

20  **we have pepper spray, ASP baton, the weapon, Taser,**

21  **physical, you know, hands-on.   Those are just off the**

22  **top of my head.**

23      Q.    Is drawing -- or excuse me.

24          Is discharging your weapon also use of

25  force?

Case 1:20-cv-02514-VMC    Document 89-6    Filed 05/03/21    Page 80 of 98

Exhibit F

Griffin vs. City of Atlanta                30(b)(6) Arthur Nixon                9/22/2020

 1        A.    Yes, ma'am.

 2        Q.    Is discharging your weapon but not making

 3   contact with someone use of force?

 4        A.    The taking out the holster?

 5        Q.    No.  Discharging.

 6        A.    Oh.  Discharging?  Yes, ma'am.

 7        Q.    But not making contact with someone else --

 8   is that considered use of force as well?

 9        A.    I would say so just in a -- in a technical

10   way, even though we didn't hit the person.  If the

11   person had any other type of situation going on, if --

12   it can be.  I would have to actually look that up, but

13   I believe so.  But I may be wrong.

14        Q.    And is physically grabbing someone

15   considered use of force as well?

16        A.    Yes, ma'am.

17        Q.    I just have one or two more questions.

18        A.    No problem.

19        Q.    You have a -- you draw -- you drew up a

20   investigative report for this case.  Is that --

21        A.    Yes, ma'am.  Yes, ma'am.

22        Q.    -- accurate?

23              MR. KAHN:  Objection.  Leading.

24   BY MS. NAIR:

25        Q.    When you drew up the investigative report,

```
 1   did you do so for both Invest- -- for Officer Vickers

 2   and Officer Abad?

 3        A.   Yes.

 4        Q.   Were those separate investigative reports?

 5        A.   No.  It's all in that one file.

 6        Q.   When you did your investigation, you

 7   inter- -- did you interview both Vickers and Abad?

 8        A.   Correct.  Yes, ma'am.

 9        Q.   And are you required to put in your report,

10   your investigative report, whatever they tell you?

11        A.   A summarization and usually with the report

12   will also be -- we audio-record the interviews.  So

13   whatever we don't put on paper, the file also will

14   have the entire audio interview.

15        Q.   Okay.  So you are required to put whatever

16   they tell you in the investigation?

17        A.   A summary, yes, ma'am.  Um-hum.

18             MR. KAHN:  Objection.  Leading.

19   BY MS. NAIR:

20        Q.   Now, when you include what they put in the

21   investigative report, does that automatically mean

22   that is your finding of fact?

23        A.   No.  The finding of fact is -- say that

24   again.

25        Q.   Does what the individual you're
```

Case 1:20-cv-02514-VMC    Document 89-6    Filed 05/03/21    Page 82 of 98

Exhibit F

Griffin vs. City of Atlanta                30(b)(6) Arthur Nixon                        9/22/2020

1   investigating tell you automatically mean that you

2   make it a finding of fact?

3        A.   No, ma'am.  It's only what I can --

4        Q.   I'm sorry.

5        A.   It's only --

6             MS. NAIR:  Bless you, Mr. Kahn.

7        A.   It's only what I can prove.  The finding of

8   fact is what I can prove.  If they were at work that

9   day -- if I put in both Officer Vickers and Abad were

10  at work on April the 5th, I can prove that.

11  BY MS. NAIR:

12       Q.   Okay.  I don't believe I have any other

13  questions for you.  Thank you, Investigator Nixon.  I

14  appreciate your time.

15       A.   Thank you, ma'am.

16            MR. KAHN:  No further questions from us.

17            THE WITNESS:  Thank you, sir.

18            MR. KAHN:  Thank you.

19            (DEPOSITION CONCLUDED AT 3:57 P.M.)

20            (Pursuant to Rule 30(e) of the Federal Rules

21  of Civil Procedure and/or O.C.G.A. 9-11-30(e),

22  signature of the witness has been waived.)

23

24

25

```
 1          The following reporter and firm disclosures
     were presented at this proceeding for review by
 2   counsel:

 3                    REPORTER DISCLOSURES

 4          The following representations and
     disclosures are made in compliance with Georgia Law,
 5   more specifically:
                 Article 10(B) of the Rules and Regulations
 6   of the Board of Court Reporting (disclosure forms)
                 O.C.G.A. 9-11-28(c) (disqualification of
 7   reporter for financial interest)
                 O.C.G.A. 15-14-37(a) and (b) (prohibitions
 8   against contracts except on a case-by-case basis).
     - I am a certified reporter in the state of Georgia.
 9   - I am a subcontractor for Pope Reporting & Video.
     - I have been assigned to make a complete and
10     accurate record of these proceedings.
     - I have no relationship of interest in the matter
11     on which I am about to report which would
       disqualify me from making a verbatim record or
12     maintaining my obligation of impartiality in
       compliance with the Code of Professional Ethics.
13   - I have no direct contract with any party in this
       action and my compensation is determined solely by
14     the terms of my subcontractor agreement.

15                      FIRM DISCLOSURES

16   - Pope Reporting & Video was contacted to provide
       reporting services by the noticing or taking
17     attorney in this matter.
     - There is no agreement in place that is prohibited
18     by O.C.G.A. 15-14-37(a) and (b).  Any
       case-specific discounts are automatically applied
19     to all parties at such time as any party receives
       a discount.
20   - Transcripts:  The transcript of this proceeding as
       produced will be a true, correct, and complete
21     record of the colloquies, questions, and answers
       as submitted by the certified court reporter.
22   - Exhibits:  No changes will be made to the exhibits
       as submitted by the reporter, attorneys, or
23     witnesses.
     - Password-Protected Access:  Transcripts and
24     exhibits relating to this proceeding will be
       uploaded to a password-protected repository, to
25     which all ordering parties will have access.
```

Case 1:20-cv-02514-VMC    Document 89-6    Filed 05/03/21    Page 84 of 98

Exhibit F
Griffin vs. City of Atlanta                30(b)(6) Arthur Nixon                9/22/2020

1              C E R T I F I C A T E

2      STATE OF GEORGIA:

3      COUNTY OF COBB:

4              I hereby certify that the total transcript,

5      pages 1 through 81, represent a true, complete, and

6      correct transcript of the proceedings taken down by me

7      in the case aforesaid (and exhibits admitted, if

8      applicable); that the foregoing transcript is a true

9      and correct record of the evidence given to the best

10     of my ability.

11             The above certification is expressly

12     withdrawn upon the disassembly or photocopying of the

13     foregoing transcript, unless said disassembly or

14     photocopying is done under the auspices of myself and

15     the signature and original seal is attached thereto.

16             I further certify that I am not a relative

17     or employee or attorney of any party, nor am I

18     financially interested in the outcome of the actions.

19             This 28th day of September, 2020.

20

21     _____

22        Jennifer Davis-McLain, RMR, CRR, CRC, CCR-2496
          Georgia Certified Court Reporter
23

24

25

Case 1:20-cv-02514-VMC    Document 89-6    Filed 05/03/21    Page 85 of 98

Exhibit F

Griffin vs. City of Atlanta                30(b)(6) Arthur Nixon                9/22/2020

## WORD INDEX

**< 0 >**
**000027-000032**  3:*17*

**< 1 >**
**1**  6:*6*  11:*1*  14:*3, 4*
65:*14, 15*  73:*17*
83:*5*
**1.2**  3:*9*  34:*14*
38:*15*  39:*7*
**1:20-cv-02514-TWT**
1:*1*
**10**  2:*4*  3:*18*
**10(B**  2:*21*  82:*5*
**11**  6:*6*  11:*3*  14:*3,*
*4*  73:*17*
**11Alive**  62:*25*
**13**  63:*6*  64:*7*
**15**  27:*3, 6*  38:*8, 12*
**1-5**  1:*1*
**15-14-37(a**  82:*7, 18*
**1997**  7:*9*

**< 2 >**
**2**  43:*11*
**2.5**  3:*10*  53:*24*
**2:01**  1:*1*
**2:54-3:00**  44:*1*
**20**  27:*3, 6, 17*
**2006**  5:*16*  69:*3, 4*
**2012**  58:*25*  69:*7, 8*
**2019**  3:*16*
**2020**  1:*1*  83:*19*
**22**  1:*1*  3:*16*
**2496**  1:*1*
**28**  41:*10*
**28th**  83:*19*

**< 3 >**
**3.1**  3:*11*  54:*14*
**3.3**  3:*12*  49:*24*
**3:00**  43:*12*
**3:32-3:40**  68:*16*
**3:40**  68:*13*
**3:57**  81:*19*
**30**  27:*14, 18*  38:*12*
64:*3*

**30(b)(6**  1:*1*  3:*19*
4:*2*
**30(e**  81:*20*
**30303**  2:*11*
**30324**  2:*5*
**32**  63:*5, 14, 19, 21*
64:*3, 5*
**34**  3:*9*
**39**  3:*14*

**< 4 >**
**4**  63:*2*
**4.1**  3:*13*  49:*3*
**4.2**  3:*14*  39:*21*
40:*6*
**40**  3:*16*  27:*14, 18*
**404.330.6402**  2:*12*
**404.587.8423**  2:*5*
**43**  3:*16*  40:*24, 25*
41:*7*  42:*7*  44:*4, 13*
46:*2*
**49**  3:*12, 13*

**< 5 >**
**5**  3:*4*
**5.2**  3:*15*  51:*5*  58:*8*
**500**  3:*20*  62:*21, 22*
**5000**  2:*11*
**51**  3:*15*
**53**  3:*10*
**54**  3:*11*
**55**  2:*10*
**5th**  81:*10*

**< 6 >**
**62**  3:*20*

**< 7 >**
**72**  3:*4*

**< 8 >**
**8:11:01**  55:*7*
**8:12:42**  55:*2*
**8:12:43**  55:*1*
**8:12:50**  55:*1*
**81**  83:*5*

**< 9 >**

**9-11-28(c**  82:*6*
**9-11-30(e**  81:*21*
**97**  7:*10*
**99**  3:*18*  10:*21*
14:*5*

**< A >**
**ABAD**  1:*1*  33:*3*
34:*10*  35:*2, 3, 20,*
*25*  36:*5, 10, 14, 15,*
*17*  45:*1, 14, 23*
46:*9*  48:*6*  49:*10*
51:*10, 11, 18*  52:*20*
53:*1, 3*  80:*2, 7*
81:*9*
**Abad's**  29:*20, 25*
32:*24*  33:*10*  34:*21*
42:*7*  45:*6*
**ability**  8:*7*  83:*10*
**able**  8:*12*  11:*19*
23:*20*  38:*11*  57:*19*
66:*19*
**absolutely**  17:*7*
**abusive**  9:*7*
**academy**  69:*24*
71:*21*
**ACBR**  66:*13*
**Access**  82:*23, 25*
**accurate**  72:*21*
79:*22*  82:*10*
**accused**  11:*17*
19:*4*  20:*14*  23:*8, 9*
24:*17*  26:*1*
**ACRB**  66:*8, 12, 14,*
*21*  67:*2, 7, 9, 21, 25*
**acted**  34:*10*  38:*15,*
*16*  39:*6*  40:*5*
**acting**  46:*25*
**ACTION**  1:*1*
82:*13*
**actions**  47:*20*
83:*18*
**activate**  37:*16*
38:*4*
**actual**  16:*2*  20:*25*
**add**  21:*22*  26:*10*
63:*18*
**adds**  27:*1*

