# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

TYLER GRIFFIN,

       Plaintiff,

v.

CITY OF ATLANTA, DONALD
VICKERS, MATTHEW ABAD, and
JOHN DOE NO. 1-5,

       Defendants.

CIVIL ACTION
FILE NO. 1:20-cv-02514-TWT

---

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

James E. Butler, III
Georgia State Bar No. 116955
jeb@butlerfirm.com
Matthew R. Kahn
Georgia State Bar No. 833443
matt@butlerfirm.com

**BUTLER LAW FIRM**
10 Lenox Pointe
Atlanta, Georgia 30324
Telephone: (678) 940-1444
Facsimile: (678) 306-4646
*Attorneys for Plaintiff*

## 1.    <u>Introduction</u>

This is an excessive force case under 42 U.S.C. § 1983 against two police officers and the City of Atlanta.  Plaintiff seeks to hold the individual Defendants liable for using excessive force and failing to intervene.  *See Hadley v. Gutierrez*, 526 F.3d 1324 (11th Cir. 2008) (excessive force); *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919 (11th Cir. 2000) (failure to intervene).  Plaintiff seeks to hold the City liable for its widespread practice of failing to discipline police officers who use excessive force.  *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989) (failure-to-train/discipline theory of *Monell* liability).

Plaintiff respectfully asks that the Court deny Defendants' Motion for Summary Judgment because Defendants failed to file a separate statement of material facts as required by Local Rule 56.1.  *See Vaughan v. City of Sandy Springs*, No. 2011 WL 13177749, at *1 (N.D. Ga. Nov. 14, 2011).  In the absence of such a filing, there are no "undisputed facts" for the Court to consider.  *Id.*

Defendants' Motion also fails on the merits.  Multiple designees who testified for the City pursuant to Rule 30(b)(6) have admitted that the actions of

Defendants Vickers and Abad were unreasonable.[1]  The Chief of Police at the time of this incident, Erica Shields, has admitted that the City should have terminated Defendant Vickers, who has a lengthy disciplinary record, *before* Vickers ever encountered Plaintiff Griffin.[2]  Nationally-renowned expert Scott DeFoe has opined both that the officers' conduct was unreasonable and that the City's systemic failure to discipline its officers caused the injuries to Mr. Griffin.[3]

In seeking summary judgment, Defendants largely ignore the testimony of the City's own witnesses and barely mention DeFoe.  Of course, that turns the standard of review on its head.  This motion for summary judgment should not have been filed.

## 2.      <u>Statement of Material Facts.</u>[4]

---

[1] Nixon 30(b)(6) Dep., 39:5-17; Fite 30(b)(6) Dep., 16:24-17:4, 24:15-20, 27:22-24; Dean 30(b)(6) Dep., 34:14-25, 36:17-37:4, 64:18-23; Reese 30(b)(6) Dep., 69:4-70:11, 76:3-77:13.

[2] Shields Dep., 71:10-25.

[3] DeFoe Rule 26 Report at 17-24; DeFoe Suppl. Rule 26 Report at 1.

[4] The best evidence of Defendants' unconstitutional conduct comes from the Defendants' body worn cameras.  We hope that the Court will watch them, because the video conveys the facts better than our words can.  A Dropbox folder containing the full videos, as well as edited splices showing specific portions, are available for the Court at: https://www.dropbox.com/t/KwlDlwdi9DzfzQ3t .  The link also contains all other evidence, which is referenced throughout Plaintiff's Statement of Material Facts and this opposition brief.

## 2.1. Vickers and Abad pursued Tyler Griffin in an un-marked car.

The April 5, 2019 encounter began with Vickers and Abad following Tyler Griffin in an un-marked police car.[5] Defendants' car had no sirens or police markings that would allow a citizen to know it was a police car.[6] Mr. Griffin noticed he was being followed.[7] He thought he was going to be carjacked.[8] Mr. Griffin pulled into a private driveway to see if the car continued following him.[9] He turned his car around behind the house.[10]

Defendants stopped at the intersection of Bellemeade Avenue and Buchannan Street and got out of the unmarked car.[11] Defendant Abad approached Mr. Griffin's car with his gun and attached flashlight already unholstered and aimed toward Mr. Griffin's face.[12] Abad shouted at Mr. Griffin, still holding his gun and flashlight in Mr. Griffin's face.[13] *The first time that either Defendant*

---

[5] Vickers Dep., 26:14-16 (Ex 1).
[6] Abad Dep., 21:8-24 (Ex. 2); Vickers Dep., 26:14-27:16.
[7] Griffin Dep., 23:15-25:17, 31:10-17 (Ex. 3).
[8] Griffin Dep., 23:15-25:17, 31:10-17.
[9] Griffin Dep., 23:15-25:17, 31:10-17.
[10] Griffin Dep., 23:15-25:17, 31:10-17.
[11] Pl.'s Trial Ex. 1.2.
[12] Pl.'s Trial Ex. 1.2; Fite 30(b)(6) Dep., 9:4-13 (Ex. 4); Griffin Dep., 23:15-25:17.
[13] Pl.'s Trial Ex. 1.2.

*identified themselves as police officers was when Abad, with his gun out and held sideways, shouted "get out of the fucking car! Atlanta police!"*[14]

Once Mr. Griffin realized Abad was a police officer, he stopped the car and got out.[15] Before Mr. Griffin completely got out of the car, Abad grabbed him by the shirt and pulled him forward.[16] Mr. Griffin intuitively brushed Abad's hand away, but was otherwise docile.[17] Mr. Griffin was not resisting, trying to fight, or trying to flee.[18] After brushing Abad's hand away, Mr. Griffin stood still for about two full seconds and spoke calmly with Abad.[19] *Then* Vickers tackled Mr. Griffin, who was standing still and posed no threat to anybody.[20] Abad would later admit that he could have stopped Vickers, but did not.[21]

### 2.2. Defendants broke Mr. Griffin's ankle, then forced him to walk.

---

[14] Pl.'s Trial Ex. 1.2; Reese 30(b)(6) Dep., 41:4-6 (Ex. 5).
[15] Pl.'s Trial Ex. 1.2.
[16] Pl.'s Trial Ex. 1.2; Abad Dep., 22-24.
[17] Pl.'s Trial Ex. 1.2.
[18] Dean 30(b)(6) Dep., 27:10-28:12 (Ex. 6); DeFoe Rule 26 Report at 17 & 22 (Ex. 7); DeFoe Dep., 118:16-119:1, 120:19-122:3 (Ex. 8).
[19] Pl.'s Trial Ex. 1.3; Abad Dep., 46:21-24; Griffin Dep., 41:3-21.
[20] Abad Dep., 46:21-24.
[21] Abad Dep., 37:17-38:8.

