## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

TYLER GRIFFIN,

       Plaintiff,

v.

CITY OF ATLANTA, DONALD
VICKERS, MATTHEW ABAD, and
JOHN DOE NO. 1-5,

       Defendants.

CIVIL ACTION
FILE NO. 1:20-cv-02514-TWT

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR SANCTIONS PURSUANT TO RULE 11

1. **Introduction**

Plaintiff respectfully asks that the Court impose sanctions, under Rule 11 of the Federal Rules of Civil Procedure, against the City Defendants for filing a frivolous motion for summary judgment. Although motions for summary judgment have become common since *Celotex*, they are not appropriate in every case and it is not appropriate here given this robust evidentiary record. *See generally Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) (summary judgment standard). Given the strong evidence in this case, Defendants' motion for summary judgment is objectively frivolous.

### 2. <u>Legal Standard for Sanctions under Rule 11</u>

Rule 11 states that a party's signature on a document certifies that the paper: (1) is not being presented for an improper purpose, such as to harass or delay; (2) the legal contentions are warranted under existing law or of a non-frivolous argument for the extension of the law; and (3) the allegations have factual support. Fed. R. Civ. P. 11(b)(1)-(3); *see also Cook-Benjamin v. MHM Correctional Serv., Inc.*, 571 Fed. App'x 944, 948 (11th Cir. 2014) ("Rule 11 sanctions are proper (1) when a party files a pleading that has no reasonable factual basis; (2) when a party files a pleading that is based on a legal theory that has no reasonable chance of success . . .; and (3) when a party files a pleading in bad faith for an improper purpose.") (citations omitted).

Under Rule 11(c), a party's failure to ensure that its allegations comply with these standards constitutes grounds for a court to "impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1).

In analyzing the propriety of Rule 11 sanctions, "a district court must first determine whether a party's claims are 'objectively frivolous' in view of the facts or law." *Cook-Benjamin*, 571 Fed. App'x at 948 (citations omitted). If they are, the court must determine whether "the person who signed the pleading 'should

have been aware that they were frivolous; that is, whether he would have been aware had he made a reasonable inquiry.'" *Id.* (citations omitted); *see also Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 665 (11th Cir. 2010) (the Court must ask "whether a reasonably competent attorney should have known they were frivolous.").

The duty to make a reasonable inquiry is a continuing one. *Battles v. City of Ft. Myers*, 127 F.3d 1298, 1300 (11th Cir. 1997). Thus, Rule 11 "allows sanctions when an attorney continues 'insisting upon a position after it is no longer tenable'" such as Defendants' continued denial of wrongdoing, despite the numerous admissions that Vickers used excessive force by high-ranking police officers, such as APD's then-Chief, Erika Shields, who testified that Mr. Griffin did not do *anything* to warrant the use of force.[1] *See id.* (citing Fed. R. Civ. P. 11 advisory committee notes).

"Rule 11 sanctions are designed to discourage dilatory or abusive tactics and help to streamline the litigation process by lessening frivolous claims or defenses." *Didie v. Howes*, 988 F.2d 1097, 1104 (11th Cir. 1993) (internal citation omitted). A district court's imposition of Rule 11 sanctions is reviewed under the deferential abuse of discretion standard. *Battles*, 127 F.3d at 1300 (citations omitted).

---

[1] Shields Dep., 45:12-20

The City Defendants' motion for summary judgment violates Defendants' duty under Rule 11 for three reasons. First, Defendants' motion lacks any legitimate factual basis—the supervisor who trained Vickers,[2] the Chief of Police at the time,[3] *and* the officer who wrote the police department's internal report into the incident[4] have all testified in deposition that Vickers's conduct was not justified. Second, Defendants' motion is not warranted by existing law. Finally, given the factual record and lack of legal support, a motion for summary judgment has no legitimate purpose.

