# On-Scene Consulting

December 4, 2020

Mr. James E. Butler III, Esquire
Butler Law Firm
10 Lenox Pointe NE
Atlanta, Georgia 30324

## Federal Rules of Civil Procedure 26 (a) (2) (B) Report

**TYLER GRIFFIN, Plaintiff,**
**vs.**
**CITY OF ATLANTA, DONALD VICKERS, MATTHEW ABAD, and JOHN
DOE's #1-5, Defendants.**

**Civil Action File No. 1:20-cv-02514-TWT.**

Dear Mr. Butler,

Thank-you for retaining me to analyze and render opinions regarding the April 5, 2019, incident involving Mr. Tyler Griffin and Atlanta Police Department Police Officers Matthew Abad, No. 6898, and Donald Vickers, No. 4438.  Pursuant to the requirements of Rule 26, I have studied reports, photographs, Atlanta Police Department Documents, Transcriptions of Digitally Recorded Depositions, and other material (as listed under Materials Reviewed) provided to me thus far regarding this case.  Please be advised that if additional documents related to this matter are provided, it may be necessary to write a supplemental report in order to refine or express additional opinions.  It is also necessary to state at the beginning of this report that I do not make credibility determinations in expressing my opinions.

Scott A. DeFoe
Principal
On-Scene Consulting, LLC

**Materials Reviewed:**

1. Plaintiff's First Amended Complaint, Civil Action File No. 1:20-cv-02514-TWT.

2. City of Atlanta Police Department, Incident Report, Incident No. 19-095-295-00.

3. Post-Operative X-Ray of Mr. Tyler Griffin's Ankle, (Griffin v. COA 000102).

3. Atlanta Police Department Police Officer Matthew Abad's Body-Worn Camera, Axon Body 2, X81107179, 2019-04-05, Px 1.2-Approach & Tackle, (0:57).

4. Axon Body Worn Camera, Axon Body 2, X81110725, Px 2.2-Skid Marks, Funny Man, Walk 2, Little Girl, Major Payne, (3:18).

5. Axon Body Worn Camera, Axon Body 2, X81181608, 2019-04-05, Px 4.2, Walk 2, Little Girl, Major Payne, (1:01).

6. Axon Body Worn Camera, Axon Body 2, X81165131, 2019-04-05, (1:00).

7. Atlanta Police Department, Office of Professional Standards, Internal Affairs Unit, Investigation and Disposition, Ops File #19-C-0357-UAF, (Griffin v. COA 000008-15).

8. Atlanta Police Department, Office of Professional Standards, Officer Disciplinary History, Senior Police Officer Donald Vickers, (Griffin v. COA 000584-586).

9. Atlanta Police Department, Internal Correspondence, Office of Professional Standards File No. 19-C-0357-UAF, (Griffin v. COA 000001-106).

10. Atlanta Police Department Police Officer Donald Vickers Personnel File, (Griffin v. COA 000107-465).

11. Deposition Transcript of Matthew Abad taken on November 5, 2020.

12. Plaintiffs Initial Disclosures, Civil Action File No. 1:20-cv-02514-TWT.

13. Defendant City of Atlanta, Donald Vickers and Matthew Abad's Initial Disclosures, Civil Action File No. 1:20-cv-02514-TWT.

14.  Defendant Matthew Abad's Responses to Plaintiff's First Request for Production, Civil Action File No. 1:20-cv-02514-TWT.

15.  Defendant Matthew Abad's Responses to Plaintiff's First Continuing Interrogatories, Civil Action File No. 1:20-cv-02514-TWT.

16.  Defendant Matthew Abad's Responses to Plaintiff's First Request for Admissions, Civil Action File No. 1:20-cv-02514-TWT.

17.  Defendant City of Atlanta's Responses to Plaintiff's First Continuing Interrogatories, Civil Action File No. 1:20-cv-02514-TWT.

18.  Defendant Matthew Abad's Responses to Plaintiff's First Request for Production, Civil Action File No. 1:20-cv-02514-TWT.

19.  Defendant Matthew Abad's Responses to Plaintiff's First Request for Admissions, Civil Action File No. 1:20-cv-02514-TWT.

20.  Defendant City of Atlanta's Responses to Plaintiff's First Continuing Interrogatories, Civil Action File No. 1:20-cv-02514-TWT.

21.  Defendant City of Atlanta's Responses to Plaintiff's First Request or Admissions, Civil Action File No. 1:20-cv-02514-TWT.

22.  Defendant City of Atlanta's Responses to Plaintiff's First Request for Production, Civil Action File No. 1:20-cv-02514-TWT.

23.  Defendant Donald Vickers' Response to Plaintiff's First Continuing Interrogatories, Civil Action File No. 1:20-cv-02514-TWT.

24.  Defendant Donald Vickers' Response to Plaintiff's First Request for Production, Civil Action File No. 1:20-cv-02514-TWT.

25.  Defendant Donald Vickers' Responses to Plaintiff's First Request for Admissions, Civil Action File No. 1:20-cv-02514-TWT.

26.  Defendant City of Atlanta's Supplemental Responses to Plaintiff's First Continuing Interrogatories, Civil Action File No. 1:20-cv-02514-TWT.

27. Defendant City of Atlanta's Supplemental Responses to Plaintiff's First Request for Production, Civil Action File No. 1:20-cv-02514-TWT.

28. Defendant's Donald Vickers' and Matthew Abad's Supplemental Responses to Plaintiff's First Continuing Interrogatories, Civil Action File No. 1:20-cv-02514-TWT.

29. Defendant City of Atlanta's Third Supplemental Responses to Plaintiff's First Request for Production, Civil Action File No. 1:20-cv-02514-TWT.

30. Defendant City of Atlanta's Second Supplemental Responses to Plaintiff's First Continuing Interrogatories, Civil Action File No. 1:20-cv-02514-TWT.

31. Defendant City of Atlanta's Second Supplemental Responses to Plaintiff's First Request for Production, Civil Action File No. 1:20-cv-02514-TWT.

32. Defendant Donald Vickers and Matthew Abad's Second Supplemental Responses to Plaintiff's First Continuing Interrogatories, Civil Action File No. 1:20-cv-02514-TWT.

33. Defendant City of Atlanta's Fifth Supplemental Responses to Plaintiff's First Request for Production, Civil Action File No. 1:20-cv-02514-TWT.

34. Defendant Matthew Abad's Responses to Plaintiff's First/Second Request for Admissions, Civil Action File No. 1:20-cv-02514-TWT.

35. Defendant City of Atlanta's Responses to Plaintiff's First/Second Request for Admissions, Civil Action File No. 1:20-cv-02514-TWT.

36. Defendant Donald Vickers' Responses to Plaintiff's First/Second Request for Admissions, Civil Action File No. 1:20-cv-02514-TWT.

37. Atlanta Police Department Police Officer Matthew Abad's Body-Worn Camera, Axon Body 2, X81107179, Px 1.0-Full Video Abad, (19:11).

38. Atlanta Police Department Police Officer Donald Vickers', Axon Body 2, X81110725, 04-05-2019, Px 2.0-Full Video, (Vickers 1 of 2), (28:34).

39. Atlanta Police Department Police Officer Donald Vickers', Axon Body 2, X81110725, 04-05-2019, Px 3.0-Full Video, (Vickers 2 of 2), (14:03).

40.  Atlanta Police Department Police Officer Thomas, Axon Body 2, X81181608, 04-05-2019, Px 4.0-Full Video, (Thomas), (9:57).

41.  Atlanta Police Department Police Officer Cathey, Axon Body 2, X81165131, 04-05-2019, Px 5.0-Full Video, (Cathey), (23:24).

42.  Atlanta Police Department Police Officer Jones, Axon Body 2, X81088527, 04-05-2019, Px 7.0-Full Video, (Jones), (3:52).

43.  City of Atlanta FY 2019 Performance Evaluation for Police Officer Donald Vickers, E-27611, FY 19, July 1, 2018-June 30, 2019, (Griffin v. COA 000762-767).

44.  City of Atlanta FY 2019 Performance Evaluation for Police Officer Matthew Abad, E-37213, FY 19, July 1, 2018-June 30, 2019, (Griffin v. COA 000768-773).

45.  City of Atlanta, Internal Correspondence, Witness Summaries, Complaint Control Number 19-C-0357-UAF, (Griffin v. COA 000027-32).

46.  Atlanta Police Department Employee Statement, Sergeant Jeremy Thompson, Complaint Control Number 19-C-0357-UAF, (Griffin v. COA 000052).

47.  Atlanta Police Department Employee Discipline Worksheet, Donald Vickers, 1/14/2020, Complaint Control Number 19-C-0357-UAF, (Griffin v. COA 000006).

48.  Atlanta Police Department, Internal Correspondence, 3-Day Suspension for SPO Vickers, OPS Complaint Investigation, Complaint Control Number 19-C-0357-UAF, (Griffin v. COA 000002).

49.  Atlanta Police Department Employee Discipline Worksheet, Matthew Abad, 1/14/2020, Complaint Control Number 19-C-0357-UAF, (Griffin v. COA 000007).

50.  Atlanta Police Department Offense Report, Incident No. 190950295.00 by Reporting Police Officer Abad, No. 6898, (Griffin v. COA 000055-57).

51.  Atlanta Police Department, OPS, Disciplinary History, Officer Matthew Abad, (Griffin v. COA 000587-588).

52.  Atlanta Police Department Notice of Proposed Adverse Action (<u>NPAA</u>), OPS Control No. 10-C-0324-UAF, Vickers, Donald, 5-Day Suspension, (<u>Griffin v. COA 000611-614</u>).

53.  Atlanta Police Department Internal Correspondence, Office of Professional Standards, Officer Donald Vickers, Complaint Control Number 10-C-0324-UAF, (<u>Griffin v. COA 000618-628</u>).

54.  Atlanta Police Department, Incident Report, Usher, Ricky, by Police Officer Donald Vickers, No. 4438, (<u>Griffin v. COA 000674-675</u>).

55.  Atlanta Police Department Notice of Final Adverse Action (<u>NFAA</u>), OPS Control No. 10-I-0561-CR, Vickers, Donald, (<u>Griffin v. COA 000188-189</u>).

56.  Email: Re: Atlanta Citizen Review Board (<u>ACRB</u>) Investigating Police Officer Donald Vickers, ACRB Case No. 16-128, (<u>Griffin v. COA 000121</u>).

57.  Atlanta Police Department Policy Manual, Standard Operating Procedure, APD S.O.P., 2010 Work Rules, Effective September 16, 2020.

58.  Atlanta Police Department Policy Manual, Standard Operating Procedure, APD S.O.P., 3080 General Procedures, Effective March 15, 2018.

59.  Atlanta Police Department Policy Manual, Standard Operating Procedure, APD S.O.P., 3010, Effective November 5, 2018.

60.  Defendant City of Atlanta's Responses to Plaintiff's Second Request for Production, Civil Action No. 1:20-cv-2514-TWT.

61.  Plaintiff's Responses to Defendant City of Atlanta's First Request for Admissions, Civil Action No. 1:20-cv-2514-TWT.

62.  LR 5.4 Notice of Serving Discovery Materials, Civil Action No. 1:20-cv-2514-TWT.

63.  Plaintiff's Response to Defendant City of Atlanta's First Continuing Interrogatories to Plaintiff, Civil Action No. 1:20-cv-2514-TWT.

64.  Plaintiff's Response to Defendant City of Atlanta's First Request for Production of Documents, Civil Action No. 1:20-cv-2514-TWT.

65.  Plaintiff's Response to Defendant Vickers' First Continuing Interrogatories to Plaintiff, Civil Action No. 1:20-cv-2514-TWT.

66.  Deposition Transcript of (30)(b)(6) Arthur Nixon taken on September 22, 2020, Civil Action No. 1:20-cv-2514-TWT.

67.   Deposition Transcript of (30)(b)(6) Patrick Fite taken on September 22, 2020, Civil Action No. 1:20-cv-2514-TWT.

68.  Deposition Transcript of (30)(b)(6) Quentin Reese taken on October 20, 2020, Civil Action No. 1:20-cv-2514-TWT.

69.  Deposition Transcript of (30)(b)(6) William Dean taken on September 22, 2020, Civil Action No. 1:20-cv-2514-TWT.

70.  Deposition Transcript of Donald Vickers taken on October 21, 2020, Civil Action No. 1:20-cv-2514-TWT.

71.  Plaintiff's Motion to Compel and Brief in Support, Civil Action No. 1:20-cv-2514-TWT.

**Summary**

The following statement summaries represent documents/statements that were used in part during my review but are in no way meant to be exhaustive. The documents listed in the Materials Reviewed Section of this report represent the full library of documents reviewed thus far and used as a basis for my opinions.

**The below information is verbatim from Atlanta Police Department, Offense Report, Incident Number: 190950295, 04/05/2019:**

**INCIDENT NARRATIVE**

*"On 4/05/2019, I (Officer Abad Unit 1183), and Officer Vickers, (1184), were patrolling our assigned area travelling West on Chattahoochee Avenue, NW, when a vehicle, (2018 Honda Accord Ohio Tag GR8NESS), almost hit our vehicle due to traveling on the wrong side of the road while traveling East on Chattahoochee Avenue NW.  Officer Vickers swerved our vehicle out of the way preventing an accident.  He turned our vehicle around and made an attempt to catch up to the suspect vehicle, once we got the vehicle in sight it was at the intersection of Chattahoochee Avenue NW and Howell Mill Road NW.  This intersection has two lanes and a sign over each lane advising that you must turn left from the left lane and right from the right lane, you are not to go straight."*

*"The suspect vehicle went through the green light through the intersection as directed not to do and began travelling East on Holmes Street NW.  We followed the vehicle so that we can obtain the vehicle information to request Zone officers to assist us in stopping the vehicle.  Once the vehicle made its way to the intersection of Holmes Street NW and Buchanan Street NW, it failed to stop at the stop sign and turn left without yielding.  The suspect vehicle travelled north on Buchanan Street NW until the road ended and he still continued straight going around a vehicle parked in the driveway of 755 Bellemeade Avenue NW.  Once the suspect vehicle went around the vehicle parked in the driveway, the driver drove over an approximate four-foot drop landing in the back of 755 Bellemeade Avenue NW.  I was able to see the vehicle trying to turn around the back yard of this location, so I exited my vehicle and ran towards the driveway of this house."*

*"The driver was trying to exit the driveway but was unable because his vehicle was getting stuck in the gravel driveway.  As I approached the vehicle, I was commanding the driver to stop the vehicle.  The vehicle temporarily gained traction, causing the vehicle to almost strike me, again the vehicle got stuck in the gravel and I began to command the*

*driver to exit the vehicle. He placed the vehicle in reverse in an attempt to flee from me. Once the vehicle had nowhere to go because he was stuck in the backyard of this property. I again commanded him to exit the vehicle. The driver began to appear to open the door to exit but was refusing to open the door. I attempted to open from the outside and the door was locked so I reached into the vehicle and opened the door from the inside. The driver then exited the vehicle and I asked him what he was doing. I was holding him by his shirt to prevent him from further fleeing. I was able to smell the odor of alcoholic beverage coming from the driver's body and breath, he also had glassy red eyes and was having difficulty maintaining balance on his own as he was leaning into my arm that was holding his shirt to assist him in balancing. The driver then used his hand to swipe himself away from the grasp. Officer Vickers grabbed hold of the driver and took him to ground so that he was able to regain control and detain him. I found the driver's Ohio Driver's License and was able to identify him as Mr. Tyler Griffin."*

*"While I was speaking to Mr. Griffin, he stated that he had been drinking but would not advise how much. Due to Mr. Griffin's erratic driving behavior and the physical symptoms, I was able to observe, Mr. Griffin was taken into custody and his vehicle was impounded by S&W Towing and taken to their yard for safe keeping. Mr. Griffin was transported to the detention facility in Grady Memorial Hospital because he was complaining of pain in his left leg. Mr. Griffin was charged with DUI Less Safe, (OCGA 40-6-391 (a)(1), Reckless Driving, (OCGA 40-6-390), two counts of Failure to Obey a Traffic Control Device, (OCGA 40-6-20), and Failure to Maintain Lane, (OCGA 40-6-8). There is body worn camera footage available from this incident. Nothing further to report at this time."*

## Opinions

Note: None of my opinions are intended to usurp the province of the jury and are not stated as ultimate issues. Rather, my opinions involve the consistency of the officers' actions with standard police practices.

## Opinion Number 1

It is my opinion that a reasonable law enforcement officer acting consistent with standard police practices would have requested uniformed Atlanta Police Department Police Officers who were operating marked black and white police vehicles that were equipped with emergency equipment (lights, siren, spot/take down lights, Public Address (PA) System) to respond and assist. It is my opinion based on my review of the facts in this matter,

Atlanta Police Department Police Officers Matthew Abad, No. 6898 and Donald Vickers, No. 4438, failed to request uniformed Atlanta Police Department Police Officers who were operating marked black and white police vehicles that were equipped with emergency equipment (lights, siren, spot/take down lights, Public Address (PA) System) to respond and assist and conduct a traffic stop. In addition, I base my opinion on the fact that Atlanta Police Department Police Officers Matthew Abad, No. 6898, and Donald Vickers, No. 4438, were operating an unmarked/undercover vehicle that was not equipped with emergency equipment (lights, siren, spot/take down lights, Public Address (PA) System). In addition, Police Officer Matthew Abad was wearing a "beanie" that is not characteristic of a uniformed Police Officer.

In addition, it is my opinion, Atlanta Police Department Police Officers Matthew Abad, No. 6898 and Donald Vickers, No. 4438, should have requested Atlanta Police Department Air-Support to respond and assist with following Mr. Tyler Griffin's vehicle in the event he failed to stop. Police Helicopters can track and alert ground units to the suspect's location and activities. This allows ground units to turn off emergency equipment and to slow to protect public safety while maintaining visual contact with the fleeing vehicle. This strategy has proven to be very successful in the apprehension of fleeing suspects and the reduction of risk to the public. In addition, based on the facts in this matter, at the time of this incident on April 5, 2019, it was dark and raining which creates an unsafe environment for the Officers, Mr. Tyler Griffin, and the public.

In addition, it is my opinion that Mr. Tyler Griffin may have reasonably perceived based on the facts that Atlanta Police Department Police Officers Matthew Abad, No. 6898 and Donald Vickers, No. 4438, were driving an unmarked/undercover Dodge Dart, that he was going to be a victim of a crime and possibly "carjacked."

In addition, I base my opinion on the following facts and testimony in this matter:

- According to Police Officer Matthew Abad, he agrees that Police Officers vehicles are required to be marked so citizens can identify the vehicle as a police vehicle, (Deposition Transcript of Matthew Abad, Page 22).

Lastly, I base my opinion on my twenty-eight years of law enforcement experience where I have been involved in vehicle pursuits and vehicle pullovers as Primary Officer, Secondary Officer, and a Supervisor. In addition, I have received and provided training on Pursuit Policy, Pursuit Tactics, Post-Pursuit Tactics and Containment. In addition, I have conducted over (50) Vehicle Pursuit Investigations during my last 14 years as a Supervisor with the Los Angeles Police Department. In addition, as a Los Angeles Police

Department Sergeant II+1 at Metropolitan Division K9 Platoon, I responded to hundreds of Vehicle Pursuits throughout all geographical patrol divisions to assist with containment, perimeter tactics and ultimately K9 searches.

## Opinion Number 2

It is my opinion that a reasonable law enforcement officer acting consistent with standard police practices <u>would have</u> remained in a position of cover and formulated an effective and safe tactical plan.  It is my opinion based on my review of the facts in this matter, Atlanta Police Department Police Officers Matthew Abad, No. 6898, and Donald Vickers, No. 4438, failed to develop an effective and safe tactical plan when Mr. Tyler Griffin stopped his vehicle.  In addition, it is my opinion based on my review of the facts in this matter, Atlanta Police Department Police Officers Matthew Abad, No. 6898 and Donald Vickers, No. 4438 should have remained at a position of cover at their police vehicle and should not have taken any enforcement action until they formulated a tactical plan.  Law Enforcement Officers must approach every contact with officer safety in mind.  Complacency, overconfidence, poor planning, or inappropriate positioning can leave officers vulnerable to attack.

In addition, it is my opinion based on my review of the facts and Body-Worn Camera Audio/Video Footage in this matter, Atlanta Police Department Police Officers Matthew Abad, No. 6898, and Donald Vickers, No. 4438, <u>failed to perform the following basic police procedures and tactics:</u>

**<u>Officer's Reactions:</u>**
- Work as a team,
- Maintain communications with dispatch and other involved officers,
- Move slowly and methodically,
- Rely on known tactics and procedures while also remaining flexible enough to adapt or improvise if necessary, and
- Exercise emotional restraint and self-control.

**<u>Safety Precautions:</u>**
- Request sufficient personnel and equipment to perform any necessary actions safely and effectively and achieve a psychological advantage over the vehicle's occupant(<u>s</u>).
- Use available cover and concealment.
- Always maintain a position of advantage.