**administering**  4:*15*
**administration**  72:*4*
**admission**  13:*4, 18,*
*20*  14:*1, 11*
**admitted**  83:*7*
**admonishment**
22:*11*
**affairs**  5:*17*
**aforesaid**  83:*7*
**ago**  6:*23*  46:*25*
**agree**  17:*9, 12, 16*
24:*9*  61:*8*  64:*20*
**agreement**  4:*4*
82:*14, 17*
**ahead**  4:*11*  22:*16*
41:*11*  52:*13, 14*
56:*25*
**aid**  40:*15*  49:*21*
**Air**  7:*13, 14*
**alert**  24:*21, 23*
25:*1*
**ALISHA**  2:*6*  4:*21*
**allegation**  16:*14*
19:*17*  41:*17*  48:*2*
**allegations**  5:*22, 25*
10:*14*  24:*19*  27:*6*
31:*3, 18*  32:*18*
65:*18, 23*
**alleged**  59:*18, 25*
75:*24*
**alleging**  12:*13*
**allowed**  54:*6*
**altercation**  6:*18*
**ambulance**  40:*16,*
*17*  46:*18*  49:*22*
50:*23*
**amnair@atlantaga.g**
**ov**  2:*12*
**amount**  78:*8*
**analyst**  69:*25*  71:*5*
**analyzing**  69:*22*
**and/or**  81:*21*
**annual**  66:*1*
**answer**  6:*13*  9:*19*
18:*10*  23:*14, 20*
28:*16*  39:*3*  47:*10*
50:*8*  53:*10, 12, 15*
56:*10, 11*  57:*5, 17,*
*20*  61:*22*  73:*22*

Case 1:20-cv-02514-VMC    Document 89-6    Filed 05/03/21    Page 86 of 98

Exhibit F
Griffin vs. City of Atlanta                30(b)(6) Arthur Nixon                9/22/2020

answered 28:*23*
75:*14* 76:*12*
answering 57:*17*
61:*20*
answers 10:*7*
82:*21*
APD 5:*13, 23* 6:*24*
7:*2, 5, 10, 17* 8:*7*
20:*25* 32:*19* 47:*22*
62:*2, 5* 65:*18*
APD's 16:*6*
apologize 48:*25*
55:*19* 56:*25* 58:*13*
appear 50:*22*
APPEARANCES
2:*1*
applicable 83:*8*
application 70:*1*
applied 82:*18*
apply 8:*7, 12*
16:*24*
appreciate 72:*12*
81:*14*
approached 36:*6*
approaching 35:*10*
appropriate 40:*21*
78:*5*
Approximately
58:*14, 22*
April 7:*9* 81:*10*
area 71:*23*
arm 45:*24*
arms 45:*10*
arrest 7:*18* 36:*24*
37:*1* 44:*24* 45:*6*
arrestee 20:*10*
arrive 19:*18*
ARTHUR 1:*1* 3:*3*
5:*3, 10*
Article 2:*21* 62:*25*
63:*13* 82:*5*
articulate 51:*15*
52:*3*
asked 9:*21* 11:*6*
35:*25* 76:*10*
ASP 78:*20*
assessment 40:*17*
assigned 69:*18*

82:*9*
assist 69:*14*
assisted 78:*3*
assuming 35:*10*
63:*16*
ATLANTA 1:*1*
2:*5, 10, 11* 3:*19, 20*
4:*3, 5, 22* 5:*11*
9:*23* 10:*8, 15* 15:*9*
56:*7* 60:*23* 63:*15*
64:*15, 21* 65:*2*
66:*5, 22*
Atlanta's 12:*16*
attached 83:*15*
attempt 17:*17*
attempting 45:*1*
attention 46:*14*
attorney 3:*21*
4:*17* 82:*17* 83:*17*
attorneys 16:*11*
82:*22*
audio 80:*14*
audio-record 80:*12*
auspices 83:*14*
authored 41:*6*
authority 67:*21*
automatically 38:*1*
80:*21* 81:*1* 82:*18*
available 70:*4*
Avenue 2:*10*
awarding 23:*10*
aware 30:*3, 6*
31:*4* 66:*1*

< B >
bachelor's 72:*2, 7*
back 12:2 26:*21*
27:*19* 28:*9* 32:*9*
43:*11* 54:*22* 55:*3*
63:*7* 64:*4, 8, 10*
70:*9*
background 68:*22*
72:*1*
bad 62:*17* 71:*17*
based 42:*7* 74:*3,*
*13*
basically 18:*25*
42:*4* 70:2

basis 19:*15* 53:*12*
69:*24* 82:*8*
Bates-labeled 15:*22*
bathroom 62:*10*
baton 78:*20*
battery 54:*7, 10*
bear 59:*17*
beaten 65:*5*
becoming 70:*16*
beg 14:*21*
beginning 55:*2*
behalf 2:*2, 6* 9:*22*
57:*18* 61:*21*
behaving 50:*3, 16*
54:*18*
behavior 47:*3, 18*
belief 17:*20*
beliefs 41:*25*
believe 8:*20* 22:*25*
25:*11* 29:*13* 31:*15*
33:*14* 35:*14, 25*
37:*7* 44:*25* 45:*2,*
*15, 17* 47:*15* 48:*7*
50:*12* 54:*11, 20*
62:*19* 75:*6* 77:*22*
79:*13* 81:*12*
belt 78:*19*
best 83:*9*
better 71:*12*
Beyond 9:*17* 53:*6*
56:*7* 61:*19*
biggest 19:*24*
binding 4:*16* 10:*8*
bit 13:*23* 24:*1*
27:*17* 28:*6* 51:*15*
54:*10* 58:*21*
Bless 81:*6*
blue 37:*17*
Board 2:*21* 66:*6*
82:*6*
body 14:*16* 15:*3,*
*6* 28:*10, 11, 12, 22*
29:*6* 30:*12* 33:*12*
37:*6, 9, 10, 13* 48:*9*
51:*22* 52:*22, 23*
53:*21* 54:*5, 7, 12,*
*22* 62:*3, 6* 76:*5, 18*
77:*1, 3, 9, 11, 15*
78:*7*

body-worn 11:*16*
19:*20, 22* 20:*1, 2*
borderline 57:*10*
bottom 42:*11*
44:*16*
branch 7:*12*
break 13:*22* 43:*4,*
*9, 14, 19* 68:*12*
breaking 48:*3*
briefly 10:*19*
68:*24*
broad 7:*18* 65:*4*
broken 70:*1*
bruises 77:*5*
brunt 23:*5*
brush 45:*3*
brushed 34:*21*
36:2
brushing 45:*5*
brutal 6:*17*
brutality 64:*15, 16,*
*17, 21, 25* 65:*4*
bullets 52:*3*
BUTLER 2:*3, 4*
4:*20* 43:*14, 15, 22*

< C >
call 46:*18* 49:*22*
50:*25* 51:*1, 2, 18*
called 6:*15, 18*
24:*21* 25:*5* 35:*8*
45:*3* 50:*23* 56:*5, 6*
66:*2* 70:*12* 73:*11,*
*15* 77:*23*
cam 29:*6* 30:*12*
33:*12* 37:*6, 13*
camera 11:*16*
14:*16* 15:*3, 6*
19:*20, 22* 20:*1, 2*
28:*10, 12, 22* 36:*13*
43:*7* 53:*21* 54:*5, 7,*
*9, 12, 21, 22* 55:*2, 6,*
*7, 18* 56:*1, 18* 57:*3,*
*24* 58:*2* 76:*6, 18*
77:*1, 3, 9, 11, 15*
78:*7*
cameras 37:*9, 10*
48:*9* 51:*22* 52:*23*

Case 1:20-cv-02514-VMC    Document 89-6    Filed 05/03/21    Page 87 of 98

Exhibit F

Griffin vs. City of Atlanta                30(b)(6) Arthur Nixon                9/22/2020

54:*10*  62:*3, 6, 7*
76:*16*
**captain**  12:*8*
**captured**  38:*3*
54:*23*
**car**  35:*10*  36:*7*
38:*2*  41:*14*  45:*16*
52:*4*  70:*13, 15, 16,*
*19, 24*
**care**  72:*13*
**career**  9:*14*
**carry**  24:*10*
**cars**  48:*8*
**case**  4:*5*  10:*2, 5*
12:*11*  13:*16*  14:*17*
15:*9, 21*  16:*4, 22*
29:*17, 23*  46:*17*
74:*22*  75:*7, 8*
77:*21*  79:*20*  83:*7*
**case-by-case**  82:*8*
**cases**  10:*14*  63:*7,*
*21*  68:*2*  69:*10*
71:*13, 16*  78:*9*
**case-specific**  82:*18*
**catch**  25:*15, 16*
61:*3*
**caught**  54:*23*
**cause**  31:*15*  36:*24*
**CCR-2496**  83:*22*
**certain**  22:*20*  74:*7*
75:*4*
**certification**  8:*5*
70:*3*  71:*5, 10, 21*
83:*11*
**Certified**  1:*1*  82:*8,*
*21*  83:*22*
**certify**  83:*4, 16*
**chain**  21:*2, 7*
71:*18*
**change**  30:*11*
71:*14, 18*
**changes**  82:*22*
**characterize**  45:*2*
**charge**  21:*15*
**charges**  11:*16*
**chasing**  70:*5*
**Chattahoochee**
36:*25*  37:*5*

**chief**  21:*3, 5, 8, 15,*
*17, 18, 25*  22:*18*
24:*4*  32:*22*  67:*14*
**chiefs**  21:*14*
**choice**  52:*5*
**chose**  9:*25*  10:*4*
**circumstances**  75:*9,*
*15*  76:*1, 24*
**cities**  63:*18*
**Citizen**  66:*6*
**citizens**  31:*18*
32:*16*
**citizen's**  59:*19*
60:*1*
**CITY**  1:*1*  2:*10*
3:*18*  4:*3, 5, 21*
5:*11*  9:*23, 25*  10:*4,*
*8, 15*  12:*16*  15:*9,*
*21*  16:*12*  47:*9*
49:*15*  50:*7*  56:*7*
57:*18*  60:*22*  64:*15,*
*21*  65:*2, 16*  66:*2,*
*22*  68:*9*  73:*16*
**city's**  10:*5*  13:*25*
14:*10, 14*  34:*19*
35:*8*  39:*13*  40:*10*
61:*21*  68:*3*
**CIVIL**  1:*1*  4:*7*
81:*21*
**claims**  3:*21*
**Clayton**  31:*23*
32:*4*
**clearer**  15:*19*
**client**  34:*21*  36:*1,*
*6, 11, 16*  40:*16*
48:*2*  49:*20*  51:*13*
52:*18*
**clip**  33:*19*  39:*20*
58:*13*
**clips**  53:*20*
**close**  68:*12*  70:*18*
**closely**  21:*10*
**COA**  3:*17*
**COBB**  83:*3*
**code**  60:*7, 8, 14, 18*
82:*12*
**collision**  35:*12*
36:*24*  37:*4*  47:*15*
**colloquies**  82:*21*