The tackle broke Mr. Griffin's left ankle in three places.[22] Mr. Griffin cried out in pain and told the officers he was hurt.[23] None of the police officers called an ambulance.[24] Instead, Abad made Mr. Griffin stand and *forced him to walk on the broken ankle* while his hands were cuffed behind his back.[25] Mr. Griffin cried out in pain and begged for help.[26] Abad rolled his eyes as Mr. Griffin fell to the ground.[27]

As Mr. Griffin sat on the ground, Vickers bragged to another officer about tackling Mr. Griffin and laughed.[28] Vickers told Mr. Griffin, "I find that funny, man."[29] Vickers forced Mr. Griffin to his feet and made him walk on the broken ankle a *second* time.[30] Mr. Griffin cried out in pain.[31] Vickers said, "come on man, you're such a little girl right now."[32] Mr. Griffin fell to the ground a second time.[33]

---

[22] Pl.'s Resp. to Vickers's ROGs, ROG No. 6 (Ex. 9); Pl.'s Trial Ex. 30.1; Abad Dep., 25:5-20.
[23] Pl.'s Trial Ex. 1.4; Abad Dep., 47:14-21.
[24] Abad Dep., 30:24-31:9, 49:10-15, 55:13-56:1; Vickers Dep., 50:17-51:1.
[25] Pl.'s Trial Ex. 1.5 & 4.1; Abad Dep., 49:3-50:3.
[26] Pl.'s Trial Ex. 1.5 & 4.1.
[27] Pl.'s Trial Ex. 4.1 at 0:00:25; Reese 30(b)(6) Dep., 42:3-10.
[28] Pl.'s Trial Ex. 2.2; Abad Dep., 52:10-19.
[29] Pl.'s Trial Ex. 2.2; Vickers Dep., 56:9-12.
[30] Pl.'s Trial Ex. 4.2 & 5.1.
[31] Pl.'s Trial Ex. 4.2 & 5.1.
[32] Pl.'s Trial Ex. 2.2 & 4.2; Vickers Dep., 57:12-58:25; Abad Dep., 53:18-25.
[33] Pl.'s Trial Ex. 2.2 & 4.2.

While Mr. Griffin lay on the ground, Vickers continued joking about Mr. Griffin with another officer.[34] Still, none of the police officers called an ambulance.[35] Instead, Vickers forced Mr. Griffin to stand a *third* time.[36] Vickers forced Mr. Griffin to walk up to a prisoner transport van.[37] As Mr. Griffin struggled to get into the van with his hands cuffed behind his back, another officer grabbed Mr. Griffin by the broken ankle and shoved him into the van.[38] The police took Mr. Griffin to Grady Hospital. In the early morning hours of April 6, 2019, the emergency room doctors installed a plate and ten screws into Mr. Griffin's left ankle.[39]

### 2.3. The City admits wrongdoing but continues its policy of inaction.

In this litigation, the City denies that it did anything wrong.[40] It denies that its officers did anything wrong.[41] But the actual supervisors, instructors, and the former APD Chief of Police have something else to say. As demonstrated below, the City's *own* representatives testified that Vickers' use of force was

---

[34] Pl.'s Trial Ex. 2.2 & 4.2; Abad Dep., 54:9-11.
[35] Abad Dep., 49:10-15.
[36] Pl.'s Trial Ex. 3.2.
[37] Pl.'s Trial Ex. 3.3; Vickers Dep., 63:14-17; Abad Dep., 56:2-19.
[38] Pl.'s Trial Ex. 3.3; Abad Dep., 56:9-19.
[39] Pl.'s Trial Ex. 30.
[40] Def.'s Resp. to Pl.'s RFA, Nos. 7-8 (Ex. 10).
[41] Def.'s Resp. to Pl.'s RFA, Nos. 1-5.

unreasonable, that Defendants mistreated Mr. Griffin by forcing him to walk on a broken ankle and by mocking him, and that Defendants should have called an ambulance for Mr. Griffin.

### 2.3.1. Vickers' tackle was not reasonable.

Erika Shields was the Chief of Police on the night Mr. Griffin encountered Defendants and through the OPS investigations.[42] Chief Shields testified that Vickers' use-of-force was **excessive**.[43] Chief Shields testified that she "would not expect [Vickers] to be exonerated" based on the body camera footage.[44] She thought it was **problematic** that Vickers had been exonerated for his use-of-force on Mr. Griffin.[45]

Investigator Arthur Nixon is a veteran police officer with the internal affairs division of the Office of Professional Standards ("OPS").[46] Investigator Nixon investigates police misconduct for a living.[47] Investigator Nixon investigated

---

[42] Shields Dep., 11:16-18, 16:17-21 (Ex. 11).
[43] Shields Dep., 37:1-12, 45:12-20, 47:2-8; *see also* Shields Dep., 44:3-6 ("Q. Is it fair to say that Vickers' use of force was not necessary? A. It does not appear as though it was necessary.").
[44] Shields Dep., 52:16-20.
[45] Shields Dep., 52:21-22.
[46] Nixon 30(b)(6) Dep., 5:8-19 (Ex. 12).
[47] Nixon 30(b)(6) Dep., 5:20-24.