### 3. <u>The evidence shows that Mr. Griffin's constitutional rights were violated.</u>

Abundant evidence shows that Mr. Griffin's constitutional rights were violated. The officers' body-worn cameras show that Mr. Griffin was tackled to the ground without cause,[5] needlessly forced to walk on a shattered ankle (thrice) despite repeatedly telling the officers how badly it hurt,[6] and needlessly shoved into a 'prisoner transport van' instead of transported to the hospital by ambulance.[7] All of that force was excessive because none of it was necessary. Multiple

---

[2] Fite 30(b)(6) Dep., 16:24-17:4, 24:15-20, 27:22-24.
[3] Shields Dep., 37:6-12, 45:12-20, 47:2-8, 49:17-24, 16:22.
[4] Nixon 30(b)(6) Dep., 39:5-17.
[5] Pl.'s Trial Ex. 1.2.
[6] Pl.'s Trial Ex. 1.4., 1.5, 4.1, 4.2, & 5.1.
[7] Pl.'s Trial Ex. 3.2 & 3.3.

witnesses who watched the video footage, including most of the City's own witnesses, have testified that Defendants' conduct crossed the line. Those witnesses include City 30(b)(6) deponents Fite (who was Defendants' use-of-force instructor),[8] Nixon (who wrote the OPS report), [9] and Dean (who was designated to testify about Defendants' disciplinary history and the City's beliefs and opinions regarding Defendants' conduct toward Mr. Griffin).[10] Erika Shields, who was the *Chief of Police* at APD at the time that this occurred, also condemned the conduct,[11] as did police conduct expert Scott DeFoe. [12] To make their contrary argument, Defendants ignore that evidence *and* the standard of review. That is not appropriate.

Defendants' misconduct was clearly established as unconstitutional at the time of its commission. *See Sebastian v. Ortiz*, 918 F.3d 1301, 1311 (11th Cir. 2019) (finding that the Eleventh Circuit law "is clear that serious and substantial injuries caused during a suspect's arrest when a suspect is neither resisting an officer's commands nor posing a risk of flight may substantiate an excessive force claim."); *see also Hadley v. Gutierrez*, 526 F.3d 1324 (11th Cir. 2008); *Lee v. Ferraro*, 284 F.3d 1188 (11th Cir. 2002); *Slicker v. Jackson*, 215 F.3d 1225, 1232

---

[8] Fite 30(b)(6) Dep., 16:24-17:4, 24:15-20, 27:22-24.
[9] Nixon 30(b)(6) Dep., 39:5-17.
[10] Dean 30(b)(6) Dep., 30:3-9, 34:14-25, 36:17-37:4, 64:18-23.
[11] Shields Dep., 37:6-12, 44:3-6, 45:12-20, 47:2-22.
[12] *See* DeFoe Rule 26 Report; *see also* DeFoe Suppl. Rule 26 Report.

(11th Cir. 2000); *Smith v. Mattox*, 127 F.3d 1416 (11th Cir. 1997); *Brown v. City of Atlanta*, 2020 WL 5633399 (N.D. Ga. Sept. 21, 2020). Defendants do not argue that they were entitled to qualified immunity, so Plaintiff will not belabor the point here.

### 3.1. Defendant Vickers used excessive force.

Defendant Vickers is liable for his use of excessive force under 42 U.S.C. § 1983. It is well established that citizens have a constitutional right to be free from the use of excessive force. *Graham v. Connor*, 490 U.S. 386, 397 (1989). The relevant question is "how much force is too much?" *See Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002). The Fourth Amendment's "objective reasonableness" standard governs. *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008). In the Eleventh Circuit, the trial court must consider the following factors to determine whether an officer's use of force was objectively reasonable: "'(1) the need for the application of force, (2) the relationship between the need and the amount of force used, (3) the extent of the injury inflicted and, (4) whether the force was applied in good faith or maliciously and sadistically.'" *Id.* (quoting *Slicker v. Jackson*, 215 F.3d 1225, 1233 (11th Cir. 2000)).