- Do not rush.
- Guard against being impatient (<u>Time is usually on the officer's side</u>).
- Wait for requested backup/assistance to arrive before taking action.

**<u>Utilize Appropriate Resources/Equipment:</u>**
- Use marked patrol vehicles to affect the vehicle pullover, if possible, to prevent recognition problems and ensure necessary equipment is available within the vehicle.

<u>In addition, I base my opinion on the following facts and testimony in this matter</u>:

- According to Police Officer Matthew Abad, Police Officer Donald Vickers stayed at the police vehicle when he approached Mr. Tyler Griffin's vehicle, (<u>Deposition Transcript of Matthew Abad, Page 26</u>).
- According to SPO Donald Vickers, Police Officer Matthew Abad jumped out of the passenger's seat and ran down toward the vehicle, (<u>Deposition Transcript of Donald Vickers, Page 23</u>).

Lastly, I base my opinion on my twenty-eight years of law enforcement experience where I have been involved in vehicle pursuits and vehicle pullovers as Primary Officer, Secondary Officer, and a Supervisor. In addition, I have received and provided training on Pursuit Policy, Pursuit Tactics, Post-Pursuit Tactics and Containment. In addition, I have conducted over (<u>50</u>) Vehicle Pursuit Investigations during my last 14 years as a Supervisor with the Los Angeles Police Department. In addition, as a Los Angeles Police Department Sergeant II+1 at Metropolitan Division K9 Platoon, I responded to hundreds of Vehicle Pursuits throughout all geographical patrol divisions to assist with containment, perimeter tactics and ultimately K9 searches.

## <u>Opinion Number 3</u>

It is my opinion that a reasonable officer acting consistent with standard police practices <u>would have</u> utilized available cover and not walk in an open-air environment that does not afford them any cover and place them in an unsafe and poor tactical position. It is my opinion that Atlanta Police Department Police Officers Matthew Abad, No. 6898 and Donald Vickers, No. 4438 should have remained at a position of cover at their vehicle or move to a position of cover, and should not have taken any enforcement action until they formulated a tactical plan and the arrival of uniformed Atlanta Police Department Police Officers who were operating marked black and white police vehicles that were equipped with emergency equipment (<u>lights, siren, spot/take down lights, Public Address (PA)</u>

System) to respond and assist and conduct a traffic stop. In addition, it is my opinion, Atlanta Police Department Police Officers Matthew Abad, No. 6898, and Donald Vickers, No. 4438, rushed into the situation without any plan of action, and without considering alternative actions. In addition, based on my review of the facts in this matter, Mr. Tyler's Griffin's vehicle was in a position where it could not be moved. In addition, in the event that Mr. Tyler Griffin exited his vehicle and fled, Atlanta Police Department Police Officers Matthew Abad, No. 6898, and Donald Vickers, No. 4438, could have established a perimeter, and conducted a systematic search of the area with the assistance of uniformed Atlanta Police Department Police Officers and if necessary K9.

It is the responsibility of the primary officer to initiate the coordination of the security and containment of the crime scene. This can be done by establishing a boundary or perimeter completely surrounding the area involved.

The establishment of a secure perimeter may be essential to safely resolve the crime in progress. Establishing a perimeter:
- Contains and isolates the crime scene.
- Prevents the suspect(s) from escaping the area.
- Prevents unauthorized entry into the area.
- Can aid in apprehending the suspect(s).

There are two types of perimeters at a crime scene: **Inner perimeter** and **outer perimeter:**

**Inner Perimeter**:
- Immediate area around the incident, (e.g., private residence, commercial establishment, vehicle, etc.)
- Varying size depending on the purpose of the perimeter.

**Outer Perimeter:**

- Area surrounding the inner perimeter.
- Established to further contain and isolate the crime scene.

<u>In addition, law enforcement officers should always be aware of surrounding objects or areas that may be utilized for cover</u>:

**Examples of Cover:**
- Cement block or brick walls.
- Buildings.
- Portion of the vehicle with the engine block.
- Trees.

In addition, it is my opinion, based on my review of the facts in this matter, Atlanta Police Department Police Officers Matthew Abad, No. 6898, and Donald Vickers, No. 4438, failed to establish <u>Contact and Cover Officers</u> prior to approaching Mr. Tyler Griffin's vehicle on foot:

**<u>Establish a Contact Officer and Cover Officers:</u>**

**<u>Contact Officer:</u>**
The roles and responsibilities of each officer involved in a vehicle pullover/stop must be clear. The **<u>Contact Officer:</u>**
- Conducts the business of the pullover,
- Directs the driver and occupants(<u>s</u>) of the target vehicle,
- Takes necessary actions related to the investigation (<u>e.g., obtaining identification, searching suspects, etc.</u>).

**<u>Cover Officers:</u>**
It is general responsibility of any cover officers called to assist the primary officer at the scene of a high-risk vehicle pullover to:
- Protect the primary officer who is conducting the business of the pullover,
- Take and maintain proper positions of cover and concealment,
- Maintain visual contact with the vehicle occupant(s) at all times,

**<u>Communications Between Officers:</u>**
In order to ensure officer safety and help ensure an appropriate outcome, the primary officers and cover officers must effectively communicate with one another. Appropriate communication involves:
- Advising the primary officer of any critical occurrences or safety issues,
- Avoid inappropriate interruptions and,
- Avoid giving directions which conflict with those given by the primary officer.

In addition, it is my opinion, Atlanta Police Department Police Officers Matthew Abad, No. 6898 and Donald Vickers, No. 4438 failed to formulate a tactical plan that should have outlined Less than Lethal Force options such as the X-26 Electronic Control Device (ECD) Taser with an effective range of 7-15 feet and a maximum distance of 21-25 feet, Oleoresin Capsicum spray, 40mm, baton or the deployment of the 870 Remington 12-Gauge Shotgun with a Drag Stabilized 12-Gauge Bean Bag Round. The Drag Stabilized 12-Gauge Round is a translucent 12 Gauge shell loaded with a 40-Gram tear shaped bag made from a cotton and ballistic material blend and filled with #9 shot. The design utilizes four stabilizing tails and smokeless powder as the propellant. The round has a velocity of 270 feet per second (FPS) with a maximum effective range of 75 feet.

In addition, I base my opinion on the following facts and testimony in this matter:
- According to SPO Donald Vickers, Police Officer Matthew Abad jumped out of the passenger's seat and ran down toward the vehicle, (Deposition Transcript of Donald Vickers, Page 23).

In addition, I base my opinion on my twenty-eight years of law enforcement experience where I have been involved in vehicle pursuits and vehicle pullovers as Primary Officer, Secondary Officer, and a Supervisor. In addition, I have received and provided training on Pursuit Policy, Pursuit Tactics, Post-Pursuit Tactics and Containment. In addition, I have conducted over (50) Vehicle Pursuit Investigations during my last 14 years as a Supervisor with the Los Angeles Police Department. In addition, as a Los Angeles Police Department Sergeant II+1 at Metropolitan Division K9 Platoon, I responded to hundreds of Vehicle Pursuits throughout all geographical patrol divisions to assist with containment, perimeter tactics and ultimately K9 searches.

Lastly, I base my opinion on my twenty-eight- year law enforcement career where, as a Supervisor, I have investigated over 100 Use of Force Incidents as well as being personally involved in the use of lethal and less than lethal force incidents.

## **Opinion Number 4**

It is my opinion that a reasonable officer acting consistent with standard police practices would not have unholstered his firearm at any time during this incident. Based on my review of the facts in this matter, at no time did Mr. Tyler Griffin's actions rise to a life-threatening level where there would be a necessity to use lethal force.

It is my opinion Atlanta Police Department Police Officer Matthew Abad; No. 6898, exercised poor tactics when he unholstered his duty pistol and pointed it at Mr. Tyler Griffin and or his vehicle.   Unnecessarily or prematurely drawing or exhibiting a firearm limits an officer's alternatives in controlling a situation, creates unnecessary anxiety on the part of citizens, and may result in an unwarranted or accidental discharge of the firearm. An officer's decision to draw or exhibit a firearm should be based on the tactical situation and the officer's reasonable belief there is a substantial risk that the situation may escalate to the point where deadly force may be justified.

<u>Unintentional Discharges</u>: Safe firearm handling is every officer's personal and professional responsibility.  Accidents do not just happen.

<u>Unintentional discharges are the result of</u>:
- Violating the rules of firearms safety.
- Inadequate knowledge or skill regarding the operation and use of the firearm.
- Improper or inadequate care and maintenance.
- Poor judgment or lack of common sense.

<u>Basic Firearm Safety Rules</u>:
- Always be aware of where the firearm is pointing.
- A "safe direction" is one where an unintentional discharge of the firearm will not hurt the person handling the firearm or others.
- A firearm should only be pointed at a target if the officer is willing and prepared to shoot.

<u>In addition, I base my opinion on Atlanta Police Department Policy Manual, APD.SOP.2010, Work Rules:</u>

<u>4.6.9:</u>  <u>Use of Firearms</u>, (<u>CALEA 6th ed. Standard 4.1.2</u>):

2.  Employees shall not point or aim firearms at persons in circumstances unless the discharge of that firearm would be justifiable.

<u>In addition, I base my opinion on the following facts and testimony in this matter:</u>
- According to SPO Patrick Fite, it would not be justifiable for Police Officer Mathew Abad to fire his duty weapon at Mr. Tyler Griffin, (<u>Deposition Transcript of 30(b)(6) Patrick Fite, Page 9</u>).

Lastly, I base my opinion on my twenty-eight- year law enforcement career where, as a Supervisor, I have investigated over 100 Use of Force Incidents as well as being personally involved in the use of lethal and less than lethal force incidents.


## **Opinion Number 5**


It is my opinion Atlanta Police Department Police Officer Matthew Abad; No. 6898, used unnecessary and unreasonable force when he grabbed Mr. Tyler Griffin's shoulder area/shirt after Mr. Tyler Griffin exited his vehicle.  Based on my review of the facts and Body-Worn Camera Footage in this matter, Mr. Tyler Griffin was not unsteady on his feet where Police Officer Matthew Abad would need to grab him to prevent him from falling.  In addition, based on my review of the facts and Body-Worn Camera Footage in this matter, Mr. Tyler Griffin was being compliant and offering no form of physical resistance that would necessitate any force by Police Officer Matthew Abad.

In addition, I base my opinion on Atlanta Police Department Policy Manual, APD.SOP.2010, Work Rules:

4.2.50:  Maltreatment or Unnecessary Force:

1.  Employees are expressly prohibited from the unnecessary or unreasonable use of force against any person or property.

2.  Employees shall only use that force which is reasonable and necessary to affect the arrest, prevent an escape, necessarily restrict the movement of a prisoner, defend himself/herself or another from physical assault, or to accomplish other lawful objectives.

Reasonableness of a use of force, according to the United States Supreme Court (Graham v. Connor, 490 U.S. 386, 1989): 1.  Severity of crime. 2. Whether the suspect poses an immediate threat to the safety of officers and others. 3.  Whether the suspect is actively resisting or attempting to evade arrest by flight.

In addition, I base my opinion on Atlanta Police Department, Policy Manual, Standard Operating Procedure, APD.SOP.3010, Use of Force, Effective Date November 5, 2018:

4.1 Use of Force Generally, (CALEA 6th ed. Standard):

4.1.1: Employees are expressly prohibited from the unnecessary or unreasonable use of force against any person or property.

4.1.2:  Employees will only use that force, which is reasonable and necessary to affect an arrest, prevent an escape, necessarily restrict the movement of a prisoner, defend the officer or another from physical assault, or to accomplish lawful objectives.

In addition, I base my opinion on the following facts and testimony in this matter:
- According to Police Officer Matthew Abad, he admits grabbing Mr. Tyler Griffin's shirt when he got out of the vehicle, (Deposition Transcript of Matthew Abad, Page 28).

Lastly, I base my opinion on my twenty-eight- year law enforcement career whereas a Supervisor, I have investigated over 100 Use of Force Incidents as well as being personally involved in the use of lethal and less than lethal force incidents.

## Opinion Number 6

It is my opinion Atlanta Police Department Police Officer Matthew Abad; No. 6898, failed to maintain his self-control and anger to effectively de-escalate the situation when he approached the driver's side window of Mr. Tyler Griffin's vehicle.

Defusing is a process of reducing the potential for violence and bringing emotional level to a manageable level to restore order. The primary objective is to calm the person so that a conversation can take place and the use of force can be avoided.

Self-control is one of a peace officer's greatest assets in dealing with a person or a situation.  Self-Control is maintaining composure to make sound judgments and decisions.

**Self-Control**:
- Is a result of the development of confidence of a peace officer's skills.
- Comes through training, practice, and experience.
- Improves decision making and reaction time.

Anger is a feeling of displeasure from perceived mistreatment or opposition to one's self or to another person. When anger is inappropriate or out of control, (i.e., rage), it becomes a liability

In addition, I base my opinion on Atlanta Police Department Policy Manual, APD.SOP.2010, Work Rules:

4.2.2: Courtesy:

1. Employees shall be civil, orderly, and courteous to the public, co-workers, and supervisors and should not use coarse, insensitive, abusive, violent, or profane language.

Peace officers should become familiar with the communication process for conducting a vehicle stop:

- Remain consistently courteous.
- Sound professional.
- Center their command presence.
- Deflect resistance.

The Law Enforcement Code of Ethics was adopted as a uniform code of ethics to guide the peace officer. By adhering to the code, officers demonstrate to the community and to their peers that they are honorable and trustworthy.

The Code of Ethics of any profession details the standard of conduct that identifies specific principles of desired behavior required of its practitioners. The profession of policy requires its members to adhere to specific standards in order to maintain the trust and respect of those who are served. Adherence to a Code of Ethics is required to build and maintain morale, a sense of duty, effective standards of performance and community support. Peace Officers are held to higher standards then others in the community. Although policing shares ideals with other professions, only peace officers are given the authority and power to detain and arrest others and to deprive them of their liberty while awaiting adjudication of their offense. It is essential that officers understand the importance of professional behavior.

To embody the spirit of professionalism, ethical conduct must be a way for those in policing. To maintain the community's trust, peace officers must maintain consistently high- standards of ethical conduct. Officers must model and live as examples of the behavior that they are charged to enforce. The policing community is only strong as its

weakest link. Unethical conduct affects the image and morale of the entire profession and it offends officers and society throughout the country.

<u>In addition, I base my opinion on the following facts and testimony in this matter:</u>
- Officer Matthew Abad stated "get out of the fucking car" twice as he approached Mr. Griffins vehicle while pointing his firearm, (<u>Matthew Abad's BWC, X811078179, 0:17</u>).
- According to Police Officer Matthew Abad, he did not tell Mr. Tyler Griffin why he was being removed from the car by gunpoint, (<u>Deposition Transcript of Matthew Abad, Page 37</u>).

In addition, I base my opinion on my twenty-eight years of law enforcement experience where I responded to thousands of calls for service and have effectively utilized defusing techniques, de-escalation techniques, verbal strategies, and active listening skills to reduce the potential for violence and bring the emotional level of the incident to a manageable level.

Lastly, I base my opinion on my twenty-eight- year law enforcement career as a Supervisor, I have investigated over 100 Use of Force Incidents as well as being personally involved in the use of lethal and less than lethal force incidents.

## **Opinion Number 7**

It is my opinion Atlanta Police Department Police Officer Matthew Abad; No. 6898, failed to intervene/intercede and prevent Atlanta Police Department Police Officer Donald Vickers, No. 4438, from tackling and causing <u>Serious Physical Injury</u> to Mr. Tyler Griffin. Based on my review of the facts in this matter to include my review of the Body-Worn Camera Footage, it is my opinion that Police Officer Matthew Abad, had the duty, ability, and opportunity to intercede/intervene and prevent Police Officer Donald Vickers from tackling and causing <u>Serious Physical Injury</u> to Mr. Tyler Griffin.

<u>Officers have a duty to intercede/intervene, when in a position to do so, to prevent the use of excessive force</u>:

**Intervention is necessary because:**
- It is morally and ethically correct.
- Personal integrity demands it.
- It enhances officer safety.

- It preserves professionalism and supports the law enforcement mission.
- It strengthens public confidence in the law enforcement profession and the individual agency involved.
- It reduces personal and agency liability because it results in fewer: physical injuries arising from unreasonable force, disciplinary actions and personal complaints, criminal complaints filed against officers, civil liability suits, including fewer punitive judgments against individual officers.

**Intervention:** An officer is guilty of having failed to intervene and prevent other officers from violating anyone's rights while having reason to know:

- Unreasonable force was being used,
- A member of the public was unjustifiably arrested,
- Any constitutional violation has been committed by any law enforcement officer,
- The officer had a reasonable opportunity to prevent harm from occurring,
- Inappropriate language is being used, or,
- Other unlawful, unethical, or inappropriate behavior, occurred.

<u>Verbal Intervention</u>: Verbally offering to take over or assist the situation or reminding fellow officer of appropriate behavior.

<u>Physical Intervention</u>: May include Touching, Stepping In and or Restraining.

Peace officers have a legal and ethical obligation to uphold the law no matter who is breaking it. It does not matter whether the violator is considered an average citizen, prominent community or corporate leader, or another peace officer. Minding your own business is never a valid excuse for remaining silent. If peace officers disregard unlawful or unethical acts by another officer, they can be as responsible as the offender and as unworthy of wearing the badge. Such officers are equally responsible for embarrassing their agency and the policing profession.

Peace officers may fail to take action when a fellow officer is behaving inappropriately because of several factors such as transfer of responsibility, rationalization, and self-doubt.

<u>In addition, I base my opinion on Atlanta Police Department Policy Manual, APD.SOP.2010, Work Rules:</u>

<u>4.2.51</u>: <u>Duty to Intervene, (CALEA 6th ed. Standard 1.2.10)</u>:

1.  Any employee present and observing or who becomes aware of another employee exhibiting behaviors or performing actions that violate departmental policy, state or federal law, or local ordinance, shall intercede to prevent such behavior or actions, when in position to do so safely.  Interceding employees shall report their observations and actions to an on-duty supervisor immediately following the safe resolution of the event.

In addition, I base my opinion on the following facts and testimony in this matter:
*   According to Police Officer Matthew Abad, he admits that he could have waved his hand to show Police Officer Donald Vickers that everything was fine, (Deposition Transcript of Matthew Abad, Page 37).

Lastly, I base my opinion on my twenty-eight-year law enforcement career whereas a Supervisor, I have investigated over 100 Use of Force Incidents as well as being personally involved in the use of lethal and less than lethal force incidents.

## Opinion Number 8

It is my opinion Atlanta Police Department Police Officer Donald Vickers; No. 4438, used unnecessary and unreasonable force when he tackled Mr. Tyler causing Serious Physical Injury to his left ankle.  Based on my review of the facts and Body-Worn Camera Footage in this matter, Mr. Tyler Griffin was being compliant and offering no form of physical resistance that would necessitate any force by Police Officer Matthew Abad.

In addition, I base my opinion on Atlanta Police Department Policy Manual, APD.SOP.2010, Work Rules:

4.2.50:  Maltreatment or Unnecessary Force:

1.  Employees are expressly prohibited from the unnecessary or unreasonable use of force against any person or property.

2.  Employees shall only use that force which is reasonable and necessary to affect the arrest, prevent an escape, necessarily restrict the movement of a prisoner, defend himself/herself or another from physical assault, or to accomplish other lawful objectives.

Reasonableness of a use of force, according to the United States Supreme Court (Graham v. Connor, 490 U.S. 386, 1989): 1.  Severity of crime. 2. Whether the suspect poses an

immediate threat to the safety of officers and others. 3. Whether the suspect is actively resisting or attempting to evade arrest by flight.

In addition, I base my opinion on <u>Atlanta Police Department, Policy Manual, Standard Operating Procedure, APD.SOP.3010, Use of Force, Effective Date November 5, 2018</u>:

<u>4.1 Use of Force Generally, (CALEA 6th ed. Standard</u>):

<u>4.1.1:</u> Employees are expressly prohibited from the unnecessary or unreasonable use of force against any person or property.

<u>4.1.2:</u> Employees will only use that force, which is reasonable and necessary to affect an arrest, prevent an escape, necessarily restrict the movement of a prisoner, defend the officer or another from physical assault, or to accomplish lawful objectives.

<u>In addition, I base my opinion on the following facts and testimony in this matter:</u>
- According to Police Officer Matthew Abad, he admits that knowing what they know now, he thinks Police Officer Donald Vickers should have done things differently, (<u>Deposition Transcript of Matthew Abad, Page 45</u>).
- According to Police Officer Matthew Abad, he would defer to SPO Fite's opinion that Police Officer Donald Vickers was not justified in his use of force on Mr. Tyler Griffin, (<u>Deposition Transcript of Matthew Abad, Page 68</u>).
- According to Police Officer Matthew Abad, he agrees that it is "puzzling" that Police Officer Donald Vickers was exonerated on his use of force if (2) Senior ranking Police officials including the Police Officer who investigated this matter and the person who trained Police Officer Donald Vickers thought the use of force was not justified and that Police Officer Donald Vickers was not punished for the use of force, (<u>Deposition Transcript of Matthew Abad, Page 22</u>).
- According to Police Officer Matthew Abad, he was not scared when Mr. Tyler Griffin brushed his hand away, (<u>Deposition Transcript of Matthew Abad, Page 70</u>).
- According to OPS Investigator Arthur Nixon, he would not have tackled Mr. Tyler Griffin, (<u>Deposition Transcript of 30(b)(6) Arthur Nixon, Page 39</u>).
- According to SPO Patrick Fite, based on what he saw on the video, he does not believe the use of force by Police Officer Donald Vickers would be justifiable, (<u>Deposition Transcript of 30(b)(6) Patrick Fite, Page 17</u>).