**come**  8:*19, 21, 22*
23:*6*  25:*22*  32:*12*
40:*17*  43:*11*  61:*1,*
*7*  66:*17*
**comes**  11:*18*  12:*2*
22:*7*  55:*2*
**coming**  36:*12, 15*
52:*4*  65:*12, 14*
70:*13, 16*  71:*2*
**command**  21:*3, 7*
32:*23*  71:*19*
**committed**  60:*1*
75:*23, 24*
**compare**  62:*16*
**compensation**
82:*13*
**competently**  72:*20*
73:*3*
**complain**  46:*5*
**complainant**  19:*16,*
*21*  76:*25*
**complainant's**
20:*16*
**complaint**  19:*16*
20:*20*  25:*17*  26:*1*
**complaints**  31:*12,*
*25*  32:*16*  58:*22*
**complete**  72:*20*
73:*3*  82:*9, 20*  83:*5*
**completely**  19:*16*
**completing**  62:*4, 10*
**compliance**  82:*4, 12*
**component**  20:*24*
**computer**  25:*8, 11*
**conclude**  20:*19*
72:*17*
**CONCLUDED**
81:*19*
**conclusion**  19:*19*
**CONDUCTED**  1:*1*
**CONFERENCE**
1:*1*
**Connor**  16:*22*
**consequences**
24:*10, 14*
**consider**  9:*15*
45:*5*  51:*25*  65:*1*
**consideration**

**come**  67:*23*  75:*16*  76:*2*
**considered**  79:*8, 15*
**contact**  61:*7*
77:*21*  79:*3, 7*
**contacted**  82:*16*
**contain**  41:*8, 25*
**context**  26:*7*  53:*6*
60:*15*
**contract**  82:*13*
**contracts**  82:*8*
**conversation**  35:*23*
52:*1, 21*
**conversations**  11:*8*
51:*23*
**conversing**  35:*17*
36:*15*
**corner**  54:*25*
**correct**  11:*1*  14:*6*
17:*11, 15*  18:*4, 5*
33:*17*  38:*5*  41:*15*
42:*2, 18, 20*  44:*22*
46:*18, 19*  47:*2*
55:*9, 13*  67:*12*
68:*4*  72:*23*  73:*17*
74:*8*  78:*10*  80:*8*
82:*20*  83:*6, 9*
**correction**  7:*9*
**Corrections**  7:*4, 8*
**correctly**  63:*10*
**corresponding**
66:*10*
**COUNSEL**  2:*1, 22*
4:*13*  82:*2*
**count**  59:*2*
**counties**  63:*17*
**country**  31:*22*
**COUNTY**  1:*1*
3:*20*  31:*23*  32:*4*
63:*6, 16, 17, 18*
64:*18*  83:*3*
**course**  67:*8*  70:*3*
71:*9, 11*
**COURT**  1:*1*  2:*21,*
*22*  4:*12, 15*  5:*2*
14:*21*  44:*9*  82:*6,*
*21*  83:*22*
**courteous**  46:*22*
47:*3, 14*

Case 1:20-cv-02514-VMC    Document 89-6    Filed 05/03/21    Page 88 of 98

Griffin vs. City of Atlanta                30(b)(6) Arthur Nixon                Exhibit F
9/22/2020

**covers** 19:8
**COVID** 4:9
**CRC** 1:1 83:22
**crime** 75:23, 24
**criminal** 3:21
  6:15 7:18 58:19
  63:5, 21 72:3
**criteria** 66:17
**CRR** 1:1 83:22
**cuffs** 37:3
**currently** 63:4
**custody** 36:23
  45:1, 9, 16
**custom** 59:23
**cut** 52:15

**< D >**
**damn** 51:10
**dashcam** 37:5, 12,
  13, 14, 15 48:6
**dashcams** 48:7
**dated** 3:16
**Davis-McLain** 1:1
  83:22
**day** 71:17 81:9
  83:19
**days** 24:4 51:1
**deactivate** 62:7
**deactivating** 62:3, 5
**deal** 66:8
**dealing** 13:15
**December** 7:10
**decision** 18:3
  32:23 45:23 66:18
**decision-makers**
  71:16
**decision-making**
  71:14
**decisions** 71:15
**deemed** 52:22
**deescalate** 17:17
**Defendant** 3:18
  26:19 28:8 34:10
  35:20 38:14 39:6,
  9 40:5, 20 45:23
  46:8 49:10
**Defendants** 1:1
  2:6 4:24 5:1

**definitely** 17:18
  32:22
**definitively** 77:2
**degree** 72:2, 3
**degrees** 72:5
**Department** 2:10
  5:12 6:19 20:24
  21:16 60:23 61:12
**departments** 61:13
**department-wide**
  59:17, 20 62:12
**depends** 64:8 65:3
**deposed** 10:10, 12
**DEPOSITION** 1:1
  3:18, 23 4:3, 4, 6, 9
  11:11 14:19 15:20,
  25 16:12 43:18
  81:19
**deputy** 21:3, 8, 14,
  15, 16 22:18 24:4
  32:22
**described** 78:14
**DESCRIPTION**
  3:8
**designated** 6:9
  11:1
**designation** 20:11
**desk** 11:23 21:12,
  25 64:11
**details** 65:23
**determination** 78:4
**determine** 66:24
**determined** 82:13
**determining** 19:25
**difference** 19:9
**different** 21:14, 15
  29:12 66:22 67:10,
  17, 20 75:4 78:15
**differently** 35:20
  39:14
**direct** 82:13
**disagree** 14:12, 13
**disagreed** 14:9
  67:15
**disassembly** 83:12,
  13
**discharge** 52:8
**discharged** 53:16

**discharging** 78:24
  79:2, 5, 6
**disciplinary** 20:20
  23:11 28:24 30:2,
  3, 7, 11
**discipline** 21:1, 6
  22:2, 9, 20 23:10
  24:5 73:5, 9
**disciplined** 22:6
  23:2
**disclosure** 2:22
  82:6
**disclosures** 82:1, 3,
  4, 15
**discount** 82:19
**discounts** 82:18
**discovery** 10:5
  12:17
**discretion** 22:18
**discretionary** 22:24
**discussion** 14:24
**disqualification**
  82:6
**disqualify** 82:11
**dissuade** 24:11
**distance** 70:15, 23
**DISTRICT** 1:1
**DIVISION** 1:1
  21:4
**document** 10:20,
  23 40:23 41:2, 4,
  11
**documents** 13:7
  15:8, 21
**DOE** 1:1 26:1, 2
**doing** 18:15 36:1
  49:10, 19 51:18
  54:8 70:15 77:10
**DONALD** 1:1
  26:14, 16 27:21
  28:13, 21 29:3
  53:20
**doubt** 27:22 28:4
  33:5
**Dozens** 3:20
**draw** 79:19
**drawing** 57:15
  78:23

**drew** 79:19, 25
**driver** 32:8
**driveway** 51:13, 14
**driving** 51:14
**duly** 5:4
**duty** 60:20

**< E >**
**earlier** 27:13 45:2
  74:6 76:5, 15
  77:13 78:8
**Early** 25:6, 7, 18,
  21
**East** 63:17
**education** 68:24
**educational** 72:1
**eight** 69:8
**either-or** 20:18
**elements** 52:7
**employee** 83:17
**employees** 16:12
  47:22
**employee's** 21:2
**enforcement** 7:1, 7
**entails** 7:19
**entered** 14:22
  25:12, 17
**entire** 16:3 41:4
  80:14
**entirely** 42:7
**entirety** 13:11, 12
**epidemic** 62:15, 19
**equipped** 37:15
**ESQUIRE** 2:3, 6, 9
**Ethics** 82:12
**eventually** 21:11
**everybody** 43:16
**evidence** 83:9
**Exactly** 13:17
  65:11
**Examination** 3:4
  5:6 72:14
**EXAMINATIONS**
  3:1
**examined** 5:4
**example** 6:4 8:24
  27:13 70:11
**excessive** 5:23 6:1
  8:18 9:7, 16 10:15

Case 1:20-cv-02514-VMC    Document 89-6    Filed 05/03/21    Page 89 of 98

Exhibit F

Griffin vs. City of Atlanta                30(b)(6) Arthur Nixon                9/22/2020

16:*15*  24:*11, 14, 17,*
*20*  26:*5*  27:*6*
31:*12, 13*  32:*19*
58:*23*  59:*2, 9*
62:*13*  63:*22*  65:*19,*
*24*  66:*15*  67:*3, 25*
68:*1*  69:*10*  71:*23*
**Excluding**  11:*8*
**excuse**  33:*11*
66:*13*  77:*14*  78:*23*
**EXHIBIT**  3:*8, 9,*
*10, 11, 12, 13, 14, 15,*
*16, 18, 20*  10:*21*
14:*5*  34:*14*  38:*15*
39:*7, 21*  40:*6, 24,*
*25*  41:*7*  42:*7*  44:*4,*
*13*  46:*2*  49:*1, 3, 24*
51:*5*  53:*24*  54:*14*
58:*8*  62:*21, 22*
**EXHIBITS**  3:*7, 23*
49:*5*  82:*22, 24*
83:*7*
**exists**  60:*22*
**exonerate**  20:*8*
**exonerated**  12:*5*
18:*24*  19:*10*
**Exoneration**  19:*3*
20:*3*  66:*25*
**experience**  7:*2*
59:*7*  74:*14*
**expressly**  83:*11*
**extend**  54:*12*
**extremely**  76:*6*

**< F >**
**fabricated**  19:*17*
**facet**  21:*15*
**facing**  63:*5*
**fact**  48:*1*  56:*6*
63:*20*  67:*6*  76:*19*
80:*22, 23*  81:*2, 8*
**factor**  19:*24*
**factors**  47:*16, 18*
65:*3*
**facts**  11:*25*  42:*15,*
*16, 24*  53:*2, 9*
64:*24*