Vickers and Abad related to their treatment of Tyler Griffin.[48]  Investigator Nixon

testified, on behalf of the City, that Vickers' use of force was **not justified**.[49]

Senior Police Officer ("SPO") Patrick Fite is a use-of-force instructor for

APD.[50]  SPO Fite trained Vickers and Abad on use-of-force.[51]  SPO Fite testified,

on behalf of the City, that Vickers' use of force in tackling Mr. Griffin was **not

justified**.[52]

Sergeant Quentin Reese is a veteran police officer who oversees APD

personnel.[53]  Sergeant Reese testified that he would not have used the amount of

force that Vickers used.[54]  Sergeant Reese also testified that SPO Fite "is the use-

of-force authority" and that the jury should listen to SPO Fite's conclusions.[55]

Again, SPO Fite testified, on behalf of the City, that Vickers' use of force was **not

justified**.[56]

---

[48] Nixon 30(b)(6) Dep., 26:13-17; 32:24-33:4.
[49] Nixon 30(b)(6) Dep., 39:5-17.
[50] Fite 30(b)(6) Dep., 5:13-18, 6:8-13.
[51] Abad Dep., 8:6-12; Vickers Dep., 14:5-10.
[52] Fite 30(b)(6) Dep., 16:24-17:4, 24:15-20, 27:22-24.
[53] Reese 30(b)(6) Dep., 6:22-24.
[54] Reese 30(b)(6) Dep., 76:3-77:13.
[55] Reese 30(b)(6) Dep., 69:4-70:11.
[56] Fite 30(b)(6) Dep., 16:24-17:4, 24:15-20, 27:22-24.

Scott DeFoe is a nationally renowned use-of-force expert. DeFoe opined that both Defendants' use of force was excessive.[57] Specifically, DeFoe opined that Defendants' use-of-force was "unnecessary and unreasonable" because Mr. Griffin "was being compliant, offering no form of physical resistance that would necessitate any force. . ."[58]

### 2.3.2. Defendants made Mr. Griffin walk around on a broken ankle.

It is not okay to make an injured citizen walk around on a broken ankle.[59] That did not stop Defendants from doing it.[60] Right after the tackle, Mr. Griffin told Defendants his ankle was hurt.[61] Instead of calling an ambulance, Abad forced Mr. Griffin to stand and walk.[62] After seeing Mr. Griffin fall, Vickers made Mr. Griffin walk twice more.[63]

Sergeant William Dean is a veteran police officer.[64] The City appointed Sergeant Dean as its representative to speak on the City's beliefs and opinions

---

[57] DeFoe Rule 26 Report at 17-24; *see also* DeFoe Dep., 88:1-5, 118:16-119:1.
[58] DeFoe Dep., 118:16-119:1; *see also* DeFoe Dep., 120:19-122:3; Dean 30(b)(6) Dep., 27:10-19; Shields Dep., 45:12-20.
[59] Shields Dep., 37:13-18, 38:17-39:1; Abad Dep., 49:22-51:2; Vickers Dep., 51:5-52:2; Reese 30(b)(6) Dep., 43:9-24, 45:3-6; Dean 30(b)(6) Dep., 30:3-9.
[60] Pl.'s Trial Ex. 1.5, 3.2, 4.1, 4.2, & 5.1.
[61] Pl.'s Trial Ex. 1.4; Abad Dep., 30:21-23.
[62] Pl.'s Trial Ex. 1.5 & 4.1; Abad Dep., 48:9-49:15; Dean 30(b)(6) Dep., 31:1-19; Shields Dep., 38:17-39:1.
[63] Pl.'s Trial Ex. 4.2, 5.1, & 3.2; Abad Dep., 54:19-55:21.
[64] Dean 30(b)(6) Dep., 8:4-25.

about Defendants' conduct on April 5, 2019.[65]  Sergeant Dean testified, on behalf of the City, that it is **unacceptable** for a police officer to make an injured citizen walk on a hurt ankle.[66]  He criticized the Defendants' decision to make Mr. Griffin walk.[67]

On this point, even Vickers and Abad have agreed.[68]  Vickers testified that it was **not okay** for Abad to make Mr. Griffin walk around on a broken ankle.[69]  Likewise, Abad testified that police officers should not make injured citizens walk on broken ankles.[70]  Nevertheless, Abad and Vickers forced Mr. Griffin to walk around even though it was obvious he was in pain.[71]

### 2.3.3. Defendants should have called an ambulance.

---

[65] Dean 30(b)(6) Dep., 9:18-21.
[66] Dean 30(b)(6) Dep., 30:3-9, 34:14-25, 64:18-23.
[67] Dean 30(b)(6) Dep., 34:14-25, 36:17-37:4, 64:18-23.
[68] Vickers Dep., 51:21-52:2.
[69] Abad Dep., 50:7-13; Vickers Dep., 51:21-52:2.
[70] Abad Dep., 50:7-13.
[71] Pl.'s Trial Ex. 1.5, 3.2, 4.1, 4.2, & 5.1; Abad Dep., 49:3-51:2.

Vickers broke Mr. Griffin's ankle in three places.[72]  No one called an ambulance.[73]  Instead, Defendants marched Mr. Griffin around on his broken ankle and shoved him into a prisoner transport van.[74]  The witnesses in this case have uniformly agreed that APD officers are supposed to call an ambulance for a seriously injured citizen.[75]  Defendants knew that but did not do it.[76]

### 2.4. The City's systemic police brutality problem caused Plaintiff's injuries.

Plaintiff's expert Scott DeFoe has opined that "[t]he City of Atlanta's systemic and widespread failure to adequately train, discipline, and (when necessary) dismiss officers for use-of-force issues and the other issues referred to in Opinion Nos. 11-16 of my initial report was, more likely than not, the cause of the officers' misconduct against Tyler Griffin on April 5, 2019."[77]

---

[72] Traub IME Report ("I can say with a reasonable degree of medical certainty that the incident in which he was tackled by a police officer caused his ankle fracture and I can say with a reasonable degree of medical certainty that he did not have an ankle fracture prior to this. He got out of the car and was standing on his leg in no apparent pain at all. Therefore, it is my conclusion that this ankle fracture occurred with the take down in which a police officer tackled Mr. Tyler Griffin in a quite violent manner.") (Ex. 13).