Each *Hadley* factor weighs in favor of finding Vickers used objectively unreasonable force. There was *no* need for Vickers to use force.[13] Mr. Griffin was not a flight risk or a danger to Vickers or Abad.[14] Nevertheless, Vickers tackled Mr. Griffin at full speed, breaking Mr. Griffin's ankle in three places.[15] Afterward, Vickers ignored Mr. Griffin's cries of pain and forced Mr. Griffin to walk on his broken ankle. Because no force was necessary, any amount of force was too much – and the force that Defendants used here was *far* too much.[16] As to "the extent of the injury inflicted," Mr. Griffin suffered a serious and permanent injury to his left ankle.[17] Mr. Griffin will likely need another surgery in the future.[18] Finally, as to good faith, APD's then-Chief, Erika Shields, has admitted that "Vickers was *not* acting in good faith."[19]

### 3.2. Abad used excessive force.

---

[13] Shields Dep., 37:6-12, 44:3-6, 47:2-22; Nixon 30(b)(6) Dep., 39:5-17; Fite 30(b)(6) Dep., 16:24-17:4, 24:15-20, 27:22-24; Reese 30(b)(6) Dep., 69:4-70:11, 76:3-77:13.

[14] DeFoe Rule 26 Report at 22 ("Based on my review of the facts and Body-Worn Camera footage in this matter, Mr. Tyler Griffin was being compliant and offering no form of physical resistance that would necessitate any force by Police Officer Matthew Abad.")

[15] Pl.'s Trial Ex. 30.1; Abad Dep., 25:5-20; Traub IME Report.

[16] Shields Dep., 44:3-6.

[17] Traub IME Report.

[18] Traub IME Report ("He is going to develop significant arthritis in his ankle and at some point he will need either an ankle fusion of the tibiotalar joint or he may need an ankle replacement.").

[19] Shields Dep., 47:9-22 ("Q. . . Vickers was not acting in good faith. Correct? A. I do not believe so, no.").

Defendant Abad is liable for his use of excessive force under 42 U.S.C. § 1983 for grabbing Mr. Griffin for no reason and for making Mr. Griffin walk on a broken ankle.

Each of the *Hadley* factors weighs in favor of finding Abad used objectively unreasonable force. *See Hadley*, 526 F.3d at 1329. Again, there was *no* need for Abad to grab Mr. Griffin.[20] Mr. Griffin "was being compliant and offering no form of physical resistance that would necessitate any force by [Abad]."[21] He was not trying to hurt anyone or run away.[22] He was "not unsteady on his feet where [Abad] would need to grab him to prevent him from falling."[23] There was no need to point a pistol at Mr. Griffin, grab Mr. Griffin, or force Mr. Griffin to walk on his shattered ankle.[24] As to the injury, Abad's use of force set in motion the series of events that caused the injury, and Abad's decision to make Mr. Griffin walk on his broken ankle caused immense pain and likely exacerbated the injury.[25] Finally, Abad was acting in bad faith. There was no good-faith reason for Abad to have his pistol unholstered *or* pointed at Mr. Griffin (much less both), no good-faith reason

---

[20] DeFoe Rule 26 Report at 17.
[21] DeFoe Rule 26 Report at 17.
[22] Dean 30(b)(6) Dep., 27:16-28:8.
[23] DeFoe Rule 26 Report at 17.
[24] DeFoe Rule 26 Report at 15-22; Fite 30(b)(6) Dep., 7:10-13, 9:4-18; Shields Dep., 37:13-18, 38:17-39:1; Abad Dep., 49:22-51:2; Vickers Dep., 51:5-52:2; Reese 30(b)(6) Dep., 43:9-24, 45:3-6; Dean 30(b)(6) Dep., 30:3-9.
[25] Traub IME Report.

to make Mr. Griffin walk on his broken ankle, and no good-faith reason to refuse to call an ambulance.[26]

### 3.3. Abad failed to intervene.

Defendant Abad is liable for failing to intervene under 42 U.S.C. § 1986. *See Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 924 (11th Cir. 2000). The relevant questions are whether the officer could have intervened and whether the officer did so. *Id.*; *see also Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998). An officer who "observes excessive force with 'the time and ability to intervene, but [does] nothing,' violates clearly established law." *Jackson v. Catanzariti*, No. 6:12-CV-113, 2019 WL 4874809, at *20 (S.D. Ga. Oct. 2, 2019) (quoting *Priester*, 208 F.3d at 927).

Abad could have intervened but did not.[27] Abad was facing Vickers as Vickers crouched and sprinted toward Mr. Griffin.[28] Abad admitted that he could have waved his hand to show Vickers that everything was fine, but did not.[29] Abad

---

[26] Abad Dep., 48:9-49:15, 49:22-51:2; Vickers Dep., 51:5-52:2; Reese 30(b)(6) Dep., 43:9-24, 45:3-6; Dean 30(b)(6) Dep., 30:3-9; DeFoe Rule 26 Report at 15-22.