- According to SPO Patrick Fite, he would not approve of the level of force that he saw Police Officer Donald Vickers use, (<u>Deposition Transcript of 30(b)(6) Patrick Fite, Page 27</u>).
- According to APD Sergeant Quentin Reese, he believes that the jury should listen to SPO Fite's opinion that Police Officer Donald Vickers' use of force was not justified, (<u>Deposition Transcript of Quentin Reese, Page 70</u>).
- According to SPO Donald Vickers, he did not call an ambulance for Mr. Tyler Griffin, (<u>Deposition Transcript of Donald Vickers, Page 39</u>).

Lastly, I base my opinion on my twenty-eight- year law enforcement career whereas a Supervisor, I have investigated over 100 Use of Force Incidents as well as being personally involved in the use of lethal and less than lethal force incidents.

### <u>Opinion Number 9</u>

It is my opinion based on my review of the facts and Body-Worn Camera Audio/Video Footage in this matter, Atlanta Police Department Police Officers Matthew Abad, No. 6898 and Donald Vickers, No. 4438, failed to immediately summon medical assistance for Mr. Tyler Griffin after he was tackled by Police Officer Donald Vickers causing <u>Serious Physical Injury</u> to his left ankle. In addition, it is my opinion based on my review of the facts and Body-Worn Camera Audio/Video Footage in this matter, Mr. Tyler Griffin was in excruciating pain and should not have been compelled to stand up.

In addition, I base my opinion on <u>Atlanta Police Department Policy Manual, Standard Operating Procedure, APD.SOP.3080, Effective Date March 15, 2018</u>:

<u>4.3.1</u>:

2. Notify the Communications Section concerning injured parties and any dangerous conditions present, and request appropriate medical assistance and additional equipment, services, or personnel as needing.
3. Assist the injured pending arrival of EMS personnel.

In addition, I base my opinion on <u>Atlanta Police Department, Policy Manual, Standard Operating Procedure, APD.SOP.3010, Use of Force, Effective Date November 5, 2018</u>:

<u>4.3</u>: <u>Medical Attention Required</u>, (<u>CALEA 6th ed. Standard 4.1.5</u>):

<u>4.3.1</u>: Employees will make appropriate medical aid and/or assistance available to all persons who have a physical injury or when the injury is likely to have occurred due to an employee's use of force.

<u>4.3.2</u>: Medical aid and/or assistance will be provided in a timely manner or as soon as practical without further endangering the employee or others.

<u>4.3.3</u>: In officers' incident report, they shall write in detail the requested medical aid and/or assistance available to all persons who have sustained a physical injury occurring as a result of an employee's use of force. (<u>APD. SOP.3060 "Reports and Report Writing</u>)."

<u>In addition, I base my opinion on the following facts and testimony in this matter:</u>

- When asked if he or SPO Vickers called and ambulance to the scene, Officer Abad stated, "um, I don't recall doing so. Um, personally, I did not. Um, I didn't in direct violation of "<u>APD.SOP.3080 General Procedures, 4.3, Preliminary Investigation, (CALEA 6th ed. Standard 42.2.1)</u>, 4.3.1."
- According to Police Officer Matthew Abad, he did not call an ambulance for Mr. Tyler Griffin, (<u>Deposition Transcript of Matthew Abad, Pages 30-31</u>).
- According to Police Officer Matthew Abad, he is not sure if anyone called an ambulance for Mr. Tyler Griffin, (<u>Deposition Transcript of Matthew Abad, Page 31</u>).
- According to Police Officer Matthew Abad, it was obvious that Mr. Tyler Griffin was in pain as he made him walk around, (<u>Deposition Transcript of Matthew Abad, Page 32</u>).
- According to Police Officer Matthew Abad, he admits that he made Mr. Tyler Griffin stand up and walk around, (<u>Deposition Transcript of Matthew Abad, Page 49</u>).
- According to Police Officer Matthew Abad, he admits that it is not okay to make an injured citizen walk around on a broken ankle, (<u>Deposition Transcript of Matthew Abad, Page 50</u>).
- According to Police Officer Matthew Abad, he agrees that Police Officer Donald Vickers should have called an ambulance for Mr. Tyler Griffin after seeing how much pain he was in, (<u>Deposition Transcript of Matthew Abad, Pages 55-56</u>).
- According to OPS Investigator Arthur Nixon, when a person is requesting aid in the way that Mr. Tyler Griffin was, an ambulance should have been summoned to make that assessment, (<u>Deposition Transcript of 30(b)(6) Arthur Nixon, Page 40</u>).

- According to APD OPS Investigator Arthur Nixon, it is fair to say that Police Officers Matthew Abad and Donald Vickers knew that Mr. Tyler Griffin was injured after the tackle, (Deposition Transcript of 30(b)(6) Arthur Nixon, Page 46).
- According to OPS Investigator Arthur Nixon, he believes that it was wrong the way the Officers were pushing Mr. Tyler Griffin into the wagon, (Deposition Transcript of 30(b)(6) Arthur Nixon, Page 50).
- According to APD SPO Patrick Fite, Mr. Tyler Griffin had a reaction when they were putting him in the transport van as if it were causing him pain. He seemed to yell. Fite heard him screaming, (Deposition Transcript of 30(b)(6) Patrick Fite, Page 23).
- According to APD Sergeant Quentin Reese, it is not the policy of the APD to force somebody to walk around when they are injured, (Deposition Transcript of Quentin Reese, Page 43).
- According to APD Sergeant William Dean, if an Officer knew that a subject's ankle was injured or broken, it would not be right to force a citizen to walk on it, (Deposition Transcript of 30(b)(6) William Dean, Page 30).
- According to APD Sergeant William Dean, it appears that Mr. Tyler Griffin is in pain, (Deposition Transcript of 30(b)(6) William Dean, Page 31).

Lastly, I base my opinion on my twenty-eight- year law enforcement career whereas a Supervisor, I have investigated over 100 Use of Force Incidents as well as being personally involved in the use of lethal and less than lethal force incidents.

## **Opinion Number 10**

It is my opinion based on my review of the facts and Body-Worn Camera Audio/Video Footage in this matter, Atlanta Police Department Police Officers Matthew Abad, No. 6898, and Donald Vickers, No. 4438, failed to immediately summon an Atlanta Police Department Supervisor to the scene to conduct a Use of Force Investigation. Based on my review of the facts in this matter, Police Officer Donald Vickers did not complete an initial report that accurately documented the force he used on Mr. Tyler Griffin. In addition, Police Officer Matthew Abad failed to document that Police Officer Donald Vickers sprinted and tackled Mr. Tyler Griffin but rather intentionally and inaccurately documented the following statement: "*Officer Vickers grabbed hold of the driver and took him to ground so that he was able to regain control and detain him.*"

In addition, I base my opinion on Atlanta Police Department Policy Manual, APD.SOP.2010, Work Rules:

4.2.52: Reporting Required When Force is Used:

1.  Employees who use force against any person or the property of another person shall make a report of the incident and report it their supervisor as soon as practicable.

In addition, I base my opinion on Atlanta Police Department, Policy Manual, Standard Operating Procedure, APD.SOP.3010, Use of Force, Effective Date November 5, 2018:

4.5: Reporting Requirements, (CALEA 6th ed. Standard 4.2.1).

4.5.3:  Any employee who applies force or takes an action that results in, or is alleged to have resulted in, the physical injury or death of another person is required to immediately notify his or her supervisor.  An incident report describing the incident must be completed and submitted prior to the end of that employee's tour of duty.

4.6:  Chain of Command Review, (CALEA 6th ed. Standard 4.2.2).

4.6.1: The employee's supervisor must report to the scene of any incident defined in sections 4.5.2 through 4.5.5.

4.6.4: The responding supervisor must complete a Use of Force Report (Form APD 809) on any incident defined in sections 4.5.2 through 4.5.7 before the end of that tour of duty. A hard copy of this form will be forwarded to the Central Records Unit through one's chain of command.

In addition, I base my opinion on Atlanta Police Department Employee Statement, Sergeant Jeremy Thompson, No. 32399, OPS No. 19-C-0357-UAF:

Q.  Were you working on April 5, 2019?

A.  Yes sir.

Q.  Do you remember being advised of an incident involving Officer Vickers and Abad and a person they had in custody for DUI (later identified as Tyler Griffin)?

A.  Yes

Q.  Were you advised that SPO Vickers had used force (tackled) Mr. Griffin to the ground?

A. No I was not.

Q. Were you advised that Mr. Griffin was possibly injured (as a result of the tackle)?

A. No, I was not.

In addition, at 15:22 on Police Officer Abad's Axon Body-Worn Camera, Sergeant Thompson is advised of the situation by Police Officer Matthew Abad. Police Officer Abad informs Sergeant Thompson of their situation but does not advise him that:
1. SPO Vickers tackled Mr. Tyler Griffin.
2. That Mr. Griffin is complaining of an injury that was probably caused by the tackle.
3. Mr. Griffin is going to need medical attention.

The Atlanta Police Department determined through their investigation, (OPS No. 19-C-0357-UAF), that SPO Donald Vickers did not relay pertinent information to his supervisor (nor in writing) concerning the tackling and injury sustained by Mr. Tyler Griffin, in violation of APD.SOP.2010 Work Rules 4.2.51, Reporting Required When Force Used. 1. Employees who use force against any person or the property of any person shall make a report of the incident and report it to their supervisor as soon as practicable." In addition, SPO Donald Vickers did not obtain permission from his supervisor to transport or have the injured suspect transported to the hospital as required by APD.SOP.3030 Arrest Procedures, 4.16 Seriously Ill or Injured Prisoners.

In addition, I base my opinion on the following facts and testimony in this matter:
- Police Officer Matthew Abad did not advise Sergeant Thompson that SPO Donald Vickers tackled Mr. Tyler Griffin, that Mr. Tyler Griffin was complaining of an injury that occurred during the arrest, or that Mr. Tyler Griffin was in need of medical attention, which placed him in direct violation of "APD.SOP.2010 Work Rules, 4.2.51, Reporting Required When Force Used: 1. Employees who use force against any person or the property of any person shall make a report of the incident and report it to their supervisor as soon as practicable."
- According to Police Officer Matthew Abad, he agrees that the way that Police Officer Donald Vickers shoved Mr. Tyler Griffin in the transport van was wrong and the way that another APD Police Officer (Simsell) grabbed Mr. Tyler Griffin's ankle was wrong, (Deposition Transcript of Matthew Abad, Page 56).
- According to Police Officer Matthew Abad, he agrees that failed to notify a supervisor regarding Police Officer Donald Vickers use of force on Mr. Tyler Griffin, (Deposition Transcript of Matthew Abad, Page 69).

Lastly, I base my opinion on my twenty-eight- year law enforcement career whereas a Supervisor, I have investigated over 100 Use of Force Incidents as well as being personally involved in the use of lethal and less than lethal force incidents.

## Opinion Number 11

It is my opinion that the Atlanta Police Department failed to complete a Use of Force Investigation in this matter as well as initiate a suspected work rule violation(s) that should have been investigated by the Office of Professional Standards. (OPS) based on the actions by Atlanta Police Department Police Officers Matthew Abad, No. 6898 and Donald Vickers, No. 4438.

In addition, I base my opinion on:

4.6:  Chain of Command Review, (CALEA 6th ed. Standard 4.2.2).

4.6.1: The employee's supervisor must report to the scene of any incident defined in sections 4.5.2 through 4.5.5.

4.6.4: The responding supervisor must complete a Use of Force Report (Form APD 809) on any incident defined in sections 4.5.2 through 4.5.7 before the end of that tour of duty. A hard copy of this form will be forwarded to the Central Records Unit through one's chain of command.

4.6.5:  Supervisors will be responsible for initiating an investigation of suspected employee work rule violations arising out of an employee's use of force.  The Office of Professional Standards will investigate suspected employee work rule violations arising out of an employee's use of force in accordance with APD.SOP.2020, "Disciplinary Process."

When a force option has been employed, peace officer's reports must include the critical information to ensure that chronology, specifics of the events, and the people involved are properly documented.

Facts and circumstances are not limited to the written report.  Other factors to be considered include:

- Crime scene processing.
- Evidence collections.
- Photographs.
- Witness and Subject statements.

- Medical records.

Precursory acts are those events that led up to the encounter with the subject, including how the officer arrived at scene as well as what observations helped the officer assess the situation.

Giving detailed information of the precursory acts provides the background information necessary to justify the use of force. Possible information includes, but is not limited to:

- Establishing that the officer was acting in an official capacity.
- The wearing of an approved uniform that clearly identifiable as a law enforcement vehicle.
- Identification as a peace officer.
- The reason for the officer's presence.

Officers should describe the specific orders, commands, or requests that they gave to the subject. Both the officer's and the subject's responses and reactions to those commands should be documented, including direct quotes if possible.

Statements made immediately after the confrontation are often the most accurate since there is little to become confused or let outside influences confuse the facts. Wherever possible, witnesses should be located and interviewed at the scene of the confrontation.

In addition, it is my opinion the Atlanta Police Department's failure to conduct a Use of Force Investigation in this matter. This failure can be seen as endorsing and perpetuating inadequate discipline, training, and failure to enforce written polices and established standards.

Lastly, I base my opinion on my twenty-eight- year law enforcement career whereas a Supervisor, I have investigated over 100 Use of Force Incidents as well as being personally involved in the use of lethal and less than lethal force incidents.

## **Opinion Number 12**

It is my opinion based on my review of the facts and Body-Worn Camera Audio/Video Footage in this matter, Atlanta Police Department Police Officers Matthew Abad, No. 6898 and Donald Vickers, No. 4438, acted unprofessionally during their interaction with Mr. Tyler Griffin.

The Atlanta Police Department determined through their investigation, (OPS No. 19-C-0357-UAF), SPO Donald Vickers is captured on his BWC and that of Officer Matthew

Abad, telling Mr. Tyler Griffin to "man up" when he complained of leg pain after he was taken into custody. SPO Donald Vickers does not take into account that Mr. Tyler Griffin may, in fact, be injured and has him standing on the same leg that he complained of pain in, placing SPO Donald Vickers in violation of "APD.SOP.2010 Work Rules, 4.1.1, Appropriate Action Required. 1. Employees shall respond in an appropriate manner to all situations by: 2. Being considerate of the rights, feelings, and interests of all persons."

In addition, I base my opinion on Atlanta Police Department Policy Manual, APD.SOP.2010, Work Rules:

4.2.2: Courtesy:

1. Employees shall be civil, orderly, and courteous to the public, co-workers, and supervisors and should not use coarse, insensitive, abusive, violent, or profane language.

Peace officers should become familiar with the communication process for conducting a vehicle stop:
- Remain consistently courteous.
- Sound professional.
- Center their command presence.
- Deflect resistance.

The Law Enforcement Code of Ethics was adopted as a uniform code of ethics to guide the peace officer. By adhering to the code, officers demonstrate to the community and to their peers that they are honorable and trustworthy.

The Code of Ethics of any profession details the standard of conduct that identifies specific principles of desired behavior required of its practitioners. The profession of policy requires its members to adhere to specific standards in order to maintain the trust and respect of those who are served. Adherence to a Code of Ethics is required to build and maintain morale, a sense of duty, effective standards of performance and community support. Peace Officers are held to higher standards then others in the community. Although policing shares ideals with other professions, only peace officers are given the authority and power to detain and arrest others and to deprive them of their liberty while awaiting adjudication of their offense. It is essential that officers understand the importance of professional behavior.

# On-Scene Consulting

To embody the spirit of professionalism, ethical conduct must be a way for those in policing. To maintain the community's trust, peace officers must maintain consistently high- standards of ethical conduct. Officers must model and live as examples of the behavior that they are charged to enforce. The policing community is only strong as its weakest link. Unethical conduct affects the image and morale of the entire profession and it offends officers and society throughout the country.

In addition, I base my opinion on the following facts and testimony in this matter:

- Atlanta Police Department Police Officer Thomas stated, "Got a lot of weight on it, and it is heavier when you are drunk," (Axon BWC, X81107179, 0:10).
- Atlanta Police Department Police Officer Donald Vickers stated, "You are acting/talking like a little girl right now," (Axon BWC, X81107179, 1:11).
- Atlanta Police Department Police Officer Donald Vickers stated, "Go ahead Thomas, take the pain away," (Axon BWC, X81107179, 1:39).
- According to Police Officer Matthew Abad, he admits that Police Officer Donald Vickers was joking about Mr. Tyler Griffin's weight, (Deposition Transcript of Matthew Abad, Page 51).
- According to Police Officer Matthew Abad, he admits that Police Officer Donald Vickers was bragging to another Officer that he tackled Mr. Tyler Griffin and that he laughed at Mr. Tyler Griffin, (Deposition Transcript of Matthew Abad, Page 52).
- According to Police Officer Matthew Abad, Police Officer Donald Vickers conduct was not okay, (Deposition Transcript of Matthew Abad, Page 53).
- According to Police Officer Matthew Abad, he agrees that that it is not okay for a Police Officer to hurt a citizen and insult them, (Deposition Transcript of Matthew Abad, Page 54).
- According to Police Officer Matthew Abad, he agrees that was not as courteous as possible, (Deposition Transcript of Matthew Abad, Page 71).
- Police Officer Donald Vickers stated to Mr. Tyler Griffin after he was injured any lying on the ground, "Don't do nothing crazy or you will hit the ground again," (Police Officer Donald Vickers' Axon BWC, X81110725, 6:00).
- Police Officer Donald Vickers stated to Mr. Tyler Griffin after he was injured, "I need you to man up and get in that wagon right there," (Police Officer Donald Vickers' Axon BWC, X81110725, 5:55).
- As Mr. Tyler Griffin cried, Police Officer Donald Vickers stated, "You not sounding like a 28-year-old man right now," (Police Officer Donald Vickers' Axon BWC, X81110725, 2:47).

- According to OPS Investigator Arthur Nixon, he does not believe the way that Police Officer Donald Vickers spoke was appropriate, (<u>Deposition Transcript of 30(b)(6) Arthur Nixon, Page 40</u>).
- According to SPO Patrick Fite, he does not believe that the Officers were being sensitive to the driver, (<u>Deposition Transcript of 30(b)(6) Patrick Fite, Page 20</u>).
- According to APD Sergeant Quentin Reese, he agrees that laughing at Mr. Tyler Griffin is not a nice way to behave, (<u>Deposition Transcript of Quentin Reese, Page 29</u>).
- According to APD Sergeant Quentin Reese, he agrees that Police Officer Donald Vickers was not showing a lot of empathy when he said, "You are acting like such a little girl right now, (<u>Deposition Transcript of Quentin Reese, Page 35</u>).
- According to APD Sergeant William Dean, it is not okay for a citizen to be injured and Police Officers laugh, (<u>Deposition Transcript of 30(b)(6) William Dean, Page 34</u>).
- According to APD Sergeant William Dean, it is not acceptable for Officers to tell an adult male citizen that he is a little girl, (<u>Deposition Transcript of 30(b)(6) William Dean, Page 35</u>).

Lastly, I base my decision on being assigned as Investigator on the Los Angeles Police Department Rampart Corruption Task Force and contributor to the Los Angeles Police Department Board of Inquiry Rampart Area Corruption Incident Public Report, March 1, 2000.

## <u>Opinion Number 13</u>

It is my opinion that there was a gross lack of situational awareness and fundamental tactical errors in this incident. It is also my opinion that there was a failure by the Atlanta Police Department to <u>provide training</u> to Atlanta Police Department Police Officers Matthew Abad, No. 6898 and Donald Vickers, No. 4438, <u>or a departure from training</u> by Atlanta Police Department Police Officers Matthew Abad, No. 6898 and Donald Vickers, No. 4438, <u>on the following subject matters</u>: Working as a Team, Use of Available Cover and Concealment, Contact and Cover Officers, Tactical Plans, Verbal Strategies, Active Listening Skills, Vehicle Stops, Undercover/Plain Clothes Operations, Drawing and Exhibiting a Firearm, Use of Reasonable Force, Summoning Medical Treatment for Injured Individuals, Use of Force Reporting and Documentation, Summoning a Supervisor to a Scene Involving an Officer(<u>s</u>) Use of Force, Defusing and De-Escalation Techniques, Requesting Additional/Follow-Up Information, and Leadership, Ethics and Professionalism.

This failure can be seen as endorsing and perpetuating inadequate discipline, training, and failure to enforce written polices and established standards.