**fair**  8:*6*  17:*19*
24:*13*  31:*11*  46:*8*
69:*9*
**fall**  21:*16*
**falls**  23:*1, 11*
**familiar**  16:*9*
21:*21*  22:*8*  66:*5*
**far**  15:*10*  18:*17*
48:*3*
**fatal**  63:*7*
**fear**  51:*16*
**Federal**  4:*6*  81:*20*
**feel**  57:*12*
**fell**  49:*21*
**fellow**  59:*18*
**field**  9:*16*  21:*4*
44:*15*  46:*21*
**figure**  34:*5*
**figured**  35:*11*
**FILE**  1:*1*  11:*12,*
*13*  15:*24*  16:*2, 3*
21:*11*  22:*4*  24:*24*
25:*23*  31:*8*  63:*4*
65:*20*  80:*5, 13*
**filed**  12:*11*
**files**  39:*23*  64:*10*
67:*7*
**financial**  82:*7*
**financially**  83:*18*
**find**  11:*25*  26:*5*
67:*25*
**finding**  66:*14*  67:*2,*
*3*  76:*19*  80:*22, 23*
81:*2, 7*
**findings**  42:*6, 10*
45:*21*  67:*5, 22, 23*
**finds**  42:*14, 23*
67:*25*
**finish**  38:*12*  55:*19,*
*22*  56:*22*
**finished**  13:*1*
**fire**  52:*3*  70:*7, 20*
**fired**  53:*3*
**Firm**  2:*4*  82:*1, 15*
**first**  5:*4*  7:*6*  12:*5,*
*23*  30:*5*
**five**  29:*13, 16*
**five-day**  71:*11*

**five-minute**  43:*4, 9*
68:*11*
**flip**  37:*17*
**floor**  45:*9*
**FO**  21:*3*
**focus**  13:*13*  35:*1*
36:*22*  37:*2*
**focused**  32:*9*
**focusing**  32:*8*
**FOD**  21:*4*
**following**  82:*1, 4*
**follows**  5:*5*
**foot**  46:*6*  48:*3*
**footage**  14:*16*
15:*6*  29:*6*  30:*12*
33:*12, 15*  37:*5, 6,*
*12*  76:*6*  77:*12, 18,*
*19*
**force**  5:*23*  6:*1*
7:*13, 14, 25*  8:*18*
9:*7, 12, 16*  10:*15*
16:*15*  17:*10, 13, 14,*
*17, 20, 21*  18:*3*
24:*10, 11, 14, 15, 18,*
*20, 25*  25:*14*  26:*2,*
*5, 14*  27:*6, 10*
31:*12, 13*  32:*19*
39:*10*  53:*18*  58:*23*
59:*2, 9*  62:*13*
63:*22*  65:*19, 24*
66:*2, 15, 18, 20*
67:*3, 13, 25*  68:*1*
69:*11, 22, 24, 25*
70:*1, 2*  71:*5, 6, 7,*
*20, 23*  77:*7, 24*
78:*1, 5, 6, 9, 15, 16,*
*25*  79:*3, 8, 15*
**F-o-r-c-e**  71:*8*
**forces**  26:*2*
**foregoing**  83:*8, 13*
**form**  18:*8*  22:*4*
23:*13, 18, 19*  34:*15*
35:*6*  38:*17*  39:*11*
49:*13*  50:*5*  56:*4*
57:*4*  63:*24*  74:*10*
**forms**  82:*6*
**forum**  60:*17*
**found**  6:*1*  23:*9*
24:*2*  42:*16*

**four**  10:*13*  24:*4*
29:*19*  63:*8*  64:*8*
**frame**  78:*3, 7*
**free**  6:*10*  56:*11*
57:*12*
**front**  25:*24*
**full**  5:*9*
**Fulton**  63:*6, 16, 17,*
*18*  64:*18*
**further**  72:*9*
81:*16*  83:*16*

**< G >**
**gauge**  25:*16*
**general**  37:*12*
65:*22*  68:*22*
**generally**  16:*9, 10,*
*15*  19:*25*  26:*23*
27:*5, 7*  66:*16*
**generates**  66:*2*
**Georgia**  1:*1*  2:*5,*
*11, 21*  7:*4, 8*  64:*17*
82:*4, 8*  83:*2, 22*
**Gerald**  63:*14*
**getting**  36:*23*  37:*2*
**girl**  47:*1*
**give**  6:*4*  10:*8*
20:*12*  21:*23*  23:*11*
33:*20*  38:*21*  39:*21*
42:*25*  44:*5*  45:*10*
53:*21*  73:*11*
**given**  22:*20*  26:*23*
31:*14*  53:*1*  67:*9,*
*21, 22*  83:*9*
**gives**  21:*24*
**glad**  30:*15*
**glanced**  14:*2*  15:*23*
**Glazier**  21:*5, 18*
**Glazier's**  21:*25*
**go**  4:*11*  22:*16*
27:*17*  28:*9*  30:*16*
41:*11*  42:*10*  43:*6,*
*9, 14, 24*  44:*10*
52:*13, 14*  56:*25*
60:*21*  64:*10*  68:*25*
69:*15*
**goes**  6:*7*  8:*9*
21:*25*  42:*22*  53:*6*
61:*18*  71:*18*

Case 1:20-cv-02514-VMC    Document 89-6    Filed 05/03/21    Page 90 of 98

Exhibit F
Griffin vs. City of Atlanta          30(b)(6) Arthur Nixon          9/22/2020

**going** 10:*19* 19:*25*
*25:3* 27:7 30:*9, 19,*
*22* 31:*8, 10* 33:*18*
34:*1* 39:*19* 41:*11*
44:*3, 4* 46:*1* 48:*17,*
*18* 49:*23* 51:*4*
54:*13* 56:7 58:*7,*
*11* 59:*14* 60:*16*
61:*17* 62:20, 21
63:7 64:*4, 7* 65:*11,*
*15* 67:*22* 70:*19, 25*
79:*11*
**good** 27:*11*
**grab** 45:*23*
**grabbed** 45:*14*
**grabbing** 79:*14*
**Graham** 16:*22*
75:*8, 22*
**gray** 42:*22*
**GRIFFIN** 1:*1*
3:*16* 4:*5* 36:*18*
40:*20* 44:*17, 21, 23*
46:*9, 25* 53:*4*
**Griffin's** 45:*24*
**Griggs** 63:*4, 14*
64:*18*
**ground** 49:*21*
**guess** 7:*17* 9:*6*
15:*15, 18* 25:*19*
26:*4* 30:*8, 18* 31:*9*
37:*11* 42:8 55:*1*
58:*20* 65:*22* 67:*2,*
*24* 69:*21*
**guideline** 23:*2*
**guidelines** 22:*19, 23*
**guilty** 18:*25* 19:7
**gun** 36:*6* 37:*1*
**guy** 32:*12, 13*

**< H >**
**half** 5:*14* 6:*23*
43:*25*
**hand** 34:*21* 36:*2*
39:*16* 44:*25* 45:*6,*
*17* 70:*6, 9*
**handcuffs** 46:*5*
**handle** 74:7, *17*

**handled** 37:*8*
39:*14, 16* 74:7, *13,*
*14, 22* 75:*3* 78:*9*
**handling** 75:*4*
**hands-on** 78:*21*
**happen** 24:*16*
**happened** 6:*22*
19:*23* 29:*15* 48:*4*
52:*21* 54:*20* 55:*11*
65:*6* 67:*11* 77:*2, 3,*
*20*
**happening** 31:*21*
**happy** 38:*21*
**head** 78:*22*
**head-on** 35:*12*
47:*15*
**hear** 39:*1* 51:*9*
**heard** 30:*8* 51:*9*
54:8 59:*13, 16, 23*
60:*2, 6, 10, 13* 61:*6,*
*11, 13, 14* 62:*2, 5*
68:*2*
**hearing** 30:*19*
31:*24* 34:*2*
**he'd** 51:*14, 15*
52:*3*
**help** 25:*2* 68:*8*
**helpful** 76:*16*
**helps** 71:*12*
**hesitate** 28:*6*
**hey** 70:*19*
**high** 70:*14*
**higher** 27:*17*
**highlight** 41:*12*
**highlighted** 41:*12*
44:*15* 46:*3, 21*
63:*3*
**hired** 7:*10*
**history** 26:*4* 28:*24*
30:*2, 3, 7, 11, 15, 20,*
*23* 72:*19* 73:*3*
**hit** 35:*12* 38:*2*
67:*6* 77:*4* 79:*10*
**holster** 36:*17* 79:*4*
**holstered** 35:*14, 25*
**hopefully** 25:*14*
**hour** 38:*9*
**Howard** 63:*4*

**hundreds** 69:*10, 13,*
*17*
**hurt** 46:*6*
**hype** 51:*19*
**hypothetical** 53:*8*

**< I >**
**idea** 55:*14, 25*
16:*19*
**identifies** 54:*11*
**identify** 4:*13* 49:*4*
65:*17*
**identities** 10:*1*
**III** 2:*3*
**impact** 67:*3*
**impartiality** 82:*12*
**important** 29:*24*
55:*10*
**impunity** 24:*15*
**inappropriate** 9:*8*
43:*17* 51:*21, 23*
52:*1, 22*
**incidences** 75:*5*
**incident** 21:*17*
67:*10* 74:8, *22*
75:*3*
**include** 80:*20*
**including** 4:*8*
**independent** 26:*18*
33:*2*
**independently** 17:*4*
**in-depth** 24:*19*
**INDEX** 3:*1, 7*
**indicate** 63:*22*
**individual** 72:*20*
75:*2* 80:*25*
**individual's** 73:*2*
**informal** 59:*24*
73:*12*
**information** 25:*12*
68:*9*
**infractions** 22:*21*
**injured** 46:*9, 15*
**inquire** 62:*7*
**instance** 6:*14*
48:*11* 70:*5* 74:*17*
**instances** 24:*25*
25:*14* 31:*2* 45:*7*
58:*14* 59:*1, 6*

62:*14, 18* 64:*25*
74:*8*
**instructed** 7:*24*
8:*2*
**instructing** 53:*11*
**instructor** 8:*4*
**instrumental** 20:*3*
**intake** 66:*9*
**inter** 80:7
**interact** 66:*12*
**interaction** 60:*25*
**interest** 82:7, *10*
**interested** 83:*18*
**internal** 5:*17*
**interrogatories**
14:*14*
**interrogatory**
13:*10, 15* 68:*4*
**interrupt** 67:*19*
**interview** 26:*19*
28:8, *10, 21, 25*
32:*25* 33:*6, 11*
80:7, *14*
**interviewed** 26:*16*
**interviewing** 27:*21*
29:*3* 30:*2*
**interviews** 42:*8*
80:*12*
**invest** 27:*9* 33:*11*
80:*1*
**Investiga** 77:*14*
**investigate** 5:*20, 22*
21:*23* 26:*9* 31:*16*
77:*24*
**investigated** 5:*25*
21:*10* 31:*13* 58:*15,*
*23* 69:*9*
**investigating** 9:*4*
16:*14* 81:*1*
**investigation** 3:*21*
8:*9, 23* 17:*2* 18:*21*
20:*19* 24:*19* 26:*6,*
*9, 11, 13* 27:*20*
31:*17* 32:*25* 41:*8*
42:*14, 19, 23* 47:*23,*
*24* 53:7 55:*11*
66:*10, 11* 67:*4*
72:*21* 73:*3, 6, 12*
78:*2* 80:*6, 16*