[73] Abad Dep., 30:24-31:9; 49:10-15, 55:13-21; Vickers Dep., 50:17-51:1.

[74] Pl.'s Trial Ex. 3.2 & 3.3.

[75] Nixon 30(b)(6) Dep., 40:4-17, 46:12-19; Fite 30(b)(6) Dep., 20:18-21:15; Dean 30(b)(6) Dep., 34:15-25.

[76] Vickers Dep., 94:5-15; Abad Dep., 97:17-22.

[77] DeFoe Rule 26 Suppl. Report (Ex. 14); *see also* DeFoe Dep, 139:8-140:7, 140:8-141:18, 142:11-25, 148:7-149:17.

### 3. **Summary Judgment Standard**

At the summary judgment phase, the evidence must be "viewed in the light most favorable to the nonmoving party." *Favors v. City of Atlanta*, No. 20-12944, 2021 WL 915355, at \*2 (11th Cir. Mar. 10, 2021) (citing Fed. R. Civ. P. 56(a)). Summary judgment is *only* appropriate if, after viewing the evidence in the nonmovant's favor, there is no genuine dispute of material fact. *Id.*

### 4. **Argument**

#### 4.1. **There are no "undisputed facts" for the Court to consider.**

The Court should deny Defendants' Motion because there are no "undisputed facts" for the Court to consider. The Local Rules require a summary judgment movant to file "a separate, concise, numbered statement of the material facts to which the movant contends there is no genuine issue to be tried." *Vaughan v. City of Sandy Springs*, 2011 WL 13177749, at \*1 (N.D. Ga. Nov. 14, 2011) (citing *Galloway v. Ga. Tech. Auth.*, 182 Fed. App'x. 877, 883 (11th Cir. 2006)). The Local Rules specifically "warn that this Court will *not consider* any fact set out *only in the brief* and not in the movant's statement of undisputed facts." *Id.* (citing LR 56.1(B)(1)(d), NDGa) (emphasis added). Where a movant fails to

submit a separate statement of undisputed facts, "there are no 'undisputed' facts for this Court to address" and the motion should be denied. *See Vaughan*, 2011 WL 13177749, at *1; *Hopkins v. DeVeaux*, 781 F. Supp. 2d 1283, 1296 (N.D. Ga. 2011); *Guzman v. Wells*, No. CV 301-066, 2010 WL 4941485, at *5 (S.D. Ga. Oct. 26, 2010).

### 4.2. The evidence shows that Defendants violated Mr. Griffin's constitutional rights.

Even if the Court chooses not to deny Defendants' motion on procedural grounds, the motion fails on its merits because abundant evidence shows that Mr. Griffin's constitutional rights were violated.[78]

#### 4.1.1. *Defendant Vickers used excessive force.*

Defendant Vickers is liable for his use of excessive force under 42 U.S.C. § 1983. It is well-established that citizens have a constitutional right to be free from

---

[78] Defendants' misconduct was clearly established as unconstitutional at the time of its commission. *See Sebastian v. Ortiz*, 918 F.3d 1301, 1311 (11th Cir. 2019) (finding that the Eleventh Circuit law "is clear that serious and substantial injuries caused during a suspect's arrest when a suspect is neither resisting an officer's commands nor posing a risk of flight may substantiate an excessive force claim."); *see also Hadley v. Gutierrez*, 526 F.3d 1324 (11th Cir. 2008); *Lee v. Ferraro*, 284 F.3d 1188 (11th Cir. 2002); *Slicker v. Jackson*, 215 F.3d 1225, 1232 (11th Cir. 2000); *Smith v. Mattox*, 127 F.3d 1416 (11th Cir. 1997); *Brown v. City of Atlanta*, 2020 WL 5633399 (N.D. Ga. Sept. 21, 2020). Defendants do not argue that they were entitled to qualified immunity, so Plaintiff will not belabor the point here.

the use of *excessive* force. *Graham v. Connor*, 490 U.S. 386, 397 (1989). The

relevant question is "how much force is too much?" *See Lee v. Ferraro*, 284 F.3d

1188, 1197 (11th Cir. 2002). The Fourth Amendment's "objective reasonableness"

standard governs. *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008). In

the Eleventh Circuit, the trial court must consider the following factors to

determine whether an officer's use of force was objectively reasonable: "'(1) the

need for the application of force, (2) the relationship between the need and the

amount of force used, (3) the extent of the injury inflicted and, (4) whether the

force was applied in good faith or maliciously and sadistically.'" *Id.* (quoting

*Slicker v. Jackson*, 215 F.3d 1225, 1233 (11th Cir. 2000)).

Each *Hadley* factor weighs in favor of finding Vickers used objectively

unreasonable force. There was *no* need for Vickers to use force.[79] Mr. Griffin was

not a flight risk or a danger to Vickers or Abad.[80] Nevertheless, Vickers tackled

Mr. Griffin at full speed, breaking Mr. Griffin's ankle in three places.[81] Afterward,

---

[79] Shields Dep., 37:6-12, 44:3-6, 47:2-22; Nixon 30(b)(6) Dep., 39:5-17; Fite 30(b)(6) Dep., 16:24-17:4, 24:15-20, 27:22-24; Reese 30(b)(6) Dep., 69:4-70:11, 76:3-77:13; DeFoe Rule 26 Report at 22-24; DeFoe Dep., 118:16-119:1.
[80] Shields Dep., 37:1-12, 44:3-6; *see also* DeFoe Rule 26 Report at 22 ("Based on my review of the facts and Body-Worn Camera footage in this matter, Mr. Tyler Griffin was being compliant and offering no form of physical resistance that would necessitate any force by Police Officer Matthew Abad.").
[81] Pl.'s Trial Ex. 30.1; Abad Dep., 25:5-20; Traub IME Report.