[27] DeFoe Rule 26 Report at 20 ("It is my opinion Atlanta Police Department Police Officer Matthew Abad; No. 6898, failed to intervene/intercede to prevent Atlanta Police Department Police Officer Donald Vickers, No. 4438, from tackling and causing Serious Physical Injury to Mr. Tyler Griffin.") (emphasis in original); DeFoe Dep., 94:16-23, 96:13-17, 115:13-116:6.

[28] Abad Dep., 37:20-23.

[29] Abad Dep., 37:24-38:3.

admitted that he could have said, "hey, Vickers, everything is good," but did not.[30] Despite having the ability to stop Vickers, Abad did nothing.[31]  Abad would later admit that Vickers should not have tackled Mr. Griffin.[32]  The evidence shows that Abad had the ability to intervene, but failed to do so.

**4.**  **The City's widespread failure to discipline its police officers was the moving force of Mr. Griffin's injuries.**

A city can be held liable under 42 U.S.C. § 1983 for failing to discipline its officers where such a failure "amounts to deliberate indifference to the rights of persons with whom the police come into contact."  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).  Where the widespread practice of failing to discipline officers is the "moving force" behind a constitutional violation, the failure can be "properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id.* at 389 (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978)).  Stated differently, a city is liable where its "'policy of inaction' is the functional equivalent of a decision by the city itself to violate the Constitution." *Id.* at 394-95.

---

[30] Abad Dep., 38:4-8.
[31] Abad Dep., 37:17-38:8.
[32] Abad Dep., 45:2-20.

The City's widespread practice of failing to discipline officers has created a culture in which excessive force is tolerated. The evidence shows five discrete ways the City's failure to discipline is a systemic problem of which the City is necessarily aware. First, despite the City's admissions that Vickers used excessive force on Mr. Griffin, OPS exonerated Vickers for his use of force. Second, Vickers' had an extensive history of using excessive force and violence, but APD repeatedly declined to impose adequate consequences for his misconduct. Third, the City has demonstrated a common practice of chain-of-command dismissing "sustained" findings of excessive force after OPS investigations. Fourth, the City's regularly ignores or rejects ACRB's investigatory findings of excessive force. Fifth, the City's performance evaluation process does not penalize officers for their misconduct. All five of these reasons reflect *deliberate decisions* by the City, belying the City's recent claims that it was somehow not 'on notice' of its own policy or custom of looking the other way while its officers used excessive force on Atlanta's citizens. The City is necessarily 'on notice' of *its own conduct.*

Further, the evidence shows that the City's systemic misconduct caused Mr. Griffin's injuries. A nationally renowned expert on police conduct, Scott DeFoe, has established the City's widespread failure to train and discipline police officers'

use of excessive force was more likely than not the cause of Defendants'

misconduct against Mr. Griffin.[33]

### 4.1. The City wrongfully exonerated Vickers on use-of-force.

OPS investigated Vickers and Abad for their treatment of Tyler Griffin.[34]

Incredibly, the City "exonerated" Vickers on the allegations of excessive force.[35]

That means that the City's official position—*despite the contrary testimony of its

own instructors and senior officers*—was that Vickers' use of force was *not*

excessive.[36] This makes no sense since the City's representatives have repeatedly

testified that Vickers' use of force was not justified.[37] In fact, the *same officer* who

conducted the OPS investigation later testified, on behalf of the City, that Vickers'

use of force was *not* justified.[38] When confronted with clear use of excessive

force, as conceded by many of the APD's leaders, supervisors, and teachers, the

City chose to *deny* that force was excessive and sweep the misconduct under the

---

[33] DeFoe Supplemental Rule 26 Report at 1.
[34] Pl.'s Trial Ex. 42 (Griffin OPS Summary).
[35] Pl.'s Trial Ex. 42 (Griffin OPS Summary).
[36] *See* Pl.'s Trial Ex. 42 (Griffin OPS Summary); Nixon 30(b)(6) Dep., 18:20-19:7.
Notably, Defendant Abad was not even investigated for his use of force or failure
to intervene.
[37] Nixon 30(b)(6) Dep., 39:5-17; Fite 30(b)(6) Dep., 16:24-17:4, 24:15-20, 27:22-
24; Reese 30(b)(6) Dep., 76:3-77:13.
[38] Nixon 30(b)(6) Dep., 39:5-17.