In addition, it is my opinion that the **Atlanta Police Department failed to properly discipline to include terminating Police Officers Matthew Abad and Donald Vickers** for their inactions and actions during this incident. Police Officers Matthew Abad and Donald Vickers' inactions and actions during this incident were **intentional and deplorable** and the penalty for their actions and inactions should have sent a resounding message that the Atlanta Police Department will not tolerate this behavior. It is my opinion that the aforementioned Officers demonstrated **Poor Tactics**, **Unnecessarily Exhibited/Pointed a Firearm**, (Abad), **Used Unnecessary Force**, grabbing, (Abad), **Failed to Use Defusing and De-escalation Techniques**, (Abad), **Use of Excessive and Unreasonable Force causing a Serious Physical Injury**, (Vickers), **Failure/Duty to Intervene/Intercede** (Abad), **Failed to Summon Medical Assistance**, (Abad, Vickers, Thomas, Cathey, Simsell, and all other APD Officers who were at scene who were aware that Mr. Tyler Griffin was injured), **Failure to Summon a APD Supervisor to Scene**, (Abad, Vickers, Thomas, Simsell, Cathey and all other APD Officers who were at scene that were aware that SPO Vickers used force causing injury to Mr. Tyler Griffin), **Unprofessional/Unethical Behavior**, (Abad, Vickers, Thomas, Cathey (Laughing at Griffin) and all other APD Officers who were at scene), and in a position to hear the unprofessional comments and laughing at Mr. Tyler Griffin as he writhed in pain on the ground while being rained on (for over 30 minutes)and as he pleaded for their assistance while being polite and kind to the Officers, **Intentionally Providing False and Misleading information to APD Sergeant Thompson after the use of force,** (Abad & Vickers), **Intentionally documenting facts in an APD Incident Report that knew to be false**, (Abad), and **Intentionally turning off his Body-Worn Camera** preceding his use of excessive and unreasonable force, (Vickers).

In addition, I base my opinion on the following facts and testimony in this matter:
- According to Police Officer Matthew Abad, he agrees that Police Officer Donald Vickers' disciplinary history is not good, (Deposition Transcript of Matthew Abad, Page 76).
- According to Police Officer Matthew Abad, he finds it problematic that APD has Police Officers on the force that have extensive disciplinary histories, (Deposition Transcript of Matthew Abad, Page 76).
- According to Police Officer Matthew Abad, he has heard rumors or statements made by other Police Officers about Police Officer Donald Vickers' tending to use force in the field, (Deposition Transcript of Matthew Abad, Pages 78-79).

- According to Police Officer Matthew Abad, he agrees that the way that Police Officer Donald Vickers treated Mr. Tyler Griffin was unprofessional, (<u>Deposition Transcript of Matthew Abad, Page 86</u>).

Lastly, I base my opinion on my twenty-eight- year law enforcement career whereas a Supervisor, I have investigated over 100 Use of Force Incidents as well as being personally involved in the use of lethal and less than lethal force incidents.

## **Opinion Number 14**

It is my opinion based on my review of the facts and Body-Worn Camera Audio/Video Footage in this matter, Atlanta Police Department Police Officer Donald Vickers, No. 4438, failed to activate his Axon Body-Worn Camera until <u>after</u> he used excessive and unreasonable force causing <u>Serious Physical Injury</u> to Mr. Tyler Griffin.

In addition, the Atlanta Police Department conducted a diagnostic evaluation of the BWC issued to SPO Vickers at the time of this incident did not indicate that the device suffered any type of failure or malfunction attributed to anything other than the failure of the operator to properly activate the device. SPO Vickers did not report any issues about his camera at the time, or immediately after this incident occurred in a written report, (as required by <u>APD.SOP.3133 BWC</u>) indicating why the failure to record the event occurred. SPO Vickers' failure to activate his BWC during the course of this incident as required placed him in violation of (<u>APD.SOP.3133 Body Worn Cameras (BWC), 4.3.4</u>)

<u>In addition, I base my opinion on the following facts and testimony in this matter:</u>
- According to OPS Investigator Arthur Nixon, per the SOP, it was wrong the way that Police Officer Donald Vickers turned off his camera off, (<u>Deposition Transcript of 30(b)(6) Arthur Nixon, Page 39</u>).

Lastly, I base my opinion on my twenty-eight- year law enforcement career whereas a Supervisor, I have investigated over 100 Use of Force Incidents as well as being personally involved in the use of lethal and less than lethal force incidents.

## **Opinion Number 15**

It is my opinion that the Atlanta Police Department failed to document this incident involving Mr. Tyler Griffin that occurred on April 5, 2019 in Police Officer Matthew Abad's FY 2019 Performance Evaluation even though it occurred during the Evaluation Period FY, (<u>July 1, 2018-June 30, 2019</u>). It is my opinion if OPS Complaint

Investigation #19-C-0357-UAF was not completed by the time of the due date of the Annual 2019 Evaluation, the Atlanta Police Department should have waited until it's completion to accurately reflect Police Officer Matthew Abad's performance for FY 2019. This failure can be seen as endorsing and perpetuating inadequate discipline, training, and failure to enforce written polices and established standards.

In addition, based on my review of the facts in this matter and outlined in my Opinions in this report, Police Officer Matthew Abad **should not** have received a Highly Effective/Outstanding Rating in the following areas:

Goal 1: C.A.R.E-Represents the Department in a courteous and professional manner, (Highly Effective-4).

Goal 4: Professionalism, (Highly Effective-4).

Competency 1: Integrity/Honesty, (Outstanding-5).

Competency 2: Accountability, (Highly Effective-4)

Competency 3: Problem Solving, (Highly Effective-4).

Competency 4: Teamwork, (Highly Effective-4).

Annual Performance Evaluations provide feedback to a respective Police Officer and should be used as a barometer for future performance. In addition, Annual Performance Evaluations are used for promotional purposes.

In addition, it is my opinion the Atlanta Police Department endorsed Police Officer Matthew Abad's actions and failures that transpired during the incident with Mr. Tyler Griffin, (OPS Complaint Investigation #19-C-0357-UAF).

Lastly, I base my opinion completing of hundreds of Annual Performance Evaluations during my tenure with the Los Angeles Police Department as well as being assigned as Investigator at Los Angeles Police Department Internal Affairs Group, Rampart Corruption Task Force and contributor to the Los Angeles Police Department Board of Inquiry Rampart Area Corruption Incident Public Report, March 1, 2000.

## Opinion Number 16

It is my opinion that the Atlanta Police Department failed to document this incident involving Mr. Donald Vickers that occurred on April 5, 2019 in Police Officer Donald Vickers' FY 2019 Performance Evaluation even though it occurred during the Evaluation Period FY, (July 1, 2018-June 30, 2019). It is my opinion if OPS Complaint

Investigation #19-C-0357-UAF was not completed by the time of the due date of the Annual 2019 Evaluation, the Atlanta Police Department should have waited until it's completion to accurately reflect Police Officer Donald Vickers' performance for FY 2019. This failure can be seen as endorsing and perpetuating inadequate discipline, training, and failure to enforce written polices and established standards. ***In addition, the Rater, Atlanta Police Department Sergeant J. Davis gave Police Officer Donald Vickers the identical evaluation (Boiler Plate) with the identical comments for the entire evaluation as he did for Police Officer Matthew Abad.***

In addition, based on my review of the facts in this matter and outlined in my Opinions in this report, Police Officer Donald Vickers **should not** have received a Highly Effective/Outstanding Rating in the following areas:

Goal 1: C.A.R.E-Represents the Department in a courteous and professional manner, (Highly Effective-4).

Goal 4: Professionalism, (Highly Effective-4).

Competency 1: Integrity/Honesty, (Outstanding-5).

Competency 2: Accountability, (Highly Effective-4)

Competency 3: Problem Solving, (Highly Effective-4).

Competency 4: Teamwork, (Highly Effective-4).

Annual Performance Evaluations provide feedback to a respective Police Officer and should be used as a barometer for future performance. In addition, Annual Performance Evaluations are used for promotional purposes.

In addition, it is my opinion the Atlanta Police Department endorsed Police Officer Matthew Abad's actions and failures that transpired during the incident with Mr. Tyler Griffin, (OPS Complaint Investigation #19-C-0357-UAF).

In addition, I base my opinion on the following facts and testimony in this matter:
- According to Police Officer Matthew Abad, he agrees that Police Officer Donald Vickers' action in the Mr. Tyler Griffin incident should have been documented in his performance evaluation and he believes that Police Officer Donald Vickers Performance Evaluation was misleading, (Deposition Transcript of Matthew Abad, Page 88).

Lastly, I base my opinion completing of hundreds of Annual Performance Evaluations during my tenure with the Los Angeles Police Department as well as being assigned as Investigator at Los Angeles Police Department Internal Affairs Group, Rampart Corruption Task Force and contributor to the Los Angeles Police Department Board of Inquiry Rampart Area Corruption Incident Public Report, March 1, 2000.

<u>**My Qualifications for Reviewing this Case:**</u>

My opinions are based on my education, training, and experience. Upon my graduation in June 1988 from Northeastern University in Boston with a Bachelor's Degree in Criminal Justice, I was hired as Criminal Investigator/Special Agent GS-1811. Upon completion of Criminal Investigator/Basic Agent School at the Federal Law Enforcement Training Center (FLETC), 6-Month academy, I was assigned to the Organized Crime Drug Task Force where I functioned as an agent and undercover operative. The investigations focused on targeting criminal organizations that were involved in large scale narcotic smuggling and money laundering operations.

I was assigned to the Office of the Special Agent In-Charge, in San Francisco from August 1988 until I joined the Los Angeles Police Department in November of 1989. While in the academy, I was selected by the staff to be my Recruit Class Leader. Upon my graduation from the LAPD Academy, I was assigned to 77th Division. In addition to being assigned to 77th Division, I was assigned to Northeast Division (Patrol), Northeast Division (Special Projects Unit-SPU), Northeast Division C.R.A.S.H (Gang Detail). I was selected to be transferred to Operations Central Bureau C.R.A.S.H., where I worked a plain clothes detail targeting specific gangs throughout Operations Central Bureau.

I applied and was selected to be a Police Officer III at Wilshire Area Vice where I functioned as an undercover operative targeting prostitution, gambling, bookmaking, and other Vice related offenses. While working Wilshire Vice, I was ambushed and received two gunshot wounds. I received the Purple Heart in 2010. Upon return from my injuries, I attended mandated Field Training Officer School and was assigned as a Field Training Officer at Wilshire Division. I trained recruits upon their graduation from the Los Angeles Police Academy in tactics, use of force, report writing, vehicle stops, calls for service, court testimony, emergency procedures, pursuit policy, accident investigations, perimeters, Department policies and procedures, and effective communication skills. While assigned as a Field Training Officer, I was involved in an In-Policy Lethal Use of Force incident, while working with a Probationary Police Officer who had recently graduated from the Los Angeles Police Academy.

# On-Scene Consulting

I was promoted to the rank of Detective and attended Basis Detective School. Upon completion of Basic Detective School, I was assigned to Wilshire Area Narcotics, Field Enforcement Section, where I functioned in an undercover capacity.

I was promoted to the rank of Sergeant I and assigned to Hollenbeck Division. Prior to my assignment, I attended mandated Basic Supervisor School. In conjunction with Supervisor School, I was selected to attend the West Point Leadership Academy Supervisor Training. The training focused on team building, leadership, and decision making. While assigned to Hollenbeck Division, I conducted roll call training on a daily basis on numerous subject matters to include: Use of Force Options (Non-Lethal and Lethal), Tactics, Calls for Service, Calls for Service involving the Mentally Ill, Vehicle Pursuit Policy, LAPD Policies and Procedures, Use of Force Policy, Updated Legal Bulletins, Training Directives, and other Standardized Roll Call Training. I directly supervised a Watch of Officers and provided supervisory oversight during calls for service, tactical situations, perimeter tactics, containment and control issues and use of force incidents. I conducted audits, personnel investigations, Standard Based Assessments (Ratings), Use of Force Investigations, Administrative Projects, and prepared commendations for officer's field performance. While assigned to Hollenbeck Division, I was selected as the Officer-In-Charge of Hollenbeck Division's Special Enforcement Group. I directly supervised (14) Police Officers and Detectives assigned to the Unit. Our unit worked in conjunction with Hollenbeck Detectives and specifically targeted career criminals in the Division. I provided ongoing mandated Department Training as well tactical, firearms, less than lethal and search warrant tactics training to the Officers and Detectives. As a Unit, we prepared and served numerous search warrants. I provided search warrant tactical briefing and de-briefing of each warrant at the conclusion of the of the service. I completed audits, administrative projects, Use of Force Investigations, personnel complaints, and other administrative duties as deemed necessary by the Area Commanding Officer.

During this time, I was selected to be loaned to Internal Affairs, Headquarters Section. I investigated personnel complaints that were too large in scope for a geographical Division. At the conclusion of my loan, I was selected to Management Services Division, Special Projects, Office of the Chief of Police. I completed numerous in-depth staff projects for review by the Chief of Police. In addition, I was assigned with conducting research and editing the 2000 LAPD Department Manual.

Also, during this time, I earned my Master's Degree in Public Administration from California State University, Long Beach.

# On-Scene Consulting

I applied and was selected as a Sergeant II at 77th Division Vice. I directly supervised ten undercover officers and four uniformed officers. I provided all facets of training to the officers assigned to Vice at that time to include: Use of Force Policy, Legal Updates, Department Directives, Training Bulletins, Standardized Roll Call Training, Tactics Training, Undercover Operations training, Surveillance training, and any other training deemed necessary by my Area Commanding Officer. I conducted audits, personnel investigations, administrative projects, Use of Force Investigations, and special projects.

During this time, I was selected by the Chief of Police to be loaned to the Rampart Corruption Task Force. I conducted Use of Force audits on Specialized Units in Central and South Bureaus. I reported directly to the Office of the Chief of Police.

In 2000, I applied and was selected to Metropolitan Division K9 Platoon as a Sergeant II+1. I directly supervised (18) K9 Handlers. Metro K9 conducted K9 Operations for the entire Department covering all Patrol Divisions and Specialized Units. I provided all facets of training to the K9 Officers to include: K9 Operations, tactics, search warrant services, Mobile Field Force Options, Less than Lethal Force Options, Lethal Force Options, Department Directives, Training Bulletins, and other training dictated by the Officer-in-Charge and Commanding Officer. In addition, I taught K9 Operations at in-service training, Watch Commander School, Field Training Officer (FTO) School, and Basic Detective School. While at K9, I investigated and completed K9 contacts, personnel complaints, Use of Force Investigations. In addition, I directed and was directly involved in Use of Force incidents. I received the LAPD Medal of Valor and LAPD Police Star for two lethal use of force incidents while assigned to K9.

In 2005, I was selected as a Sergeant II+1 in Special Weapons and Tactics (SWAT). I directly supervised sixty SWAT Officers. I conducted and facilitated all facets of SWAT training to include: Weapons Training (.45 caliber, MP-5, M-4, Benelli Shotgun, Remington 870 Bean Bag Shotgun, .40mm, SAGE, MX-26 Taser) on a monthly basis. In addition, I facilitated and conducted training in the following training Cadres: Breacher (Explosive), Crisis Negotiation-Mental Health, MEU, SMART, Suicide Prevention, Counter-Terrorism Cadre, Climbing, Hostage Rescue, Sniper Training, Air Support Training (Fast rope, Aerial Platform Shooting). I directly supervised SWAT missions and High-Risk Search Warrant Services to include all facets (preparation, briefing, deployment, de-briefing). I was the Supervisor-in-Charge of the Crisis Negotiation Team. I provided on-going crisis negotiation training, mental health training, de-briefs, 40-hour POST Certified CNT School, and suicide prevention training. I worked in conjunctional with the mental health community to provide and facilitate

training with LAPD SMART, LAPD Mental Evaluation Unit (MEU), Behavioral Science Services Section (BSS), and the Didi Hirsch Suicide Prevention Training. In addition, I was assisted the West Point Military Academy with the development of their crisis negotiation curriculum.

During this time, I was selected as the sole LAPD SWAT representative to respond to Mumbai India with Counterterrorism following the terrorist attack in November 2008. I taught use of force, tactics, and SWAT deployment to 250 Mumbai Special Tactical Police Officers. Upon my return, I assisted with the development of multiple venue/multiple attacker tactics.

In June 2010, I retired from the Los Angeles Police Department with 20 years in service to pursue an opportunity in the private sector. I held supervisory positions for the last 14 years of my career. During my tenure with the LAPD, I received over 100 Commendations to include: The Medal of Valor, Purple Heart, and the Police Star.

From June 2010 through April 2013, I was the Vice President of Security Operations at Caruso Affiliated in Los Angeles, CA. My responsibilities included: Identified and conducted Risk and Vulnerability Assessments for all Caruso Affiliated Developments, projected developments/investments, and residences. Utilized strategic-level analysis from the intelligence community, law enforcement and the private sector. Ensured a coordinated ability to identify and monitor potential or actual incidents among critical infrastructure domains and all personal and professional interests of Caruso Affiliated. Mitigated expected threats. Utilized preplanned, coordinated actions in response to infrastructure warnings or incidents. Responded to hostilities. Identified and eliminated the cause, or source, of an infrastructure event by the utilization of emergency response measures to include on-site security personnel, local law enforcement, medical and fire rescue, and relevant investigative agencies. Conducted all facets of security training for the company and employees. Formulated Business Continuity and CEO Succession Plans for the company and all affiliated business interests. Conducted ongoing audits and internal investigations.

From June 2013 to June 2014, I was hired as a Deputy Sheriff at the Riverside Sheriff's Department where I conducted all facets of patrol service to include calls for service, self-initiated field activity, arrests, citations, and court testimony. In addition, during my tenure with the Riverside County Sheriff's Department, I was assigned to Robert Presley Detention Center (RPDC). Processed and monitored inmate population from initial intake, housing, court, transportation, and release. Conducted searches of inmate population as well as the

facility on an ongoing basis. Utilized experience as a gang officer, Detective and Sergeant with LAPD to conduct interviews and interrogations of prisoners regarding a myriad of investigations. Provided information to gang detail. Functioned as a mentor to newly appointed Deputy Sheriffs as well as Supervisors. Attended and certified in RSO Supplemental Jail Operations Core Course prior to deployment at RPDC. Attended on-going training to include: Use of Force (Lethal and Non-Lethal), Crisis Negotiation Training, Active Listening Skills Training, Report Writing, Response and Deployment to Critical Incidents, and Proper Protocols and Procedures when responding to a medical incident or suicide.

From June 2014 to March 2016, I was the Director of Security at Universal Protection Service where I supervised 84 Security Professionals at the City National Plaza. Conducted and or facilitated all Bureau of Security and Investigative Services (BSIS) training to Security Professionals. Ensured all Security Professionals were compliant with BSIS security training and licensing. Conducted the following training to Security Professionals and Tenants on an ongoing basis: Fire Life Safety, Evacuation Drills, Active Shooter, Workplace Violence, Security Procedures and Protocols, Responding to Incidents Involving the Mentally Ill, Hazardous Materials and Internal Theft. Conducted ongoing Risk and Vulnerability Assessments of the City National Plaza to include security staffing and deployment, Closed Circuit Television (CCTV), Crime Prevention through Environmental Design (CPTED), and protocols to respond and mitigate threats. Developed Security and Fire Life Safety Manuals for Security Professionals and Tenants. Coordinated all security efforts to ensure safety at Special Events. Conducted internal investigations and worked in conjunction with the Los Angeles Police Department (LAPD) and the Los Angeles Fire Department (LAFD) on an ongoing basis.

From March 2016 to September 5, 2017, I was the Director of Security at L&R Group of Companies. Identified and conducted Risk and Vulnerability Assessments for all L&R Group of Companies developments and projected developments throughout the United States. Conducted and/or facilitated all Bureau of Security and Investigative Services (BSIS) training to Security Professionals. Ensured all Security Professionals were compliant with BSIS security training and licensing. Conducted the following training to Security Professionals and Tenants on an ongoing basis: Fire Life Safety, Evacuation Drills, Active Shooter, Workplace Violence, Security Procedures and Protocols, Responding to Incidents Involving the Mentally Ill, Hazardous Materials and Internal Theft. Conducted ongoing Risk and Vulnerability Assessments to include security staffing and deployment, Closed Circuit Television (CCTV), Crime Prevention through

Environmental Design (CPTED), and protocols to respond and mitigate threats. Developed Security and Fire Life Safety Manuals for Security Professionals and Tenants. Coordinated all security efforts to ensure safety at Special Events. Conducted internal investigations and worked in conjunction with the Los Angeles Police Department (LAPD) and the Los Angeles Fire Department (LAFD) on an ongoing basis as well as respective law enforcement agencies throughout the United States on security matters.

Attached are my curriculum vitae, listing of testimony and fee schedule.