Case 1:20-cv-02514-VMC    Document 89-6    Filed 05/03/21    Page 91 of 98

Exhibit F
Griffin vs. City of Atlanta          30(b)(6) Arthur Nixon          9/22/2020

investigations
 25:22  26:23  27:12,
16  76:7, 16
Investigative  3:16
 16:2, 3  45:20
 79:20, 25  80:4, 10,
21
investigator  5:11,
 15  6:5  8:7, 11
 23:14, 19  26:15
 34:16, 17  35:7
 38:10, 18, 19  39:12
 40:9  43:6, 16  47:7,
 11  49:14  50:9
 53:8  56:5  57:5, 16,
 19  61:19  69:3, 4,
 14, 15  72:16  77:24
 81:13
involved  11:20
 14:17  24:23  63:7
involving  10:14
issue  6:16  65:13
issues  66:14
items  15:11
its  26:9  31:17
 65:8

< J >
JACQUITA  2:9
 4:25
JAMES  2:3
japarks@atlantaga.
gov  2:13
Jeb  4:20  43:15

jeb@butlerfirm.com
 2:6
Jennifer  1:1  83:22
job  5:9
JOHN  1:1  26:1, 2
justice  72:3
justified  39:10
 45:23
justify  17:21
justifying  47:17, 20

< K >
KAHN  2:3  3:4
 4:2, 18  5:7  6:8, 12

9:18  15:1  17:24
 18:9  23:16, 21, 24
 28:19  30:21  34:8,
 11, 13, 24  35:18
 36:4  38:11, 13, 21
 39:2, 18  40:3, 12,
 18  43:5, 13  44:2, 8,
 11  47:21  48:23
 49:2, 6, 8, 17  50:1,
 11, 15, 20  51:7
 53:10, 14  54:1, 16
 55:17, 20, 22, 23, 24
 56:8, 9, 17, 20, 22,
 24  57:1, 7, 9, 15, 22
 58:6, 10  62:1
 64:12  68:11, 15, 17
 72:22, 24  73:18, 20,
 24  74:10, 19, 25
 75:12, 17, 20  76:9,
 10, 12  78:12  79:23
 80:18  81:6, 16, 18
Kahn's  57:20
kept  37:1
kind  30:14  52:7
 68:23
knew  46:9
knock  34:22
know  6:9  18:17
 20:24  22:3, 5
 23:15  25:2, 25
 26:3  28:2  29:8
 30:1, 15  31:8  34:3
 35:16  36:12, 15
 37:2  38:9  48:5
 51:19, 20  52:17, 18
 53:1  56:12  58:4
 59:24  60:24  63:15
 64:9  65:5  66:23
 75:25  78:21
knowing  18:17
 64:6
knowledge  6:11
 30:10  61:20, 23, 25
 74:4
knows  67:8

< L >
labeled  10:21
laid  45:9

Lancerot  6:21
 27:13
land  21:12
language  9:8
larger  70:16
Law  2:4, 10  7:1, 7
 16:22  18:17  82:4
lawsuit  12:10  31:7
lawyers  11:9
lead  32:15  47:19
Leading  72:24
 73:20, 24  75:12
 76:9  78:12  79:23
 80:18
leaving  77:10
leg  46:6
Lenox  2:4
Leo  72:6
lesser  23:6
level  20:23
License  1:1
Lieutenant  12:7, 9
 21:24
life  25:3  51:16
 54:7, 10, 12
lights  37:17  38:1
line  61:18  62:4
list  11:5  21:4
little  13:22  15:19
 24:1  27:17  28:6
 47:1  51:15  54:10
 58:21
located  1:1
long  5:13, 15
 71:17
longer  6:19  38:9
 54:10
look  13:19, 24
 14:3  15:20  16:24
 18:11, 13  19:22
 22:1  26:11  41:10
 65:13  70:3  71:13
 79:12
looked  15:24  17:3
 30:1
looking  9:2, 5
 16:15  18:14  29:7
 30:12  77:5

looks  14:22
looming  70:12
lost  42:25
lot  13:9  27:23
 28:12  47:16, 18
 51:23  58:17, 25
 59:6  67:9  69:13
lying  28:5

< M >
ma'am  47:12
 61:25  72:18, 23
 73:4, 7, 10, 14  74:5,
 9, 15, 18, 23  75:11
 76:8, 17, 20  77:17
 78:11  79:1, 6, 16,
 21  80:8, 17  81:3,
 15
Madam  44:9
maintaining  82:12
major  21:24
majority  27:10
 48:9
making  25:9  78:4
 79:2, 7  82:11
man  32:7
mandatory  22:24,
25
MARIE  2:6  4:21
mark  77:11
marked  3:23
 39:20  40:24  49:1,
 24  51:5  54:14
master's  72:3, 8
match  52:20
Matt  4:18
matt@butlerfirm.co
m  2:6
matter  67:6  82:10,
17
MATTHEW  1:1
 2:3  32:24
mean  18:7  19:14
 21:8  30:23  34:22
 36:13  52:15  55:7
 60:15  66:16  67:18
 76:22  80:21  81:1
means  19:6
medical  46:14

Case 1:20-cv-02514-VMC    Document 89-6    Filed 05/03/21    Page 92 of 98

Exhibit F

Griffin vs. City of Atlanta          30(b)(6) Arthur Nixon          9/22/2020

**meeting** 14:*23*
30:*5* 44:*6*
**merit** 65:*8*
**merits** 26:*10* 31:*17*
**met** 25:*1* 30:*4*
**metro** 3:*20*
**microphone** 43:*7*
**middle** 70:*13*
**military** 7:*3, 4, 11, 12*
**MILLER** 2:*9* 4:*23*
**mind** 44:*9* 70:*19, 22* 71:*1*
**minutes** 38:*8, 12* 46:*4, 24* 55:*8, 11* 56:*1*
**misconduct** 5:*20* 18:*21* 58:*15, 18*
**misdeeds** 60:*19*
**moment** 33:*20* 38:*7* 61:*18*
**money** 20:*14, 15*
**monitoring** 25:*9*
**months** 64:*5*
**motion** 29:*11*
**moving** 52:*18*
**multiple** 74:*16, 21* 75:*2*
**mute** 43:*7*

**< N >**
**NAIR** 2:*6* 3:*4* 4:*21* 6:*5* 9:*17* 17:*23* 18:*8* 23:*13, 18* 28:*15* 30:*13* 34:*12, 15* 35:*6, 21* 38:*7, 17, 21, 24* 39:*11* 40:*8, 14* 43:*3, 6, 9, 11, 15, 20, 24* 44:*6, 8* 47:*5, 7* 48:*25* 49:*4, 7, 11, 13* 50:*5, 14, 17* 53:*5* 55:*16, 19, 21, 23* 56:*2, 4, 16, 19, 21, 23, 25* 57:*4, 8, 14* 58:*3* 61:*17* 63:*24* 64:*1* 72:*15* 73:*1, 21* 74:*1, 11, 20* 75:*1, 13, 18, 21*

76:*10, 14* 78:*13* 79:*24* 80:*19* 81:*6, 11*
**name** 5:*9, 10* 6:*20* 31:*9* 50:*24* 51:*3* 60:*3, 5* 71:*4*
**narrow** 58:*21*
**narrowly** 71:*13*
**nationwide** 62:*17*
**nature** 51:*24* 57:*6*
**NE** 2:*4*
**near** 51:*10*
**near-collision** 37:*6*
**necessa** 17:*7*
**necessarily** 9:*2* 61:*12* 78:*1*
**necessary** 16:*16, 18, 25* 17:*5, 7, 10, 20* 51:*17*
**need** 20:*7* 43:*4* 61:*4* 76:*18*
**never** 19:*23* 60:*13, 24, 25*
**new** 54:*10*
**night** 47:*16*
**NIXON** 1:*1* 3:*3* 5:*3, 8, 10* 6:*6, 13* 23:*14, 20* 34:*16, 18* 38:*10, 18, 19* 39:*12* 40:*4, 9* 43:*6, 16* 44:*12* 47:*7, 11* 49:*9* 50:*6, 9* 51:*8* 53:*8, 15* 54:*2* 56:*5, 10* 57:*5, 17, 19* 61:*19* 68:*18* 72:*16* 81:*13*
**Nixon's** 35:*7* 49:*14*
**normally** 67:*5*
**NORTHERN** 1:*1*
**nose** 19:*22*
**Notice** 3:*18* 4:*4*
**noticing** 4:*17* 82:*16*
**notification** 25:*20*
**November** 3:*16*
**number** 27:*1*
**numbers** 25:*9*
**numerous** 24:*18*

**N-word** 9:*3, 4*

**< O >**
**O.C.G.A** 81:*21* 82:*6, 7, 18*
**oath** 4:*16* 43:*16*
**object** 38:*24* 56:*24* 61:*17*
**objection** 4:*15, 19, 22, 24* 6:*5* 9:*17* 17:*23* 18:*8* 23:*13, 17, 18* 28:*15, 17* 30:*13* 34:*12, 15* 35:*6, 21* 38:*17, 22* 39:*11* 40:*8, 14* 47:*5* 49:*11* 50:*5, 17* 53:*5* 55:*16* 56:*2, 16, 21* 57:*4, 11* 58:*3* 63:*24* 72:*22* 73:*18, 24* 74:*10, 19, 25* 75:*12, 17* 76:*9* 78:*12* 79:*23* 80:*18*
**objections** 5:*1* 57:*10, 15*
**objective** 18:*4, 6, 12*
**obligation** 82:*12*
**occupation** 60:*17, 21*
**offhand** 35:*22*
**officer** 4:*15* 6:*14, 19* 7:*3, 4, 10, 20* 8:*17, 25* 9:*7, 11, 14, 15* 10:*16* 11:*17* 16:*17, 18, 25* 17:*6* 19:*21* 20:*14, 15* 21:*10* 22:*6* 24:*2, 5, 17, 24* 25:*13* 27:*12, 13* 28:*1, 14* 31:*13, 24* 32:*7, 10, 16, 20* 33:*3* 35:*2, 3* 36:*10, 17* 45:*1, 6* 51:*10, 11, 18* 52:*6, 12, 17, 20* 53:*1, 3* 54:*3, 18* 55:*14, 25* 57:*3, 24* 59:*8, 9, 18* 60:*19* 61:*14, 15* 65:*21* 66:*18* 67:*13* 71:*1* 74:*16* 76:*1, 24*

77:*4, 8, 9, 11, 14, 20, 25* 78:*17* 80:*1, 2* 81:*9*
**officer-involved** 10:*17* 26:*25* 27:*8* 31:*21* 32:*6* 59:*4*
**officers** 3:*20* 5:*23* 7:*25* 8:*3* 11:*19* 14:*17* 17:*10, 13, 16* 24:*11, 15* 31:*22* 46:*13, 17* 47:*25* 50:*3, 13* 51:*20* 54:*6, 8* 59:*17, 24, 25* 61:*8, 9* 62:*2, 5* 63:*5, 6, 14, 15, 21* 64:*3, 5, 7* 74:*22*
**officer's** 6:*20* 17:*19* 20:*10* 30:*15*
**official** 9:*11* 25:*17* 50:*24* 51:*3*
**Off-the-record** 14:*24*
**Oh** 12:*25* 13:*2* 41:*21* 52:*13* 58:*17, 25* 60:*14* 73:*23* 79:*6*
**old** 51:*1*
**omerta** 60:*12*
**Once** 20:*19* 25:*11, 12, 16* 44:*16*
**oncoming** 41:*14*
**ones** 12:*19* 13:*13*
**Open** 52:*23*
**operating** 8:*8, 13* 16:*7*
**operation** 21:*4*
**opinion** 30:*16* 34:*18, 19* 35:*7, 8* 38:*20* 39:*13* 40:*10* 47:*8, 9, 11, 13* 49:*14* 50:*8* 57:*18* 61:*21* 64:*2* 73:*12, 13*
**opinions** 22:*4* 50:*6, 7* 56:*6*
**opportunity** 36:*10*
**opposed** 77:*3, 9*
**OPS** 5:*18* 8:*7, 11* 58:*16, 24* 59:*7*