Vickers ignored Mr. Griffin's cries of pain and forced Mr. Griffin to walk on his broken ankle. Because no force was necessary at that point either, any amount of force was too much, and the force that Vickers used was *far* too much.[82] As to "the extent of the injury inflicted," Mr. Griffin suffered a serious and permanent injury to his left ankle.[83] Mr. Griffin will likely need another surgery in the future.[84] Finally, as to good faith, APD's then-Chief, Erika Shields, has admitted that "Vickers was *not* acting in good faith."[85]

### 4.1.2. Abad used excessive force.

Defendant Abad is liable for his use of excessive force under 42 U.S.C. § 1983 for grabbing Mr. Griffin for no reason and for making Mr. Griffin walk on a broken ankle.

Each of the *Hadley* factors weighs in favor of finding Abad used objectively unreasonable force. *See Hadley*, 526 F.3d at 1329. Again, there was *no* need for Abad to grab Mr. Griffin.[86] Mr. Griffin "was being compliant and offering no

---

[82] Shields Dep., 44:3-6.
[83] Traub IME Report.
[84] Traub IME Report ("He is going to develop significant arthritis in his ankle and at some point he will need either an ankle fusion of the tibiotalar joint or he may need an ankle replacement.").
[85] Shields Dep., 47:9-22 ("Q. . . Vickers was not acting in good faith. Correct? A. I do not believe so, no.").
[86] DeFoe Rule 26 Report at 17.

form of physical resistance that would necessitate any force by [Abad]."[87]  He was

not trying to hurt anyone or run away.[88]  He was "not unsteady on his feet where

[Abad] would need to grab him to prevent him from falling."[89]  There was no need

to point a pistol at Mr. Griffin, grab Mr. Griffin, or force Mr. Griffin to walk on his

shattered ankle.[90]  As to the injury, Abad's use of force set in motion the series of

events that caused the injury, and Abad's decision to make Mr. Griffin walk on his

broken ankle caused immense pain and likely exacerbated the injury.[91]  Finally,

Abad was acting in bad faith.  There was no good-faith reason for Abad to have his

pistol unholstered *or* pointed at Mr. Griffin (much less both), no good-faith reason

to make Mr. Griffin walk on his broken ankle, and no good-faith reason to refuse

to call an ambulance.[92]

### 4.1.3.  Abad failed to intervene.

---

[87] DeFoe Rule 26 Report at 17.
[88] Dean 30(b)(6) Dep., 27:16-28:8.
[89] DeFoe Rule 26 Report at 17.
[90] DeFoe Rule 26 Report at 15-22; Fite 30(b)(6) Dep., 7:10-13, 9:4-18; Shields
Dep., 37:13-18, 38:17-39:1; Abad Dep., 49:22-51:2; Vickers Dep., 51:5-52:2;
Reese 30(b)(6) Dep., 43:9-24, 45:3-6; Dean 30(b)(6) Dep., 30:3-9.
[91] Traub IME Report.
[92] Abad Dep., 48:9-49:15, 49:22-51:2; Vickers Dep., 51:5-52:2; Reese 30(b)(6)
Dep., 43:9-24, 45:3-6; Dean 30(b)(6) Dep., 30:3-9; DeFoe Rule 26 Report at 15-
22.

Defendant Abad is liable for failing to intervene under 42 U.S.C. § 1986.

*See Priester*, 208 F.3d at 924. The relevant questions are whether the officer could

have intervened and whether the officer did so. *Id.*; *see also Ensley v. Soper*, 142

F.3d 1402, 1407 (11th Cir. 1998). An officer who "observes excessive force with

'the time and ability to intervene, but [does] nothing,' violates clearly established

law." *Jackson v. Catanzariti*, 2019 WL 4874809, at \*20 (S.D. Ga. Oct. 2, 2019)

(quoting *Priester*, 208 F.3d at 927).

Abad could have intervened but did not.[93] Abad was facing Vickers as

Vickers crouched and sprinted toward Mr. Griffin.[94] Abad admitted that he could

have waved his hand to show Vickers that everything was fine, but did not.[95] Abad

admitted that he could have said, "hey, Vickers, everything is good," but did not.[96]

Despite having the ability to stop Vickers, Abad did nothing.[97] Abad would later

_____

[93] DeFoe Rule 26 Report at 20 ("It is my opinion Atlanta Police Department Police Officer Matthew Abad; No. 6898, failed to intervene/intercede to prevent Atlanta Police Department Police Officer Donald Vickers, No. 4438, from tackling and causing <u>Serious Physical Injury</u> to Mr. Tyler Griffin.") (emphasis in original); DeFoe Dep., 94:16-23, 96:13-17, 115:13-116:6.
[94] Abad Dep., 37:20-23.
[95] Abad Dep., 37:24-38:3.
[96] Abad Dep., 38:4-8.
[97] Abad Dep., 37:17-38:8.

admit that Vickers should not have tackled Mr. Griffin.[98]  The evidence shows that

Abad had the ability to intervene, but failed to do so.

### 4.3.   The City's widespread failure to train and discipline its police officers was the moving force of Mr. Griffin's injuries.

A city can be held liable under 42 U.S.C. § 1983 for failing to discipline its

officers where such a failure "amounts to deliberate indifference to the rights of

persons with whom the police come into contact." *Canton*, 489 U.S. at 388.

Where the widespread practice of failing to discipline officers is the "moving

force" behind a constitutional violation, the failure can be "properly thought of as a

city 'policy or custom' that is actionable under § 1983." *Id.* at 389 (citing *Monell*

*v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978)).  Stated

differently, a city is liable where its "'policy of inaction' is the functional

equivalent of a decision by the city itself to violate the Constitution." *Id.* at 394-

95.