rug.  As the then-current Chief of Police has admitted, the exoneration of Vickers is a "huge problem."[39]

### 4.2.  Vickers has an extensive history of using force.

This was not Vickers' first rodeo.  Abad testified that Vickers had "an extensive history of – he's got a history of having use of force documentations."[40] Among his APD peers, Vickers has a reputation for using force with citizens.[41] Vickers' previous misconduct includes chambering a live round into an assault rifle and aiming it at citizens, using pepper spray and kicking a handcuffed citizen in the back, slamming a handcuffed citizen into a glass door, and, of course, tackling Mr. Griffin.[42]

Vickers is a problem, and the City has known that for years.  Despite Vickers' extensive history of use of force, he has faced no real consequences.[43]

---

[39] Shields Dep., 59:3-60:1; *see also* 52:16-53:12, 56:19-25.

[40] Abad Dep., 79:4-6, 80:7-12.

[41] Abad Dep., 80:7-12; Dean 30(b)(6) Dep., 44:2-16.

[42] Pl.'s Trial Ex. 56 (assault rifle incident); Pl.'s Trial Ex. 53 (Usher OPS Summary); Pl.'s Trial Ex. 59 (Thurmond OPS Summary) Pl.'s Trial Ex. 42 (Griffin OPS Summary).  These only represent the times Vickers was *caught*.

[43] Shields Dep., 67:20-25 ("Q. So is it okay for the City of Atlanta to employ a police officer who has aimed a loaded assault rifle at citizens for no reason, unnecessarily pepper-sprayed and kicked a citizen in the back, and slammed a citizen into a glass door? A. No."); Shields Dep., 70:25-71:9 (". . . I will definitely say that I'm not -- there would -- clearly, we're not – **we're not doing all that we need to do. Whether it's a discipline problem or a procedural problem -- I imagine it's a blend.** Clearly, there's procedurally adjustments that have to be made to ensure that this is not happening.") (emphasis added).

### 4.3. Chain-of-command routinely dismisses OPS findings.

Two of the excessive force allegations against Vickers exemplify the City's widespread failure to discipline police officers who use excessive force. Twice *before* this incident, OPS investigated Vickers for his use of force on a citizen and OPS found the use of force **was excessive**.[44] That is, OPS "sustained" the excessive force allegations and recommended a punishment.[45] However, on both occasions Vickers' supervisor rejected the OPS recommendations and unilaterally changed the findings from "sustained" to "not sustained."[46] That is a *big* deal. If an officer's supervisor can simply reject OPS's independent investigation, then there is **no real oversight**. Police officers can use force with impunity.[47]

### 4.4. The City frequently rejects ACRB investigatory findings.

The City's process for dealing with excessive force is deficient. The Atlanta Citizen's Review Board ("ACRB") is an independent agency designed to provide citizen oversight for police misconduct. The ACRB investigates allegations of excessive force, much like OPS, and delivers recommendations to the City. In recent years, there have been *at least* seven instances in which the ACRB

---

[44] *See* GRIFFIN V. COA 000775-778 & 001043-001047.
[45] *See* GRIFFIN V. COA 000775-778 & 001043-001047.
[46] *See* GRIFFIN V. COA 000775-778 & 001043-001047.
[47] *See* Nixon 30(b)(6) Dep., 24:9-16 ("Q. And would it be fair to say that without real consequences for using excessive force, police officers could use force with impunity? A. I can see where that would happen, yes.").