Scott A. DeFoe

# Scott A. DeFoe

P.O. Box 4456, Huntington Beach, CA 92605-4456
Cell: 714-655-4280
sdefoe313@msn.com

**Executive Profile**

**Expert Witness / Consultant Specialties Include:**

| | |
|---|---|
| Police Procedures / Tactics | Use of Force (Lethal and Less Lethal) |
| SWAT | K9 |
| Narcotics | Jail Operations |
| Informants | Police Corruption / Internal Investigation |
| Vehicle Pursuits | Vice |
| Surveillance | Evidence Analysis & Preservation |
| Security | Premise Liability / Forseeability |

**Awards and Commendations**

**Purple Heart** (LAPD),
**Medal of Valor** (LAPD)
**Police Star** (LAPD) and over 100 Los Angeles Police Department and citizen commendations.

**Professional Experience**

**Consultant / Expert Witness**
April 2013 to Present
**On-Scene Consulting Group, LLC.** - Los Angeles, CA
Provide comprehensive service which includes in-depth analysis and investigations with detailed reporting of all findings. Testified as an Expert Witness in pre-trial depositions and in various courts throughout the United States.

**Director of Security**
March 2016 to September 2017
**L&R Group of Companies** - Los Angeles, CA
Identified and conducted Risk and Vulnerability Assessments for all L&R Group of Companies developments, and projected developments throughout the United States. Conducted all facets of security training to ensure compliance with the Bureau of Security and Investigative Services (BSIS). Ensured compliance with appropriate safety and sustainability regulations for all of the developments in coordination with Human Resources, Legal, and law enforcement to ensure the safety and security of protection of our staff, executives, tenants, and guests.

- Utilized strategic-level analysis from the intelligence community, law enforcement and the private sector. Ensured a coordinated ability to identify and monitor potential or actual incidents among critical infrastructure domains.
- Mitigated expected threats. Utilized preplanned coordinated actions in response to infrastructure warnings or incidents.
- Conducted internal investigations and audits.
- Directed the day-to-day management of site security operations for major sites through subordinates to ensure timely delivery of required services and appropriate response to incidents.
- Designed and implemented appropriate security, measures for existing and projected developments.
- Coordinated all security efforts with current practices and procedures.
- Researched and deployed appropriate technology solutions, innovative security management techniques, and other procedures to ensure physical safety of employees, tenants and guests.

**Director of Security**
June 2014 to March 2016
**Universal Protection Service** - Los Angeles, CA
Directed supervision of 84 Security Professionals at the City National Plaza. Conducted and or facilitated all Bureau of Security Investigative Services (BSIS) training to Security Professionals. Ensured all Security Professionals were compliant with BSIS security training and licensing. Conducted the following training to Security Professionals and Tenants on an ongoing basis.

- Trained others on Fire Life Safety, Evacuation Drills, Active Shooter, Workplace Violence, Security Procedures and Protocols, Responding to Incidents Involving the Mentally Ill, Hazardous Materials and Internal Theft.
- Conducted ongoing risk and vulnerability assessments of the City National Plaza to include security staffing and deployment, closed circuit television (CCTV), Crime Prevention through Environmental Design (CPTED), and protocols to respond and mitigate threats.
- Developed Security and Fire Life Safety Manuals for Security Professionals and Tenants.
- Coordinated all security efforts to ensure safety at special events. Conducted internal investigations and worked in conjunction with the Los Angeles Police Department (LAPD), Los Angeles Fire Department (LAFD) on an ongoing basis.

**Riverside County Sheriff's Department** - **Deputy Sheriff (Lateral)** - June 2013 to June 2014
April 2014 to June 2014
Assigned to Jurupa Valley Station Field Deputy Training Program. Conducted all facets of patrol service to include: calls for service, self-initiated field activity, arrests, citations, booking of evidence, and court testimony.

June 2013 to April 2014
Assigned to Robert Presley Detention Center (RPDC). Processed and monitored inmate population from initial intake, housing, court, transportation and release. Conducted searches of inmate population as well as the facility on an ongoing basis. Utilized experience as a Gang Officer, Detective and Sergeant with LAPD to conduct interviews and interrogations of prisoners regarding a myriad of investigations.

- Provided information to gang detail.
- Functioned as a mentor to newly appointed Deputy Sheriffs as well as Supervisors.
- Attended and certified in RSO Supplemental Jail Operations Core Course and Title XV training prior to deployment at RPDC. Received on-going training to include: Use of Force (Lethal and Non-Lethal), Crisis Negotiation Training, Active Listening Skills Training, Report Writing, Response and Deployment to Critical Incidents, and Proper Protocols and Procedures when responding to a medical incident or suicide.

**Vice President of Security Operations**
June 2010 to April 2013
**Caruso Affiliated** - Los Angeles, CA
Identified and conducted risk and vulnerability assessments for all Caruso Affiliated Developments, projected developments/investments, and residences. Utilized strategic-level analysis from the intelligence community, law enforcement and the private sector. Ensured a coordinated ability to identify and monitor potential or actual incidents among critical infrastructure domains and all personal and professional interests of Caruso Affiliated. Mitigated expected threats. Utilized preplanned, coordinated actions in response to infrastructure warnings or incidents.

- Responded to hostilities and identified and eliminated the cause, or source, of an infrastructure event by the utilization of emergency response measures to include: on-site security personnel, local law enforcement, medical and fire rescue and relevant investigative agencies.
- Conducted all facets of security training for the company and employees.
- Formulated Business Continuity and CEO Succession Plans for the company and all affiliated business interests. Conducted ongoing audits and internal investigations.

**Level I Reserve Police Officer**
June 2010 to March 2016
**Los Angeles Police Department** - Los Angeles, California

Initially assigned to Counter Terrorism from June 2010 through April 2012. Completed staff projects for the Deputy Chief.

Assigned to the Wilshire Division from April 2012 through March 2016. Assisted with tactical and shooting training days as an Adjunct Instructor. Assigned to patrol functions including: responding to calls for service, conducting follow-up investigations, conducting self-initiated law enforcement activities including arrests, booking of arrestees, completing reports and booking of evidence.

- Worked in conjunction with citizens and local businesses in developing crime fighting strategies.
- Provided active shooter training to local businesses.
- Worked in conjunction with Wilshire Detectives and Wilshire Crime Analysis Detail (CAD) to reduce crime.

**Sergeant II+1 Special Weapons and Tactics (SWAT) Supervisor**
August 2005 to June 2010
**Los Angeles Police Department** - Los Angeles, California

Supervised the response and tactical intervention during barricaded subject incidents. Supervised the coordination and facilitation of high risk warrant services. Supervised the Crisis Negotiation Team (CNT) during barricaded and suicidal subject incidents. Developed SWAT's Counter-Terrorism and Training Cadre to include the preparation and submission of federal and state grants for the acquisition of equipment.

- Performed and facilitated all aspects of tactical and crisis negotiation training to federal, state and local law enforcement agencies.
- Responded and trained Mumbai local and state police officers following the 2008 terrorist attack in Mumbai, India.
- Assisted with the development of multi-assault counter-terrorism action capabilities training.
- Completed audits, employee performance reviews, investigative reports and internal investigations.
- Conducted use of force investigations on SWAT incidents and submitted reports to the Officer-in-Charge for his review and approval.
- Testified in court and at administrative hearings.

**Sergeant II+1 Metropolitan Division K9 Platoon**
April 2000 to September 2005
**Los Angeles Police Department** - Los Angeles, California

Supervised and facilitated all facets of K9 training. Ensured that all K9 deployments conformed to the K9 deployment criteria, through training of personnel and supervision of K9 searches. Functioned as a member on a K9 Search Team when necessary. Provided on-scene command during critical incidents at Command Posts.

- Completed use of force investigations and K9 contacts. Submitted all reports to Officer-in-Charge for his review and approval.
- Completed all requisite administrative reports to include audits.
- Testified in court, and at administrative hearings. Wrote 2002 LAPD Metropolitan Division K9 Platoon Manual.

**Sergeant II-77th Division Vice, Officer-in-Charge**
February 1999 to March 2000
**Los Angeles Police Department** - Los Angeles, California
Supervised investigations involving pimping, pandering, prostitution, bookmaking, gaming, gambling and other vice related activities. Conducted audits and administrative reports. Prepared and served search warrants for the above-mentioned crimes. Supervised twelve undercover officers and six uniformed officers on a daily basis. Worked in conjunction with other Department entities on sensitive investigations.

- Completed rating reports for subordinates assigned to the Unit.
- Conducted use of force investigations, audits, personnel complaints and other administrative tasks.
- Submitted all reports to the Officer-in-Charge for his review and approval.
- Testified in court and at administrative hearings.

**Management Services Division Supervisor-Sergeant**
November 1997 to March 1999
**Los Angeles Police Department** - Los Angeles, California
Conducted research projects, directives and correspondence at the direction of the Chief of Police. Reviewed staff work by subordinates. Conducted follow-up investigations as required to ensure that policies and procedures were adhered to by all organizational units within the Department. Conducted large scale audits and investigations.

- Served a six-month loan on the Rampart Corruption Task Force investigating and auditing use of force reports.
- Served a six-month loan at Internal Affairs Division, Headquarters Section. Investigated personnel complaints beyond the scope of geographical patrol divisions.
- Staff writer for the 2000 Los Angeles Police Department Manual.

**Hollenbeck Division Special Enforcement Group Officer-in-Charge**
November 1996 to November 1997
**Los Angeles Police Department** - Los Angeles, California
Provided supervisory oversight of eighteen police officers and detectives during gang investigations, crime suppression and the service of search warrants. Provided all aspects of tactical training to the group. Completed audits, employee ratings and administrative duties.

- Monitored and reviewed gang and narcotic investigations to ensure compliance with Department policy. Conducted use of force investigations.
- Submitted all investigative and administrative reports to the Commanding Officer for his review and approval. Testified in court and at administrative hearings.

**Detective, Wilshire Division**
March 1995 to November 1996
**Los Angeles Police Department** - Los Angeles, California
Assigned to various areas including: Robbery, Burglary, Auto Theft, Major Assault Crimes (Assaults with Domestic Violence), Homicide and the West Bureau Narcotics Group Field Enforcement Section. Conducted preliminary investigations and follow-up investigations. Interviewed victims and witnesses of crimes and interrogated individuals suspected of committing crimes. Conducted surveillances.

- Filed criminal investigations with the Los Angeles City Attorney's Office and the Los Angeles District Attorney's Office.
- Worked in conjunction with other law enforcement agencies and entities within the Los Angeles Police Department.
- Wrote and served search warrants. Booked evidence related to investigations.
- Trained local businesses and community groups in the areas of safety and security.

**Police Officer**
November 1989 to March 1995
**Los Angeles Police Department** - Los Angeles, California
Functioned in numerous roles as a Police Officer I, II, and III to include: Patrol, Field Training Officer (FTO), Detective Trainee, Vice, Special Enforcement Group, Divisional CRASH (gangs) and Operation Central Bureau CRASH (gangs).

- Selected to Specialized Units based on high performance and ability to work well in small cohesive units throughout the Department.
- Testified in court on a multitude of matters. Certified in court as a narcotic, gang, and vice expert.

**Special Agent-Organized Crime Drug Task Force (OCDETF)**
June 1988 to October 1989
**Department of Treasury, United States Customs Service** - San Francisco, California.  Special Agent assigned to a multi-agency narcotics task force. Investigated major suppliers of narcotics and dangerous drugs who were engaged in illegal activities on an organized and commercial basis in an undercover capacity.

- Prepared and served search warrants. Worked in conjunction with the Assistant United States Attorney in San Francisco. Testified in Federal Court and at Asset Forfeiture Hearings.

**United States Army Reserve**
June 1983 to June 1989
Honorable Discharge as E-4. Military Occupational Skill (MOS)-72E-Combat Infantry Communications

**Training (Received and Provided Training):**
Weapons Training/Qualification on Monthly Basis-M-4, MP-5, Benelli Shotgun, Kimber/.45/1911, Remington 870 Shotgun, Glock, Force Option Simulator (Quarterly). Quarterly mandatory weapons certification from November 1989 to June 2010.

**Additional Training/Certification(s):** (11/1989-06/2010)

**Supervisor Training:**
Incident Command System 100-800
Sexual Harassment Training for Supervisors
Career Development for Supervisors
Standards Based Assessments for Supervisors
Supervisors Consent Decree Training
Vehicle Pursuit Policy Supervisor Training
Watch Commander School Retaliation Training
RMIS TEAMS II (Non-Categorical Use of Force Supervisor Training)
Ethics in Law Enforcement
Career Survival Workshops
Problem Oriented Policing and the SARA Model
Cultural Diversity Tools for Tolerance
Instructor Development Course (IDC)
Officer Involved Shootings Administrative Investigations Training
Prop 115-Hearsay Evidence Training
Managing Workplace Conflict CLETS-NCIC
Racial Profiling
West Point Leadership School for Supervisors
Basic Supervisor School

**HAZMAT Training:**
Advanced Chemical and Biological Integrated Response, LAFD Hazardous Materials Technical Specialist (A-D)-Certified HAZMAT Technician, Technical Emergency Response Training, Law Enforcement Protective Measures.

**Crisis Negotiations/Mental Health Training:**
Hostage Negotiations - Advanced, Behavioral Sciences Services Section
Officer-Involved Shooting/Barricaded Subject Services Debriefs
Crisis Negotiation Training and Curriculum Development for West Point Military Academy
Didi Hirsch Suicide Prevention Training (Volunteered and Supervised on an ongoing basis)
Mood Disorders/Post Traumatic Stress Disorder Training, Communicating with People with Disabilities
Mental Health Introduction MEU-SMART Orientation
Mental Illness Update
Drug Recognition Expert Training and Certification
Under the Influence-11550 Health and Safety Code Training
Institute for the Prevention of In-Custody Deaths Training on Recognizing Agonal & Other Breathing Problems
(2015). Attended and facilitated LAPD CNT 40-Hour Course
Attended FBI Basic Crisis Negotiation Course

**Tactical Training:**
Crowd Management Control, Search and Arrest Warrant Tactics
Less than Lethal Use of Force Training and Certification TASER MX-26, X-26 Train the Trainer
(Trainer/Instructor Certification)
Excited Delirium & Agitated Chaotic Events, Train the Trainer.
End of Pursuit Tactics Overview
Communication-Keeping Your Edge
Crowd Management and Control
Immediate Action Rapid Deployment
Arrest and Control Trainer Certification
Los Angeles County Sheriff's Department Explosive Breaching Course
Mobile Field Force Supervisor Train the Trainer
Officer Survival-Shooting
Personal Protective Equipment (PPE)
Pursuit Intervention Techniques for Supervisors
Baton/Impact Weapon
Advanced Canine Supervisor Course
Basic Metro School
Collapsible Baton
Officer Safety Field Tactics
Mobile Field Force Training
Narcotics/Tactical Entry Update
Field Training Officer Update
Standard Emergency Management System (SEMS)
CPR-First Aid Recertification
Basic Arrest and Control Techniques
Driver Awareness Training
Range Safety Officer and Supervisor Training
Interrogation Techniques
VICE School
37mm Baton Round Training
Civil Unrest Response Training
Hobble Training
Advanced Field Officer Course, Oleoresin Capsicum (OC) Gas Training
Search Warrant Counter Measures
Riverside Sheriff's Department Jail Operations Course to include Title XV

**Detective Training:**

Basic Detective School
Juvenile Procedures School
Association of Threat Assessments Professionals (ATAP) Training
Workplace Investigative Training
LAPD Narcotics School
POST Investigative and Interrogation Course
POST Cognitive & Statement Analysis Training Course
Special Investigative Section Surveillance Training

**California Peace Officer Standards and Training (P.O.S.T.) Commission: Basic, Intermediate, Advanced and Supervisory Certificates.**

**Outside Training**:

Dale Carnegie 12-week Public Speaking School
Americans for Effective Law Enforcement (AELE) Certified Litigation Expert Courses
Use of Force By The Numbers: 4, 8, 14 (Institute for the Prevention of In-Custody Deaths-IPICD)
California Specialized Training Unit Hazardous Materials First Responder Operations Weapons of Mass Destruction Law Enforcement Field Support Course
Louisiana State University Screening of Persons by Observational Techniques (SPOT)
Subconscious Communication for Detecting Danger by International Academy for Linguistics and Kinesics
Department of Homeland Security WMD Radiological/Nuclear Course of Hazardous Materials Technicians
UNLV WMD Radiological/Nuclear Awareness Train The Trainer Course, FEMA Advanced Chemical and Biological Integrated Response Course Mobile Training Event
FEMA WMD Law Enforcement Threat
Hazard Recognition, and Emergency Actions Training
CSTI Technician/Specialist 1A-D, DHS WMD Tactical Commander Management and Planning
Licensed California Private Investigator (License No. 29151)
Certified California Criminal Defense Investigator.

**Associations**

California Association of Licensed Investigators
Peace Officers Association of Los Angeles County (POALAC)
Americans for Effective Law Enforcement (AELE)
California Crime Prevention Officers Association
International Association in Crime Prevention Partners
California Peace Officers Association

**Education**

**Master of Legal Studies**, 2020
**Pepperdine Law School** - Malibu, California, United States

**Master of Arts**: **Public Administration**, 1998
**California State University** - Long Beach, California, United States

**Bachelor of Science**: **Criminal Justice**, 1988
**Northeastern University** - Boston, Massachusetts, United States

# Scott A. DeFoe
# On-Scene Consulting Group, LLC
### P.O. Box 4456
### Huntington Beach, California 92605-4456
### (714) 655-4280 (Cell)
### Email: sdefoe313@msn.com

## <u>RECORD OF TRIAL TESTIMONY & DEPOSITIONS</u>

**1.** <u>**Deposition**</u>**:** April 15, 2010, Dorman, et al. v. State of California (CHP) Case No. INC058224.

**2.** <u>**Deposition**</u>**:** August 28, 2014, L.H. (Henning) v. County of Los Angeles, et al., Case No. CV13-1156-GW (JCGx)

**3.** <u>**Deposition**</u>**:** September 15, 2014, A.D., (De La Torre) et al. v. City of Los Angeles, et al., Case No. CV13-6510-JFW (Asx)

**4.** <u>**Deposition**</u>**:** October 28, 2014, Goodlow v. City of El Cajon, Case No. 13cv1542 DMS NLS

**5.** <u>**Deposition**</u>: February 3, 2015, Castro v. County of Los Angeles, et al., Case No. CV13-6631.

**6.** <u>**Deposition**</u>**:** April 10, 2015, James Gallegos v. Havana House, Gilardo Lopez, Donald Bernard, Joseph Escandon and DOES 1-100, Case No. BC508561.

**7.** <u>**Trial Federal Court**</u>: April 29, 2015, Goodlow v. City of El Cajon, Case No. 13cv1542 DMS NLS.   United States District Court, Southern District of California, Judge Dana S. Sabraw.

**8**. <u>**Deposition**</u>: May 14, 2015, Eloy Jacobo v. City of Palm Springs, a Government Agency, DOES 1 through 50, inclusive, Case No. INC 1302171.

**9**. <u>**Deposition**</u>:   August 14, 2015, Valine Gonzalez (Santibanez Matter) v. City of Visalia; Tim Haener; and DOES 2-10, inclusive, Case No1:13-cv-01697.

**10.** **<u>Trial State Court:</u>** August 18, 2015, James Gallegos, Plaintiff v. Havana House; Gilardo Lopez; Donald Bernard; Jose Escandon and DOES 1-100, inclusive, Defendants. Case No. BC 508561

**11**. **<u>Deposition</u>**: September 1, 2015 (Part 1) and September 4, 2015 (Part 2), Frederick Ronald Thomas; JR., individually and as successor-in-interest of Kelly James Thomas, deceased, Plaintiff, vs. City of Fullerton, et al. Case No. 30-2012-00581299.

**12.** **<u>Deposition:</u>** September 15, 2015, Anthony Del Real, individually and as successor-in-interest to John Del Real, Jr; Brittany Del Real Davis, individually and as successor-in-interest to John Del Real Jr.; and Shirley Lowery, Plaintiff vs. City of Long Beach; et al., Defendants.

**13.** **<u>Deposition</u>**: September 23, 2015, R.A., a minor, by and Through his guardian ad Litem Adrianne Penrose, Individually and as successor in interest of John Armes, deceased, and Adrianne Penrose, individually, Plaintiffs vs. County of Riverside, Et al., Defendants.

**14.** **<u>Deposition</u>**: October 19, 2015. Tara Garlick, individually; M.L.S., C.J.S., C.R.S., and E.Z.S., minors, by and through their guardian ad litem, Judy Silva, in each case individually and as successors in interest to David Silva, deceased; J.S., individually and as successor in interest to David Silva, by and through her guardian ad litem Adriane Dominguez; Merri Silva, individually; and Salvador Silva, individually, vs. County of Kern, Et al., Defendants, Lead Case No. 1:13-CV-01051-LJO-JLT.

**15**. **<u>Deposition</u>**: November 20, 2015, Gonzalo Martinez, Plaintiff vs. County of Los Angeles; Cuauhtemoc Gonzalez and Does 1 through 10, inclusive. Defendants.

**16**. **<u>Deposition</u>**: December 1, 2015, Mindy Losee, individually and as successor in interest to Breanne Sharpe, deceased, Plaintiff vs. City of Chico, Scott Zuschin, Damon Selland, Nick Vega, Jared Cumber, David Quigley; and DOES 1-10, inclusive. Defendants.