Case 1:20-cv-02514-VMC   Document 89-6   Filed 05/03/21   Page 93 of 98

Exhibit F
9/22/2020

Griffin vs. City of Atlanta                30(b)(6) Arthur Nixon

66:*16*  67:*25*  69:*3,
7, 9*
**OPS's**  67:*3*
**optic**  70:*4*
**optics**  70:*8, 25*
**options**  75:*4*
**oral**  22:*10*
**order**  41:*14*  72:*20*
76:*19*
**ordering**  82:*25*
**original**  83:*15*
**ostracized**  61:*10*
**outcome**  19:*25*
23:*11*  83:*18*
**outcomes**  18:*20, 22*
**outside**  6:*7*  18:*12*
34:*16*  37:*9*  38:*22*
53:*6*

**< P >**
**p.m**  1:*1*  44:*1*
68:*16*  81:*19*
**paddy**  51:*2*
**PAGE**  3:*2, 8*
41:*10*  46:*21*  63:*2*
**pages**  83:*5*
**pain**  49:*20*
**pandemic**  4:*10*
67:*6*
**paper**  80:*13*
**paperwork**  13:*9*
**paragraph**  63:*3*
64:*13*
**pardon**  14:*21*
**PARKS**  2:*9*  4:*25*
**part**  5:*17*  42:*22*
45:*18, 19*
**particular**  26:*9, 11*
65:*12*  73:*6*
**parties**  82:*19, 25*
**party**  82:*13, 19*
83:*17*
**passenger**  32:*9*
**passing**  70:*21*
**passive**  45:*7, 11*
**Password-Protected**
82:*23, 24*
**pause**  38:*7*  43:*4*

**pending**  63:*21*
**people**  32:*11*  62:*8*
**pepper**  78:*20*
**perceive**  27:*25*
**percent**  27:*14, 18*
**perception**  27:*24*
**perfect**  18:*19*  43:*3*
**performing**  26:*23*
**permitted**  4:*7*
**person**  18:*15*
23:*10*  40:*15*  46:*14*
65:*6*  70:*6*  77:*5, 6,
10*  79:*10, 11*
**personal**  6:*10*
22:*4*  34:*18*  35:*7*
38:*20*  39:*12*  40:*9*
47:*8, 10*  49:*14*
50:*6*  51:*23*  57:*18*
61:*20, 22, 24*  73:*11*
74:*3, 13*
**personally**  64:*9*
**phone**  62:*8*
**photocopying**
83:*12, 14*
**phrase**  60:*6, 12, 14*
**physical**  6:*17*
15:*20*  35:*24*  78:*21*
**physically**  79:*14*
**picking**  51:*22*
**picture**  29:*14*
**place**  24:*25*  42:*25*
82:*17*
**Plaintiff**  1:*1*  2:*2*
4:*19, 20*  12:*12*
77:*21*
**Plaintiff's**  3:*18*
10:*21*  12:*22, 23*
13:*25*  14:*5, 10, 14*
15:*16*  34:*14*  38:*15*
39:*6, 21*  40:*6, 24,
25*  41:*7*  42:*6*  44:*4,
13*  46:*2*  49:*2, 24*
51:*5*  53:*24*  54:*14*
58:*7*  62:*21, 22*
**play**  26:*13*
**played**  47:*23*
**plays**  34:*7*  40:*2*
48:*22*  49:*25*  51:*6*
53:*25*  54:*15*  58:*9*

**please**  4:*13, 17*
5:*8*  49:*4*
**point**  56:*8*  63:*17*
**Pointe**  2:*4*
**pointing**  36:*6*
**police**  3:*20*  5:*10,
11, 20*  7:*3, 16, 20,
25*  8:*2*  9:*14*  10:*16*
17:*9, 13, 16*  18:*21*
20:*9*  22:*5*  24:*2, 14*
27:*9*  28:*14*  46:*13,
17*  50:*3, 13*  54:*6*
58:*14*  59:*5, 8, 9*
60:*7, 8, 15, 17, 23*
61:*8, 9, 14, 15*  63:*5,
15, 21*  64:*14, 16, 17,
20, 25*
**policies**  18:*18*
**policy**  37:*9, 10, 12*
61:*2*
**Pope**  82:*9, 16*
**possible**  46:*22*
47:*14*
**possibly**  64:*6*
**potential**  63:*22*
**power**  67:*9*
**practice**  59:*17, 20,
24*  60:*3*
**preconceived**  30:*16*
**predating**  7:*2*
**preparation**  15:*25*
33:*10, 12*
**prepare**  11:*10*
14:*17*  16:*7, 8, 12*
28:*20*
**prepared**  41:*5*
**preparing**  15:*19*
**prepping**  31:*7*
**present**  2:*22*
**presented**  82:*1*
**pretty**  20:*6*  68:*12*
77:*1*
**prior**  3:*23*  7:*5, 11*
31:*11, 18, 24*
**prisoner**  50:*24, 25*
51:*3*
**probable**  31:*15*
36:*24*
**probably**  51:*21*

**problem**  22:*17*
36:*19*  43:*2*  52:*16*
62:*13, 18*  63:*23*
64:*15, 16, 17, 21*
65:*1*  79:*18*
**Procedure**  4:*7*
7:*19*  81:*21*
**procedures**  7:*18*
8:*8, 13*  16:*7*
**proceeding**  2:*23*
9:*11*  82:*1, 20, 24*
**proceedings**  82:*10*
83:*6*
**produced**  15:*9, 21*
16:*4*  82:*20*
**production**  12:*22,
24*  13:*7*  15:*10, 17*
**Professional**  82:*12*
**program**  25:*8, 11*
**prohibited**  82:*17*
**prohibition**  24:*9*
**prohibitions**  82:*7*
**prone**  45:*9*
**proof**  19:*3*  20:*6, 7,
11, 17*  41:*16*  77:*4*
**proper**  53:*4*
**properly**  37:*22*
**prosecution**  63:*5*
**prove**  19:*1, 7*  81:*7,
8, 10*
**provide**  68:*8*  75:*3*
82:*16*
**provided**  48:*16*
**public**  72:*4*
**published**  63:*1*
**pull**  45:*15*  69:*15*
70:*20*
**pulled**  32:*7*
**pulling**  50:*18*
**punched**  19:*21*
**punishment**  11:*17,
20, 22*
**purpose**  62:*6, 10*
**purposes**  4:*7*
**Pursuant**  2:*21*
3:*19*  4:*3, 6*  81:*20*
**pushed**  45:*17*
**pushing**  50:*18, 22*

Case 1:20-cv-02514-VMC    Document 89-6    Filed 05/03/21    Page 94 of 98

Exhibit F
Griffin vs. City of Atlanta                30(b)(6) Arthur Nixon                9/22/2020

**put**  26:7  29:*10*
  57:*11*  80:9, *13*, 15,
  20  81:9

< Q >
**question**  7:*18*
  23:*19*, 20, 22  38:22
  39:*1*  48:25  55:*21*
  56:24  57:6, *16*, 20,
  21  58:12, *21*  75:10
  76:*11*, 13
**questioning**  61:*18*
**questions**  6:10
  19:*8*  68:19, *23*
  72:*10*, 16  79:17
  81:*13*, 16  82:21
**quick**  68:*11*
**quotation**  46:*3*
**quote**  64:*14*

< R >
**raining**  47:*16*
**range**  23:*1*, 12
  24:*5*  78:*16*
**rat**  61:*16*
**rate**  70:*14*
**read**  13:*10*  63:10
**real**  24:*14*  62:17
**realize**  12:*25*
**really**  28:*3*  52:*21*
  65:*16*  68:22  72:12
**real-world**  8:8, *13*
  69:22
**reason**  37:*1*
**reasonable**  16:*17*,
  25  17:5, *13*  18:4
  51:*17*
**reasonableness**
  16:*16*, 21  17:4
**recall**  6:*22*  9:9, *20*
  33:9  59:*15*  75:9,
  15  76:15  77:*15*, 18,
  19
**receive**  25:*20*
**receives**  82:*19*
**recollection**  26:*18*
  33:*3*
**recommend**  21:*5*

**recommendation**
  11:22, 25  25:*10*
  67:*14*
**recommendations**
  20:*21*, 25
**recommending**
  73:5, *9*
**recommends**  22:*2*
**reconvene**  68:*13*
**record**  4:*14*  6:8
  34:*13*  38:*1*  43:25
  44:*1*  57:12  59:8
  68:*16*  82:*10*, 11, 21
  83:9
**recorded**  44:6
**recording**  37:*17*
  43:25
**Records**  52:*24*
**recruit**  6:*24*
**refer**  11:*13*
**referred**  61:*15*
**referring**  11:*14*
  32:5
**reflection**  39:*13*
  40:*10*
**refuse**  59:*17*, 24
**regard**  73:*16*
**regarding**  52:22
  73:6  75:8  78:9
**regards**  38:*17*  74:6
**Regulations**  2:*21*
  82:5
**relating**  82:*24*
**relationship**  82:*10*
**relative**  83:*16*
**relevant**  26:6
  69:*21*
**remember**  48:*12*
**remind**  43:*15*
**reminder**  43:*21*
**REMOTE**  2:*1*
**render**  49:*21*
**repeat**  57:*21*
**repeated**  24:*24*
**rephrase**  23:*25*
  39:*3*  58:20
**report**  9:*2*  62:*4*,
  11  65:*23*  66:*1*, 2

79:*20*, 25  80:9, *10*,
  11, *21*  82:11
**reported**  8:*17*, 25
  9:6
**Reporter**  1:*1*  2:*22*
  4:*12*  5:2  14:*21*
  44:9  82:*1*, 3, 7, 8,
  21, 22  83:22
**Reporting**  2:*21*
  82:6, 9, 16
**reports**  80:*4*
**repository**  82:*24*
**represent**  51:9
  83:5
**representations**
  82:4
**request**  12:22, *23*
  13:*3*, 6, 18, 20, 25
  14:*11*  15:*10*, 16
  46:*13*
**requesting**  40:*15*
**require**  53:7
**required**  17:*12*
  72:19  73:2, 8  80:9,
  15
**requires**  8:4  24:3
**reshare**  44:4  46:*1*
**resistance**  45:8, *11*
**resistence**  45:*12*
**resisting**  44:*17*, 23
  45:6, 11
**responded**  47:25
**responding**  75:9
**responses**  10:5
  12:*17*, 24  13:3, *6*,
  11, 25  14:*10*, 14
  68:*4*, 9  74:2, *3*
**restate**  39:*4*
**restaurant**  6:*15*
**result**  6:*18*  8:*21*,
  22
**return**  70:7
**review**  12:*10*, *16*,
  19  15:8, *14*  16:6
  28:24  66:6  72:19
  73:2  82:*1*
**reviewed**  11:*12*
**reviewing**  22:*4*