*Arnold v. Bunn*, a failure-to-discipline case much like this one, is instructive.

2013 WL 12099356, at *1 (N.D. Ga. Mar. 29, 2013), *aff'd*, 565 F. App'x 812 (11th

Cir. 2014).  In *Arnold*, the plaintiff brought a § 1983 claim against a police officer

and a *Monell* claim against the City of Atlanta.  *Id.*  This Court denied the City's

---

[98] Abad Dep., 45:2-20.

motion for summary judgment by relying upon much of the evidence present in this case. *Id.* There, the plaintiff argued that the City had ratified its officers' conduct "by being aware of [the] propensity to use excessive force but failing to retrain *or punish*" officers. *Id.* at *9 (emphasis added). The plaintiff presented examples of other excessive force complaints that were dismissed as "not sustained," which "created[ed] the inference . . . that APD did not believe that the complaints warranted retraining or other administrative action for [the officer]." *Id.* at *10. The Court found that evidence of the City's inaction despite complaints of excessive force was sufficient to deny the City's for summary judgment on *Monell* liability.

Here, the City's widespread practice of failing to discipline officers created a culture in which excessive force is tolerated.[99] The evidence shows five discrete ways in which the City's failure to discipline is a systemic problem of which the City is necessarily aware.

1. First, despite the City's admissions that Vickers used excessive force on Mr. Griffin, OPS exonerated Vickers for his use of force.

---

[99] DeFoe Suppl. Rule 26 Report; *see also* DeFoe Dep., 139:8-141:18, 142:11-25, 148:7-149:17.

2. Second, Vickers' had an extensive history of using excessive force and violence, but APD repeatedly declined to impose adequate consequences for his misconduct.

3. Third, the City has demonstrated a common practice of chain-of-command dismissing "sustained" findings of excessive force after OPS investigations.

4. Fourth, the City regularly ignores or rejects ACRB's investigatory findings of excessive force.

5. Fifth, the City's performance evaluation process does not penalize officers for their misconduct.

All five of these reasons reflect *deliberate decisions* by the City, belying the City's recent claims that it was somehow not 'on notice' of its own policy or custom of looking the other way while its officers used excessive force. *See Arnold*, 2013 WL 12099356, at *1. The City is necessarily 'on notice' of *its own conduct*, despite Defendants' recent suggestions to the contrary.

### 4.2.1. The City wrongfully exonerated Vickers on use-of-force.

OPS investigated Vickers and Abad for their treatment of Tyler Griffin.[100] Incredibly, the City "exonerated" Vickers on the allegations of excessive force.[101]

---

[100] Pl.'s Trial Ex. 42 (Griffin OPS Summary).
[101] Pl.'s Trial Ex. 42 (Griffin OPS Summary).

That means that the City's official position—*despite the contrary testimony of its own instructors and senior officers*—was that Vickers' use of force was *not* excessive.[102]  This makes no sense since the City's representatives have repeatedly testified that Vickers' use of force was not justified.[103]  In fact, the *same officer* who conducted the OPS investigation later testified, on behalf of the City, that Vickers' use of force was *not* justified.[104]  When confronted with clear use of excessive force, as conceded by many of the APD's leaders, supervisors, and teachers, the City chose to *deny* that force was excessive and sweep the misconduct under the rug.  As the then-current Chief of Police has admitted, the exoneration of Vickers is a "huge problem."[105]

### 4.2.2. Vickers has an extensive history of using force.

This was not Vickers' first rodeo.  Abad testified that Vickers had "an extensive history of – he's got a history of having use of force documentations."[106]  Among his APD peers, Vickers has a reputation for using force with citizens.[107]

---

[102] *See* Pl.'s Trial Ex. 42 (Griffin OPS Summary); Nixon 30(b)(6) Dep., 18:20-19:7.  Notably, Defendant Abad was not even investigated for his use of force or failure to intervene.

[103] Nixon 30(b)(6) Dep., 39:5-17; Fite 30(b)(6) Dep., 16:24-17:4, 24:15-20, 27:22-24; Reese 30(b)(6) Dep., 76:3-77:13.

[104] Nixon 30(b)(6) Dep., 39:5-17.

[105] Shields Dep., 59:3-60:1; *see also* 52:16-53:12, 56:19-25.

[106] Abad Dep., 79:4-6, 80:7-12.

[107] Abad Dep., 80:7-12; Dean 30(b)(6) Dep., 44:2-16.

That is a problem.[108]  Vickers' previous misconduct includes chambering a live

round into an assault rifle and aiming it at citizens, using pepper spray and kicking

a handcuffed citizen in the back, slamming a handcuffed citizen into a glass door,

and, of course, tackling Mr. Griffin.[109]  Chief Shields testified that Vickers should

have been terminated *after the first incident* where he aimed an assault rifle at

citizens, long before he ever encountered Tyler Griffin.[110]

Vickers is a problem, and the City has known that for years.  Despite

Vickers' extensive history of use of force, he has faced no real consequences.[111]

### *4.2.3. Chain-of-command routinely dismisses OPS findings.*

---

[108] Shields Dep., 16:9-16 ("Q.  Okay. And so why is it important to keep a lookout
for officers who are repeatedly accused of excessive force? A. It may be an
indicator that an employee needs additional training, doesn't need to police, or it
may be that they were fully justified in their use of force. . .").

[109] Pl.'s Trial Ex. 56 (assault rifle incident); Pl.'s Trial Ex. 53 (Usher OPS
Summary); Pl.'s Trial Ex. 59 (Thurmond OPS Summary) Pl.'s Trial Ex. 42
(Griffin OPS Summary).  These only represent the times Vickers was *caught*.

[110] Shields Dep., 71:12-25; *see also* DeFoe Suppl. Rule 26 Report.