investigated use of force allegations under APD's Standard Operating Procedures ("SOPs"), found excessive force, and recommended a punishment—but the City dismissed the allegations.[48]  A table summarizing the *known* instances is below.[49]

| ARCB Investigation | City of Atlanta Response |
|---|---|
| 10/25/19 – ACRB found Sgt. Darren Barr used excessive force by placing a taser on a citizen's neck and recommended a finding of "sustained." | 12/9/19 – The City rejected the ACRB's recommendation and found that Sgt. Barr's use of force was "within policy" and issued a finding of "exonerated." |
| 9/22/16 – ACRB found that Officers Alex Crawford and Laszlo Szutor used excessive force when they grabbed a citizen and slammed him against a wall and recommended a finding of "sustained." | 11/2/16 – The City rejected the ACRB's recommendation and issues a finding of "not sustained. |
| 7/8/15 – ACRB found that Officer Denis Joseph used excessive force by slamming a citizen's head into a wall and recommended a finding of "sustained" and a 5-day suspension. | 12/16/16 – The City rejected the ACRB's recommendation and issued a finding of "exonerated." |
| 12/30/14 – ACRB found that Officer Robert Fisher used excessive force and recommended a finding of "sustained" and termination. | 1/27/15 – The City rejected the ACRB's recommendation and issued a finding of "not sustained." |
| 9/30/14 – ACRB found that Officer Denis Joseph used excessive force by pointing his gun at a citizen and twisting her arm and recommended a finding of "sustained" and a 15-day suspension. | 12/18/14 – The City rejected the ACRB's recommendation and issued a finding of "not sustained." |

---

[48] *See* Pl.'s Resp. City's ROGs, No. 7; *see also* GRIFFIN 00971-00989.
[49] Plaintiff requested documents showing instances in which the City rejected ACRB findings, but the City failed to respond to Plaintiff's request.  As you know that request is subject to Plaintiff's pending Motion to Compel.  ECF No. 53.

| ARCB Investigation | City of Atlanta Response |
|---|---|
| 7/16/14 – ACRB found that Officer Antwan Denson used excessive force when he tased a fifteen-year-old boy and recommended a finding of "sustained" and a 4-day suspension. | 8/5/14 – The City rejected the ACRB's recommendation and issued a finding of "exonerated." |
| 6/20/13 – ACRB found that Sgt. Eddie Smith used excessive force on a citizen and recommended a finding of "sustained" and a 5-day suspension. | 7/30/14 – The City rejected the ACRB's recommendation and issued a finding of "not sustained." |

Chief Shields testified that the pattern of OPS rejecting ACRB findings is "problematic."[50] Specifically, Chief Shields testified that:

> . . . I still believe that if you have the proper people looking at these files, people who understand where policing needs to get to, that APD has the capacity to hold people accountable. **But for whatever reason, there definitely -- what we're seeing today is there's definitely some stopgaps where -- that just are not acceptable.**[51]

This pattern shows that Atlanta police officers can use force with impunity.

### 4.5.   The City's performance evaluation process is spurious.

APD's performance evaluation process is another way the City allows officers to use force with impunity.  One stated purpose of APD performance reviews is to "identify performance problems."[52]  Despite these stated goals, APD

---

[50] Shields Dep., 74:21-75:7 ("Q. If, looking at the same investigations, ACRB frequently finds excessive force and sustains allegations, but OPS dismisses the same allegations, is that problematic? A. Yes.").
[51] Shields Dep., 75:14-22 (emphasis added).
[52] Reese 30(b)(6) Dep., 19:13-16.

performance reviews **do not** show instances of egregious misconduct because even when officers have misbehaved, they still receive high performance evaluations that make their personnel files look good.[53]  For example, on his performance evaluation for the year including the subject incident, Defendant Vickers received high marks and was even commended for being "courteous," despite the excessive forcefulness, cruelty, and mockery with which he treated Mr. Griffin.[54]  APD has demonstrated that its police officers can receive positive performance reviews even though those same officers have committed egregious violations of the SOPs.  As Sergeant Reese testified, on behalf of the City:

> Q. Would you agree that if bad cops get good reviews, the department needs to change something about its performance evaluation process?
>
> A. I would say that if that is the case, then, yes, they would need to review that.
>
> Q. Would you agree that if bad cops get good reviews, the department needs to be held accountable?
>
> A. I would say yes, they do.

Reese Dep., 52:17-24.