**17.** **<u>Deposition:</u>** December 17, 2015, Stanley Jordan, an individual, Plaintiff vs. City of Hawthorne, Officer Matthew Manley, and DOES 1-10, inclusive.

**18.** <u>**Deposition:**</u>   February 10, 2016, Bridget Wiseman, individually and as successor-in-interest of Dean Gochenour, deceased, Plaintiff vs. City of Fullerton, Vincent Mater, Carlos Medina and DOES 1 to 50, inclusive.

**19.** <u>**Deposition:**</u>   April 1, 2016, N.W., a minor by through his guardian ad litem Tkeyah Boyd, individually and as successor-in-interest to Tyler Damon Woods, Plaintiffs vs. City of Long Beach, Officer John B. Fagan; Officer Daniel A. Martinez, and DOES 1-10, inclusive, Defendants. Case No. EDCV14-01569-VAP (SP).

**20.** <u>**Deposition:**</u>   April 7, 2016, R.D.C., a Minor, by and through his Guardian ad Litem, Maria Teresa Penaloza, Plaintiffs vs. County of Los Angeles, a public entity; Jerry Powers, Booker Waugh, Les Smith, and DOES 1 through 10, individually and in their official capacity as Probation Officers for the County of Los Angeles, Defendants, Case No. CV14-6014 DMO SHX.

**21.**   <u>**Trial State Court:**</u>   April 20, 2016, Eloy Jacobo v. City of Palm Springs, A Government Agency and DOES 1-50, inclusive, Case No. INC 1302171.

**22.**   <u>**Deposition:**</u>   April 28, 2016, Ledesma vs. Kern County, Case No.14-CV-01634-LJO-JLT.

**23.**   <u>**Deposition:**</u> May 16, 2016, Dennis Dean Sr., Susannah Hardesty, and Amy Dean, Plaintiff's vs. Salvador Robles; Daryl Meadows; Randy Moya and DOES 4-25, Case No. 2:13-cv-00730 JAM KJN.

**24.**   <u>**Trial Federal Court:**</u> June 16, 2016, N.W., a minor by through his guardian ad litem Tkeyah Boyd, individually and as successor-in-interest to Tyler Damon Woods, Plaintiffs vs. City of Long Beach, Officer John B. Fagan; Officer Daniel A. Martinez, and DOES 1-10, inclusive, Defendants. Case No. EDCV14-01569-VAP (SP).

**25.**   <u>**Deposition:**</u> June 22, 2016, May 11, 2017, Marian Amaya, individually and as successor -in-interest of Emiliano Amaya, deceased; G.A., a Minor by and through his Guardian ad Litem Belinda Krawiec, individually and as successor-in-interest of Emiliano Amaya, deceased; Gloria Amaya, individually, Plaintiffs, vs. County of Los Angeles; Sheriff Lee Baca, and Does 1 to 50, Inclusive, Defendants. Case No. VC062384.

**26.** <u>**Deposition:**</u> June 27, 2016, Robert J. Zambrano JR., Kathleen Zambrano, and Jillian Zambrano, a Minor and through her Guardian ad Litem, Robert J. Zambrano JR., Plaintiffs vs. Andrew Drobot, Redondo Beach Police Department, City of Redondo Beach, and DOES 1 to 50, Inclusive, Defendants.

**27.** <u>**Deposition:**</u> July 5, 2016, NONA OPSITNICK AND LINDA STERETT, Plaintiffs vs. CITY OF LONG BEACH; ERIC BARICH, SALVADOR ALATORRE, ABRAM YAP, and DOES 4-10, inclusive Defendants. Case No. 14-9370-PLA.

**28.** <u>**Deposition:**</u> July 7, 2016, Leslie Laray Crawford, individually and as Successor in Interest to Michael Laray Dozer, deceased, Plaintiff, vs. City of Bakersfield, a municipal entity, Officer Aaron Stringer, an individual, Michael Eugene Dozer (as a nominal defendant) and DOES 1 through 10, inclusive, Defendants, Case No. 1:14-CV-01735-SAB.

**29.** <u>**Trial Federal Court:**</u> August 19, 2016, Anthony Del Real, individually and as successor-in-interest to John Del Real, Jr; Brittany Del Real Davis, individually and as successor-in-interest to John Del Real Jr.; and Shirley Lowery, Plaintiff vs. City of Long Beach; et al., Defendants.

**30.** <u>**Deposition:**</u> September 19, 2016, D.G., a minor, by and through his guardian ad litem, Denise Bonilla, individually and as successor-in-interest to David Garcia, deceased; D.E.G., a minor, by and through her guardian ad litem, Denise Bonilla, individually and as successor-interest to David Garcia, deceased; G.D., a minor, by and through her guardian ad litem, Denise Bonilla, individually and as successor-in-interest to David Garcia, deceased; RAMONA RAMIREZ NUNEZ, individually; Plaintiffs, vs. COUNTY OF KERN; ROBERT REED; DOES 2 THROUGH 10; Defendants.

**31**. <u>**Deposition**</u>: October 4, 2016, J.M., a minor by and through his guardian ad litem Celine Lopez, individually and as successor-in-interest to Hans Kevin Arellano, Plaintiff vs. CITY OF SANTA ANA, OFFICER JESSICA GUIDRY; OFFICER STEPHEN CHAVEZ; and Does 1-10, inclusive, Defendants. Case No. 8:15-cv-00432.

**32**. **Trial Federal Court**: October 20, 2016, Leslie Laray Crawford, individually and as Successor in Interest to Michael Laray Dozer, deceased, Plaintiff, vs. City of Bakersfield, a municipal entity, Officer Aaron Stringer, an individual, Michael Eugene Dozer (as a nominal defendant) and DOES 1 through 10, inclusive, Defendants, Case No. 1:14-CV-01735-SAB.

**33**. **Deposition**: November 30, 2016, Brian Bunnak, Plaintiff, vs. KION JAMES MOSBAT, an individual, and DOES 1 through 10, inclusive, Defendants. Case No. BC571975.

**34**. **Deposition:** February 13, 2017, Abraham Valentin, Alejandro Francisco Peralta, Michael Dominguez, Frank Margarito Escobedo, Plaintiffs vs. ROBERT JACKSON, and DOES 1-50, Inclusive, Defendants. Case No. CV 15-09011-BRO (AFMX).

**35.** **Deposition:** March 3, 2017, ARTURO GONZALEZ, Plaintiff, vs. CITY OF BAKERSFIELD, GARY CARRUESCO, DOUG BARRIER, KASEY KNOTT, JUAN OROZCO, and DOES 5-10, Defendants. Case No. 1:16-CV-00107-JLT.

**36.** **Trial Federal Court:** March 9, 2017, LUIS ARIAS, an individual, Plaintiff, vs. COUNTY OF LOS ANGELES, a municipal entity; DEPUTY KENNETH FITCH, an individual and DOES 1 through 10, inclusive, Defendants. Case No. 2:15-CV-02170-AB-AS.

**37.** **Deposition:** March 10, 2017, FREDRICK THOMAS and ANNALESA THOMAS, as Co-Administrators of the Estate Leonard Thomas, and its statutory beneficiaries, Plaintiffs, vs. BRIAN MARKERT; MICHAEL WILEY; NATHAN VANCE; MICHAEL ZARO; SCOTT GREEN; JEFF RACKLEY; CITY OF FIFE; CITY OF LAKEWOOD; PIERCE COUNTY METRO SWAT TEAM; and JOHN DOES 1 through 10, Defendants. (Case No. 3:16-cv-05392).

**38.** **Deposition:** March 16, 2017, DENNIS BLOCH, an individual and JENNIFER BLOCH, an individual, Plaintiff vs. STANFORD HOTELS CORPORATION, HARBOR VIEW HOLDINGS, Inc., A CALIFORNIA CORPORATION, MARRIOT INTERNATIONAL INC; A DELAWARE CORPORATION, SAN DIEGO HOTEL COMPANY, LLC; PORTER GREER, and DOES 1 through 25, Defendants. Case No. 37-2015-000028814-CV-PO-CTL.

**39.** **Deposition:** March 22, 2017, CINDY MICHELLE HAHN; AND BRANDON HAHN, Plaintiffs vs. CITY OF CARLSBAD; OFFICER J. KNISLEY; OFFICER KENYATTE VALENTINE; OFFICER KARCHES; CORPORAL GALANOS; OFFICER SEAPKER; AND DOES 1 THROUGH 50, Defendants. Case No. 3:15-cv-02007-DMS-BGS.

**40.** **Deposition:** April 26, 2017, DEMETRICE SIGHTLER, Plaintiff, vs. CITY OF SAN DIEGO, SAN DIEGO POLICE DEPARTMENT ASSISTANT CHIEF DAVID NISLEIT AND DOES 1-30, Defendants, Case No. 15-CV-2235-LAB (DHB).

**41.** **Trial State Court:** May 11, 2017, Marian Amaya, individually and as successor -in-interest of Emiliano Amaya, deceased; G.A., a Minor by and through his Guardian ad Litem Belinda Krawiec, individually and as successor-in-interest of Emiliano Amaya, deceased; Gloria Amaya, individually, Plaintiffs, vs. County of Los Angeles; Sheriff Lee Baca, and Does 1 to 50, Inclusive, Defendants. Case No. VC062384.

**42.** **Deposition:** June 6, 2017, HECTOR MEJIA, an individual, NORA SANTILLAN, an individual, Plaintiffs, vs. ADIEB TIESSAN, an individual, LEWIS ANTHONY GEORGE, an individual; and LEWIS JOBY ANTHONY, an individual; FAHMY MUSHMEL, an individual; SALAM MUSHMEL, an individual; THE FAHMY MUSHMEL AND SALAM MUSHMEL LIVING TRUST; and DOES 1 through 20, Inclusive, Defendants. Case No. BC594095.

**43.** **Deposition:** June 8, 2017, Nathaniel Smith v. City of Stockton, et al. Case No. 5:15-CV-01603-JGB-(DTBx)

**44.** **Trial Federal Court:** June 21, 2017, Abraham Valentin, Alejandro Francisco Peralta, Michael Dominguez, Frank Margarito Escobedo, Plaintiffs vs. ROBERT JACKSON, and DOES 1-50, Inclusive, Defendants. Case No. CV 15-09011-BRO (AFMX).

**45. <u>Trial Federal Court:</u>** June 26-27, 2017, FREDRICK THOMAS and ANNALESA THOMAS, as Co-Administrators of the Estate Leonard Thomas, and its statutory beneficiaries, Plaintiffs, vs. BRIAN MARKERT; MICHAEL WILEY; NATHAN VANCE; MICHAEL ZARO; SCOTT GREEN; JEFF RACKLEY; CITY OF FIFE; CITY OF LAKEWOOD; PIERCE COUNTY METRO SWAT TEAM; and JOHN DOES 1 through 10, Defendants. (Case No. 3:16-cv-05392).

**46. <u>Deposition:</u>** June 30, 2017, K.J.P., a minor, and K.P.P., a minor, individually, by and through their mother, LOAN THI MINH NGUYEN, who also sues individually and as successor in interest to her now deceased husband, Lucky Phounsy, and KIMBERLY NANG CHANTHAPHANH, individually, Plaintiffs vs. COUNTY OF SAN DIEGO; et al., Defendants. (Case No. 15-cv-02692-H-MDD).

**47. <u>Deposition:</u>** July 10, 2017, REBECKA JACKSON-MOESER, Plaintiffs, vs. DAVILA and DOES 1 through 10, inclusive, individually and in their official capacity as CALIFORNIA HIGHWAY PATROL OFFICERS, Defendants. Case No. CV-116-8733 SVW (JPRX).

**48. <u>Deposition:</u>** July 12, 2017, A.E.R., a Minor, by and through his Guardian ad Litem, STEPHANIE YANEZ, both Individually and as Successor in Interest on behalf of Plaintiff's Decedent EDUARDO EDWIN RODRIGUEZ, ESTELA RODRIGUEZ, and ABEL RODRIGUEZ, for themselves as parents of the Decedent, Plaintiffs, vs. COUNTY OF LOS ANGELES, a Public Entity, ANDREW ALATORRE, SANDY GALDAMEZ, and DOES 1 through 10, inclusive, individually and in their official capacity as Los Angeles County Sheriff's Department Deputies, Defendants. Case No. 2:16-cv-04895.

**49. <u>Deposition:</u>** July 14, 2017, JONATHAN A. GARCIA, an individual, Plaintiff, vs. UNITED STATES OF AMERICA, DRUG ENFORCEMENT ADMINISTRATION SPECIAL AGENT CHARLES VALENTINE, AND DOES 1-10, inclusive, Defendants. Case No. 2:16-cv-016664.

**50.** __Trial Federal Court:__   August 2, 2017, CINDY MICHELLE HAHN; AND BRANDON HAHN, Plaintiffs vs. CITY OF CARLSBAD; OFFICER J. KNISLEY; OFFICER KENYATTE VALENTINE; OFFICER KARCHES; CORPORAL GALANOS; OFFICER SEAPKER; AND DOES 1 THROUGH 50, Defendants.   Case No. 3:15-cv-02007-DMS-BGS.

**51.** __Deposition:__   August 4, 2017, Arnulfo Hernandez v. United States of America, Case No. 5:16-CV-00727-SVW(SPx).

**52.** __Deposition:__   August 9, 2017, PAMELA MOTLEY, ESTATE OF CINDY RAYGOZA, through its legal representative and administrator, YVETTE CALDERA; VALERIE CALDERA; DANNY RICE, Plaintiffs, vs. JOSEPH SMITH; BRIAN LITTLE; DERRICK JOHNSON; MICHAEL COUTO; BERNARD FINLEY; BYRON URTON; RYAN ENGUM; UNKNOWN POLICE OFFICERS; THE CITY OF FRESNO CALIFORNIA, Defendants. Case No. 1:15-CV-00905.

**53.** __Deposition:__   August 14, 2017, Desiree Martinez, Plaintiff vs. KYLE PENNINGTON; KIM PENNINGTON; CONNIE PENNINGTON; KRISTINA HERSHBERGER; JESUS SANTILLAN; CHANNON HIGH; THE CITY OF CLOVIS; ANGELA YAMBUPAH; RALPH SALAZAR; FRED SANDERS; THE CITY OF SANGER; DOES 1-20, Defendants. Case No. 1:15-cv-00683.

**54.** __Trial Federal Court:__   August 23, 2017, TREVOR WYMAN, Plaintiff vs. COUNTY OF ORANGE, ZACHARY VARELA and DOES 1 through 10, inclusive Defendants.   (Case No. CV-15-01523 AG (KESx).

**55.** __Deposition:__   September 6, 2017, JUSTIN KAUFMAN, ESQ., as Personal Representative of the Estate of HANNAH E. BRUCH, Plaintiff, Vs. EXPO NEW MEXICO, et al. Defendants. Case No. D-101-CV-2015-01792.

**56.** <u>**Deposition:**</u> September 8, 2017, KHANLY SAYCON, JR., and ANNA LUZ SAYCON, individually and as surviving heirs and successors in interest of MHARLOUN SAYCON (deceased), Plaintiffs v. CITY OF LONG BEACH, ROBERT LUNA, VUONG NGUYEN, and DOES 1-20, Inclusive, Defendants. Case No. 2:16-cv-05614 JFW (ASx).

**57.** <u>**Deposition:**</u> October 17, 2017, JOSE PATINO, an individual, Plaintiff, v. LIVE NATION ENTERTAINMENT INC., a Delaware Corporation; 4FINI, Inc., a California Corporation; ROCKSTAR BEVERAGE CORPORATION, a Nevada Corporation; and DOES 1 through 100, inclusive Defendants., Case No. CIVDS1515083.

**58.** <u>**Deposition:**</u> October 24, 2017, NICHOLAS MONTGOMERY, Plaintiff, vs. The WHISKEY BARREL, Hesperia, LLC, and DOES 1 through 20, inclusive, Defendants. Case No. CIVDS1518148.

**59.** <u>**Deposition:**</u> October 30, 2017, ESTATE OF FERAS MORAD, AMAL ALKABRA, and AMR MORAD Plaintiffs v. CITY OF LONG BEACH, MATTHEW HERNANDEZ, ROBERT LUNA, Defendants, Case No. 16-cv-06785-MWF-AJW.

**60.** <u>**Deposition:**</u> November 3, 2017, ARMANDO AYALA, Plaintiff, v. STATER BROS. MARKETS, and DOES 1 TO 50, INCLUSIVE, Defendants, Case No. BC546436.

**61.** <u>**Deposition:**</u> November 7, 2017, PRESTON v. BOYER, et al., USDC Western District of Washington, Case No. 16-CV-01106.

**62.** <u>**Deposition:**</u> November 8, 2017, TRINA KOISTRA; and LARRY FORD, Plaintiffs, vs. COUNTY OF SAN DIEGO; PLUTARCO VAIL; and DOES 1 through 50, inclusive, Defendants, (Case No. 16-cv-2539 GPC AGS).

**63.   Deposition:**   December 5, 2017, JAMES GOOD, an individual, Plaintiff, vs. COUNTY OF LOS ANGELES; LEROY DAVID "LEE" BACA, as Former Sheriff in his individual and official capacity; JIM MCDONNELL, as Sheriff in his individual and official capacity; DEPUTY PETER NICHOLAS; DEPUTY JASON WILL, Defendants. Case No. 2:15-CV-04290-DSF (MRWx).

**64.   Deposition:** January 8, 2018, BRYAN JOSEPH FISHER, Plaintiff, vs. COUNTY OF ORANGE; TODD CARPENTER; ROXANA ENRIQUEZ, JAVIER MARQUEZ, et al., Defendants. Case No. 16-CV-01866-CJC (KES).

**65.   Deposition:** January 10, 2018, MICHAEL GEGENY, Plaintiff, vs. CITY OF LONG BEACH, CHIEF JIM MCDONNELL, OFFICER JOSE MANUEL RODRIGUEZ, #10153; OFFICER JUSTIN S. KRUEGER, #6152 and DOES 1 to 50, Inclusive, Defendants, (Case No. BC 553047).

**66.   Trial Federal Court:**   January 23, 2018, JONATHAN A. GARCIA, an individual, Plaintiff, vs. UNITED STATES OF AMERICA, DRUG ENFORCEMENT ADMINISTRATION SPECIAL AGENT CHARLES VALENTINE, AND DOES 1-10, inclusive, Defendants. Case No. 2:16-cv-016664.

**67.   Deposition:** February 8, 2018, DOMINIC ARCHIBALD, and NATHANAEL PICKETT I, AS SUCCESSORS IN INTEREST TO NATHANAEL PICKETT II, DECEASED, Plaintiff, vs. COUNTY OF SAN BERNARDINO, KYLE WOODS, WILLIAM KELSEY and DOES 2-10, INCLUSIVE, Defendants, (Case No. 5:16-cv-01128-AB-SPx).

**68.   Deposition:**   February 13, 2018, THE ESTATE OF JOHNNY MARTINEZ; PLAINTIFF, VS. COUNTY OF LOS ANGELES, LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, SHERIFF JIM MCDONNELL, AND DOES 1 THROUGH 50, DEFENDANTS. CASE NO. BC 579140

**69.   Deposition:** February 21, 2018, TIMOTHY McKIBBEN, an individual, Plaintiff, vs. OFFICER WILLIAM KNUTH, an individual; RAYMOND COTA, in his official capacity, CITY OF SEDONA, an Arizona municipal corporation; JOHN and JANE DOES I-X, Defendants, Case No. 3:17-CV-08009-JWS.

**70.** __Deposition:__ February 23, 2018, TIFFANIE HUPP and RILEY HUPP, a minor, by and through his next friend, Tiffanie Hupp, and CLIFFORD MYERS, Plaintiffs, vs. STATE TROOPER SETH COOK and COLONEL C.R. "JAY" SMITHERS, Defendants, Case No. 2:17-CV-926.

**71.** __Trial Federal Court:__ March 7-8, 2018, DOMINIC ARCHIBALD, and NATHANAEL PICKETT I, AS SUCCESSORS IN INTEREST TO NATHANAEL PICKETT II, DECEASED, Plaintiff, vs. COUNTY OF SAN BERNARDINO, KYLE WOODS, WILLIAM KELSEY and DOES 2-10, INCLUSIVE, Defendants, (Case No. 5:16-cv-01128-AB-SPx).

**72.** __Deposition:__ April 9, 2018, ROBERT PALMER, Plaintiff, vs. CALIFORNIA HIGHWAY PATROL OFFICER IOSEFA, et al., Defendants. Case No. 1:16-CV-00787-SKO.

**73.** __Deposition:__ April 13, 2018, JEFFREY SIHTO, Plaintiff, vs. HYATT CORPORATION; JOSE CEBALLOS; and DOES 1 through 50, Inclusive, DEFENDANTS. Case No. BC 594206

**74.** __Deposition:__ April 18, 2018, ROSWITHA M. SAENZ, Individually and on behalf of THE ESTATE OF DANIEL SAENZ, Deceased, Plaintiff, vs. G4S SECURE SOLUTIONS (USA) INC., OFFICER JOSE FLORES AND ALEJANDRO ROMERO, Defendants. Case No. 14-CV-244PRM.