77:15
**revisit**  68:*23*
**rewatching**  29:*8*
**rewinding**  29:*10*
**right**  5:*8*  10:*19*
  11:*3*  18:*14*  19:11
  27:19  33:16, *19*
  34:*1*  35:22  40:*1*,
  23  41:2, *10*  42:4, *9*,
  13, 15  43:*13*, 22
  44:*12*, 15, 21  45:4
  46:*1*  47:*1*  48:*21*
  49:23  53:*19*, 23
  54:25  55:8, *12*
  60:*4*  62:20  68:*15*
  72:9  76:4
**rights**  59:*19*  60:*1*
**RMR**  1:*1*  83:22
**road**  35:*12*  70:13
**role**  26:*13*  47:23
**roles**  10:*1*  13:*16*
  14:8
**room**  24:*24*  31:8
  65:20
**Rule**  3:*19*  4:2
  23:*10*  24:3, 6
  43:*17*  81:20
**Rules**  2:*21*  4:6, 8
  23:*12*  81:20  82:5
**run**  35:*13*
**running**  36:*14*

< S >
**Saint**  72:*6*
**save**  54:*7*
**saw**  35:*16*  36:*12*,
  15
**saying**  19:*5*  20:*17*
  47:*17*  51:*10*, 11
  52:20
**says**  20:*15*  41:*13*
  42:*12*  44:*16*  46:*4*,
  21  54:25  55:2
  63:*3*, 16  64:14
**scars**  77:*5*
**scenarios**  8:8, *13*
**scheduled**  13:*14*
**science**  69:*25*  70:2
  71:5, *6*, 7, 20

Griffin vs. City of Atlanta                30(b)(6) Arthur Nixon                9/22/2020

**scope** 6:7 9:17 34:16 38:23 53:6 56:7 61:19 65:3
**screamed** 49:20
**screen** 10:20, 21 12:22 33:18, 21, 22 39:24 40:25 44:13, 16 46:2 48:17 62:20, 23
**scroll** 41:3 42:11
**seal** 83:15
**seat** 32:9
**second** 35:1 39:22 43:1, 25 44:5 53:21
**secondary** 28:11
**see** 8:14, 20 10:20 11:16, 19 12:1, 3, 5, 20 23:25 24:16 26:10 32:15 33:21, 25 36:13, 14 39:23 40:25 41:4, 11, 12 44:12, 15 46:3, 20 49:9 54:24 55:4 62:7, 22 63:2 64:13, 22, 23 65:11 67:5 70:15, 16 71:25
**seeing** 31:20 34:2 65:9
**seen** 9:15 10:23 24:8 29:21 31:6 37:5 41:2, 16 59:8 61:11, 12 63:13 67:6
**sense** 18:19 26:12 28:14 33:8 38:6 52:25 71:3
**separate** 53:7 80:4
**September** 1:1 83:19
**serious** 8:21 23:10 24:3 64:14, 16, 17, 20 65:1
**seriously** 46:14
**service** 7:14
**services** 82:16
**set** 23:12 39:22
**seven** 63:7

**share** 8:24 10:20 33:18 48:17 62:20
**shirt** 45:15
**shoot** 51:15 70:19, 22, 24 71:1
**shooting** 26:25 32:6 53:4 59:4 63:7 70:7, 10
**shootings** 10:18 27:9, 11, 25 31:21 59:5
**shot** 28:2, 3 51:10 53:3 65:5 70:8, 25
**shoulder** 34:21 45:14
**show** 19:3 33:18 34:1 39:19 40:23 49:23 51:4 53:19, 23 54:13 58:7 62:21
**showed** 58:12
**showing** 37:6
**shown** 77:13
**shows** 77:9
**side** 45:17 66:11 70:24
**signature** 81:22 83:15
**silence** 60:7, 8, 15, 18
**sir** 4:12 5:19, 21, 24 7:23 8:1, 4, 10, 15, 16 9:9, 13, 20 10:3, 6, 9, 11, 22, 24 11:2, 4, 7, 24 12:14 13:12, 17, 21 14:15 15:12 16:5, 10, 13 17:11, 15, 18, 22 18:23 20:22 33:23, 25 34:4 36:21 39:24, 25 52:15 55:13 59:21 68:6, 21 69:1, 23 71:24 72:1 78:18 81:17
**sit** 30:6 31:2
**sitting** 64:11
**situation** 9:1, 4 11:18 12:2 16:23, 24 17:17 20:9, 12,

13 30:17 31:23 32:4 53:9 70:4 79:11
**situational** 17:3
**situations** 8:21, 22 31:1 69:22
**six** 21:14 29:13, 16 64:5, 10
**sjmiller@atlantaga. gov** 2:13
**skip** 19:12
**sky** 42:21
**slapping** 77:10
**slow** 29:11 52:19
**snitch** 61:16
**software** 29:10
**solely** 82:13
**somebody** 39:15 45:8
**soon** 37:16, 17
**SOP** 54:11, 19 57:25
**SOPs** 16:9 66:25 75:3
**sorry** 12:25 13:22 17:25 21:21 22:14 23:16 32:6 37:23 42:25 55:3 58:11 59:13 67:18 73:22 81:4
**sort** 7:16 11:23 20:11 22:19 25:3 51:16 65:22 69:20 71:9
**span** 64:8
**speak** 9:22 11:1, 6 16:11 29:2 43:18 48:1 53:8, 11 60:16
**speaking** 24:7 27:5 35:15 57:10, 15 61:6
**specialized** 71:22
**specific** 27:20 35:3 65:21
**specifically** 10:17 11:14 15:14 65:6 82:5
**Speculation** 57:14

**speculative** 28:17 53:5 56:5 57:5, 16
**speed** 70:14
**spending** 29:7
**SPO** 41:13, 19
**spoke** 40:20
**spouse** 62:9
**spray** 78:20
**spread** 65:15
**STACI** 2:9 4:23
**staff** 32:23
**stamp** 54:24
**stand** 18:12
**standard** 8:8, 12 16:6, 20 18:4, 7
**standards** 66:21, 22
**standing** 38:22 70:13
**start** 6:24 7:6 37:17 40:16 65:9 70:7
**started** 4:13 30:18, 19
**state** 4:14 5:8 59:8 64:16 82:8 83:2
**statement** 2:22 41:20 42:3, 23 45:18, 19 64:23
**statements** 42:20
**STATES** 1:1
**stats** 62:16
**step** 26:21
**stiffen** 45:10
**stop** 36:10 57:9
**stopped** 44:17
**stories** 62:4
**story** 28:13 33:8
**strange** 28:7
**stranger** 18:14
**street** 36:25
**striking** 70:8
**struck** 41:14
**stuck** 52:19
**studying** 29:5
**stuff** 30:9 32:15 51:19, 20
**subcontractor** 82:9,

Case 1:20-cv-02514-VMC    Document 89-6    Filed 05/03/21    Page 96 of 98

Exhibit F

Griffin vs. City of Atlanta                30(b)(6) Arthur Nixon                9/22/2020

*14*

**subject** 8:*3* 52:*23*
**subjective** 17:*20*
**subjects** 9:*23*
**submitted** 2:*22*
82:*21, 22*
**subsequent** 24:*19*
**substantiate** 66:*20*
77:*7*
**successive** 66:*15*
**suggest** 22:*19*
**Suite** 2:*11*
**summaries** 41:*8*
**summarization**
80:*11*
**Summary** 3:*16*
41:*19* 42:*1* 80:*17*
**supervisor** 12:*3, 6*
**support** 41:*17*
**supposed** 24:*22*
25:*1, 16, 18* 37:*16*
46:*13*
**Sure** 4:*18* 13:*8, 9,
24* 15:*23* 23:*25*
27:*2* 32:*21* 48:*12*
49:*6* 57:*23* 62:*3,
16* 65:*25* 66:*23, 25*
67:*1*
**surfacing** 30:*18*
**suspect** 6:*16*
**suspects** 75:*24*
**suspension** 22:*11*
24:*3*
**suspicious** 58:*1, 5*
**sustain** 66:*24, 25*
67:*13* 77:*11*
**sustained** 12:*4*
18:*25* 19:*1, 4, 6, 9*
20:*18, 20* 22:*1*
23:*9* 27:*7, 12*
66:*20* 67:*3* 77:*8*
**sustaining** 20:*3*
**SUV** 48:*5*
**SW** 2:*10*
**swear** 4:*11*
**swerve** 41:*13*
**swiped** 44:*25*
**swiping** 39:*16*

**switch** 38:*4*
**sworn** 5:*4*
**system** 24:*22, 23,
25* 25:*4, 8, 13, 14*
**systemic** 63:*22*


**< T >**
**tackle** 34:*22* 35:*17*
46:*10*
**tackled** 35:*24*
36:*2* 39:*15, 17*
44:*17, 21*
**tackling** 36:*11*
**take** 17:*4* 20:*16*
26:*21* 32:*19* 43:*4*
44:*19* 45:*8* 65:*1*
68:*11* 71:*10* 72:*13*
76:*1*
**taken** 4:*3, 4, 6, 9*
65:*7* 67:*23* 75:*16*
83:*6*
**takes** 21:*25*
**talk** 51:*19* 60:*25*
**talking** 6:*16* 35:*9*
36:*18* 47:*25* 51:*12,
19, 20* 58:*18* 64:*9*
75:*7*
**Taser** 78:*20*
**tasked** 73:*5, 8*
**taught** 7:*24* 8:*2*
**teach** 70:*3*
**team** 26:*25* 59:*4*
**technical** 79:*9*
**technology** 48:*8*
**tell** 60:*19* 61:*2, 4*
80:*10, 16* 81:*1*
**telling** 52:*6* 61:*3*
**tells** 76:*24, 25*
**ten** 24:*4* 25:*13*
26:*2* 28:*2*
**tenth** 25:*15*
**term** 70:*12*
**terminate** 32:*19*
**terminated** 22:*12*
31:*22* 32:*10*
**termination** 32:*11*
**terminology** 60:*18*
**terms** 32:*24* 33:*10*
38:*14* 69:*20* 82:*14*