[111] Shields Dep., 67:20-25 ("Q. So is it okay for the City of Atlanta to employ a
police officer who has aimed a loaded assault rifle at citizens for no reason,
unnecessarily pepper-sprayed and kicked a citizen in the back, and slammed a
citizen into a glass door? A. No."); Shields Dep., 70:25-71:9 (". . . I will definitely
say that I'm not -- there would -- clearly, we're not – **we're not doing all that we
need to do. Whether it's a discipline problem or a procedural problem -- I
imagine it's a blend.** Clearly, there's procedurally adjustments that have to be
made to ensure that this is not happening.") (emphasis added).

Two of the excessive force allegations against Vickers exemplify the City's widespread failure to discipline police officers who use excessive force. Twice *before* this incident, OPS investigated Vickers for his use of force on a citizen and **OPS found the use of force was excessive**.[112] That is, OPS "sustained" the excessive force allegations and recommended a punishment.[113] However, on both occasions Vickers' supervisor rejected the OPS recommendations and unilaterally changed the findings from "sustained" to "not sustained."[114] That is a big deal.[115] If an officer's supervisor can simply reject OPS's independent investigation, then there is *no real oversight*.[116] Police officers can use force with impunity.[117]

### 4.2.4. The City frequently rejects ACRB investigatory findings.

The City's process for dealing with excessive force is deficient. The Atlanta Citizen's Review Board ("ACRB") is an independent agency designed to provide

---

[112] *See* GRIFFIN V. COA 000775-778 & 001043-001047 (Ex. 15).

[113] *See* GRIFFIN V. COA 000775-778 & 001043-001047.

[114] *See* GRIFFIN V. COA 000775-778 & 001043-001047.

[115] *See* Shields Dep., 26:25-27:16, 28:14-19, 60:11-23.

[116] Plaintiff sought documents in discovery related to other instances in which chain-of-command dismissed OPS findings. The City refused to produce those documents. Plaintiff filed a Motion to Compel within the discovery period. The Motion is still pending.

[117] *See* Nixon 30(b)(6) Dep., 24:9-16 ("Q. And would it be fair to say that without real consequences for using excessive force, police officers could use force with impunity? A. I can see where that would happen, yes."); Shields Dep., 15:9-11 ("Q. Do you agree that without proper discipline, police officers can use force with impunity? A. Yes.").

citizen oversight for police misconduct.[118]  The ACRB investigates allegations of

excessive force, much like OPS, and delivers recommendations to the City.[119]  In

recent years, there have been *at least* seven instances in which the ACRB

investigated use of force allegations under APD's Standard Operating Procedures

("SOPs"), found excessive force, and recommended a punishment—but the City

dismissed the allegations.[120]  A table summarizing the *known* instances is below.[121]

| ARCB Investigation | City of Atlanta Response |
|---|---|
| 10/25/19 – ACRB found Sgt. Barr used excessive force by placing a taser on a citizen's neck and recommended a finding of "sustained." | 12/9/19 – The City rejected the ACRB's recommendation and found that Sgt. Barr's use of force was "within policy" and issued a finding of "exonerated." |
| 9/22/16 – ACRB found that Ofc. Crawford and Szutor used excessive force when they slammed a citizen against a wall and recommended a finding of "sustained." | 11/2/16 – The City rejected the ACRB's recommendation and issues a finding of "not sustained. |
| 7/8/15 – ACRB found that Ofc. Joseph used excessive force by slamming a citizen's head into a wall and recommended a finding of "sustained" and a 5-day suspension. | 12/16/16 – The City rejected the ACRB's recommendation and issued a finding of "exonerated." |

---

[118] Shields Dep., 24:1-8, 32:22-34-25.

[119] Shields Dep., 24:1-8, 32:22-34-25.

[120] *See* Pl.'s Resp. City's ROGs, No. 7 (Ex. 16); *see also* GRIFFIN 00971-00989 (Ex. 17).

[121] Plaintiff requested documents showing instances in which the City rejected ACRB findings, but the City failed to respond to Plaintiff's request.  This request is subject to Plaintiff's pending Renewed Motion to Compel.  ECF No. 77.

| ARCB Investigation | City of Atlanta Response |
|---|---|
| 12/30/14 – ACRB found that Ofc. Fisher used excessive force and recommended a finding of "sustained" and termination. | 1/27/15 – The City rejected the ACRB's recommendation and issued a finding of "not sustained." |
| 9/30/14 – ACRB found that Ofc. Joseph used excessive force by pointing his gun at a citizen and twisting her arm and recommended a finding of "sustained" and a 15-day suspension. | 12/18/14 – The City rejected the ACRB's recommendation and issued a finding of "not sustained." |
| 7/16/14 – ACRB found that Ofc. Denson used excessive force when he tased a fifteen-year-old boy and recommended a finding of "sustained" and a 4-day suspension. | 8/5/14 – The City rejected the ACRB's recommendation and issued a finding of "exonerated." |
| 6/20/13 – ACRB found that Sgt. Smith used excessive force on a citizen and recommended a finding of "sustained" and a 5-day suspension. | 7/30/14 – The City rejected the ACRB's recommendation and issued a finding of "not sustained." |

Chief Shields testified that the pattern of OPS rejecting ACRB findings is

"**problematic**."[122]  Specifically, Chief Shields testified that:

> . . . I still believe that if you have the proper people looking at these files, people who understand where policing needs to get to, that APD has the capacity to hold people accountable. **But for whatever reason, there definitely -- what we're seeing today is there's definitely some stopgaps where -- that just are not acceptable**.[123]

This pattern shows that Atlanta police officers can use force with impunity.

*4.2.5. The City's performance evaluation process is spurious.*

---

[122] Shields Dep., 74:21-75:7 ("Q. If, looking at the same investigations, ACRB frequently finds excessive force and sustains allegations, but OPS dismisses the same allegations, is that problematic? A. Yes.").
[123] Shields Dep., 75:14-22 (emphasis added).