Police conduct expert Scott DeFoe opined that the City's deficient performance evaluation process "can be seen as endorsing and perpetuating inadequate discipline, training, and failure to enforce written policies and

---

[53] Reese 30(b)(6) Dep., 19:17-21:25.
[54] Pl.'s Trial Ex. 33 (2018-2019 Performance Evaluation).

established standards."[55]  Specifically, APD "failed to document [the] incident involving Mr. Tyler Griffin that occurred on April 5, 2019 . . . even though it occurred during the Evaluation Period . . ."[56]  Further, Mr. DeFoe opined that "[t]he City of Atlanta's systemic and widespread failure to adequately train, discipline, and (when necessary) dismiss officers for use-of-force issues . . . was, more likely than not, the cause of the officers' misconduct against Tyler Griffin on April 5, 2019."[57]

Given these facts, the City will not be entitled to summary judgment on Plaintiff's *Monell* claim.[58]

### 5. **Conclusion**

The City Defendants' Motion for Summary Judgment violates Defendants' duty under Rule 11 for three reasons.  First, Defendants' motion lacks any legitimate factual basis—the supervisor who trained Vickers,[59] the Chief of Police at the time,[60] *and* the officer who wrote the police department's internal report into

---

[55] DeFoe Rule 26 Report at 36-37.
[56] DeFoe Rule 26 Report at 35-36.
[57] DeFoe Supplemental Rule 26 Report at 1.
[58] The "qualified immunity" analysis does not apply to *Monell* claims.  *Buckner v. Toro*, 116 F.3d 450, 453 (11th Cir. 1997).
[59] Fite 30(b)(6) Dep., 16:24-17:4, 24:15-20, 27:22-24.
[60] Shields Dep., 37:6-12, 45:12-20, 47:2-8, 49:17-24, 16:22.

the incident[61] have all testified in deposition that Vickers's conduct was not justified. Second, Defendants' motion is not warranted by existing law. Finally, given the factual record and lack of legal support, Defendants' motion for summary judgment has no legitimate purpose. Plaintiff provided the facts and law demonstrating the objective frivolousness of Defendants' position before and after Defendants filed their Motion for Summary Judgment.[62]

Respectfully submitted this 27th of May 2021.

BUTLER LAW FIRM

BY:   _/s/ Matthew R. Kahn_
         JAMES E. BUTLER, III
             Georgia Bar No. 116955
         MATTHEW R. KAHN
             Georgia Bar No. 833443

10 Lenox Pointe
Atlanta, Georgia 30324
jeb@butlerfirm.com
matt@butlerfirm.com
(t) 678-940-1444
(f) 678-306-4646                    **ATTORNEY FOR PLAINTIFF**

---

[61] Nixon 30(b)(6) Dep., 39:5-17.
[62] *See* Kahn to Miller 12/21/20, attached as Exhibit 1 to Plaintiff's Rule 11 Motion.

## CERTIFICATION OF FONT SIZE

I hereby certify that the foregoing has been prepared with one of the font and point selections approved by the Court in Rule 5.1(C) of the Civil Local Rules of Practice for the United States District Court for the Northern District of Georgia, specifically, Times New Roman 14 point.

BUTLER LAW FIRM

BY: */s/ Matthew R. Kahn*
MATTHEW R. KAHN
Georgia Bar No. 833443

## CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2021, I electronically filed ***PLAINTIFF'S***

***MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR***

***SANCTIONS PURSUANT TO RULE 11*** with the Clerk of Court using the

CM/ECF system, which will automatically serve following attorneys of record:

Alisha Marie S. Nair,
Staci J. Miller, and Jaquita Parks
City of Atlanta Department of Law
55 Trinity Avenue, Suite 5000
Atlanta, Georgia 30303
amnair@atlantaga.gov
sjmiller@atlantaga.gov
japarks@atlantaga.gov

BUTLER LAW FIRM

BY:   /s/ Matthew R. Kahn
      JAMES E. BUTLER, III
       Georgia Bar No. 116955
      MATTHEW R. KAHN
       Georgia Bar No. 833443

10 Lenox Pointe
Atlanta, Georgia 30324
jeb@butlerfirm.com
matt@butlerfirm.com
(t) 678-940-1444
(f) 678-306-4646                    **ATTORNEY FOR PLAINTIFF**