**75.** __Deposition:__ April 19, 2018, MILDRED MAE MENDOZA as successor-in-interest of FRANK MENDOZA, SR., et al, Plaintiffs, vs. COUNTY OF LOS ANGELES, et al, Defendants. Case No. BC 594206.

**76.** __Trial Federal Court:__ April 25, 2018, LOUIS SANCHEZ, an individual, Plaintiff, vs. DEPUTY JOSHUA RICARD, an individual, and DOES 1 through 10, inclusive, Defendants. Case No. 5:17-CV-00339.

**77. Deposition:** May 1, 2018, DOUGLAS KEVIN VEALE, individually, and as the Personal Representative for the Estate of KATHRYN JEANETTE NEW, deceased, and on behalf of the beneficiaries of the Estate including AARON JAMES NEW, KENT ROBERT MCMAHON, HEATHER JANDICE BRIGETTE NEW, PATRICK JORDAN WILLIAM NEW, and DUSTY CODY SCOGGINS, Plaintiffs, vs. WASHINGTON FUGITIVE INVESTIGATIONS, a foreign limited liability company; TWO JINN, INC., d/b/a ALADDIN BAIL BONDS, a for-profit corporation, and MARIO D. CAREY, a Washington resident, Defendants. Case No. 17-2-08870-1

**78. Deposition:** May 7, 2018, ESTATE OF JAVIER GARCIA GAONA, JR., et al., Plaintiffs, vs. CITY OF SANTA MARIA, et al., Defendants, (Case No. 2:17-cv-01983).

**79**. **Trial State Court**: June 4, 2018, NICHOLAS MONTGOMERY, Plaintiff, vs. The WHISKEY BARREL, Hesperia, LLC, and DOES 1 through 20, inclusive, Defendants. Case No. CIVDS1518148.

**80.** **Deposition:** June 14, 2018, CHRISTINE VILLEGAS; RICEZEN VILLEGAS, a minor, by and through his Guardian Ad Litem MIGUEL VILLEGAS; DANIEL VILLEGAS, a minor, by and through his Guardian Ad Litem MIGUEL VILLEGAS; JOCELYN CASTILLO VILLEGAS and ESTATE OF BERNIE CERVANTES VILLEGAS, Plaintiffs. VS. CITY OF ANAHEIM, a California municipal entity; JOHN WELTER; NICHOLAS BENNALLACK; BRETT HEITMANN; KEVIN VOORHIS; MATTHEW ELLIS; and Does 1-10, inclusive. CASE No: 30-2017-00897184-CU-PO-CJC.

**81.** **Trial Federal Court:** July 6. 2018, ESTATE OF FERAS MORAD, AMAL ALKABRA, and AMR MORAD Plaintiffs v. CITY OF LONG BEACH, MATTHEW HERNANDEZ, ROBERT LUNA, Defendants, Case No. 16-cv-06785-MWF-AJW.

**82. <u>Deposition:</u>** July 16, 2018, SHAWN EDWARD RUMENAPP, an individual; and ERICA RUMENAPP, an individual, Plaintiffs, vs. PANERA BREAD COMPANY, a Delaware corporation; PANERA, LLC, a Delaware limited liability company; SARA JAMAL ZEITOUN, an individual; JAMAL ZEITOUN, an individual; and DOES 1 through 50, inclusive, Defendants, Case No: CIVDS 1700576.

**83. <u>Deposition:</u>** July 17, 2018, Fralisa McFall, on behalf of the ESTATE OF JESSICA ANN MARIE ORTEGA, a deceased person, and her statutory beneficiaries I.S. and D.S., two minor children, Plaintiff, vs. PIERCE COUNTY, a subdivision of the State of Washington, Defendant, Case No. 17-2-11836-8.

**84**. **<u>Trial State Court</u>**: July 20, 2018, ARMANDO AYALA, Plaintiff, v. STATER BROS. MARKETS, and DOES 1 TO 50, INCLUSIVE, Defendants, Case No. BC546436.

**85. <u>Deposition:</u>** July 31, 2018, TOMMIE HARRIS, Individually; DERRICK EUGENE COKER, Individually; SHYWINA DIANE COLE, Individually; STEPHANIE LORRAINE WILLIAMS, Individually; JEMICA SHANDRA SPEARS, Individually, Plaintiffs, vs. GNL, CORP. d/b/a GOLD DIGGERS, a Domestic Corporation; Individually; DOE EMPLOYEES; DOES I through X; and ROE CORPORATIONS I through X, inclusive, Defendants.   Case No. A-16-741693-C.

**86. <u>Deposition:</u>** August 14, 2018, DAVID JESSEN and GRETCHEN JESSEN, Plaintiffs vs. COUNTY OF FRESNO, CITY OF CLOVIS, and DOES 1 to 100, inclusive, Defendants, Case No. 1:17-cv-00524-DAD-EPG.

**87. <u>Deposition:</u>** August 15, 2018, ARMANDO VILLANUEVA and HORTENCIA SAINZ, INDIVIDUALLY and as successor in interest to Pedro Villanueva, deceased, and FRANCISCO OROZCO, individually, Plaintiffs vs. STATE OF CALIFORNIA; JOHN CLEVELAND; RICH HENDERSON; and DOES 1-10, inclusive, Defendants.
Case No. 8:17-cv-01302 JLS (KESx).

**88.** <u>Deposition:</u> August 17, 2018, BRIAN O'NEAL PICKETT III, A MINOR, AND MICAH OMARI PICKETT, A MINOR, BY AND THROUGH THEIR GUARDIAN AD LITEM TAMIA GILBERT, Plaintiffs, vs. COUNTY OF LOS ANGELES, LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, AND DOES 1 THROUGH 50, INCLUSIVE, Defendants. CASE NO. TC028173, Consolidated with TC028210.

**89.** <u>Deposition:</u>  August 21, 2018, ESTATE OF TASHI S. FARMER a/k/a TASHII BROWN, by and through its Special Administrator, Elia Del Carmen Solano-Patricio; TAMARA BAYLEE KUUMEALI' FARMER DUARTE, a minor, individually and as Successor-in-Interest, by and through her legal guardian, Stevandra Lk Kuanoni; ELIAS BAY KAIMIPONO DUARTE, a minor, individually and as Successor-in-Interest, by and through his legal guardian, Stevandra Kuanoni, Plaintiffs, vs. LAS VEGAS METROPOLITAN POLICE DEPARTMENT, a political subdivision of the State of Nevada; OFFICER KENNETH LOPERA, INDIVIDUALLY and in his Official Capacity; and Does 1 through 50, inclusive, Defendants, (Case No. 2:17-CV-01946-JCM-PAL).

**90.** <u>Deposition:</u>  August 24, 2018, TEAIRA SMALLWOOD, et al, Plaintiffs, vs. OFFICER JOSEPH KAMBERGER, JR., et al, Defendants, Civil Case No. 24-C-16-005543.

**91.** <u>Deposition:</u>  August 27, 2018, DANIEL MANRIQUEZ, Plaintiff, vs. J. VANGILDER, et al., Case No. 16-cv-01320 HSG (PR).

**92.** <u>Deposition:</u>  September 14, 2018, ERIKA SEPULVEDA, FOR HERSELF AND ON BEHALF OF HER MINOR CHILDREN MELODY PATRICIO AND ERNESTO PATRICIO, AND MARIA CARMEN SARATE ANGELES, Plaintiffs v. CITY OF WHITTIER, OFFICER HAUSE, OFFICER CABRAL, OFFICER MEDINA, MONETARY MANAGEMENT OF CALIFORNIA, INC. dba MONEY MART, DOLLAR FINANCIAL GROUP, INC., DFC GLOBAL CORP. fdba DOLLAR FINANCIAL U.S. INC., JOSE LOPEZ, DON MORTON, and DOES 2-10, inclusive, Defendants, Case No. 2:17-cv-4457-JAK (KSx)

**93.** <u>**Deposition:**</u>  September 20, 2018, DAPHNE SMITH, an individual, Plaintiff, vs. GGP, INC., a California Corporation Dba EASTRIDGE; EASTRIDGE, a business organization, form unknown; GENERAL GROWTH PROPERTIES, INC, a Delaware Corporation dba EASTRIDGE; and DOES 1-50, inclusive, Defendants. Case No. 2015-1-CV-283003. ABM ONSITE SERVICES-WEST, INC., Cross-Complainants, vs. ALLIED BARTON SECURITY SERVICES, LP; AND DOES 1-20, Cross-Defendants.

**94.** <u>**Deposition:**</u>  September 24, 2018, TIMOTHY GRISMORE, an individual; XAVIER HINES, an individual, Plaintiffs, vs. CITY OF BAKERSFIELD, a municipality; OFFICER MELENDEZ, an individual; OFFICER LUEVANO, an individual; OFFICER POTEETE, an individual; OFFICER CLARK, an individual; OFFICER McINTYRE, an individual; OFFICER VASQUEZ, an individual; OFFICER BARAJAS, an individual; SERGEANT McAFEE, an individual; and DOES 1-10, inclusive, Defendants.
Case No. 1:17-cv-00413-AWI-JLT.

**95.** <u>**Deposition:**</u>  September 25, 2018, CAROLYN GIUMMO and ANTHONY S. HILL, SR., Individually and as Surviving Parents and as Personal Representatives of the Estate of ANTHONY H. HILL, Plaintiffs, vs. ROBERT OLSEN, individually and in his official capacity as a law enforcement officer for DeKalb County Police Department; and the COUNTY OF DEKALB, GEORGIA, a municipal corporation, Defendants. (Civil Action File No. 1:15-CV-03928-TCB).

**96.** <u>**Deposition:**</u>   September 26, 2018, MARIA ADAME, in her individual capacity; CLARISA ABARCA, as a parent of minor child; C.A., in her individual capacity, and the ESTATE OF DEREK ADAME, as statutory beneficiaries of the claim for wrongful death of Derek Adame, deceased, Plaintiffs, vs. CITY OF SURPRISE, SURPRISE POLICE DEPARTMENT, OFFICER JOSEPH GRUVER and OFFICER SHAUN MCGONIGLE, Defendants. Case No. CV-2017-3200-PHX-GMS.

**97.** <u>**Deposition:**</u> October 17, 2018, BRIAN A. RAMIREZ, Plaintiff, vs. COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, OFFICER RYAN N. VICE, and DOES 1 through 10, Inclusive, Defendants. Case No. 2:17-cv-01868-JAM-GGH.

**98. <u>Deposition:</u>**   October 18, 2018, RONEY COFFMAN, Plaintiff, vs. LOS ANGELES COUNTY SHERIFF'S DEPARTMENT; COUNTY OF LOS ANGELES; FRAY MARTIN LUPIAN, DOES 1 TO 20, Defendants, Case No. BC653479.

**99. <u>Deposition:</u>** October 23, 2018, ROBERT PROVOST, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF ERIC PROVOST, PLAINTIFF, vs. CITY OF ORLANDO, A FLORIDA MUNICIPAL CORPORATION, POLICE OFFICER SONJA SAUNDERS AND POLICE OFFICER TINO CRUZ IN THEIR OFFICIAL AND INDIVIDUAL CAPACITIES, DEFENDANTS. Case No. 6:17-CV-2133-ORL-40DCI.

**100. <u>Deposition:</u>**   October 24, 2018, ANGELA AINLEY, individually and as successor-in-interest for KRIS JACKSON, deceased; PATRICK JACKSON, individually and as successor-in-interest for KRIS JACKSON, Deceased, Plaintiff, vs.   CITY OF SOUTH LAKE TAHOE, a public entity; JOSHUA KLINGE, individually and as a police officer for the City of South Lake Tahoe; City of South Lake Tahoe Chief of Police BRIAN UHLER, individually; and DOES 2 through 10, Jointly and Severally, Defendants. Case No. 2:16-cv-00049-TLN-CKD.

**101. <u>Trial Federal Court</u>**:   October 29, 2018, ROBERT PALMER, Plaintiff, vs. CALIFORNIA HIGHWAY PATROL OFFICER IOSEFA, et al., Defendants. Case No. 1:16-CV-00787-SKO.

**102. <u>Deposition:</u>**   November 9, 2018, KIMBERLY J. ZION, individually and as successor in interest to CONNOR ZION, Plaintiff, vs. COUNTY OF ORANGE, MICHAEL HIGGINS and DOES 1 through 10, inclusive, Defendants. Case No. 8:14-cv-01134-JVS-RNB.

**103. <u>Deposition</u>**:   November 11, 2018, DONNA HUFF, Plaintiff, vs. THE LOS ANGELES COUNTY SHERIFF'S DEPARTMENT; THE COUNTY OF LOS ANGELES; DEPUTY GREG WHALEN (EMPLOYEE NO. 476475), OFFICER MICHAEL REYNOLDS (EMPLOYEE NO. 519952) and DOES 1 through 10, Inclusive, Defendants. Case No. LA 16-CV-01733-AB (AGRx).

**104. <u>Deposition:</u>**   November 15, 2018, MERLIN OFFSHORE INTERNATIONAL, a California Corporation, et al., Plaintiffs, vs. ADVANCED RESERVATIONS SYSTEMS, INC., a California corporation, et al., Defendants. Case No. SC12580.

**105.   <u>Trial State Court:</u>**   December 5, 2018, CHRISTINE VILLEGAS; RICEZEN VILLEGAS, a minor, by and through his Guardian Ad Litem MIGUEL VILLEGAS; DANIEL VILLEGAS, a minor, by and through his Guardian Ad Litem MIGUEL VILLEGAS; JOCELYN CASTILLO VILLEGAS and; ESTATE OF BERNIE CERVANTES VILLEGAS, Plaintiffs. VS. CITY OF ANAHEIM, a California municipal entity; JOHN WELTER; NICHOLAS BENNALLACK; BRETT HEITMANN; KEVIN VOORHIS; MATTHEW ELLIS; and Does 1-10, inclusive. CASE No: 30-2017-00897184-CU-PO-CJC.

**106.   <u>Deposition:</u>**   December 19, 2018, VICTOR GARCIA, Plaintiff vs. REAL HOSPITALITY, INC., dba MARTINI'S FEEL GOOD LOUNGE; DYLAN OXFORD, and DOES 1-100, Inclusive, Defendants. Case No. BCV-16-102039-SPC.

**107. <u>Trial Federal Court</u>**:   January 15, 2019, KIMBERLY J. ZION, individually and as successor in interest to CONNOR ZION, Plaintiff, vs. COUNTY OF ORANGE, MICHAEL HIGGINS and DOES 1 through 10, inclusive, Defendants. Case No. 8:14-cv-01134-JVS-RNB.

**108.   <u>Deposition:</u>**   January 18, 2019, DYLAN KINNEY, individually and on behalf of the ESTATE OF REGINA ANNAS, a deceased person; RACHEL HOLLAND, individually, Plaintiffs, vs. PIERCE COUNTY, a subdivision of the State of Washington, Defendant, Case No. 18-2-07321-4.

**109.   <u>Deposition:</u>**   January 22, 2019, GWENDOLYN WOODS, individually and as Successor in Interest to Decedent MARIO WOODS, PLAINTIFF, vs. CITY AND COUNTY OF SAN FRANCISCO; a municipal corporation, et al, DEFENDANTS. Case No. 3:15-05666-WHO.

**110.** <u>Deposition:</u>   January 24, 2019, JANICE SLY, individually and as Successor in Interest to ISAAC JERMAINE KELLY, deceased, and CHARLES ROY, individually and as Successor in Interest to ISAAC JERMAINE KELLY, deceased, Plaintiffs, vs. LMV II AFFORDABLE, L.P., a California Limited Partnership doing business as MEADOWVIEW II APARTMENTS; FWC REALTY SERVICES CORPORATION, a Delaware Corporation; CBR PROPERTY MANAGEMENT LLC, a California Corporation; STEVEN RAY DILLICK JR., an individual; and DOES 1 through 50, inclusive, Defendants. Case No. RIC1601732.

**111.** <u>Trial Federal Court:</u>   January 29, 2019, TRINA KOISTRA; and LARRY FORD, Plaintiffs, vs. COUNTY OF SAN DIEGO; PLUTARCO VAIL; and DOES 1 through 50, inclusive, Defendants, (Case No. 16-cv-2539 GPC AGS).

**112.** <u>Deposition:</u>   February 7, 2019, ANTHONY ECONOMUS, Plaintiff, vs. CITY AND COUNTY OF SAN FRANCISCO; a municipal corporation, et al, City of San Francisco Police Officer; DOES 1-50 INCLUSIVE, Defendants, Case No. 4:18-cv-01071 HSG.

**113.** <u>Deposition:</u>   February 11, 2019, GABRIEL LAKATOSH, on behalf of himself and all others similarly situated, Plaintiff, vs. TECHTRONIC INDUSTRIES COMPANY, LTD; MILWAUKEE ELECTRIC TOOL CORPORATION; THE HOME DEPOT, INC.; and DOES 1-10, inclusive, Defendants, Case No. BC712875.

**114.** <u>Deposition:</u>   February 13, 2019. JOSE VILLEGAS, an individual; MARIA VILLEGAS, an individual; ALDO VILLEGAS, a minor, by and through his guardian ad litem, Plaintiffs, vs. COUNTY OF SAN BERNARDINO, a governmental entity; SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT, a governmental entity; RYAN CONNER, an individual; PAUL KOWALSKI, an individual; and DOES 1-100, inclusive, Defendants. Case No. CIVDS1606504.

**115.**  <u>Deposition:</u>   February 14, 2019, S.A.C A MINOR, BY AND THROUGH HER GUARDIAN AD LITEM, KAREN NUNEZ VELASQUEZ, INDIVIDUALLY AND AS SUCCESSOR INTEREST TO JONATHON CORONEL, AND MARIA B. CORONEL, AN INDIVIDUAL, PLAINTIFFS, vs. COUNTY OF SAN DIEGO, AN ENTITY; CHRISTOPHER VILLANUEVA AN INDIVIDUAL; AND DOES 1 THROUGH 10, INCLUSIVE, DEFENDANTS. Case No. 17CV1459-WQH-AGS.

**116.**  <u>Deposition:</u>   February 28, 2018, FERMIN VINCENT VALENZUELA, Plaintiff, vs. CITY OF ANAHEIM, et al., Defendants, (Lead Case No. SACV 17-0278 CJC (DFMx).

**117.**  <u>Deposition:</u>   March 7, 2019, K.C., a minor, by and through her guardian ad litem Carolina Navarro; A.S., a minor, by and through her guardian ad litem Araceli Saenz; K.C., by and through her guardian ad litem Amber Neubert; JACQUELINE LAWRENCE; KEITH CHILDRESS, SR., in each case individually and as successor in interest to Keith Childress, Jr., deceased; and JACQUELINE LAWRENCE as administrator of the ESTATE OF KEITH CHILDRESS, JR., Plaintiffs, vs. LAS VEGAS METROPOLITAN POLICE DEPARTMENT, UNITED STATES OF AMERICA DEPARTMENT OF JUSTICE; ROBERT BOHANON; BLAKE WALFORD; JAMES LEDOGAR; BRIAN MONTANA; and DOES 2-10, inclusive, Defendants. Case No. 2:16-CV-03039-JCM-NJK.

**118.**  <u>Deposition:</u>   March 13, 2019, BAO XUYEN LE, INDIVIDUALLY, and as the Court appointed PERSONAL REPRESENTATIVE OF THE ESTATE OF TOMMY LE, HOAI "SUNNY" LE, Tommy Le's Father, DIEU HO, Tommy Le's Mother, UYEN LE and BAO XUYEN, Tommy Le's Aunts, KIM TUYET LE, Tommy Le's Grandmother, and QUOC NGUYEN, TAM NGUYEN, DUNG NGUYEN, JULIA NGUYEN AND JEFFERSON NGUYEN, Tommy Le's Siblings, Plaintiffs, vs. MARTIN LUTHER KING JR. COUNTY as sub-division of the STATE OF WASHINGTON, and KING COUNTY DEPUTY SHERIFF CESAR MOLINA. Defendants. Case No. 2:18-CV-00055-TSZ.

**119.**  <u>Deposition:</u>   March 19, 2019, MICHAEL WILLIAM FONG, M.D., an individual, Plaintiffs, vs. COUNTY OF LOS ANGELES COUNTY SHERIFF'S DEPARTMENT; VIRIDIANA PEREZ; AND DOES 1 THROUGH 20, Inclusive, Defendants. Case No. BC630745.

**120.** <u>Deposition:</u> March 27, 2019, KATHY CRAIG and GARY WITT, individually and as successor-in-interest to BRANDON LEE WITT, deceased, Plaintiffs, vs. COUNTY OF ORANGE, and NICHOLAS PETROPULOS, an individual, and DOES 1-10, inclusive, Defendants. Case No. SACV 17-00491-CJC (KESx).