**testified** 5:*5* 9:*10*
74:*6, 12* 75:*8* 76:*5*
77:*13* 78:*8*
**testifies** 39:*12*
40:*9* 47:*8* 61:*15*
**testify** 6:*6* 9:*22*
10:*1, 4* 13:*14*
34:*17* 35:*8* 38:*18*
57:*13* 59:*25* 61:*9*
73:*16*
**testifying** 34:*18*
38:*19* 57:*9* 61:*20*
76:*15*
**testimony** 78:*14*
**tests** 47:*8*
**text** 41:*12* 52:*7*
**Thank** 5:*2* 7:*14,
15* 18:*2* 38:*24*
40:*1* 43:*20* 44:*8,
10* 49:*7* 68:*15, 18*
72:*10, 11, 13* 81:*13,
15, 17, 18*
**thereto** 83:*15*
**thing** 15:*16* 25:*3*
28:*1* 51:*16* 60:*22*
70:*15* 76:*25*
**things** 30:*19, 22*
31:*9* 37:*7*
**think** 12:*21* 28:*1,
5, 23* 29:*24* 30:*25*
31:*5* 34:*9* 35:*4, 20*
36:*9* 38:*11* 39:*5, 9*
40:*4, 13, 19* 41:*5*
44:*23* 45:*22* 48:*24*
50:*2* 53:*12* 60:*4, 9,
17* 62:*12, 17* 67:*7*
68:*3, 5, 12* 69:*2*
70:*18* 76:*3*
**thousands** 69:*10*
**time** 7:*2* 12:*8*
15:*2* 21:*17* 23:*23*
29:*6* 30:*5* 31:*14*
33:*15* 38:*25* 43:*3*
44:*7* 53:*17* 54:*9,
21, 24* 58:*15, 23*
68:*19* 70:*20* 72:*10*
77:*18* 78:*3, 7*
81:*14* 82:*19*

**time-consuming**
29:*9*
**times** 8:*25* 10:*12*
24:*18* 28:*3* 29:*17*
67:*24* 69:*13*
**title** 5:*9*
**today** 10:*8* 11:*9*
15:*20* 16:*7, 8* 30:*6*
31:*2* 73:*16* 74:*3*
**today's** 11:*10*
16:*12*
**told** 42:*4, 5* 45:*19*
46:*25* 48:*13* 62:*8*
**top** 38:*8* 46:*3*
78:*22*
**Topic** 11:*1, 3*
**Topics** 6:*6, 9* 11:*5*
14:*4* 73:*17*
**total** 29:*14* 83:*4*
**totality** 16:*23* 75:*8,
14* 76:*23*
**totally** 20:*22* 22:*24*
**track** 65:*18*
**training** 7:*16, 22*
68:*23* 69:*20, 21, 23*
71:*21, 22*
**transcript** 82:*20*
83:*4, 6, 8, 13*
**Transcripts** 82:*20,
23*
**transport** 50:*25*
51:*3*
**trespass** 6:*16*
**trial** 4:*8*
**tried** 46:*5*
**trigger** 24:*18, 22*
25:*18*
**Trinity** 2:*10*
**trouble** 34:*2*
**true** 8:*11* 46:*12,
13* 82:*20* 83:*5, 8*
**truth** 61:*2, 3, 4*
**truthfulness** 27:*22,
23* 33:*5* 61:*2*
**try** 34:*5*
**trying** 35:*13*
**turn** 12:*1* 20:*16*
54:*6, 12* 63:*2* 70:*6*

Case 1:20-cv-02514-VMC     Document 89-6     Filed 05/03/21     Page 97 of 98

Griffin vs. City of Atlanta                    30(b)(6) Arthur Nixon

Exhibit F
9/22/2020

**turned** 6:*17* 54:*5,*
*21, 22* 55:*6, 7, 15*
56:*1, 12, 14* 57:*3,*
*24* 58:*2* 77:*19*
78:*6*
**turning** 20:*15*
77:*15*
**Twenty-two** 5:*14*
**twice** 28:*3*
**two** 55:*8, 11* 56:*1*
76:*3* 79:*17*
**TYLER** 1:*1* 4:*5*
**type** 20:*7* 49:*21*
79:*11*
**types** 22:*9, 20*
75:*4* 78:*15*
**typically** 11:*21*

< U >
**Uber** 32:*8*
**uh** 46:*6, 21*
**Um-hum** 15:*18*
16:*10* 32:*14* 35:*19*
67:*16* 80:*17*
**undergone** 7:*21*
**understand** 9:*21,*
*25* 10:*7* 16:*21*
73:*22*
**understanding**
10:*25*
**Understood** 43:*23*
**unethical** 57:*11, 14*
**unfound** 19:*23*
20:*7*
**unfounded** 19:*14,*
*19*
**unfounding** 20:*4*
**Unh-unh** 29:*1*
**unit** 8:*20*
**UNITED** 1:*1*
**University** 72:*6*
**unnecessary** 9:*12*
**unreasonable** 6:*2*
24:*10*
**uploaded** 82:*24*
**upper** 54:*25*
**use** 4:*8* 6:*1* 7:*8,*
*25* 8:*18* 9:*3, 4, 15*
10:*15* 17:*10, 12, 13,*

*21* 18:*3* 24:*15, 25*
25:*14* 26:*2, 4, 14*
27:*10, 16* 30:*25*
39:*10* 53:*18* 58:*4*
60:*18* 66:*2, 17, 20,*
*24* 67:*13* 69:*22*
77:*7, 24* 78:*1, 4, 6,*
*9, 15, 16, 19, 24*
79:*3, 8, 15*
**useful** 76:*6, 21*
**use-of-force** 7:*21*
26:*22* 27:*11, 16*
30:*25* 31:*3* 59:*6*
71:*13*
**usually** 66:*11*
80:*11*
**utility** 78:*19*

< V >
**Vague** 74:*19, 25*
75:*20*
**valid** 53:*18*
**various** 9:*23* 10:*1*
18:*20* 22:*8*
**vast** 48:*9*
**vehicle** 37:*14*
41:*13* 50:*21, 25*
51:*3* 52:*18* 53:*3*
**vehicle's** 37:*15*
**verbatim** 82:*11*
**verified** 68:*3, 5*
**versus** 4:*5* 9:*7*
20:*10*
**VICKERS** 1:*1*
26:*14, 16, 19* 27:*20,*
*21* 28:*4, 8, 13, 21*
29:*3, 20* 30:*2, 3, 4,*
*5, 10* 31:*3* 34:*25*
35:*16, 24* 36:*2, 10,*
*14* 38:*14* 39:*6, 9*
40:*5, 20* 41:*13, 17,*
*19, 20* 42:*7* 46:*8,*
*25* 48:*5* 53:*21*
54:*3, 18* 55:*14, 25*
57:*3, 24* 77:*14, 20,*
*25* 78:*6* 80:*1, 7*
81:*9*
**VIDEO** 1:*1* 3:*9,*
*10, 11, 12, 13, 14, 15,*

*18* 9:*2, 5* 15:*3, 24*
20:*11* 29:*7, 19, 20,*
*23* 33:*19* 34:*2, 7,*
*10, 11, 14* 35:*5*
36:*9* 39:*20* 40:*2*
41:*16* 44:*20, 24*
46:*24* 48:*13, 22*
49:*1, 10, 19, 24, 25*
50:*4* 51:*5, 6* 53:*2,*
*20, 23, 25* 54:*4, 13,*
*15, 18* 58:*9, 12*
69:*16* 76:*15, 18*
77:*13, 16* 82:*9, 16*
**videos** 29:*13, 16,*
*18, 21, 22* 48:*19*
**VIDEOTAPED** 1:*1*
**view** 30:*11*
**violate** 66:*19*
**violated** 24:*3*
59:*19*
**violating** 23:*9*
**violation** 8:*14*
24:*6* 43:*17* 66:*20*
**voice** 51:*9*

< W >
**wagon** 50:*19, 25*
51:*2*
**waived** 81:*22*
**Walden** 72:*6, 7*
**walking** 51:*13*
**wall** 69:*16*
**want** 7:*8* 27:*1*
29:*11, 12, 13* 35:*1*
38:*7, 9* 39:*19*
40:*23* 48:*11, 12*
53:*19* 57:*11* 60:*18*
63:*1* 68:*18, 23*
**warning** 25:*6, 7, 18,*
*21*
**watch** 14:*16* 29:*14,*
*20* 48:*18*
**watched** 15:*2, 5*
28:*10, 12, 22* 29:*17*
33:*15* 44:*20* 46:*24*
**watching** 29:*8*
33:*12* 36:*9*
**way** 30:*15* 34:*10*
37:*8* 38:*15, 16*

39:*6* 40:*5, 15, 19*
50:*3, 13* 52:*5*
54:*17, 19* 56:*7*
79:*10*
**ways** 74:*16, 21*
75:*2*
**weapon** 35:*9*
36:*18, 20* 52:*8*
53:*17* 70:*6, 9, 20*
78:*20, 24* 79:*2*
**week** 65:*10*
**weighing** 76:*24*
**Well** 12:*7* 27:*23*
37:*16* 53:*10* 60:*14*
71:*6, 12* 79:*8, 15*
**went** 35:*15* 36:*3*
62:*9* 70:*2*
**we're** 25:*16* 31:*20,*
*24* 38:*8* 48:*18*
56:*7* 64:*8* 77:*5*
**We've** 64:*14, 15*
65:*9, 14*
**whatnot** 18:*18*
**wide** 78:*16*
**window** 35:*15*
**withdraw** 58:*12*
**withdrawn** 83:*12*
**Witness** 1:*1* 4:*11,*
*16* 43:*8, 10, 23*
47:*12* 48:*2* 56:*6*
57:*10, 13* 59:*18*
61:*24* 68:*14* 81:*17,*
*22*
**witnesses** 10:*2*
13:*16* 14:*8, 22*
29:*3* 42:*9* 82:*23*
**word** 20:*10* 58:*4*
65:*4*
**work** 48:*10* 60:*15*
81:*8, 10*
**working** 7:*6* 21:*9,*
*11* 37:*22*
**wow** 58:*25*
**write-up** 11:*15*
**written** 2:*22*
32:*22* 37:*8* 54:*20*
**wrong** 34:*9* 35:*4*
36:*5, 13* 38:*16*
39:*5* 40:*5, 13* 49:*9,*

Case 1:20-cv-02514-VMC    Document 89-6    Filed 05/03/21    Page 98 of 98

Exhibit F

Griffin vs. City of Atlanta                30(b)(6) Arthur Nixon                9/22/2020

*18* 50:*2, 12* 51:*11*
54:*3, 17* 56:*14*
57:*2, 23* 58:*5, 12*
79:*13*
**wrote** 12:*3* 45:*18*

**< Y >**
**y'all** 33:*19*
**Yeah** 16:*10* 19:*13*
20:*2* 22:*7* 24:*7*
32:*12* 37:*1* 41:*22*
42:*11, 14* 46:*4*
49:*6* 54:*19* 60:*4*
71:*3, 6, 8* 76:*3*
**year** 6:*23* 26:*24*
27:*4* 64:*6*
**yearly** 69:*24*
**years** 5:*14* 63:*8*
64:*4, 8, 10* 69:*8*
**Yesterday** 15:*4*
33:*15*

**< Z >**
**Zenelaj** 12:*7, 9*
**zone** 65:*12, 14, 15*
**zones** 21:*16*
**Zoom** 4:*9, 16*