APD's performance evaluation process is another way the City allows officers to use force with impunity.[124] One stated purpose of APD performance reviews is to "identify performance problems."[125] Despite these stated goals, APD performance reviews **do not** show instances of egregious misconduct because even when officers have misbehaved, they still receive high performance evaluations that make their personnel files look good.[126] For example, on his performance evaluation for the year including the subject incident, Defendant Vickers received high marks and was even commended for being "courteous," despite the excessive forcefulness, cruelty, and mockery with which he treated Mr. Griffin.[127] APD has demonstrated that its police officers can receive positive performance reviews even though those same officers have committed egregious violations of the SOPs. As the City's 30(b)(6) designee Sergeant Reese testified, the City should be held accountable:

> Q. Would you agree that if bad cops get good reviews, the department needs to change something about its performance evaluation process?
>
> A. I would say that if that is the case, then, yes, they would need to review that.

---

[124] DeFoe Rule 26 Report at 35-37; DeFoe Dep., 153:9-154:22 (describing APD's performance evaluation process as "bogus"); *see also* DeFoe Dep., 152:22-153:1, 157:4-158:4.

[125] Reese 30(b)(6) Dep., 19:13-16.

[126] Reese 30(b)(6) Dep., 19:17-21:25.

[127] Pl.'s Trial Ex. 33 (2018-2019 Performance Evaluation).

Q. Would you agree that if bad cops get good reviews, the department needs to be held accountable?

A. I would say yes, they do.[128]

Police conduct expert Scott DeFoe further opined that the City's deficient performance evaluation process "can be seen as endorsing and perpetuating inadequate discipline, training, and failure to enforce written policies and established standards."[129] Further, Mr. DeFoe opined that the City's systemic and widespread failures caused the unconstitutional conduct in this case.[130]

### 4.2.6. The City's systemic failures were the moving force behind Defendants' unconstitutional conduct.

To prevail, Plaintiff must show that the City's systemic failures caused the unconstitutional conduct at issue. *Favors*, 2021 WL 915355, at *7. This Court has "held that a single constitutional violation may establish municipal liability when there is 'sufficient independent proof *that the moving force of the violation was a municipal policy or custom.*'" *Id.* (quoting *Vineyard v. Cty. of Murray, Ga.*, 990 F.2d 1207, 1212 (11th Cir. 1993)) (emphasis added).

---

[128] Reese Dep., 52:17-24.
[129] DeFoe Rule 26 Report at 36-37.
[130] DeFoe Supplemental Rule 26 Report at 1.

This record contains evidence of causation. First, Chief Shields has admitted that the City should have terminated Vickers after the *first* of several incidents in which he used excessive force, when Vickers unnecessarily pointed a loaded rifle at citizens in Underground Atlanta in 2010.[131] If the City had fired Vickers then, Vickers obviously never would have tackled Mr. Griffin on April 5, 2019. Second, expert Scott DeFoe has offered a clear causation opinion:

> The City of Atlanta's systemic and widespread failure to adequately train, discipline, and (when necessary) dismiss officers for use-of-force issues and the other issues referred to in Opinion Nos. 11-16 of my initial report was, more likely than not, the cause of the officers' misconduct against Tyler Griffin on April 5, 2019.[132]

Therefore, an issue of fact exists. *Favors*, 2021 WL 915355, at *7.

## 5. <u>Conclusion</u>

First, Plaintiff respectfully requests that the Court deny Defendants' Motion for Summary Judgment based on their failure to comply with the Local Rules. Because Defendants failed to submit a separate statement of undisputed materials facts, there are no "undisputed facts" for the Court to consider.

---

[131] Shields Dep., 71:12-25
[132] DeFoe Suppl. Rule 26 Report; *see also* DeFoe Dep., 139-8:141:18, 142:11-25, 148:7-149:17.

Second, Plaintiff respectfully requests that the Court deny the Motion for the substantive reasons set forth herein. The evidentiary record in this case is robust. This is not a case where summary judgment should have been sought.

Because Defendants did not seek summary judgment on the basis of qualified immunity, and Plaintiff does not address that issue.

Respectfully submitted this 20th of May 2021.

BUTLER LAW FIRM

BY: _/s/ Matthew R. Kahn_____
    JAMES E. BUTLER, III
     Georgia Bar No. 116955
    MATTHEW R. KAHN
     Georgia Bar No. 833443

10 Lenox Pointe
Atlanta, Georgia 30324
jeb@butlerfirm.com
matt@butlerfirm.com
(t) 678-940-1444
(f) 678-306-4646          **ATTORNEY FOR PLAINTIFF**

## **CERTIFICATION OF FONT SIZE**

I hereby certify that the foregoing has been prepared with one of the font and point selections approved by the Court in Rule 5.1(C) of the Civil Local Rules of Practice for the United States District Court for the Northern District of Georgia, specifically, Times New Roman 14 point.

BUTLER LAW FIRM

BY: *_/s/ Matthew R. Kahn_*
MATTHEW R. KAHN
Georgia Bar No. 833443

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on May 20, 2021, I electronically filed ***PLAINTIFF'S***

***RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR***

***SUMMARY JUDGMENT*** with the Clerk of Court using the CM/ECF system,

which will automatically serve following attorneys of record:

Calvin Blackburn, Alisha Marie S. Nair,
Staci J. Miller, and Jaquita Parks
City of Atlanta Department of Law
55 Trinity Avenue, Suite 5000
Atlanta, Georgia 30303
cblackburn@atlantaga.gov
amnair@atlantaga.gov
sjmiller@atlantaga.gov
japarks@atlantaga.gov

BUTLER LAW FIRM

BY:  */s/ Matthew R. Kahn*
    JAMES E. BUTLER, III
     Georgia Bar No. 116955
    MATTHEW R. KAHN
     Georgia Bar No. 833443

10 Lenox Pointe
Atlanta, Georgia 30324
jeb@butlerfirm.com
matt@butlerfirm.com
(t) 678-940-1444
(f) 678-306-4646          **ATTORNEY FOR PLAINTIFF**