**121.** <u>Deposition:</u> April 4, 2019, PATRICK J. CAVANAUGH, Plaintiff, vs. DONNY YOUNGBLOOD, Kern County Sheriff; BRIAN HULL, Classifications/Gang Unit Sergeant; JOSH JENNINGS, Lerdo Pre-Trial Facility Classification/Gang Unit Deputy; OSCAR FUENTEZ, Lerdo Pre-Trial Facility Classification/Gang Unit Deputy; DAVID K. FENNELL, M.D., Medical Director, Atascadero State Hospital; DAVID LANDRUM, Chief, Office of protective Services, Atascadero State Hospital; CHRISTOPHER GUZMAN; Classification/Gang Unit Officer, Atascadero State Hospital; DILLON MORGAN, Classification/Gang Unit Officer, Atascadero State Hospital, Defendants. Case No. 1:17-cv-00832-DAD-JLT.

**122.** <u>Deposition:</u> April 12, 2019, TATYANA HARGROVE, Plaintiff, vs. CITY OF BAKERSFIELD, BAKERSFIELD POLICE DEPARTMENT OFFICER CHRISTOPHER MOORE, BAKERSFIELD POLICE DEPARTMENT SENIOR OFFICER GEORGE VASQUEZ, and DOES 1-10, inclusive, Defendants. Case No. 1:17-CV-001743-JLT.

**123.** <u>Trial Federal Court:</u> April 25, 2019, KATHY CRAIG and GARY WITT, individually and as successor-in-interest to BRANDON LEE WITT, deceased, Plaintiffs, vs. COUNTY OF ORANGE, and NICHOLAS PETROPULOS, an individual, and DOES 1-10, inclusive, Defendants. Case No. SACV 17-00491-CJC (KESx).

**124.** <u>Deposition:</u> May 21, 2019, DEMETRIC FAVORS, Plaintiff, vs. CITY OF ATLANTA, a municipal corporation of the State of Georgia, Defendant. Civil Action File No. 1:17-cv-03996-SCJ.

**125.** __Deposition:__   May 28, 2019, JESSE MONTELONGO, an individual; VICTORIA MONTELONGO, an individual; THERESA LOZANO an individual; J.M., a minor, by and through his Guardian Ad Litem, RUBY MORALES; E.M., a Minor, by and through his Guardian Ad Litem RUBY MORALES; ALE. M., a minor by and through her Guardian Ad Litem, ADOLFO GONZALEZ; ALI. M., a minor by and through her Guardian Ad Litem, ADOLFO GONZALEZ; ALA. M., a minor by and through her Guardian Ad Litem, ADOLFO GONZALEZ, Plaintiffs, vs. THE CITY OF MODESTO, a municipal corporation; DAVE WALLACE, individually and in his capacity as an officer for the CITY OF MODESTO Police Department; and DOES 1-25, DEFENDANTS. Case No. 1"15-CV-01605-TLN-BAM.

**126.** __Deposition:__   May 30, 2019, STAN SEVERI and MYRANDA SEVERI, Plaintiffs, vs. COUNTY OF KERN; KERN COUNTY SHERIFF DONNY YOUNGBLOOD, in his individual capacity; DEPUTY GABRIEL ROMO, in his individual capacity; AND DOES 1 to 10, inclusive, in their individual capacities, Defendants. Case No. 1:17-CV-00931-AWI-JLT.

**127.** __Deposition:__   June 12, 2019, ANDRE THOMPSON, a single man; and BRYSON CHAPLIN, a single man, Plaintiffs, vs. CITY OF OLYMPIA, a municipal corporation and local government entity; and RYAN DONALD AND "JANE DOE" DONALD, individually and the marital community comprised thereof, Defendants. Case No. 3:18-cv-05267-RBL.

**128.** __Deposition:__   June 14, 2019, PRESTON v. BOYER, et al., USDC Western District of Washington, Case No. 16-CV-01106.

**129.** __Trial Federal Court:__   June 20, 2019, DANIEL MANRIQUEZ, Plaintiff, vs. J. VANGILDER, et al., Case No. 16-cv-01320 HSG (PR).

**130. <u>Deposition:</u>** June 25, 2019, LISA G. FINCH, Individually, as Co-Administrator of the Estate of Andrew Thomas Finch, deceased, and as Next Friend of her minor granddaughter, AF; DOMINICA C. FINCH, as Co-Administrator of the Estate of Andrew Thomas Finch, deceased; and ALI ABDELHADI, Plaintiffs, vs. CITY OF WICHITA, KANSAS; JOHN DOE POLICE OFFICERS 1-10, Defendants. Case No. 18-CV-01018-JWB-KGS.

**131. <u>Deposition:</u>** June 28, 2019, PAMELA ANDERSON, Individually and as Independent Administrator of the Estate of JAMES ANDERSON, deceased, Plaintiff, vs. CITY OF CHICAGO, a Municipal Corporation, and OFFICER CHRISTOPHER RAMEY, individually and as agent, servant and employee of the CITY OF CHICAGO, Defendants, (Case No. 16 L 003346).

**132. <u>Deposition:</u>** July 2, 2019, BRIDGET BRYDEN, Plaintiff, vs. CITY OF SANTA BARBARA; and DOES 1 to 50, Case No. 17CVV01529.

**133. <u>Trial State Court:</u>** July 3, 2019, JANICE SLY, individually and as Successor in Interest to ISAAC JERMAINE KELLY, deceased, and CHARLES ROY, individually and as Successor in Interest to ISAAC JERMAINE KELLY, deceased, Plaintiffs, vs. LMV II AFFORDABLE, L.P., a California Limited Partnership doing business as MEADOWVIEW II APARTMENTS; FWC REALTY SERVICES CORPORATION, a Delaware Corporation; CBR PROPERTY MANAGEMENT LLC, a California Corporation; STEVEN RAY DILLICK JR., an individual; and DOES 1 through 50, inclusive, Defendants. Case No. RIC1601732.

**134. <u>Deposition:</u>** July 8, 2019, WENDY LAGUNA, individually and as The Successor in Interest of the ROBERT CAMACHO Estate, Deceased, Plaintiff, vs. COMMUNITY PROTECTIVE SERVICES, Aa California Corporation; AUSTIN HOUSIGN PATROL, a California Business entity of unknown form; WHEELER STEFFEN PROPERTY MANAGEMENT, a California business entity of unknown form; and DOES 1 through 100, inclusive, Defendants. Case No. CIVDS1516654.

**135. <u>Deposition:</u>** July 17, 2019, DAVID STEININGER, an individual, Plaintiff, vs. MARIPOSA GRILL AND CANTINA, INC., an FTB Suspended California Corporation; and DOES 1-50, Defendants. Case No. BC 689374.

**136.** <u>Trial State Court:</u>  July 29, 2019, WENDY LAGUNA, individually and as The Successor in Interest of the ROBERT CAMACHO Estate, Deceased, Plaintiff, vs. COMMUNITY PROTECTIVE SERVICES, Aa California Corporation; AUSTIN HOUSIGN PATROL, a California Business entity of unknown form; WHEELER STEFFEN PROPERTY MANAGEMENT, a California business entity of unknown form; and DOES 1 through 100, inclusive, Defendants. Case No. CIVDS1516654.

**137.** <u>Deposition:</u>  August 13, 2019, LISA G. FINCH, Individually, as Co-Administrator of the Estate of Andrew Thomas Finch, deceased, and as Next Friend of her minor granddaughter, AF; DOMINICA C. FINCH, as Co-Administrator of the Estate of Andrew Thomas Finch, deceased; and ALI ABDELHADI, Plaintiffs, vs. CITY OF WICHITA, KANSAS; JOHN DOE POLICE OFFICERS 1-10, Defendants. Case No. 18-CV-01018-JWB-KGS.

**138.** <u>Trial State Court:</u>  September 6, 2019, PAMELA ANDERSON, Individually and as Independent Administrator of the Estate of JAMES ANDERSON, deceased, Plaintiff, vs. CITY OF CHICAGO, a Municipal Corporation, and OFFICER CHRISTOPHER RAMEY, individually and as agent, servant and employee of the CITY OF CHICAGO, Defendants, (Case No. 16 L 003346).

**139.** <u>Trial Federal Court:</u> September 25, 2019, ANDRE THOMPSON, a single man; and BRYSON CHAPLIN, a single man, Plaintiffs, vs. CITY OF OLYMPIA, a municipal corporation and local government entity; and RYAN DONALD AND "JANE DOE" DONALD, individually and the marital community comprised thereof, Defendants. Case No. 3:18-cv-05267-RBL.

**140.** <u>Deposition:</u>  October 1, 2019, RUSSELL MANNING, Plaintiff, vs.  CITY OF PALM SPRINGS, PALM SPRINGS POLICE DEPARTMENT, COUNTY OF RIVERSIDE, OFFICER MATT OLSON, DOES 1 to 100, inclusive, Defendants. Case No. PSC 1704634.

**141.** <u>**Deposition:**</u> October 10, 2019, ESTATE OF TYLER S. RUSHING, et al., Plaintiffs, vs.AG PRIVATE PROTECTION, INC., et al., Defendants. Case No. 2:18-cv-01692-MCE-AC.

**142.** <u>**Trial Federal Court:**</u> October 17, 2019, TATYANA HARGROVE, Plaintiff, vs. CITY OF BAKERSFIELD, BAKERSFIELD POLICE DEPARTMENT OFFICER CHRISTOPHER MOORE, BAKERSFIELD POLICE DEPARTMENT SENIOR OFFICER GEORGE VASQUEZ, and DOES 1-10, inclusive, Defendants. Case No. 1:17-CV-001743-JLT.

**143.** <u>**Trial State Court:**</u> October 22, 2019, RUSSELL MANNING, Plaintiff, vs. CITY OF PALM SPRINGS, PALM SPRINGS POLICE DEPARTMENT, COUNTY OF RIVERSIDE, OFFICER MATT OLSON, DOES 1 to 100, inclusive, Defendants. Case No. PSC 1704634.

**144.** <u>**Trial State Court:**</u> October 29, 2019, BRIDGET BRYDEN, Plaintiff, vs. CITY OF SANTA BARBARA; and DOES 1 to 50, Case No. 17CVV01529.

**145.** <u>**Deposition:**</u> November 1, 2019, ROGER KIRSCHENBAUM, as Administrator of the Estate of GUADALUPE OSORNIO HURTADO, deceased, and ROGER KIRSCHENBAUM, as Next Friend and Conservator for ALEXANDER OSORNIO RESENDEZ, a minor, Plaintiffs, vs. COBB COUNTY, a political Subdivision of the State of Georgia, Defendant. CIVIL ACTION FILE NO.: 18-A-963.

**146.** <u>**Trial Federal Court:**</u> November 13, 2019, FERMIN VINCENT VALENZUELA, Plaintiff, vs. CITY OF ANAHEIM, et al., Defendants, (Lead Case No. SACV 17-0278 CJC (DFMx).

**147.** <u>**Deposition:**</u> November 14, 2019, ABRAM AND COURTNEY CLAY, Plaintiffs, vs. SUNFLOWER DEVELOPMENT, LLC, ET AL., Defendants. Case No. 1716-CV-22823.

**148.** <u>**Deposition:**</u> December 5, 2019, FRANK GALLARDO, PLAINTIFF, vs. BEVERLY HOSPITAL, MICHAEL JOSEPH GAXIOLA; and DOES 1 through 20, inclusive, Defendants., Case No. BC678192.

**149.** **Deposition:** December 18, 2019, GEORGE FAULKNER, APRIL FAULKNER, Plaintiffs, vs. BRIAN LINDERMAN, STEVEN JOYCE, JEREMY MYERS, DOES 1 TO 20, Defendants, Case No. 2019-497.

**150.** **Deposition:** January 6, 2020, DAVID COLEMAN, an individual, Plaintiff, vs. ESTATE OF JEROME TENHUNDFELD, DECEASED; AND DOES 1 TO 10, Defendants. Case No. MCC 1800683.

**151.** **Trial State Court:** January 16, 2020, GEORGE FAULKNER, APRIL FAULKNER, Plaintiffs, vs. BRIAN LINDERMAN, STEVEN JOYCE, JEREMY MYERS, DOES 1 TO 20, Defendants, Case No. 2019-497.

**152.** **Deposition:** February 13, 2020, MITCHELL LOWREY; GREGORY PERRY; NICHOLE PERRY; CYNTHIA RILEY; and LORENA RASCON, Plaintiffs, vs. NATIVIDAD MEDICAL CENTER; GARLAND GILL, R.N., MICHAEL MOELLER, M.D.; EUGENE RODRIGUEZ as a nominal defendant; DAVID WILLIAMS as a nominal defendant; COUNTY OF MONTEREY; STATE OF CALIFORNIA; FIRST ALARM SECURITY AND PATROL INC., and DOES 1-50, Inclusive, Defendants. Case No. M129305.

**153.** **Deposition:** February 19, 2020, RUDY GONZALEZ, Plaintiff, v. STATE OF CALIFORNIA, CALIFORNIA HIGHWAY PATROL, RAYMOND CHAVEZ, BRADLEY KEMP, Does 1 to 20, Defendant(s). Case No. RIC1804244.

**154.** **Deposition:** February 24, 2020, BRIAN O'NEAL PICKETT III, A MINOR, AND MICAH OMARI PICKETT, A MINOR, BY AND THROUGH THEIR GUARDIAN AD LITEM TAMIA GILBERT, Plaintiffs, vs. COUNTY OF LOS ANGELES, LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, AND DOES 1 THROUGH 50, INCLUSIVE, Defendants. CASE NO. TC028173, Consolidated with TC028210.

**155.** **Deposition:** February 28, 2020, ODILA PENALOZA, INDIVIDUALLY AND AS SUCESSOR IN INTEREST TO ERICK AGUIRRE; AND SAMANTHA GOODE, AN INDIVIDUAL, PLAINTIFFS, vs. CITY OF RIALTO; JARROD ZIRKLE; MATTHEW LOPEZ AND DOES 1-10, INCLUSIVE, DEFENDANTS. Case No. 5:19-CV-01642 SVW (SPx).

**156.**  **Trial Federal Court:**   March 5, 2020, ODILA PENALOZA, INDIVIDUALLY AND AS SUCESSOR IN INTEREST TO ERICK AGUIRRE; AND SAMANTHA GOODE, AN INDIVIDUAL, PLAINTIFFS, vs. CITY OF RIALTO; JARROD ZIRKLE; MATTHEW LOPEZ AND DOES 1-10, INCLUSIVE, DEFENDANTS. Case No. 5:19-CV-01642 SVW (SPx).

**157.**  **Deposition:**   March 12, 2020, MARLON JOHNSON, an individual, Plaintiff, vs. COUNTY OF SAN BERNARDINO; SAN BERNARDINO SHERIFF'S DEPARTMENT; SHERIFF JOHN MCMAHON; DEPUTY ALEJANDRO RAMOS; DEPUTY MATTHEW BALTIERRA; DEPUTIES Does 1 through 5; and DOES 6 through 10, Inclusive, Defendants. Case No. 5:18-cv-02523-GW.

**158.**  **Deposition:**   April 27, 2020, EDWARD BRIAN BOOKER, Plaintiff, vs. POLICE OFFICER ANTHONY WONG SHUE, POLICE OFFICER LUIS MATEO and POLICE SERGEANT WILLIAM C., in their individual capacities, Defendants.   Case No. 6:19-cv-773-Orl-375C1.

**159.**  **Deposition:**   May 1, 2020, RACHEL FEAR; SARAH FEAR; STEVEN FEAR; BETTY LONG; AND LORI CHEVOYA, DEFENDANTS, vs. ALEX GEIGER; CITY OF EXETER POLICE DEPARTMENT, CITY OF GROVER BEACH; CITY OF GROVER BEACH POLICE DEPARTMENT; CHRISTOPHER BELAVIC; MONICA BELAVIC; AND DOES 1 THROUGH 100, INCLUSIVE, DEFENDANTS.   Case No. 17CV-0529.

**160.**  **Deposition:** May 21, JOHN BOWLES, individually, Plaintiff, vs. CITY OF SAN JOSE; TODD AH YO; WILLIAM WOLFE; ERICK ENDERLE, and DOES 1-10, inclusive, Defendants. Case No. 5:19-cv-01027-NC.

**161.**  **Deposition:** July 6, 2020, JEAN HENDERSON, as next friend and guardian of and for CHRISTOPHER DEVONTE HENDERSON, Plaintiff, vs. HARRIS COUNTY, TEXAS; and ARTHUR SIMON GARDUNO, Defendants. (CIVIL ACTION NO. 4:18-cv-02052).

**162.**  **Deposition:** July 10, 2020, ANGEL JOSE VELASCO, Plaintiff, vs. CITY OF EL MONTE, CITY OF BALDWIN PARK; CORPORAL DANNY TATE; OFFICER ERNEST BARRIOS; and DOES 1 to 10, Inclusive, Defendants. Case No. 2:19-cv-07956-GW (AGRx).

**163.** **Deposition**: August 25, 2020, RHONDA HAGOOD, Plaintiff, vs. KERN COUNTY, a California municipal entity; NICK EVANS, an individual; TODD NEWELL, an individual; and DOES 1 THROUGH 10, Inclusive, Defendants. (Case No. 1:18-CV-01092 JLT).

**164.** **Deposition:** August 31, 2020, S.S.L., A MINOR, BY AND THROUGH HIS GUARDIAN AD LITEM MARISSA J. LOPEZ AVILA AS AN INDIVIDUAL AND HEIR-AT-LAW; S.S.L., A MINOR, BY AND THROUGH HIS GUARDIAN AD LITEM MARISSA J. LOPEZ AVILA AS SUCCESSOR IN INTEREST TO SERGIO SILVA-CARVAJAL, AKA SERGIO SILVA, PLAINTIFFS, vs. COUNTY OF LOS ANGELES; JOHN APOSOTOL, AN INDIVIDUAL; AND DOES 1 THROUGH 10, INCLUSIVE, DEFENDANTS. CASE NO. 2-17-CV-05544-TJH-AGR.

**165.** **Deposition:** October 09, 2020, M.H. C., a minor, by and through his guardian ad litem, ANNA CANO, Plaintiffs, vs. COUNTY OF LOS ANGELES; LOS ANGELES COUNTY PROBATION CHIEF TERRI MCDONALD, in her individual and official capacity; and DOES 1 through 20, inclusive, Defendants. Case No. 2:18-cv-08305-MWF-AFM.

**166.** **Deposition:** October 20, 2020, ANTHONY THOMAS, Plaintiff, vs. CITY OF CONCORD; OFFICER DAVID SAVAGE (Badge No. 360); OFFICER DANIEL WALKER; CORPORAL CHRISTOPHER BLAKELY (Badge No. 491); SERGEANT TODD STROUD; and DOES 1-50, Defendants. Case No. 3:18-cv-07484-EDL.

**167.** **Deposition:** October 22, 2020, ANTHONY THOMAS, Plaintiff, vs. CITY OF CONCORD, et al., Case No. 3:18-cv-07484-EDL.

168.  <u>Deposition:</u>   October 23, 2020, Mussalina Muhaymin, as Personal Representative of the Estate of Muhammad Abdul Muhaymin Jr., Plaintiff. vs. City of Phoenix, an Arizona Municipal Corporation; Antonio Tarango; Officer Oswald Grenier; Officer Kevin McGowan; Officer Jason Hobel; Officer Ronaldo Canilao; Officer David Head; Officer Susan Heimbigner; Officer James Clark; Officer Dennis Leroux; Officer Ryan Nielsen; Officer Steven Wong; and Does Supervisors 1-5, Defendants, Case No. 17-cv-04565-PHX-SMB.
**<u>Depositions</u>**: 134
**<u>Trial Testimony</u>**: 34

**<u>On-Scene Consulting Group, LLC</u>**

**<u>Scott A. DeFoe</u>**

**<u>2020 Fee Schedule</u>**

**<u>Retainer Fee:</u>**                                                   **$4000.00**

Consulting time, including but not limited to, case reviews, report reviews, deposition reviews, analysis of criminal investigations, research, interviews, consultation time, meetings, site inspections, deposition preparation, deposition support, interpretation of police documents, interpretation of investigative files, report preparation, preparation for negotiation or any miscellaneous tasks as assigned by the client attorney or opposing attorney (<u>client approved</u>). **$375.00 per hour.**

Consulting time for the following professional services: deposition testimony, trial testimony and any other legal testimony.  **$475.00 per hour.**

Fees for all depositions shall be paid prior to the start of the deposition based upon the anticipated length of the deposition with a <u>3-hour minimum</u> fee of **$1425.00**

<u>All out of state travel time</u>:                                       **$100.00 per hour.**

Fees for consulting time remain the same as in-state assignments.  Travel and actual expenses reasonably and necessarily incurred (meals, lodging, ground transportation, rental car, etc.) will be billed to the client at cost and copies of expenses will be provided when available.  On-Scene Consulting Group LLC, may request a travel retainer of $1000.00 specific to this travel prior to the travel date. Actual out of pocket expenses will be charged against the travel retainer until such time as it is exhausted.  Any balance remaining will be applied to professional services outstanding balances.